**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

CASE NO. 24-1984

---

**PACE-O-MATIC, INC.,**

*Plaintiff-Appellee,*

v.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC, ET AL.,**

*Defendants*,

and

**GREENWOOD GAMING & ENTERTAINMENT, INC.,**

*Appellant*.

---

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:20-cv-00292

---

**MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION**

---

**HUSCH BLACKWELL LLP**
Jeffrey B. Jensen
Michael Nolan
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
Jeff.Jensen@huschblackwell.com

**JAMES OTIS LAW GROUP LLC**
Michael Martinich-Sauter
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
Michael.martinich-sauter@james-
otis.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES........................................................................................ii

BACKGROUND............................................................................................................1

I.      The Dispute Giving Rise to the Underlying Litigation.....................................1

II.     The Discovery Dispute Giving Rise to This Appeal.........................................4

ARGUMENT................................................................................................................5

I.      Parx's Appeal Does Not Fall Within the *Perlman* Doctrine............................6

   A. The purportedly privileged materials are not in the possession of a disinterested third party...............................................................................................7

   B. The denial of immediate appellate review under *Perlman* would not "render impossible any review whatsoever" of Parx's privilege claims.......................11

II.     Parx's Appeal Does Not Fall Within the Collateral-Order Doctrine..............14

   A. *Mohawk* directly forecloses application of the collateral-order doctrine to this appeal..........................................................................................................16

   B. *Mohawk*'s reasoning applies with equal force to an appeal brought by a third-party privilege holder...................................................................................18

CONCLUSION...........................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Biton v. United States Airlines*, 771 F. App'x 147 (3d Cir. 2019)............................5

*BouSamra v. Excela Health*, 210 A.3d 967 (Pa. 2019)..............................................8

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236 (3d Cir. 2021) ......5

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994).........................15

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81 (3d Cir. 1992) ...........................................12

*In re Air Crash at Belle Harbor*, 490 F.3d 99 (2d Cir. 2007) ...................................13

*In re Flat Glass Antitrust Litig.*, 288 F.3d 83 (3d Cir. 2002) ................................7, 9

*In re Grand Jury (ABC Corp.)*, 705 F.3d 133 (3d Cir. 2012) .......................... *passim*

*In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798 (3d Cir. 1979) ..... 12, 20

*In re Grand Jury Subpoena (Newparent, Inc.)*, 274 F.3d 563 (1st Cir. 2001).. 12, 19

*In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231 (9th Cir. 1987) .....10

*In re Grand Jury Subpoena*, 745 F.3d 681 (3d Cir. 2014).........................................8

*In re Naranjo*, 768 F.3d 332 (4th Cir. 2014) ................................................. 8, 9, 10

*In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998) .....................................................9

*In re Sealed Case*, 655 F.2d 1298 (D.C. Cir. 1981) ...............................................9, 11

*In re Vargas*, 723 F.2d 1461 (10th Cir. 1983) ............................................................9

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) .........................................................21

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)................................. *passim*

**Cases (Continued)**                                                            **Page(s)**

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023) ...................................................................................................6

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) ...........................................17

*Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023) .....................................................6, 11, 12

*Perlman v. United States*, 247 U.S. 7 (1918) ................................................ 6, 13, 14

*Rosner v. United States*, 958 F.3d 163 (2d Cir. 2020) ...............................................12

*Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830 (3d Cir. 2022) 14, 15

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).............. 12, 20

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995)............................................21

*United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958 (3d Cir. 1988) ......................8

*United States v. Copar Pumice Co.*, 714 F.3d 1197 (10th Cir. 2013) ......................11

*United States v. Nocito*, 64 F.4th 76 (3d Cir. 2023) ......................................... 14, 17

*United States v. Ryan*, 402 U.S. 530 (1971)..............................................................11

*United States v. White*, 743 F.2d 488 (7th Cir. 1984)..................................................8

*Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350 (Fed. Cir. 2017) .....................11, 13

*Will v. Hallock*, 546 U.S. 345 (2006) .......................................................................15

**Statutes**                                                                         **Page(s)**

28 U.S.C. § 1291 .........................................................................................................5

28 U.S.C. § 1292..........................................................................................................21

**Statutes (Continued)**                                                                    **Page(s)**

28 U.S.C. § 2072 ...............................................................................................21


**Rules**                                                                                          **Page(s)**

Pa. R. Professional Conduct 1.7..........................................................................10

On May 28, 2024, Appellant Greenwood Gaming & Entertainment, Inc. ("Parx") filed a notice of appeal of the April 29, 2024 discovery order (the "April 29 Order") entered by the District Court. As described below, this Court lacks jurisdiction over Parx's appeal. Thus, Appellee Pace-O-Matic, Inc. ("POM") respectfully requests that the Court dismiss this appeal.

## BACKGROUND

### I.      The Dispute Giving Rise to the Underlying Litigation

This discovery dispute arises from a lawsuit filed by POM against its former lawyer, Eckert Seamans Cherin & Mellott, LLC, as well as two partners at that law firm (together, "Eckert"). *See generally* ECF No. 243 (operative complaint); ECF No. 353, at 3-10 (Magistrate Judge's Memorandum, providing summary of background).[1] POM designs and distributes electronic skill games in several states, including Pennsylvania. In most jurisdictions—including Pennsylvania—whether POM can operate depends on whether its games are classified as "games of skill" or "games of chance." If classified as games of skill, POM can operate freely. If classified as games of chance, POM's games would constitute illegal gambling machines, and POM would effectively be foreclosed from operating in that market. Moreover, because most states apply substantially similar standards to distinguish

---

[1] All citations of ECF docket numbers refer to the docket in the underlying district court litigation, *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, Case No. 1:20-cv-292-JPW (M.D. Pa.).

games of skill from games of chance, an adverse regulatory classification in one state could lead to POM's exclusion from other states as well.  For these reasons, proper regulatory classification presents an existential question for POM.

In late 2016, POM retained Eckert to help the company persuade Virginia regulators that POM's games constitute legal games of skill.  Viriginia and Pennsylvania apply similar legal standards to distinguish between games of skill and games of chance.  Indeed, a primary piece of evidence presented by Eckert attorneys to Virginia regulators was a 2014 Pennsylvania court decision finding POM's games to be legal games of skill under Pennsylvania law.

Unbeknownst to POM, from the very beginning of the representation, senior partners within Eckert were representing another client, Parx, in a wide-ranging plan to expel POM from the Pennsylvania market by miscasting POM's games as illegal gambling.  Contemporaneous emails demonstrate that Eckert immediately recognized that its representation of Parx created a conflict of interest.  Just a month into Eckert's representation of POM, the head of Eckert's gaming practice noted that his work for Parx would be "adverse [to POM] in VA and PA."  He also indicated that his work for Parx would involve "adverse legislative action and potential litigation against [POM]."  And one of his colleagues indicated that their work for Parx would involve arguing that POM machines constituted unlawful "gambling device[s]."

2

Despite recognizing these conflicts, Eckert never advised POM of them. Eckert instead continued to simultaneously represent both POM—in its efforts to ensure classification of its games as lawful games of skill—and Parx—in its efforts to cast POM's games as illegal gambling and drive POM from the market altogether. Moreover, during its representation of POM, Eckert recruited other casinos to join the effort to destroy POM, including Cordish and Mohegan Sun Pocono.

Eckert's anti-POM work on behalf of Parx and other casinos ultimately included several distinct courses of misconduct. Eckert attorneys aggressively lobbied law-enforcement and regulatory agencies to go after POM and its games—including through criminal proceedings—on the baseless theory that POM's games were illegal. Eckert attorneys implemented a relentless lobbying and PR blitz in an effort to persuade Pennsylvania legislators to ban skill games, particularly POM's games. And Eckert attorneys managed litigation for Parx directly against POM—though it did so surreptitiously, declining to enter an appearance in the case so that POM would not know of Eckert's involvement.

Eventually, in the fall of 2019, POM learned of Eckert's conflicted representation and demanded that Eckert cease representing clients in matters directly adverse to POM. Eckert refused and, instead, dropped POM as a client. Soon thereafter, POM filed this litigation.

3

## II.     The Discovery Dispute Giving Rise to This Appeal

As noted above, one course of misconduct at issue in this litigation involved a lobbying campaign led by Eckert that sought to persuade Pennsylvania lawmakers to ban POM's games. POM served discovery seeking communications relating to that course of conduct, as well as Eckert's other impermissible actions against POM. Eckert withheld more than one thousand responsive communications based on attorney-client privilege and/or work product.

In May 2023, POM moved to compel the production of 120 documents withheld by Eckert on the basis of the attorney-client privilege. *See* ECF No. 295-1. POM contended that these documents were not privileged, because they were not made for the purpose of providing legal advice but instead were made for non-legal purposes like lobbying or PR strategy. For most of the documents at issue, Eckert asserted a purported attorney-client privilege belonging to Parx. However, some communications were withheld based on a purported privilege belonging to other casinos, including Cordish and Mohegan Sun Pocono.

The District Court referred the discovery dispute to a Magistrate Judge. The Magistrate Judge conducted a careful *in camera* review of each of the 120 documents at issue. *See* ECF No. 353. On December 1, 2023, the Magistrate Judge ordered that 117 of the documents at issue should be produced in their entirety; two of the documents should be produced with specific redactions; and one document should

be withheld in its entirety. ECF No. 354. The Magistrate Judge issued a 97-page Memorandum detailing his analysis regarding each of the documents at issue, including a document-by-document analysis of whether each communication was made predominantly for the purpose of legal advice. ECF No. 353.

Parx and Eckert both appealed the Magistrate Judge's order to the District Court. On April 29, 2024, the District Court upheld the Magistrate Judge's order in part and reversed the order in part. *See* ECF No. 383 (the April 29 Order); ECF No. 382 (Memorandum). The District Court found that portions of four documents should be redacted. The District Court otherwise upheld the order.

On May 13, 2024, Parx filed a motion for reconsideration or, in the alternative, to certify the April 29 Order for interlocutory appeal under 28 U.S.C. § 1292(b). *See* ECF Nos. 387, 388. That motion remains pending.[2]

## ARGUMENT

The Court lacks jurisdiction over this appeal. "Generally, [the Court has] jurisdiction over only 'final decisions of the district courts of the United States.'" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 241 (3d Cir. 2021) (quoting 28 U.S.C. § 1291). "A 'final decision' is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *OI*

---

[2] Parx's notice of appeal is likely premature but will become effective if and when the District Court denies the request for reconsideration. *Biton v. United States Airlines*, 771 F. App'x 147, 148 n.1 (3d Cir. 2019).

*European Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 174 (3d Cir. 2023) (quotation omitted).    Discovery orders compelling the production of documents in a pending case—like the April 29 Order at issue here—do not fit this bill and thus ordinarily are not immediately appealable.  *See In re Grand Jury (ABC Corp.)*, 705 F.3d 133, 142 (3d Cir. 2012).

Because the April 29 Order constitutes a mere interlocutory discovery order, it does not fall within the ordinary formulations of the Court's appellate jurisdiction. However, Parx seemingly relies[3] on two narrow exceptions to the standard jurisdictional rules: the *Perlman* doctrine and the collateral-order doctrine.  As described below, neither of those narrow doctrines applies to Parx's appeal.  Thus, the Court lacks jurisdiction and should dismiss this appeal.

## I.    Parx's Appeal Does Not Fall Within the *Perlman* Doctrine.

The *Perlman* doctrine derives from the Supreme Court's decision in *Perlman v. United States*, 247 U.S. 7 (1918).  "Under *Perlman*, a privilege holder may immediately appeal an adverse disclosure order when the traditional contempt route

---

[3] Parx has not yet had to articulate its purported jurisdictional basis for this appeal.  However, Parx previously filed a notice of appeal regarding a different interlocutory discovery order in this case, claiming that either the *Perlman* doctrine or the collateral-order doctrine applied.  *See* Case No. 22-2446 (3d Cir.), Doc. No. 15.  The Court ultimately reviewed that discovery order under 28 U.S.C. § 1292(b) and thus did not address Parx's jurisdictional claim.  *See Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133, at *1 n.4 (3d Cir. Nov. 13, 2023).

is unavailable to it because the privileged information is controlled by a disinterested third party who is likely to disclose that information rather than be held in contempt for the sake of an immediate appeal." *ABC Corp.*, 705 F.3d at 138.  The *Perlman* doctrine does not apply here for two independent reasons.  First, the purportedly privileged documents are not "controlled by a disinterested third party."  Second, Parx possesses adequate alternative options to obtain appellate review of its privilege claims.

    **A.**    **The purportedly privileged materials are not in the possession of a disinterested third party.**

The *Perlman* doctrine "permits an interlocutory appeal of a disclosure order if it is directed at a disinterested third party lacking a sufficient stake in the proceeding to risk contempt by refusing compliance." *ABC Corp.*, 705 F.3d at 144. This exception to the final judgment rule "reflect[s] concern that where the subject of the discovery order (characteristically the custodian of documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege." *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.9 (3d Cir. 2002) (quotation omitted).

This rationale applies only where the third party holding the documents is "disinterested." *ABC Corp.*, 705 F.3d at 144.  Where the party holding the documents has its own interest in opposing production, "it has the requisite incentives to risk contempt." *Flat Glass*, 288 F.3d at 90 n.9 (quotation omitted).

Thus, *Perlman* does not apply where the party holding the documents is not disinterested. *See, e.g.*, *In re Naranjo*, 768 F.3d 332, 345 (4th Cir. 2014). Here, several factors demonstrate that the party holding the purportedly privileged documents—Eckert—is not disinterested.

*First*, Eckert has contended that the documents at issue in this appeal fall within the work-product doctrine and thus should not be produced.[4] *See* ECF No. 295-2 (privilege log); ECF No. 367, at 27-28 & 28 n.5 (Eckert's brief on appeal from Magistrate Judge's order); ECF No. 361 (Eckert's statement of appeal from Magistrate Judge's order). The work-product protection belongs to the lawyer, not merely the client. *See In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014); *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019).[5] Where a third party

---

[4] The April 29 Order requires the production of materials covered by the purported privilege of several distinct casinos that were clients of Eckert, including Parx, Mohegan Sun Pocono, and Cordish. For documents where the privilege holder is not Parx, Parx lacks standing to challenge the disclosure of those documents. *See ABC Corp.*, 705 F.3d at 142 (holding that certain appellants lacked standing to appeal order where privilege belonged to a different appellant); *United States v. White*, 743 F.2d 488, 494 (7th Cir. 1984) (holding that party "lack[ed] standing to bring an appeal based upon the attorney-client privilege of" another person). There is one document implicated by the April 29 Order—PRIV-00597—over which Eckert did not assert work product. *See* ECF No. 353, at 19 n. 4. However, that document involved a communication with Cordish, not Parx. *Id.* at 58-59. Thus, Parx lacks standing to challenge a ruling regarding PRIV-00597, and that document is not at issue this appeal.

[5] Eckert has asserted both federal and state-law work-product protections. *See* ECF No. 295-2 (privilege log). Federal law governs claims of work product. *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Nevertheless, the

8

holding purportedly privileged materials "asserts its own interests in the work product, it has the requisite incentives to risk contempt." *Flat Glass*, 288 F.3d at 90 n.9 (quotation omitted). Thus, courts have consistently held that where the custodian asserts its own work-product protection over the documents at issue, *Perlman* does not apply. *See, e.g.*, *Naranjo*, 768 F.3d at 345 (holding that *Perlman* did not apply because attorney-custodians argued that the purportedly privileged "documents are protected work product"); *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998) (holding that *Perlman* would not apply where custodian law firm was "asserting its own interests in work product" as to documents at issue); *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983) (holding that *Perlman* did not apply where the attorney-custodian "also claimed the work-product privilege"); *In re Sealed Case*, 655 F.2d 1298, 1301 (D.C. Cir. 1981) (Ginsburg, J.) (holding that *Perlman* did not apply, because custodian law firm argued "that the work product doctrine shields these documents from disclosure"). Because Eckert asserts the work-product doctrine over the documents at issue, it is not "disinterested," and *Perlman* does not apply.

*Second*, Eckert has its own litigation, financial, and professional interests in opposing production. Eckert is the defendant in the litigation giving rise to this discovery dispute. The documents at issue appear to provide evidence that Eckert

---

fact that Eckert has asserted state-law work-product protections demonstrates that it has an independent interest in opposing production of the documents at issue.

9

breached its fiduciary duties to POM by, among other things, carrying out a wide-ranging lobbying and PR campaign aimed at persuading Pennsylvania lawmakers to ban POM's products. Producing the documents at issue would thus likely implicate Eckert in significant misconduct and would potentially subject it to significant liability. The documents at issue could also subject Eckert to significant professional disciplinary consequences. *See, e.g.*, Pa. R. Professional Conduct 1.7. Thus, Eckert is not "disinterested" in the production of the documents at issue. *Naranjo*, 768 F.3d at 345-46 (rejecting application of *Perlman*) ("The [attorney-custodians] are not detached professionals who rendered disinterested services to the [privilege holders] . . . . In fact, given that the lawyers are alleged to have committed greater misdeeds than any attributed to the clients, the [custodians] might have a more substantial interest in keeping the documents confidential than do the [privilege holders]." (footnotes omitted)); *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 233, 237 (9th Cir. 1987) (rejecting application of *Perlman* where government had presented evidence of misconduct by both the privilege holder and the custodian attorney, and describing "the attorney [as] an active participant in the litigation"). Thus, the *Perlman* doctrine does not apply.

10

**B.    The denial of immediate appellate review under *Perlman* would not "render impossible any review whatsoever" of Parx's privilege claims.**

The *Perlman* doctrine is inapplicable for a second, independent reason. The Supreme Court "has stressed that [jurisdiction under *Perlman*] is available only 'in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.'" *In re Sealed Case*, 655 F.2d at 1301 (Ginsburg, J.) (quoting *United States v. Ryan*, 402 U.S. 530, 533 (1971)). Thus, "*Perlman* only applies when any other review is otherwise impossible." *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1209 (10th Cir. 2013). Where the privilege holder can obtain appellate review through other avenues, *Perlman* does not apply. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1366 (Fed. Cir. 2017).

Here, Parx can obtain appellate review of the April 29 Order through several other channels. For one thing, Parx can seek certification of the Order for interlocutory review under 28 U.S.C. § 1292(b). Indeed, Parx has already filed such a motion regarding the April 29 Order. ECF No. 387. And Parx successfully obtained interlocutory review of another discovery order in this case pursuant to § 1292(b). *See Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023). Parx can also pursue a mandamus proceeding. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 88-89 (3d Cir.

11

1992).   The availability of these potential appellate options demonstrates that *Perlman* does not apply.  *See Rosner v. United States*, 958 F.3d 163, 167 (2d Cir. 2020) (finding that *Perlman* did not apply where privilege holder, a party to the litigation, had "available to him several potential avenues of review, including mandamus and certification under 28 U.S.C. § 1292(b)" (quotation omitted)).

Parx could also obtain post-judgment review of the District Court's privilege rulings.  A third-party privilege holder can intervene as of right under Rule 24(a) for the limited purpose of protecting its privilege.  *See In re Grand Jury Subpoena (Newparent, Inc.)*, 274 F.3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege qualify as sufficient interests to ground intervention as of right.").[6]   An intervenor can appeal after final judgment.  *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-76 (1987);

---

[6] Parx has not formally intervened in this case for the purpose of protecting its privilege, but it could seek to do so.  *Newparent*, 274 F.3d at 570.  Moreover, Parx has functioned as a *de facto* intervenor.  With respect to this discovery dispute, for example, Parx appealed the Magistrate Judge's order to the District Court, and then sought reconsideration and/or certification of the District Court's order under 28 U.S.C. § 1292(b).  *See* ECF Nos. 362; 387.  Parx has also filed briefs regarding other discovery disputes that implicated its asserted privileges.  *See, e.g.*, ECF Nos. 351; 242; 233; 232; 192; 171; 170.  And Parx even obtained interlocutory review under § 1292(b) of a prior discovery order in this case.  *See Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).  In addition, to the extent that any order implicating Parx's privilege is appealable, Parx would have standing to appeal such an order.  *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 801 (3d Cir. 1979) (holding that "the client . . . has standing to appeal an order directed to his attorney that affects the privilege").

*Waymo*, 870 F.3d at 1357. The availability of a post-judgment appeal further demonstrates that *Perlman* does not apply. *See Waymo*, 870 F.3d at 1366 (holding that *Perlman* did not apply, because the privilege holder "may be able to appeal following final judgment").

This array of appellate options contrasts starkly with the grand-jury investigation context in which *Perlman* arose and in which it ordinarily applies. In *Perlman*, "the Supreme Court permitted Perlman, the target of a grand jury investigation, to immediately appeal the district court's denial of his motion for an order restraining the United States Attorney from using property belonging to him that had been impounded and deposited with the clerk of the court, after the clerk had been ordered by the district court to produce the property." *In re Air Crash at Belle Harbor*, 490 F.3d 99, 105 (2d Cir. 2007). Under these facts, the Supreme Court allowed Perlman to appeal immediately to vindicate his claim that the production order violated his Fifth Amendment privilege. *Perlman*, 247 U.S. at 12-13.

The Supreme Court rejected the notion that the appeal was interlocutory at all, noting that because no criminal case was pending against Perlman, if the disclosure order was "interlocutory," it would have to be "interlocutory in a proceeding not yet brought and depending upon it to be brought." *Id.* at 13. The Court further explained that, because there was no other pending proceeding, "Perlman [would have been]

13

powerless to avert the mischief of the order" absent an immediate appeal of the disclosure order. *Id.*

Thus, *Perlman* arose in a situation where there truly was no other opportunity for appeal. Perlman could not even wait for an appeal after judgment, because there was no pending proceeding that could reach judgment. The unique procedural posture of *Perlman* helps explain why the doctrine generally applies in the context of pre-indictment challenges to grand-jury subpoenas. *See, e.g.*, *ABC Corp.*, 705 F.3d at 143-44. In that pre-indictment context—as in *Perlman*—there is no pending proceeding that could afford alternate options for appeal. This discovery dispute, arising in a pending civil case, presents a very different situation. As described above, Parx has several avenues for appellate review. The Court has previously cautioned against "stretching *Perlman*" beyond the context in which the case arose. *United States v. Nocito*, 64 F.4th 76, 84 n.6 (3d Cir. 2023). Applying *Perlman* here would stretch the doctrine far beyond both its facts and its reasoning. Because the *Perlman* doctrine does not apply, the Court should dismiss Parx's appeal.

## II.   Parx's Appeal Does Not Fall Within the Collateral-Order Doctrine.

The collateral-order "doctrine recognizes a 'small class' of orders that, even without terminating the proceedings, are nonetheless subject to [immediate] appeal." *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 835 (3d Cir. 2022) (quotation omitted). "To fit within that class, an order must have three

14

characteristics: (1) It must conclusively determine the disputed question; (2) It must resolve an important issue completely separate from the merits of the action; and (3) It must be effectively unreviewable on appeal from a final judgment." *Id.* (quotation omitted). "The[se] conditions are stringent." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation omitted). The Supreme Court has "repeatedly stressed that the 'narrow' exception should stay that way." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994).

In *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), the Supreme Court addressed "whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine." *Id.* at 103. The Supreme Court unanimously held "that they do not." *Id.* Parx apparently seeks to evade the clear holding of *Mohawk* on the ground that Parx is a third-party, while *Mohawk* involved an appeal by a party. Parx's argument fails for two reasons. First, the scope of *Mohawk*'s holding encompasses appeals by third parties, and thus *Mohawk* directly controls the outcome of this case. Second, even if the holding of *Mohawk* did not directly control this case, the reasoning of *Mohawk* applies with equal force to an appeal brought by a third party like Parx. Thus, the collateral-order doctrine does not provide jurisdiction over Parx's appeal.

**A.** ***Mohawk* directly forecloses application of the collateral-order doctrine to this appeal.**

When applying the collateral-order doctrine, courts look to "the entire category to which a claim belongs." *Mohawk*, 558 U.S. at 107 (quotation omitted). Courts "do not engage in an individualized jurisdictional inquiry." *Id.* (quotation omitted). Thus, the scope of *Mohawk*'s holding depends on the scope of the "category" of orders it addressed.

Throughout its opinion in *Mohawk*, the Supreme Court repeatedly made clear that the category of orders at issue was "disclosure orders adverse to the attorney-client privilege." *Mohawk*, 558 U.S. at 103 ("The question before us is whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine."); *see also id.* at 108 ("collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege"); *id.* at 112 ("In short, the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs."); *id.* at 113 ("sufficiently effective review of adverse attorney-client privilege rulings can be had without resort to the *Cohen* doctrine"); *id.* at 114 ("In sum, we conclude that the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege."). The Supreme Court never suggested that whether an order constitutes a "disclosure order[] adverse to the attorney-client privilege" depends on

16

the identity of the privilege holder. *See id.* Thus, on its own terms, *Mohawk* applies to **all** disclosure orders adverse to the attorney-client privilege, including those where the privilege holder is a third party.

Moreover, this Court has applied *Mohawk* even where the privilege holder was a third party. In *United States v. Nocito*, several non-party entities intervened in a pending criminal prosecution, contending that the Government had wrongfully obtained a document reflecting an attorney-client communication over which they controlled the privilege and was using it in the prosecution. 64 F.4th at 79-80. The intervenors sought an order requiring the "return" of that privileged information and preventing the Government from using the information. *Id.* at 80. When the district court denied the intervenors' request, they sought immediate appellate review of that decision. *Id.* The Court rejected several purported grounds for jurisdiction over the appeal. In rejecting application of the collateral-order doctrine, the Court matter-of-factly noted that "the Supreme Court has held 'orders adverse to the attorney-client privilege' do not warrant immediate appeal under the collateral order doctrine.'" *Id.* at 83 n.4 (quoting *Mohawk*, 558 U.S. at 108-09). Thus, the Court clearly contemplated that *Mohawk* would govern even when the holder of the purported privilege is a third party. *See id.*; *see also Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012) ("We find immaterial the fact that this case involves a discovery

order directed at nonparties whereas *Mohawk Industries* involved parties to the case.").

Here, Parx seeks to appeal a disclosure order adverse to the attorney-client privilege. In *Mohawk*, the Supreme Court held that such orders are not immediately appealable under the collateral-order doctrine. 558 U.S. at 103. The Court lacks jurisdiction over this appeal.

**B.     *Mohawk*'s reasoning applies with equal force to an appeal brought by a third-party privilege holder.**

Parx seemingly contends that the holding of *Mohawk* does not squarely control this dispute, because the privilege holder in that case was a party to the litigation rather than (as here) a third party. Even if the specific holding of *Mohawk* did not control here, the Supreme Court's reasoning would still dictate that the collateral-order doctrine does not apply here. In particular, the Supreme Court focused on two principal factors demonstrating that the collateral-order doctrine does not apply to appeals of disclosure orders adverse to the attorney-client privilege. Both of those rationales apply with equal force to appeals brought by third-party privilege holders.

The bulk of the *Mohawk* Court's analysis focused on the range of alternate avenues for appellate review of a disclosure order adverse to the attorney-client privilege. This analysis arises from the third requirement of the collateral-order doctrine, *i.e.*, whether the class of orders would be effectively unreviewable absent

18

immediate appeal. *Mohawk*, 558 U.S. at 108. Looking to that requirement, the Court emphasized that litigants already possess an array of options for appellate review of disclosure orders adverse to the attorney-client privilege. In addition to post-judgment appeal, litigants can seek immediate appellate review through a mandamus proceeding; certification under 28 U.S.C. § 1292(b); or by going into contempt, which would permit an immediate appeal. *Id.* at 111-12. "Section 1292(b) appeals, mandamus, and appeals from contempt citations facilitate immediate review of some of the more consequential attorney-client privilege rulings." *Id.* The Court also noted that "protective orders are available to limit the spillover effects of disclosing sensitive information." *Id.* In light of these alternate appellate options and procedural safeguards, "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege." *Id.* at 108. Moreover, "the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs." *Id.* at 112. Thus, the Court held that the collateral-order doctrine does not apply to disclosure orders adverse to the attorney-client privilege.

This analysis applies equally to appeals brought by non-party privilege holders. A third-party privilege holder can seek to intervene under Rule 24(a) for

the limited purpose of protecting its privilege. *See Newparent*, 274 F.3d at 570.[7] The privilege holder can seek mandamus review, pursue certification under § 1292(b), and even appeal after judgment. *See, e.g.*, *Stringfellow*, 480 U.S. at 375-76; *id.* at 383 (Brennan, J., concurring in part and concurring in the judgment); *see also FMC Corp.*, 604 F.2d at 801 (holding that "the client . . . has standing to appeal an order directed to his attorney that affects the privilege"). Similarly, if the disclosure order is directed at the privilege holder itself, it can disobey the order, sustain a contempt citation, and then immediately appeal. *See ABC Corp.*, 705 F.3d at 142-43. Under at least some circumstances, even when the discovery order is directed at the lawyer rather than the third-party privilege holder, the privilege holder "could properly be held in contempt for directing the [lawyer] to withhold [the documents]." *See id.* at 147. Thus, a non-party privilege holder generally can avail itself of precisely the appellate options that the Supreme Court considered dispositive in *Mohawk*. Moreover, in at least some circumstances, a non-party privilege holder may be able to seek immediate appellate review under the *Perlman* doctrine, an additional avenue of appeal beyond those available to a party. Just as these various alternate appellate options obviate the need for collateral-order doctrine appeals by parties, so too do they obviate the need for collateral-order

---

[7] As explained above, *supra* at Footnote 6, Parx has not formally intervened in this case but plainly could seek to do so if it wished.

doctrine appeals by non-party privilege holders. *See Mohawk*, 558 U.S. at 111-12. Thus, the collateral-order doctrine does not apply here.

In addition to these pragmatic considerations, the *Mohawk* Court also emphasized a more fundamental reason for declining to expand the collateral-order doctrine to include disclosure orders adverse to the attorney-client privilege. The Court noted several congressional enactments giving the Supreme Court broad authority to issue rules permitting additional types of interlocutory appeals. *Mohawk*, 558 U.S. at 113-14 (citing 28 U.S.C. §§ 2072(c) and 1292(e)). These enactments "designat[e] rulemaking, not expansion by court decision, as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Id.* at 113. Because the Court has not issued a rule authorizing interlocutory review over disclosure orders adverse to the attorney-client privilege, the Court declined to find that jurisdiction over such appeals exists. *Id.*

This rationale also applies with equal force where the privilege holder is a non-party. The Supreme Court has not exercised its rulemaking authority to authorize interlocutory review of appeals by non-party privilege holders. "Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995); *see also Microsoft Corp. v. Baker*, 582 U.S. 23, 39 (2017) (emphasizing that

expansions of interlocutory review "are to come from rulemaking, however, not judicial decisions in particular controversies or inventive litigation ploys"). Because the Supreme Court has not exercised its rulemaking authority to permit appeals like Parx's, the Court lacks jurisdiction over Parx's appeal. The Court should dismiss the appeal.

## **CONCLUSION**

For the reasons stated above, the Court lacks jurisdiction over this appeal. Thus, POM respectfully requests that the Court dismiss this appeal.

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Michael Martinich-Sauter*
Michael Martinich-Sauter\*
JAMES OTIS LAW GROUP LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018 (Telephone)
michael.martinich-sauter@james-otis.com

Jeffrey B. Jensen\*
Michael Nolan\*
Bola Adeniran\*
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com

\* Appearing by special admission

George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

***Counsel for Plaintiff Pace-O-Matic, Inc.***

23

## CERTIFICATE OF COMPLIANCE

Pursuant to L.A.R. 28.3(d), I certify that I am a member of the Bar of this Court.

I certify that, based on the word-count feature of Microsoft Word, this motion contains 5,181 words, excluding the items enumerated in Federal Rule of Appellate Procedure 32(f).

I certify that on May 31, 2024, I caused the foregoing to be served on all counsel of record via the Court's electronic filing system.

I certify that a virus detection program has been run on this file and that no virus was detected.

*/s/ Michael Martinich-Sauter*