**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

_____

## <u>CONCISE SUMMARY OF THE CASE</u>

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION:_____

USCA NO.: _____

LOWER COURT or AGENCY and DOCKET NUMBER:

_____

NAME OF
JUDGE:_____

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

<u>LIST</u> and **<u>ATTACH</u>** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

Identify the issues to be raised on appeal:

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this _____ day of _____,20_____.

_____
Signature of Counsel

Rev. 07/2015

Magistrate Judge Opinion

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

    Plaintiff,

    v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

    Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a diversity action in which the plaintiff, Pace-O-Matic, Inc. ("POM") has brought a state-law breach of fiduciary duty action against the defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"). POM, a Wyoming corporation with a principal place of business in Georgia, is a former client of Eckert, a law firm based in Harrisburg, Pennsylvania. POM claims that Eckert breached its professional duties of loyalty and confidentiality by undertaking the concurrent representation of another client in litigation against POM. For relief, POM seeks an award of compensatory and punitive damages plus declaratory and injunctive relief against Eckert.

This is one of a series of discovery disputes that the parties have

been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).

In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to 120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for *in camera* review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert

- 2 -

submitted a tabbed binder containing copies of the 120 challenged documents for *in camera* review (*see* Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

## I.    BACKGROUND

POM develops, produces, and licenses electronic "skill games" sold in Pennsylvania and elsewhere. Beginning in 2016, POM engaged Eckert to represent it in Virginia with respect to litigation over whether those skill games were illegal gambling devices under Virginia law. That representation was limited to Virginia, as Eckert represented other clients with adverse commercial interests in Pennsylvania. One of those other clients was Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), with which Eckert had a prior existing attorney-client relationship.

In June 2018, POM filed a lawsuit concerning its skill games in the Commonwealth Court against the City of Philadelphia and the Pennsylvania Department of Revenue. *POM of Pa., LLC v. Pa. Dep't of Revenue*, No. 418 MD 2018 (Pa. Commw. Ct. filed June 8, 2018). About one month later, POM filed a second lawsuit concerning its skill games

in the Commonwealth Court against the Pennsylvania State Police. *POM of Pa., LLC v. Pa. State Police*, No. 503 MD 2018 (Pa. Commw. Ct. filed July 20, 2018). On November 20, 2019, the Commonwealth Court issued an opinion in the first case denying an application for summary relief by the state department of revenue, which had the effect of placing both actions on an active litigation schedule. *See POM of Pa., LLC v. Pa. Dep't of Revenue*, 221 A.3d 717 (Pa. Commw. Ct. 2019) (denying state department of revenue's motion for summary relief in Case No. 418); *see also POM of Pa., LLC v. Pa. State Police*, No. 503 M.D. 2018, 2019 WL 6173719 (Pa. Commw. Ct. Nov. 20, 2019) (citing Case No. 418 opinion in denying state police motion for summary relief in Case No. 503).

On December 12, 2019, POM filed a motion for a preliminary injunction against the Pennsylvania State Police in Case No. 503. POM sought to enjoin the state police from seizing its skill games from its customers. On December 18, 2019, Parx and another casino filed an amicus brief in opposition to POM's motion for a preliminary injunction. Parx appeared through counsel of record Kevin McKeon of Hawke McKeon & Sniscak, LLP ("HMS") and Adrian King of Ballard Spahr, LLP

("Ballard").[1] On January 15, 2020, the Commonwealth Court held a hearing on POM's application for a preliminary injunction. On February 14, 2020, the casinos filed applications to intervene as parties in both of POM's Commonwealth Court cases.

At some point in January 2020, POM learned that Eckert was involved in representing Parx in connection with the Commonwealth Court cases and requested that it withdraw from that representation. Eckert declined and instead withdrew from representing POM in the Virginia matters. On February 20, 2020, POM filed the complaint in this action, alleging that Mark Stewart and other attorneys at Eckert had been behind the litigation efforts of Parx in both Commonwealth Court cases, despite a conflict of interest. POM claimed that Eckert's representation of Parx in the Commonwealth Court cases, directly adverse to POM, amounted to a breach of its fiduciary duties to POM as its client—namely, its professional duties of loyalty and confidentiality.

In connection with an earlier discovery dispute, we conducted an *in*

---

[1] King was co-counsel with McKeon in both Commonwealth Court cases. It is our understanding that he and his firm represent another casino group that joined Parx in filing the amicus brief and, later, the initial motions to intervene.

*camera* review of other documents responsive to POM's discovery requests and third-party subpoenas. Among the documents produced for that earlier *in camera* inspection were email messages and SMS text messages concerning the POM Commonwealth Court litigation, exchanged between Stewart and other Eckert attorneys on the one hand and other attorneys or corporate representatives for Parx on the other hand. These communications all concerned efforts by Parx to participate in the Commonwealth Court litigation—first as an amicus curiae with respect to a motion by POM for preliminary injunctive relief, and then later as an intervenor seeking full party status, but at all times in direct opposition to the interests of the petitioner, POM, which was also a client of Eckert at the time.

Our initial February 2021 ruling concerned several categories of documents withheld from production, two of which are relevant to the current dispute. One category was transmittal messages, which "are not privileged unless they reveal the client's confidences." *See Pace-O-Matic*, 2021 WL 602733, at *8. A second category was communications concerning legislative, lobbying, or public relations services, which are generally not privileged. *See id.* at *9–*10. Eckert, Parx, and HMS

appealed a portion of our initial ruling concerning another category of documents, as to which we had found Eckert, Parx, and HMS judicially estopped from asserting attorney-client privilege. But Eckert, Parx, and HMS did not challenge our ruling with respect to any other categories of documents, including our rulings with respect to transmittal messages and communications predominantly concerned with legislative, lobbying, or public relations services. *See Pace-O-Matic*, 2021 WL 1264323, at *2; *see also Pace-O-Matic*, 2022 WL 2441556, at *2; *Pace-O-Matic*, 2021 WL 5330641, at *1.

Meanwhile, HMS-attorney McKeon filed praecipes for withdrawal of appearance in both Commonwealth Court cases on December 13, 2021. On January 11, 2022, the Commonwealth Court denied previously filed motions by POM to disqualify McKeon from both cases on the ground that his recently filed praecipes for withdrawal rendered the motions moot, and it directed another HMS attorney of record and the firm itself to withdraw their appearances as well, which they did a few days later. The state appellate court also struck the proposed intervenors' amicus brief in Case No. 503, and it struck their applications to intervene in both cases, but without prejudice to refiling similar applications to intervene

prepared by counsel *without* a conflict of interest. In June 2022, now represented by other counsel of record, Parx and other casinos filed renewed applications to intervene in both Commonwealth Court cases.

The two Commonwealth Court cases brought by POM involved different defendants, but essentially identical legal issues. In February 2023, POM appears to have opted to pursue its claims exclusively in Case No. 503, filing a praecipe of discontinuance in Case No. 418. Both defendants (the Pennsylvania Department of Revenue and the City of Philadelphia) and the proposed intervenors (Parx and other casino operators) filed appeals to the Supreme Court of Pennsylvania, each of which was ultimately quashed for lack of jurisdiction because the state department of revenue's counterclaim against POM remained pending, notwithstanding POM's discontinuance of its own claims. *See POM of Pa., LLC v. Pa. Dep't of Revenue*, Docket Nos. 10 EAP 2023, 11 EAP 2023, 12 EAP 2023 (Pa. quashed July 21, 2023) (per curiam).

Meanwhile, the other Commonwealth Court case, Case No. 503, moved forward, and a hearing was held on the casinos' application to intervene on July 19, 2023. Following this hearing and some additional briefing by the parties and the proposed intervenors, the Commonwealth

- 8 -

Court denied the casinos' applications to intervene on August 14, 2023. The Commonwealth Court also entered a stay of proceedings in both of the cases involving POM pending resolution of related appellate issues in two other Commonwealth Court cases involving skill games, to which POM was not a party: *In re Three Pa. Skill Amusement Devices*, No. 707 CD 2023 (Pa. Commw. Ct. filed Apr. 21, 2023), and *In re Four Pa. Skill Amusement Devices*, No. 761 CD 2023 (Pa. Commw. Ct. filed Mar. 8, 2023).[2] Parx and other casino operators have filed an appeal to the

---

[2] On November 14, 2023, the Commonwealth Court, sitting en banc, entered a decision affirming a trial court order granting motions to return property and to suppress evidence in criminal proceedings involving the seizure of four skill game machines from a retail establishment. *In re Four Pa. Skill Amusement Devices*, No. 761 CD 2023, 2023 WL 7509657 (Pa. Commw. Ct. Nov. 14, 2023) (en banc), *petition for allocatur filed*, No. 607 MAL 2023 (Pa. filed Nov. 15, 2023). Although the trial court's order had found that the seized games were legal games of skill, the Commonwealth's appeal and the appellate court's decision in this case were limited to jurisdictional and procedural issues—the appellate court noted that the Commonwealth had failed to preserve any substantive challenges to the trial court's order with respect to the legality of skill games. *See id.* at *3. On November 15, 2023, the Commonwealth filed a petition for allowance of appeal in the Supreme Court of Pennsylvania. *In re Four Pa. Skill Amusement Devices*, No. 607 MAL 2023 (Pa. filed Nov. 15, 2023). The case remains pending before the state supreme court.

Yesterday, the Commonwealth Court, sitting en banc, entered a decision affirming a trial court order granting a petition to return property filed in connection with an administrative enforcement seizure of three POM-developed skill game machines from a liquor-licensed

*(continued on next page)*

Supreme Court of Pennsylvania from the Commonwealth Court order denying their application to intervene, which remains pending before the state supreme court. *See POM of Pa., LLC v. Pa. State Police*, No. 28 EAP 2023 (Pa. filed Sept. 12, 2023).

## II.   APPLICABLE STANDARDS

### A. Attorney-Client Privilege

This is a diversity case. Therefore, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). *See generally* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the

---

restaurant. *In re Three Pa. Skill Amusement Devices*, No. 707 CD 2023, 2023 WL 8264547 (Pa. Commw. Ct. Nov. 30, 2023) (en banc). In this case, the appellate court squarely addressed the substantive issue of whether POM's skill games were prohibited "slot machines" or gambling devices, expressly finding that the POM skill games were neither slot machines, *id.* at *4–*6, nor gambling devices, *id.* at *6–*10. The Commonwealth's time for seeking a discretionary appeal to the state supreme court has not yet expired with respect to yesterday's appellate decision, and news reports indicate that the Commonwealth intends to seek review in the Supreme Court of Pennsylvania. *See, e.g.*, Charles Thompson, *'Skill games' played for money score biggest win yet in Pennsylvania courts*, Harrisburg Patriot-News, Dec. 1, 2023, 2023 WLNR 40809233.

client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 387 (M.D. Pa. 2010) (noting that, under Pennsylvania law, the attorney-client privilege is generally disfavored and should be narrowly construed). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Id.* at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their

- 11 -

agents are present, the communication is not made in confidence, and the privilege does not attach." *Id.* at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

### B. Work-Product Doctrine

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp.*

- 12 -

*Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

- 13 -

indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against

- 14 -

each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute

- 15 -

waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

## III.  DISCUSSION

### A. Email Strings

The documents at issue here consist entirely of email messages, some with attachments. As a general rule, "each version of an email string (i.e. a forward or reply of a previous email message) must be considered as a separate, unique document." *Rhoads Indus., Inc. v. Bldg. Materials Corp. of America*, 254 F.R.D. 238, 240 (E.D. Pa. 2008); *accord United States v. Davita, Inc.*, 301 F.R.D. 676, 684–85 (N.D. Ga. 2014);

*Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336–37 (M.D. Pa. 2013).

> For example, an email string consisting of four email messages would have four distinct versions: (1) the most recent version consisting of Email 4 (most recent), Email 3, Email 2, and Email 1 (original email), (2) a prior version consisting of Email 3, Email 2, and Email 1, (3) a prior version consisting of Email 2 and Email 1, and (4) the original Email 1. Additionally[,] there could be other email strings consisting of some or all of Emails 1–4.

*Rhoads Indus.*, 254 F.R.D. at 240 n.4. Thus, "each message of the string which is privileged must be separately logged in order to claim privilege in that particular document." *Rhoads Indus.*, 254 F.R.D. at 240–41; *see also Davita*, 301 F.R.D. at 685 ("[T]he Court simply requires that Defendants ensure that each withheld email within a string be logged in some fashion *at least once.*").

The Eckert privilege log before us appears to be defective. It describes the author, the recipients, the subject line, and the time and date for the *top email only* in each email string produced for *in camera* review. While prior email messages within a string have occasionally been separately logged and produced for *in camera* review, many are clearly not otherwise described in the privilege log. This can be problematic when those prior email messages involve additional

- 17 -

recipients not identified in the privilege log description of the top email message. *See, e.g., Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012) ("If listing only the recipients of the last e-mail in a chain fails to disclose everyone to whom an allegedly privilege communication has been sent, the listing cannot be adequate. Moreover, if the recipient(s) at an e-mail address cannot be adequately identified, it is impossible to determine whether the privilege is properly asserted."). Any inadequacy in the Eckert privilege log is moot, however, as the most appropriate remedy in our view would have been *in camera* inspection of a select sample of the withheld documents, which we have already done. *See generally Nat'l Labor Relations Bd. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009) (outlining four common remedies for a privilege log that fails to comply with the requirements of Fed. R. Civ. P. 26(b)(5)).[3]

### B. State-Law Work-Product Protection

In addition to attorney-client privilege, virtually every document listed on Eckert's 116-page privilege log is marked as being withheld on

---

[3] We note that an alternative remedy for such a defective privilege log is to deem the inadequate log an outright *waiver* of any attorney-client privilege that might otherwise apply. *See id.; see also Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D. W. Va. 2015). But we do not find Eckert's conduct in this instance merits such a severe sanction.

the basis of work-product protection.[4] Most of these documents are marked as being protected under the *state* work-product protection rule, Pa. R. Civ. P. 4003.3, with no related litigation identified as the basis for protection from disclosure. Whereas the federal work-product rule shields materials from disclosure only if they are prepared *in anticipation of litigation*, the Pennsylvania state work-product rule provides significantly broader protection from disclosure, protecting "the mental impressions and processes of an attorney acting on behalf of a client, *regardless of whether the work product was prepared in anticipation of litigation.*" *BouSamra v. Excela Health*, 210 A.3d 966, 976 (Pa. 2019) (emphasis added); *see also id.* at 976 n.6 (discussing distinctions between the language of Pa. R. Civ. P. 4003.3 and the language of Fed. R. Civ. P. 26(b)(3)(A)). As we have noted above, it is the *federal* work-product standard—not the state rule—that controls the proper scope of discovery in a federal diversity case such as this. *See United Coal Cos.*, 839 F.2d at 966; *Barron Indus.*, 809 F. Supp. at 364 n.10; *see also Coregis Ins. Co. v.*

---

[4] Among the purportedly privileged documents submitted for *in camera* review, we have identified only one for which work-product protection is not asserted by Eckert: PRIV-00597 (Control No. 801161). With respect to this document, Eckert has asserted attorney-client privilege only.

*Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. App'x 58, 60 (3d Cir. 2003). Thus, with respect to all documents withheld from production on state-law work-product protection grounds, Eckert's objections to disclosure are overruled.[5]

---

[5] These documents include: PRIV-00036 (Control No. 600512); PRIV-00040 (Control No. 600332); PRIV-00056 (Control No. 1900242); PRIV-00057 (Control No. 502252); PRIV-00062 (Control No. 600848); PRIV-00065 (Control No. 500116); PRIV-00066 (Control No. 600637); PRIV-00067 (Control No. 1900210); PRIV-00068 (Control No. 1900237); PRIV 00069 (Control No. 1900231); PRIV-00071 (Control No. 1900229); PRIV-00072 (Control No. 500973); PRIV-00072 (Control No. 500242); PRIV-00075 (Control No. 1900239); PRIV-00076 (Control No. 304115); PRIV-00077 (Control No. 1900168); PRIV-00079 (Control No. 304194); PRIV-00081 (Control No. 501149); PRIV-00084 (Control No. 1900216); PRIV-00089 (Control No. 304526); PRIV-00090 (Control No. 800811); PRIV-00092 (Control No. 304193); PRIV-00101 (Control No. 2000181); PRIV-00102 (Control No. 800483); PRIV-00106 (Control No. 304653); PRIV-00107 (Control No. 400309); PRIV-00108 (Control No. 304428); PRIV-00175 (Control No. 304601); PRIV-00199 (Control No. 304484); PRIV-00232 (Control No. 400468); PRIV-00262 (Control No. 304160); PRIV-00263 (Control No. 1800457); PRIV-00264 (Control No. 304508); PRIV-00265 (Control No. 1800543); PRIV-00271 (Control No. 304122); PRIV-00305 (Control No. 900215); PRIV-00308 (Control No. 304159); PRIV-00321 (Control No. 900706); PRIV-00322 (Control No. 600330); PRIV-00323 (Control No. 304483); PRIV-00329 (Control No. 304139); PRIV-00333 (Control No. 1900224); PRIV-00334 (Control No. 304576); PRIV-00335 (Control No. 304575); PRIV-00493 (Control No. 800930); PRIV-00495 (Control No. 800305); PRIV-00496 (Control No. 801228); PRIV-00497 (Control No. 801231); PRIV-00554 (Control No. 1102670); PRIV-00614 (Control No. 800947); PRIV-00651 (Control No. 801264); PRIV-00653 (Control No. 1102545); PRIV-00654 (Control No. 801204); PRIV-00655 (Control No. 801206); PRIV-00656 (Control No. 8012070;

*(continued on next page)*

## C. Transmittal Messages

Several of the documents logged by Eckert are mere transmittal

messages to or from attorneys forwarding other messages or documents

---

PRIV-00657 (Control No. 801205); PRIV-00660 (Control No. 801345); PRIV-00677 (Control No. 1001314); PRIV-00679 (Control No. 1000448); PRIV-00684 (Control No. 1000446); PRIV-00685 (Control No. 501131); PRIV-00692 (Control No. 1001312); PRIV-00701 (Control No. 500660); PRIV-00703 (Control No. 1001050); PRIV-00711 (Control No. 502250); PRIV-00722 (Control No. 501421); PRIV-00740 (Control No. 500940); PRIV-00751 (Control No. 502397); PRIV-00755 (Control No. 400483); PRIV-00760 (Control No. 402110); PRIV-00761 (Control No. 402019); PRIV-00762 (Control No. 502333); PRIV-00763 (Control No. 500757); PRIV-00782 (Control No. 801235); PRIV-00783 (Control No. 1102560); PRIV-00784 (Control No. 1500588); PRIV-00786 (Control No. 1500798); PRIV-00787 (Control No. 302906); PRIV-00788 (Control No. 1001628); PRIV-00804 (Control No. 1001578); PRIV-00806 (Control No. 1001753); PRIV-00807 (Control No. 1001756); PRIV-00810 (Control No. 1401405); PRIV-00816 (Control No. 1401278); PRIV-00817 (Control No. 1401350); PRIV-00830 (Control No. 1500644); PRIV-00832 (Control No. 1500638); PRIV-00843 (Control No. 302368); PRIV-00874 (Control No. 1401723); PRIV-00881 (Control No. 1401459); PRIV-00900 (Control No. 303143); PRIV-00902 (Control No. 1500490); PRIV-00911 (Control No. 302166); PRIV-00912 (Control No. 303907); PRIV-00913 (Control No. 1500840); PRIV-00919 (Control No. 302985); PRIV-00935 (Control No. 2000675); PRIV-00938 (Control No. 1500868); PRIV-00942 (Control No. 1800563); PRIV-00946 (Control No. 1500479); PRIV-00948 (Control No. 1500835); PRIV-00949 (Control No. 302621); PRIV-00950 (Control No. 1500447); PRIV-00958 (Control No. 302301); PRIV-00960 (Control No. 302303); PRIV-00971 (Control No. 1700641); PRIV-00973 (Control No. 1701132); PRIV-00987 (Control No. 1400275); PRIV-00988 (Control No. 1103273); PRIV-00991 (Control No. 304063); PRIV-00996 (Control No. 304259); PRIV-00998 (Control No. 1900215); and PRIV-01008 (Control No. 301569).

that are not themselves privileged or otherwise protected from disclosure. It is well settled that "[t]ransmittal documents themselves are not privileged unless they reveal the client's confidences." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010). Likewise, work-product protection does not attach to mere transmittal letters that do not contain the mental impressions of counsel. *See Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 214 (D. Del. 2000); *see also Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La. 1996) ("Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not privileged simply because they are written by or to an attorney."). Although "attached documents may themselves be protected by the attorney-client privilege or the work-product doctrine, . . . the transmittal messages are not." *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336 (M.D. Pa. 2013).

PRIV-00668 (Control No. 1600115)[6] is one such transmittal

---

[6] This document is found at Tab 1-1 of the binder of purportedly privileged documents submitted for *in camera* review. The binder is divided into three sections (1, 2, and 3) representing the three categories of withheld documents for which Eckert's objections to production are

*(continued on next page)*

message, sent to an Eckert attorney, Kevin M. Skjoldal, from his administrative assistant, Denise Kline,[7] forwarding a copy of a document that is not itself privileged or otherwise protected from disclosure. Specifically, the only attachment to this email transmittal message as produced for *in camera* review is a PDF copy of the First Amended Complaint with exhibits filed *by POM*, Eckert's adversary in this case, and its two co-plaintiffs in *Queen of Virginia Skill & Entertainment, LLC v. Platania*, No. 19-cv-00065 (W.D. Va. filed Dec. 4, 2019), ECF No. 9, available on that court's public docket record.[8] Accordingly, the objections to production of PRIV-00668 (Control No. 1600115) on attorney-client privilege and work-product protection grounds are overruled.

PRIV-00991 (Control No. 304063)[9] is another such transmittal message, sent from Eckert attorney Mark S. Stewart to Eckert attorney

---

challenged by POM. Within each category, the documents are divided by numbered tabs, starting at "1" for each category. Thus, "Tab 1-1" refers to the first numbered tab within category 1.

[7] The message itself contains only the assistant's signature block.

[8] Counsel of record for the plaintiffs in the *Queen of Virginia* lawsuit included Anthony F. Troy, who was an attorney in Eckert's Richmond, Virginia, office at the time. The litigation sought to enjoin enforcement action by a local prosecutor with respect to an electronic skill game terminal manufactured and distributed by POM's co-plaintiffs, which operated on software provided by POM.

[9] Tab 2-109.

Susan A. Yocum, forwarding an email message from attorney-lobbyist Sean Schafer[10] summarizing and circulating various documents received by a friendly legislator from pro-skill games lobbyists. The email chain and attachments were produced to POM in discovery with the transmittal email message from Stewart to Yocum redacted.[11] The brief, six-word transmittal message does not reveal any client confidences, nor does it contain the mental impressions of counsel. Accordingly, the objection to production of PRIV-00991 (Control No. 304063) on attorney-client privilege grounds is overruled.

Other transmittal messages contain attachments concerning non-privileged lobbying services, legislative strategy, or policy advice, which are addressed below. We will note whenever a document also includes a non-privileged transmittal message.

### D. Lobbying Services, Legislative Strategy, and Policy Advice

Most of the documents described on Eckert's privilege log involve communications among lawyers concerning lobbying services, legislative strategy, and policy advice that do not contain or implicate confidential

---

[10] Schafer appears to be a principal of Schafer Government Affairs, Inc., a firm offering public affairs and government relations services.

[11] ECKERT019558–ECKERT019586.

client communications or legal advice communicated to the client.

It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted). "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001). "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

> Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client,

- 25 -

> including on matters that may also be the subject of the
> lobbying efforts."

*Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure *legal advice*, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165;

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

### 1. *Summaries of Public Meetings*

PRIV-00036 (Control No. 600512)[12] consists of an email message from Eckert attorney Kristine Marsilio to Eckert attorney Stewart that merely summarizes the content of a public meeting by a state legislative committee. It does not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-00036 (Control No. 600512) on attorney-client privilege grounds is overruled.

PRIV-00041 (Control No. 600510)[13] consists of an email message sent from Marsilio to Stewart and an attached document, both of which merely summarize the content of public meetings by two separate state legislative committees. The email message and attachment do not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Eckert has also asserted federal work-product protection, under Fed. R. Civ. P. 26(b)(3), identifying POM's

---

[12] Tab 2-1. The first page of this document is a transmittal message.
[13] Tab. 2-3.

- 27 -

Commonwealth Court cases as the underlying litigation. But the email message merely describes a reference to that litigation by a witness at one of the public meetings; there is nothing in this message and attachment to suggest that either was prepared in anticipation of litigation. Accordingly, the objection to production of PRIV-00041 (Control No. 600510) on attorney-client privilege and federal work-product protection grounds is overruled.

PRIV-000946 (Control No. 1500479)[14] is an email message from Eckert attorney David "Neil" Hittinger to Eckert attorney Stewart that merely summarizes the content of a public meeting by a state legislative committee. It does not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-000946 (Control No. 1500479) on attorney-client privilege grounds is overruled.

PRIV-000948 (Control No. 1500835)[15] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding Hittinger's preparation of a document merely summarizing the content

---

[14] Tab 2-100.
[15] Tab 2-101.

of a public meeting by a state legislative committee, and a copy of that document as an attachment. The email chain includes a prior email message from attorney-lobbyist Richard Gmerek[16] to Stewart and nine executives or in-house attorneys at a non-party casino group, Mohegan Gaming & Entertainment, which likewise merely summarized the content of that same public state legislative committee meeting.[17] None of these communications contain legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-000948 (Control No. 1500835) on attorney-client privilege grounds is overruled.

### 2. Draft Legislation

PRIV-00040 (Control No. 600332)[18] is a draft legislative amendment sent to an Eckert attorney, Stewart, from another Eckert attorney, Tara A. Burns, the author of this draft legislation. In addition to this draft legislation—which proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to add a provision permitting municipalities to prohibit video

---

[16] Gmerek appears to be a principal of Gmerek Government Relations Inc., a firm offering political and government relations services.

[17] Eckert's privilege log mistakenly indicates that privilege is asserted on behalf of Parx rather than Mohegan.

[18] Tab 2-2. The first page of this document is a transmittal message.

gaming terminals at truck stops within their borders—Burns also attached copies of publicly available state statutes related to the proposed legislative amendment. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) ("[A]dvice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege."); *Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 426 (E.D.N.C. 1991) ("If the communication essentially involves the giving of political advice, then it is not privileged."). Moreover, there is nothing in the record before us to suggest that this communication between Eckert attorneys involved any confidential client information, nor any communication whatsoever to or from a client. As the Supreme Court of the United States has observed:

> [T]he protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental

- 30 -

impressions, conclusions, opinions or legal theories.

*Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481–82 (D. Del. 2005) (attorney-client privilege did not shield inter-attorney communication "reflect[ing] attorney thought processes"); *Martin*, 136 F.R.D. at 426–27 ("[M]emoranda or briefs prepared by counsel for his own use in prosecuting his client's case which do not reveal information supplied in confidence by the client, or memoranda which merely summarize the case law but contain no factual application to the client, are not privileged.") (citations omitted); *Shore Acres Nursing Home, Inc. v. Continental Med. Sys., Inc.*, No. 91-0067, 1992 WL 57916, at *5 (E.D. Pa. Mar. 17, 1992) ("[I]n order for the privilege to apply, the communication must be given incident to a request for, or the rendition of, legal advice. The privilege does not apply to legal advice unless it could arguably reveal a *client's* confidences. Accordingly, memoranda or briefs prepared by counsel for his/her own use or memoranda which merely summarize the case law but contain no factual application to the client are not privileged.") (cleaned up); *Commonwealth v. Chmiel*, 889 A.2d 501, 599 (Pa. 2005) ("First and foremost is the rule that the [attorney-client] privilege applies only to

confidential communications made by the client to the attorney in connection with the provision of legal services."); *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. Ct. 2004) ("In addition to confidential communications which flow from a client to his or her attorney, we have held that the attorney-client privilege applies to confidential communications which flow from an attorney to his or her client to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney."); *cf. Sodexomagic, LLC v. Drexel Univ.*, 294 F. Supp. 3d 404, 405 (E.D. Pa. 2018) (draft contracts not protected by attorney-client privilege). *See generally Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 490 (S.D.N.Y. 1993) ("[A] draft document prepared by an attorney is privileged if it contains information provided in confidence by the client and subsequently maintained in confidence. In the absence of such confidential information supplied by the client, the draft document is not privileged merely because the attorney prepared it."). Accordingly, the objection to production of PRIV-00040 (Control No. 600332) on attorney-client privilege grounds is overruled.

- 32 -

PRIV-00074 (Control No. 500242)[19] and PRIV-00075 (Control No. 1900239)[20] consist of email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation. The first email message, PRIV-00074, also forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the "gist of the bill." The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York*

---

[19] Tab 2-14.
[20] Tab 2-15.

*City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00074 (Control No. 500242) and PRIV-00075 (Control No. 1900239) on attorney-client privilege grounds is overruled.

PRIV-00101 (Control No. 800483),[21] PRIV-00321 (Control No. 900706),[22] PRIV-00322 (Control No. 600330),[23] and PRIV-00323 (Control No. 304483)[24] are email messages exchanged between Eckert attorneys Stewart, Burns, Skjoldal, and Michael McAuliffe Miller, transmitting and discussing revisions to draft ordinances that would make skill games a public nuisance in adopting municipalities. One of the email messages also includes copies of publicly available state statutes related to the proposed municipal legislation. Another email message includes comments by Skjoldal indicating that Miller had shared the draft ordinance with a third-party municipal official, who called Skjoldal to thank him for sending it to Miller and to ask if he had also drafted a version *regulating* rather than prohibiting skill games. The subject matter of these communications concerns legislative, political, or policy

---

[21] Tab 2-26.
[22] Tab 2-41.
[23] Tab 2-42.
[24] Tab 2-43.

advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00101 (Control No. 800483), PRIV-00321 (Control No. 900706), PRIV-00322 (Control No. 600330), and PRIV-00323 (Control No. 304483) on attorney-client privilege grounds is overruled.

PRIV-00189 (Control No. 304484)[25] and PRIV-00232 (Control No. 400468)[26] are email messages exchanged between Eckert attorneys Stewart and Burns concerning draft electronic skill games legislation. The attached draft legislation, authored by Burns and attached to one of

---

[25] Tab 2-32.
[26] Tab 2-33.

these emails, proposed amending Title 10 of the Pennsylvania Statutes[27] to ban electronic skill games. Burns also attached a copy of a publicly filed legislative proposal, Senate Bill 710, which likewise sought to prohibit electronic skill games. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice— and thus it is not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00189 (Control No. 304484) and PRIV-00232 (Control No. 400468) on attorney-client privilege grounds is overruled.

---

[27] This title contains various statutes regulating gaming in connection with the activities of charitable organizations, including Pennsylvania's Bingo Law and Local Option Small Games of Chance Act.

PRIV-00874 (Control No. 1401723)[28] is an email message from Eckert attorney Hittinger to Eckert attorney Stewart concerning Senate Bill 710 and forwarding a copy of draft legislation that Eckert attorneys had previously prepared, which had proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00874 (Control No. 1401723) on attorney-client privilege grounds is overruled.

---

[28] Tab 2-89.

PRIV-00973 (Control No. 1701132)[29] is an email exchange between Eckert attorneys Stewart and Hittinger in which Hittinger summarized and attached copies of a dozen different draft legislative proposals concerning skill games that Hittinger found on Eckert's document system, which appears to include both drafts prepared by Eckert attorneys and copies of bills actually proposed in the state legislature. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00973 (Control No. 1701132) on attorney-client privilege grounds is

---

[29] Tab 2-106.

overruled.

### 3. *Other Lobbying, Legislative, and Policy Communications*

PRIV-00056 (Control No. 1900242),[30] PRIV-00057 (Control No. 502252),[31] PRIV-00062 (Control No. 60848),[32] PRIV-00068 (Control No. 1900210),[33] PRIV-00069 (Control No. 1900231),[34] PRIV-00071 (Control No. 1900229),[35] PRIV-00072 (Control No. 500973),[36] PRIV-00076 (Control No. 304115),[37] PRIV-00077 (Control No. 1900168),[38] PRIV-00079 (Control No. 304194),[39] PRIM-00084 (Control No. 1900216),[40] PRIV-00089 (Control No. 304526),[41] PRIV-00090 (Control No. 800811),[42] PRIV-00092 (Control No. 304193),[43] and PRIV-00101 (Control No. 2000181)[44] consist of email messages exchanged between Eckert attorneys Stewart and

---

[30] Tab 2-4.
[31] Tab 2-5.
[32] Tab 2-6.
[33] Tab 2-10.
[34] Tab 2-11.
[35] Tab 2-12.
[36] Tab 2-13.
[37] Tab 2-16.
[38] Tab 2-17.
[39] Tab 2-18.
[40] Tab 2-21.
[41] Tab 2-22.
[42] Tab 2-23.
[43] Tab 2-24.
[44] Tab 2-25.

Yocum and Eckert legal assistant Jennifer Skoff concerning the preparation of a "skill games industry letter." Some of these email messages include drafts of a letter expressly intended for distribution to a mailing list of state legislators on behalf of a group of (ultimately) thirteen separate casino groups.[45] One of the email messages includes a draft of a "collaborative letter" addressed to an official of the Pennsylvania Gaming Control Board requesting temporary relief from a particular table-gaming regulation on behalf of a group of eleven separate casino groups.[46] Some of the messages also include forwarded email messages about the skill games industry letter reflecting email exchanges with non-Eckert attorneys representing the non-party casino groups. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications between Eckert attorneys involved any confidential client information. *See Chmiel*, 889 A.2d at 599;

---

[45] The number of casino group signatories grew as revised drafts of the letter were circulated.

[46] PRIV-00090 (Control No. 800811).

*Slusaw*, 861 A.2d at 273. Indeed, based on the context provided by our *in camera* review of all of these contested documents, the "industry letter" was prepared not on behalf of the three clients listed on Eckert's privilege log (Parx, Mohegan, and Cordish[47]), but a larger group that also included non-client casino groups, which shared a common *commercial* or *business* interest in opposition to electronic skill games and joint lobbying efforts directed at the state legislature, not a common *legal* interest that would permit them to share confidential communications without waiver of any attorney-client privilege that might otherwise apply. *See United States v. BDO Siedman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007); *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 118 & n.6 (E.D. Pa. 2011) ("The common interest binding parties to the communication must be legal in nature, and not merely commercial or business related."). Accordingly, the objection to production of PRIV-00056 (Control No.

---

[47] The privilege log identifies the third client as "Stadium Casino," owner and operator of the Philly Live! Hotel & Casino. It is our understanding that Stadium Casino began as a joint venture between Parx and the Cordish Companies, but Cordish had acquired Parx's share of Stadium Casino prior to the time period at issue here. The materials submitted for *in camera* review refer to all three entities at times— Cordish, Live!, and Stadium Casino—but references are predominantly to Cordish. Thus, we too will generally refer to Cordish rather than Live! or Stadium Casino.

1900242), PRIV-00057 (Control No. 502252), PRIV-00062 (Control No. 60848), PRIV-00068 (Control No. 1900210), PRIV-00069 (Control No. 1900231), PRIV-00071 (Control No. 1900229), PRIV-00072 (Control No. 500973), PRIV-00076 (Control No. 304115), PRIV-00077 (Control No. 1900168), PRIV-00079 (Control No. 304194), PRIM-00084 (Control No. 1900216), PRIV-00089 (Control No. 304526), PRIV-00090 (Control No. 800811), PRIV-00092 (Control No. 304193), and PRIV-00101 (Control No. 2000181) on attorney-client privilege grounds is overruled.

PRIV-00081 (Control No. 501149)[48] is an email exchange between Eckert attorney Stewart and Mohegan in-house counsel David Rome concerning corrections to the signature block to be used for Mohegan on the aforementioned "industry letter." The email chain also included additional emails exchanged between Stewart, Rome, Gmerek, and other Mohegan executives providing updates on legislative and lobbying developments with respect to electronic skill games. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D.

---

[48] Tab 2-20.

at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00081 (Control No. 501149) on attorney-client privilege grounds is overruled.

PRIV-00065 (Control No. 500116),[49] PRIV-00066 (Control No. 600637),[50] and PRIV-00067 (Control No. 1900210)[51] consist of email messages exchanged between Eckert attorneys Stewart, Yocum, and Sjkodal and attorney-lobbyist Schafer regarding an email message and attached letter that had been distributed to state legislators by a public relations firm on behalf of Tom Marino, *POM's* vice president of government affairs and public relations. Marino's letter concerned electronic skill game legislation, and while his letter and the internal Eckert email messages referenced "legal memos," these memos were non-confidential documents circulated widely and made publicly available on the internet by POM, a business adversary to Parx, the purported client

---

[49] Tab 2-7.
[50] Tab 2-8.
[51] Tab 2-9.

- 43 -

on whose behalf privilege is asserted.[52] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00065 (Control No. 500116), PRIV-00066 (Control No. 600637), and PRIV-00067 (Control No. 1900210) on attorney-client privilege grounds is overruled.

PRIV-00080 (Control No. 900657)[53] is an email exchange between Eckert attorneys Stewart and Skjoldal regarding the same Marino letter. For the same reasons stated in the preceding paragraph, this email exchange is not protected from disclosure by attorney-client privilege. Eckert, however, has also asserted federal work-product protection with respect to this communication. The email exchange included a summary

---

[52] We note that, at the time, POM was still a client of Eckert as well, in connection with POM's activities in Virginia.

[53] Tab 2-19.

- 44 -

by Sjkodal of the non-confidential "legal memos" disseminated by Parx's adversary, POM, commenting that the arguments presented by Marino in his letter and the referenced non-confidential legal memos "parrot" those set forth in POM's Commonwealth Court briefs. It is clear upon *in camera* review that this communication predominantly—if not exclusively—concerns Eckert's legislative or lobbying strategy, and that these email messages were not prepared in connection with the litigation at all. Accordingly, the objection to production of PRIV-00080 (Control No. 900657) on attorney-client privilege and federal work-product protection grounds is overruled.

PRIV-00105 (Control No. 1900236)[54] is a three-message chain of email messages. The two most recent messages involve a discussion between Eckert attorneys Stewart and Yocum about attendance at an upcoming press conference by a state senator regarding skill games legislation. The earliest message in the chain, sent on June 2, 2019, at 11:01 a.m., is an email to Stewart from William J. Downey of Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), an attorney representing Harrah's, a non-party casino group, apparently addressing both the press

---

[54] Tab 2-27.

- 45 -

conference and the Commonwealth Court litigation. Harrah's later joined with Parx in filing an amicus brief and moving to intervene in the Commonwealth Court litigation. The subject matter of the two most recent communications solely between Eckert attorneys concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that any of these three email messages involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. The earliest email message, from Downey to Stewart, however, is properly withheld from disclosure under the federal work-product doctrine, as it was prepared in anticipation of the underlying Commonwealth Court litigation, and disclosure of Downey's mental impressions to the Eckert attorneys did not constitute waiver of that protection. *See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Thus, the objection to production of PRIV-00105 (Control No. 1900236) on attorney-client privilege grounds is overruled, and the objection to production of this document on federal work-product

protection grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted.

PRIV-00106 (Control No. 304653),[55] PRIV-00107 (Control No. 400309),[56] and PRIV-00108 (Control No. 304428)[57] is an email exchange between Eckert attorney Stewart, Cordish executives Joe Weinberg and Robert Norton, Cordish general counsel Charles Jacobs, and Richard W. Hayden of Saul Ewing LLP, another outside attorney for Cordish. The emails concerned upcoming testimony to be presented at a state legislative gaming oversight committee meeting by Ballard attorney King, accompanied by Stewart and Brownstein attorney Downey. The first email included, as an attachment, a copy of King's draft testimony summarizing the information and arguments previously shared with legislators in a recent "industry letter" regarding skill games, apparently the same one we have touched on previously in this opinion. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by

---

[55] Tab 2-28.

[56] Tab 2-29.

[57] Tab 2-30.

attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00106 (Control No. 304653), PRIV-00107 (Control No. 400309), and PRIV-00108 (Control No. 304428) on attorney-client privilege grounds is overruled.

PRIV-00175 (Control No. 304601)[58] and PRIV-00996 (Control No. 304259)[59] consist of email messages exchanged between Eckert attorneys Stewart and Burns discussing whether and when Burns had time to review and summarize recently introduced legislation—Senate Bill 784—concerning the legality of electronic skill games. The email chain also included a non-privileged prior email message from attorney-lobbyist Gmerek to Stewart and a dozen Mohegan executives or in-house attorneys, advising them of the senate bill's introduction and providing a brief summary of its background. The email chain, as represented in PRIV-00996, was produced to POM in discovery with the most recent

---

[58] Tab 2-31.
[59] Tab 2-110.

- 48 -

email message from Stewart to Burns redacted; the Gmerek email message and attachments were produced without redaction.[60] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00175 (Control No. 304601) and PRIV-00996 (Control No. 304259) on attorney-client privilege grounds is overruled.

PRIV-00262 (Control No. 304160),[61] PRIV-00263 (Control No. 1800457),[62] PRIV-00264 (Control No. 304508),[63] and PRIV-00265 (Control No. 1800543)[64] consist of an exchange of email messages among Eckert attorneys Stewart, Burns, Yocum, Marsilio, and Skjoldal about an upcoming legislative committee hearing on proposed legislation to tax

---

[60] ECKERT019101–ECKERT019114.

[61] Tab 2-34.

[62] Tab 2-35.

[63] Tab 2-36.

[64] Tab 2-37.

- 49 -

and regulate—rather than prohibit—skill games, House Bill 1598. The email chain also included earlier, clearly non-privileged emails exchanged between Eckert attorney Stewart, attorney-lobbyists Schafer and Gmerek, Parx executive Green, Parx general counsel Tom Bonner, and Ryan Skoczylas, who served as chief of staff to a state senator at the time.[65] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.

---

[65] It is beyond cavil that the inclusion of a state government official—the chief of staff for Senator Tommy Tomlinson, who sponsored or advocated anti-skill games legislation favored by the casino groups on multiple occasions—in *each* of these earlier email messages precludes any argument that these earlier communications are protected by attorney-client privilege. *See, e.g., Sandoz Inc. v. Lannett Co.*, 570 F. Supp. 3d 258, 265 (E.D. Pa. 2021) ("Attorney-client privilege will not ordinarily attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege.") (citing *BouSamra v. Excela Health*, 210 A.3d 966, 982 (Pa. 2019)); *see also Teleglobe Commc'ns Corp.*, 493 F.3d at 364 (noting that application of the exception to waiver of attorney-client privilege under the common-interest doctrine requires not only a shared *legal* interest, but also that "the communication must be shared with the *attorney* of the member of the community of interest") (emphasis in original).

- 50 -

Accordingly, the objection to production of PRIV-00262 (Control No. 304160), PRIV-00263 (Control No. 1800457), PRIV-00264 (Control No. 304508), and PRIV-00265 (Control No. 1800543) on attorney-client privilege grounds is overruled.

PRIV-00308 (Control No. 304159)[66] and PRIV-00998 (Control No. 1900215)[67] consist of email messages exchanged between Eckert attorneys Stewart and Yocum concerning attendance at an upcoming legislative committee hearing on proposed legislation to tax and regulate—rather than prohibit—skill games, House Bill 1598. The email chain also includes an earlier non-privileged email message from attorney-lobbyist Gmerek to Parx executive Green, Parx general counsel Bonner, attorney-lobbyist Schafer, and Eckert attorney Stewart reporting on the upcoming hearing and the anticipated roster of witnesses who would present testimony. The email chain, as represented in PRIV-00998, was produced to POM in discovery with the two email messages between Stewart and Yocum redacted; the Gmerek email message was produced without redaction.[68] The subject matter of these communications

---

[66] Tab 2-40.

[67] Tab 2-111.

[68] ECKERT019061.

concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00308 (Control No. 304159) and PRIV-00998 (Control No. 1900215) on attorney-client privilege grounds is overruled.

PRIV-00271 (Control No. 304122)[69] and PRIV-00305 (Control No. 900215)[70] consist of email messages exchanged between Eckert attorneys Stewart, Skjoldal, and Burns regarding the drafting of a cover letter to accompany a draft ordinance making skill games a public nuisance in adopting municipalities, for consideration by unspecified municipal officials to whom the letter was to be sent. Attached to the first email message is an initial draft cover letter prepared by Burns. Attached to the second email message is a revised draft cover letter prepared by Skjoldal. The second email message also includes prior email messages

---

[69] Tab 2-38.

[70] Tab 2-39.

- 52 -

forwarding both draft cover letters to Eckert attorneys Miller and G. Edward Schweikert for comment. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00271 (Control No. 304122) and PRIV-00305 (Control No. 900215) on attorney-client privilege grounds is overruled.

PRIV-00329 (Control No. 304139)[71] is an email message from Eckert attorney Stewart to Eckert attorney Yocum forwarding a copy of the final version of the draft nuisance ordinance cover letter discussed in the preceding paragraph. The email chain includes an earlier transmittal message from Stewart to Parx executive Green forwarding the very same document. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus

---

[71] Tab 2-44.

they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Finally, based on Stewart's own comments, the attached cover letter was disseminated widely to third-party municipal officials, and thus it cannot be considered confidential information. Accordingly, the objection to production of PRIV-00329 (Control No. 304139) on attorney-client privilege grounds is overruled.

PRIV-00333 (Control No. 1900224),[72] PRIV-00334 (Control No. 304576),[73] and PRIV-00335 (Control No. 304575)[74] consist of email messages exchanged between Eckert attorneys Stewart and Yocum discussing whether to add information about the state gaming board's local law enforcement grant program to their cover letter to municipal officials forwarding a draft ordinance designed to make skill games a public nuisance. The email chain also includes prior email messages in which Stewart considered whether to forward this same information on

---

[72] Tab 3-1.
[73] Tab 3-2.
[74] Tab 3-3.

- 54 -

to Eckert's casino group clients as well. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00333 (Control No. 1900224), PRIV-00334 (Control No. 304576), and PRIV-00335 (Control No. 304575) on attorney-client privilege grounds is overruled.

PRIV-00366 (Control No. 304699)[75] is an email message from Eckert attorney Stewart to Cordish executives Weinberg, Norton, and Joe Billhimer. Stewart's seven-paragraph email message addressed both developments in POM's Commonwealth Court cases and developments in state skill games legislation. The first three paragraphs of Stewart's message discussed the Commonwealth Court's November 20, 1999, skill games decision and legal arguments being floated by both sides, but without any factual application at all. The last four paragraphs of the

---

[75] Tab 2-45.

message, however, summarized recent developments on the legislative /
lobbying front with respect to skill games. Appended to the email
message was a copy of a public "co-sponsorship" memorandum from two
non-party state representatives, Jim Marshall and Scott Conklin, to all
members of the state house indicating the intent of Marshall and Conklin
to introduce legislation to legalize and regulate skill games in club liquor-
licensed establishments. The subject matter of this communication
predominantly concerns legislative, political, or policy advice only—not
*legal* advice—and thus it is not protected by attorney-client privilege. *See
In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover,
there is nothing in the record before us to suggest that any part of this
email message involved any confidential client information, particularly
in the absence of factual application whatsoever to the client. *See Martin*,
136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5;
*Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Nevertheless, we find
that the first three paragraphs are properly withheld from disclosure
under the federal work-product doctrine, as this segregable portion of
Stewart's message appears to have been prepared in anticipation of the
client's intervention in the underlying Commonwealth Court litigation.

- 56 -

*See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Thus, the objection to production of PRIV-00366 (Control No. 304699) on attorney-client privilege grounds is overruled, and the objection to production of this document on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the first three paragraphs (following the salutation, "Guys,") redacted.

PRIV-00493 (Control No. 800930),[76] PRIV-00495 (Control No. 800305),[77] PRIV-00496 (Control No. 801228),[78] and PRIV-00497 (Control No. 801231)[79] consist of email messages exchanged between Eckert attorney Stewart and Cordish executives Weinberg, Norton, and Billhimer, concerning a public "co-sponsorship" memorandum from the non-party state senate majority leader, Jake Corman, to all members of the state senate indicating his intent to introduce legislation to legalize and regulate the placement of skill games in liquor-licensed establishments statewide. Stewart's initial email message also conveyed

---

[76] Tab 2-46.
[77] Tab 2-47.
[78] Tab 2-48.
[79] Tab 2-49.

- 57 -

a proposal by Parx executives to hold a casino industry meeting and legislative reception. Senator Corman's co-sponsorship memorandum was attached to the first email in the chain. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00493 (Control No. 800930), PRIV-00495 (Control No. 800305), PRIV-00496 (Control No. 801228), and PRIV-00497 (Control No. 801231) on attorney-client privilege grounds is overruled.

PRIV-00597 (Control No. 801161)[80] consists of an exchange of email messages between Eckert attorney Stewart and Cordish executive Norton regarding the agenda for the aforementioned industry meeting. The email chain includes a prior message from Stewart to a number of casino executives and outside counsel providing a schedule and logistical details for the meeting. The subject matter of these communications

---

[80] Tab 2-51.

- 58 -

concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00597 (Control No. 801161) on attorney-client privilege grounds is overruled.

PRIV-00554 (Control No. 1102670)[81] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger concerning an upcoming legislative hearing. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of

---

[81] Tab 2-50.

PRIV-00554 (Control No. 1102670) on attorney-client privilege grounds is overruled.

PRIV-00614 (Control No. 800947)[82] is an email chain concerning a public "co-sponsorship" memorandum by a non-party state representative, Martina A. White, indicating her intent to introduce legislation allocating the local share derived from Philadelphia-area casinos to SEPTA. The initial email message in the chain is from attorney-lobbyist Gmerek to a blind distribution list providing a brief summary of the co-sponsorship memorandum and forwarding a copy of the memorandum. The next and final email message is from Eckert attorney Stewart to Cordish executives Weinberg, Norton, and Billhimer, forwarding Gmerek's email message and the co-sponsorship memorandum, and providing some legal analysis and factual application to the client, Cordish. The subject matter of Gmerek's initial email message concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this portion of the

---

[82] Tab 2-52.

communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. The latest email message, from Stewart to the Cordish executives, however, is shielded from disclosure by attorney-client privilege. *See Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5. Thus, the objection to production of PRIV-00614 (Control No. 800947) on attorney-client privilege grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted.

PRIV-00651 (Control No. 801264)[83] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger concerning an upcoming legislative hearing on House Bill 1983. The email chain also included a prior email message on the same subject from Hittinger to Ballard attorney King, attorney-lobbyist Gmerek, and Stewart. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to

---

[83] Tab 2-53.

suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00651 (Control No. 801264) on attorney-client privilege grounds is overruled.

PRIV-00653 (Control No. 1102545),[84] PRIV-00654 (Control No. 801204);[85] PRIV-00655 (Control No. 801206),[86] PRIV-00656 (Control No. 801207),[87] and PRIV-00657 (Control No. 801205)[88] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger and Eckert legal assistant Skoff concerning Hittinger's attendance at a legislative committee hearing, brief comments on questions asked by various state representatives, and discussion about obtaining a transcript or recording of the hearing. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426.

---

[84] Tab 2-54.
[85] Tab 2-55.
[86] Tab 2-56.
[87] Tab 2-57.
[88] Tab 2-58.

Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00653 (Control No. 1102545), PRIV-00654 (Control No. 801204); PRIV-00655 (Control No. 801206), PRIV-00656 (Control No. 801207), and PRIV-00657 (Control No. 801205) on attorney-client privilege grounds is overruled.

PRIV-00660 (Control No. 801345)[89] consists of email messages exchanged between Eckert attorneys Hittinger and Stewart regarding questions asked at the aforementioned hearing by a non-party state representative, Marcia Hahn, and about prior interactions Stewart and attorney-lobbyist Gmerek had with her. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any

---

[89] Tab 2-59.

communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00660 (Control No. 801345) on attorney-client privilege grounds is overruled.

PRIV-00677 (Control No. 1001314)[90] is an email exchange between Eckert attorneys Stewart and Burns regarding proposed skill games legislation in Virginia, House Bill 881, to legalize and regulate electronic skill games by carving out an exception to a general statewide ban on skill games to permit their placement in "family entertainment centers." This Virginia legislation paralleled similar proposed legislation in Pennsylvania, which Stewart and the casino groups opposed. The most recent email message in the chain from Burns to Stewart contains a summary of the Virginia bill's provisions, without factual application to any client. Burns also attached a PDF copy of the Virginia bill to that message. The email chain also included an earlier, non-privileged transmittal email message from attorney-lobbyist Gmerek to Parx executive Green, attorney-lobbyist Schafer, and Eckert attorney Stewart merely forwarding a link to a newspaper article reporting on the Virginia

---

[90] Tab 1-2.

legislature's approval of legislation generally banning skill games.[91] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00677 (Control No. 1001314) on attorney-client privilege grounds is overruled.

PRIV-00692 (Control No. 1001312),[92] PRIV-00711 (Control No. 502250),[93] and PRIV-00722 (Control No. 501421)[94] consists of email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum and Eckert legal assistant Skoff regarding the status of Virginia House Bill 881, which ultimately was adopted with amendments and

---

[91] *See* Marie Albiges, *Lawmakers approve casinos in Portsmouth, Norfolk, and 3 other cities*, Newport News Daily Press (Mar. 8, 2020), https://www.dailypress.com/2020/03/08/lawmakers-approve-casinos-in-portsmouth-norfolk-and-3-other-cities/ [https://perma.cc/9ZVJ-HH7L], *also available at* 2020 WLNR 6975695 (Mar. 9, 2020).

[92] Tab 1-3.

[93] Tab 1-4.

[94] Tab 1-5.

- 65 -

signed into law by the state governor. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00692 (Control No. 1001312), PRIV-00711 (Control No. 502250), and PRIV-00722 (Control No. 501421) on attorney-client privilege grounds is overruled.

PRIV-00679 (Control No. 1000448),[95] PRIV-00684 (Control No. 1000446),[96] and PRIV-00755 (Control No. 400483)[97] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger concerning attached drafts of a memorandum prepared by Hittinger on legislative strategies for outlawing skill games. The subject matter of these communications concerns legislative, political, or policy advice

---

[95] Tab 2-61.
[96] Tab 2-62.
[97] Tab 2-69.

only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client; the memorandum itself merely summarized pertinent case law without factual application to any client whatsoever. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00679 (Control No. 1000448), PRIV-00684 (Control No. 1000446), and PRIV-00755 (Control No. 400483) on attorney-client privilege grounds is overruled.

PRIV-00685 (Control No. 500257)[98] is a transmittal email message from Eckert attorney Stewart to attorney-lobbyist Gmerek, forwarding, without any substantive comment, a copy of the non-privileged legislative strategies memorandum prepared by Eckert attorney Hittinger, discussed in the preceding paragraph. Accordingly, the objection to production of PRIV-00685 (Control No. 500257) on attorney-client

---

[98] Tab 2-63.

privilege grounds is overruled.

PRIV-00701 (Control No. 500660)[99] and PRIV-00703 (Control No. 1001050)[100] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding a "legal update"[101] prepared by Hittinger with respect to "Windfall Amusements 777," an unlicensed "mini-casino" operating with 60 to 90 skill machines in a Berks County shopping plaza storefront. The email chain includes prior transmittal email messages circulated among a larger group of attorney-lobbyists regarding a casino lobbyist meeting, but documents attached to these earlier email messages are not attached to the two email chains presented for *in camera* review. In one of these two email chains, Stewart has forwarded a copy of a fact sheet prepared by Ballard attorney King regarding Windfall Amusements 777 for Hittinger to consider incorporating into the "legal update" he was preparing.[102] In the second

---

[99] Tab 2-65.

[100] Tab 2-66.

[101] Despite labeling the document prepared by Hittinger a "legal update," it contains only factual information and no legal advice.

[102] It is unclear from the context provided in this email exchange whether this "legal update" was intended for distribution to Eckert attorneys, Eckert clients, or the wider casino industry group. The intended recipients, however, are immaterial, as none of the information or attached documents contain any confidential client information.

email chain, Hittinger has forwarded a copy of a "legal update" he has prepared regarding the Windfall Amusements 777 facility, incorporating facts and photographs Stewart had received from King. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege.[103] *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00701 (Control No. 500660) and PRIV-00703 (Control No. 1001050) on attorney-client privilege grounds is overruled.

PRIV-00740 (Control No. 500940)[104] is an email from Eckert

---

[103] Indeed, we note that there is nothing in the record before us to suggest any litigation—or even consideration of litigation—by Parx or any other Eckert client with respect to this facility. Though not material to the discovery dispute at issue, we note by way of background that Windfall Amusements 777 was ultimately raided and shut down by state police. *See generally* Gillian McGoldrick, *Berks County DA seizes nearly 60 skills, gambling machines from illegal gambling parlor*, Lancaster Newspapers (Aug. 21, 2020), 2020 WLNR 23665432.

[104] Tab 2-67.

- 69 -

attorney to Cordish executive Weinberg forwarding a proposed draft letter for Weinberg to use to personally lobby state legislators to oppose legislation that would expand the availability of skill games. The draft letter itself is intended for non-confidential dissemination to multiple recipients in the state legislature. The email message from Stewart further indicates that the draft letter is not provided in response to any request by Weinberg or Cordish, but at the behest of Parx executive Green. The email message provides additional comments on the industry group's broader lobbying and public relations efforts in opposition to skill games expansion. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Finally, while both Weinberg/Cordish and Green/Parx were clients of Stewart, the two clients shared at most a common *commercial* or *business* interest in opposition to electronic skill games and joint lobbying efforts directed at the state legislature, not a common *legal*

- 70 -

interest that would permit them to share confidential communications without waiver of any attorney-client privilege that might otherwise apply. *See BDO Siedman*, 492 F.3d at 815–16; *Processed Egg Prods.*, 278 F.R.D. at 118 & n.6; *see also Teleglobe Commc'ns Corp.*, 493 F.3d at 364 (noting that application of the exception to waiver of attorney-client privilege under the common-interest doctrine requires not only a shared *legal* interest, but also that "the communication must be shared with the *attorney* of the member of the community of interest") (emphasis in original). Accordingly, the objection to production of PRIV-00740 (Control No. 500940) on attorney-client privilege grounds is overruled.

PRIV-00751 (Control No. 502397)[105] is an email message from Eckert attorney Stewart to Cordish executive Weinberg providing him with an "FYI" regarding the identity of a lobbyist recently hired by POM. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client

---

[105] Tab 2-68.

information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00751 (Control No. 502397) on attorney-client privilege grounds is overruled.

PRIV-00760 (Control No. 402110),[106] PRIV-00761 (Control No. 402019),[107] PRIV-00762 (Control No. 502333),[108] and PRIV-00763 (Control No. 500757)[109] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding an attached summary by Hittinger of key provisions of proposed legislation to legalize skill games, House Bill 1325. The latest of these email messages, PRIV-00763, included a copy of a prior transmittal email message from Stewart to Parx executives Green and Hausler, Parx general counsel Bonner, attorney-lobbyist Gmerek, and non-lawyer public relations consultant Shelly, distributing a copy of Hittinger's summary without additional comment. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148

---

[106] Tab 2-70.
[107] Tab 2-71.
[108] Tab 2-72.
[109] Tab 2-73.

F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00760 (Control No. 402110), PRIV-00761 (Control No. 402019), PRIV-00762 (Control No. 502333), and PRIV-00763 (Control No. 500757) on attorney-client privilege grounds is overruled.

PRIV-00782 (Control No. 801235),[110] PRIV-00783 (Control No. 1102560),[111] PRIV-00784 (Control No. 1500588),[112] PRIV-00786 (Control No. 1500798),[113] PRIV-00787 (Control No. 302906),[114] PRIV-00788 (Control No. 1001628),[115] and PRIV-00804 (Control No. 1001578)[116] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding newly proposed legislation to legalize skill games, Senate Bill 1256, and the drafting of a memorandum summarizing the key provisions of this proposed legislation. Each of

---

[110] Tab 2-74.
[111] Tab 2-75.
[112] Tab 2-76.
[113] Tab 2-77.
[114] Tab 2-78.
[115] Tab 2-79.
[116] Tab 2-80.

these email chains include prior non-privileged transmittal email messages from attorney-lobbyist Gmerek to Stewart and various Parx or Mohegan casino group executives forwarding a PDF copy of the actual bill.[117] One includes a complete copy of Senate Bill 1256 itself as an attachment. Several others include a copy of one of two versions of Hittinger's memorandum summarizing the key provisions of the bill. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00782 (Control No. 801235), PRIV-00783 (Control No. 1102560), PRIV-00784 (Control No. 1500588), PRIV-00786 (Control No. 1500798), PRIV-00787 (Control No. 302906), PRIV-00788 (Control No. 1001628), and PRIV-00804 (Control

---

[117] One of the email chains produced for *in camera* review started with an initial message from Gmerek to Stewart and various Parx executives. The rest started with an initial message from Gmerek to Stewart and various Mohegan executives.

No. 1001578) on attorney-client privilege grounds is overruled.

PRIV-00806 (Control No. 1001753)[118] is a transmittal email message from Eckert attorney Hittinger to Mohegan executives Anthony Carlucci and Raymond Pineault, Eckert attorney Stewart, and attorney-lobbyist Gmerek forwarding copies of his memorandum summarizing the key provisions of Senate Bill 1256 and a copy of the bill itself. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00806 (Control No. 1001753) on attorney-client privilege grounds is overruled.

PRIV-00807 (Control No. 1001756)[119] is a transmittal email message from Eckert attorney Hittinger to Parx executives Green and Hausler, Parx general counsel Bonner, Eckert attorney Stewart, and

---

[118] Tab 2-81.

[119] Tab 2-82.

- 75 -

attorney-lobbyist Gmerek forwarding copies of his memorandum summarizing the key provisions of Senate Bill 1256 and a copy of the bill itself. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00807 (Control No. 1001756) on attorney-client privilege grounds is overruled.

PRIV-00810 (Control No. 1401405),[120] PRIV-00816 (Control No. 1401278),[121] and PRIV-00817 (Control No. 1401350)[122] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger concerning the preparation of a second "industry letter" on behalf of the same thirteen casino groups, this time focused on the industry's opposition to Senate Bill 1256. One of these email chains includes a prior exchange of email messages between Hittinger and attorney-lobbyist

---

[120] Tab 2-83.
[121] Tab 2-84.
[122] Tab 2-85.

Gmerek regarding the letter's composition. A second email chain includes prior email messages circulated among a number of lobbyists and public relations consultants for the casino groups regarding a conference call, as well as a draft of this second industry letter that had been circulated to the conference call participants by Stewart. A third email chain includes a prior email message from attorney-lobbyist Gmerek summarizing the content of testimony presented at a public hearing before a state legislative committee. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Indeed, based on the context provided by our *in camera* review of all of these contested documents, the "industry letter" was prepared not on behalf of the three clients listed on Eckert's privilege log (Parx, Mohegan, and Cordish), but a larger group that also included non-client casino groups, which shared a common *commercial* or *business* interest in opposition to electronic skill

- 77 -

games and joint lobbying efforts directed at the state legislature, but not

a common *legal* interest that would permit them to share confidential

communications without waiver of any attorney-client privilege that

might otherwise apply. *See BDO Siedman*, 492 F.3d at 815–16; *Processed*

*Egg Prods.*, 278 F.R.D. at 118 & n.6. Accordingly, the objection to

production of PRIV-00810 (Control No. 1401405), PRIV-00816 (Control

No. 1401278), and PRIV-00817 (Control No. 1401350) on attorney-client

privilege grounds is overruled.

PRIV-00830 (Control No. 1500644)[123] and PRIV-00832 (Control No.

1500638)[124] consist of email messages exchanged between Eckert

attorneys Stewart and Hittinger regarding an upcoming state legislative

hearing on skill games. In these email messages, Stewart requested and

Hittinger provided questions for friendly legislators to ask at the

hearing.[125] The subject matter of these communications concerns

---

[123] Tab 2-86.

[124] Tab 2-87.

[125] We pause to underscore that these questions were expressly intended for disclosure to third party government officials, and thus any claim of confidentiality or privilege with respect to the questions themselves is untenable. *See supra* note 65. Indeed, a subsequent, revised version of these same questions, as they were ultimately communicated from Stewart to attorney-lobbyist Gmerek, was produced to POM in discovery. *See* Doc. 295-7 (ECKERT005188–ECKERT005190).

legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00830 (Control No. 1500644) and PRIV-00832 (Control No. 1500638) on attorney-client privilege grounds is overruled.

PRIV-00843 (Control No. 302368)[126] is an email message from Eckert attorney Stewart to Cordish executive Weinberg concerning an upcoming state senate committee hearing on skill games legislation, Senate Bill 1256. The message includes an invitation to join Stewart in dining with Senator Tommy Tomlinson and Parx executive Green the evening before the hearing, logistical information about the hearing itself, and an outline of casino industry speakers scheduled to appear at the hearing, including Weinberg and Green. Attached to the email message was a copy of Eckert attorney Hittinger's memorandum

---

[126] Tab 2-88.

summarizing the key provisions of Senate Bill 1256[127] and a one-page set of talking points in opposition to the bill. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00843 (Control No. 302368) on attorney-client privilege grounds is overruled.

PRIV-00881 (Control No. 1401459)[128] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger and non-lawyer lobbyist Joseph M. Uliana concerning a list of key legislative issues for the casino industry group, prepared in connection with upcoming lobbyist meetings with state legislators. The email chain also included prior email messages between Uliana, Stewart, Ballard lawyer King, attorney-lobbyist Gmerek, and attorney-lobbyist Alex Urrea

---

[127] See PRIV-00804 (Control No. 1001578), PRIV-00806 (Control No. 1001753), or PRIV-00807 (Control No. 1001756), discussed *supra*.

[128] Tab 2-90.

concerning the agenda for those meetings with state legislators. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00881 (Control No. 1401459) on attorney-client privilege grounds is overruled.

PRIV-00900 (Control No. 303143)[129] is a chain of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding drafting prepared testimony for an upcoming state legislative committee hearing. Attached is a copy of draft testimony prepared by Stewart on behalf of Eckert client Mohegan, to be presented at the public hearing by Mohegan executive Carlucci. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re*

---

[129] Tab 2-91.

*Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00900 (Control No. 303143) on attorney-client privilege grounds is overruled.

PRIV-00902 (Control No. 1500490)[130] is a chain of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding a casino industry lobbyist conference call, in which Stewart asked Hittinger to cover the call because he had another commitment, and Hittinger reported on the "relatively uneventful" call. The email chain includes prior email message circulated among a larger group of casino lobbyists, including non-lawyer lobbyists Uliana and Shelly, with call-in information for the conference call. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these

---

[130] Tab 2-92.

communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00902 (Control No. 1500490) on attorney-client privilege grounds is overruled.

PRIV-00911 (Control No. 302166),[131] PRIV-00912 (Control No. 303907),[132] and PRIV-00913 (Control No. 1500840)[133] are email messages exchanged between Eckert attorneys Stewart and Hittinger regarding time-sensitive efforts to conduct fact research on the status of skill games legislation in Virginia and other states in connection with preparing a friendly Pennsylvania state legislator, Senator Tommy Tomlinson, to respond to anticipated remarks by a pro-skill games legislator, Senator Gene Yaw. The email chain included prior email messages exchanged between Stewart and attorney-lobbyists Gmerek and Schafer regarding the same issue. One of the email messages included a copy of a draft response to Yaw prepared for Tomlinson by Schafer. The subject matter of these communications concerns legislative, political, or policy advice

---

[131] Tab 2-93.

[132] Tab 2-94.

[133] Tab 2-95.

only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information.[134] *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00911 (Control No. 302166), PRIV-00912 (Control No. 303907), and PRIV-00913 (Control No. 1500840) on attorney-client privilege grounds is overruled.

PRIV-00919 (Control No. 302985)[135] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger and attorney-lobbyist Gmerek regarding the preparation of proposed "poison pill" legislative amendments for unspecified friendly legislators to use in a floor fight on skill games legislation. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client

---

[134] We note that this draft response was expressly prepared for a third party government official, Senator Tomlinson, with the expectation that Tomlinson would further convey these remarks to other, adverse legislators, and thus any claim of confidentiality or privilege with respect to the draft response is untenable. *See supra* note 65.

[135] Tab 2-96.

privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00919 (Control No. 302985) on attorney-client privilege grounds is overruled.

PRIV-00935 (Control No. 2000675),[136] PRIV-00938 (Control No. 1500868),[137] and PRIV-00942 (Control No. 1800563)[138] consist of email messages exchanged between Eckert attorneys Stewart, Hittinger, Yocum, Marsilio, and Sarah C. Stoner regarding an attempt by Hittinger to locate a "one-pager" for Stewart on the legality of skill games under the Pennsylvania criminal code, Title 18. Ultimately, Hittinger forwarded a "two-pager"—a draft letter on that issue from the previous year addressed to the chairman of the Pennsylvania gaming control board— to Stewart. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus

---

[136] Tab 2-97.

[137] Tab 2-98.

[138] Tab 2-99.

they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00935 (Control No. 2000675), PRIV-00938 (Control No. 1500868), and PRIV-00942 (Control No. 1800563) on attorney-client privilege grounds is overruled.

PRIV-00949 (Control No. 302621)[139] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania.[140] The subject matter of these

---

[139] Tab 1-7.

[140] We note that the most recent email message in this email string makes reference to POM's Commonwealth Court litigation. But Eckert has expressly omitted federal work-product protection as a basis for its objection to disclosure of these communications. In any event, the substantive content of this email chain does not reveal the mental impressions of counsel with respect to the Commonwealth Court litigation, but merely speculates on the implications that a

*(continued on next page)*

communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00949 (Control No. 302621) on attorney-client privilege grounds is overruled.

PRIV-000950 (Control No. 1500447)[141] consists of an email message from Eckert attorney Stewart to Eckert attorney Hittinger instructing the latter to conduct factual research as outlined in an attached prior email message from Gmerek to Stewart, Parx executive Bob Green, and non-lawyer public relations consultant Pete Shelly, which summarized the content of a public meeting by a state legislative committee and posed

---

Commonwealth Court victory for the casino groups would have on their broader legislative and business strategy vis-à-vis POM and other skill games proponents.

[141] Tab 2-102.

several questions for general factual research.[142] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-000950 (Control No. 1500447) on attorney-client privilege grounds is overruled.

PRIV-00958 (Control No. 302301)[143] is an email message from Eckert attorney Stewart to Parx executives Green and Eric Hausler and attorney-lobbyist Gmerek forwarding an attached outline of potential gaming legislation prepared by Stewart based on a prior discussion about legislative strategy involving Stewart, Green, and possibly Hausler and Gmerek. PRIV-00960 (Control No. 302303)[144] is an email message from

---

[142] By "general," we mean fact research regarding skill games and video gaming terminals at a statewide or industry-wide level. There is nothing to suggest any application whatsoever of the hearing testimony or Gmerek's questions to any potentially confidential client information.

[143] Tab 2-103.

[144] Tab 2-104.

Eckert attorney Stewart forwarding the same legislative strategy outline to Eckert attorneys Hittinger, Stoner, Marsilio, and Yocum. Although the attached legislative strategy outline was prepared with some client input and conveyed in confidence, the subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice— and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney.[145] *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00958 (Control No. 302301) and PRIV-00960 (Control No. 302303) on attorney-client privilege grounds is overruled.

PRIV-00971 (Control No. 1700641)[146] is an exchange of email messages between Eckert attorney Stewart and Cordish executives Weinberg and David Cordish discussing legislative strategy with respect to video lottery terminals or video gaming terminals. The subject matter

---

[145] Based on our *in camera* review of this document, the "highly confidential" designation applied to this outline by Stewart appears to reflect his sensitivity to disclosure of the strategy itself, not any underlying confidential facts communicated by the client.

[146] Tab 2-105.

of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00971 (Control No. 1700641) on attorney-client privilege grounds is overruled.

PRIV-00987 (Control No. 1400275)[147] is an exchange of email messages between Eckert attorneys Stewart and Hittinger about attendance at an upcoming press conference by two state legislators regarding skill games legislation. This email chain includes a prior email message from attorney-lobbyist Gmerek to Stewart and ten Mohegan executives or in-house attorneys, advising them of the press conference. PRIV-00988 (Control No. 1103273)[148] is an email message from Hittinger to Stewart summarizing the content of public statements made by the legislators and other speakers at the press conference. The subject matter

---

[147] Tab 2-107.

[148] Tab 2-108.

of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00987 (Control No. 1400275) and PRIV-00988 (Control No. 1103273) on attorney-client privilege grounds is overruled.

PRIV-01008 (Control No. 301569)[149] is an email message from Eckert attorney Stewart to Eckert attorney Hittinger discussing a recent state legislative committee hearing on video gaming terminals and skill games and asking Hittinger to prepare a draft letter to the committee offering additional information or arguments to supplement or counter the responses given by witnesses at the hearing.[150] The email chain also included a non-privileged prior email message from attorney-lobbyist

---

[149] Tab 2-112.

[150] The hearing included testimony by a panel of state police officials, a panel of video gaming termina industry representatives, and a panel of skill game industry representatives.

- 91 -

Gmerek to Stewart, forwarding a summary of the content of the public hearing—i.e., a summary of key questions asked by legislators and responses by the witnesses. This email chain was produced to POM in discovery with the most recent email message from Stewart to Hittinger redacted; the Gmerek transmittal message was produced without redaction, but the attached summary of questions and answers was withheld from production.[151] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice— and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-01008 (Control No. 301569) on attorney-client privilege grounds is overruled.

### E. Litigation Report

PRIV-00925 (Control No. 1900567)[152] is an exchange of email

---

[151] ECKERT018746.

[152] Tab 1-6.

messages between Eckert attorneys Stewart and Yocum and Parx in-house counsel Robert Mulhern Jr. These email messages concern a request by Parx for a description of pending and recently closed litigation matters and judgments for use in connection with an application by Parx for a Virginia gaming license, which required disclosure of this information to state regulators. Attached to Yocum's response to Mulhern's request is a memorandum describing all litigation matters within the preceding five years in which Eckert represented Parx or was otherwise aware of the litigation, including the two POM Commonwealth Court cases. Based on our *in camera* review of this attachment, the memorandum includes only non-confidential factual background and procedural information. The email messages and attached memorandum do not include any confidential client information; indeed, it is clear that the information was conveyed with the intent that it be disclosed to state regulators in connection with the client's application for a gaming license. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.

Eckert has also asserted federal work-product protection. The memorandum describes numerous pending litigation matters, but it does not convey any mental impressions, conclusions, opinions, or legal

theories of an attorney, limiting itself to a purely factual description of each litigation matter and its procedural status. Based on our *in camera* review of the memorandum, however, it appears that this factual summary was originally prepared as part of the firm's regular report on pending litigation handled by Eckert, and then incorporated into this memorandum in response to a specific request by the client for this same information. Under these circumstances, we find this information is properly withheld from disclosure under the federal work-product doctrine, as the primary motivating purpose of the initial creation of this factual compilation was to aid in the management of ongoing litigation matters. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990). Disclosure of this factual information to Virginia gaming regulators does not appear to constitute waiver of work-product protection, as there is nothing before us to suggest that the application itself is publicly available or otherwise accessible to an adversary. *See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Finally, there is nothing in the record before us to suggest that POM has a substantial need for these materials and cannot, without undue hardship, obtain their substantial equivalent by other means. *See* Fed.

- 94 -

R. Civ. P. 26(b)(3).

Thus, the objection to production of PRIV-00925 (Control No. 1900567) on attorney-client privilege grounds is overruled, but the objection to production of this document on federal work-product protection grounds is sustained. This document shall not be produced.

## IV. CONCLUSION

For the foregoing reasons, the objections to production by Eckert will be granted in part and sustained in part. Of the 120 documents for which Eckert's objections to production have been challenged by POM, one shall be withheld from production altogether, three shall be produced with redactions as described below, and 116 shall be produced *without* redactions.

With respect to PRIV-00105 (Control No. 1900236),[153] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted.

---

[153] Tab 2-27.

With respect to PRIV-00366 (Control No. 304699),[154] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the first three paragraphs (following the salutation "Guys,") redacted.

With respect to PRIV-00614 (Control No. 800947),[155] the objection to production on attorney-client privilege grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted.

With respect to PRIV-00925 (Control No. 1900567),[156] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is sustained. This document shall *not* be produced.

With respect to all other documents challenged by POM and submitted for *in camera* review, the objections to production on attorney-

---

[154] Tab 2-45.

[155] Tab 2-52.

[156] Tab 1-6.

client privilege and federal or state work-product protection grounds are overruled. These documents shall be produced *without* redaction.

Absent a timely appeal of this decision, Eckert shall produce the documents described in the preceding paragraphs to POM, in the manner described, within 21 days after entry of the accompanying order.

The parties shall each bear its own costs in connection with this discovery dispute.

An appropriate order follows.


Dated: December 1, 2023       *s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

      Plaintiff,

      v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

      Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## ORDER

AND NOW, this 1st day of December, 2023, upon consideration of the parties' submissions[1] and the purportedly privileged documents submitted for *in camera* review,[2] and in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT**:

1. With respect to PRIV-00105 (Control No. 1900236), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **OVERULED in part and SUSTAINED in part**—

---

[1] POM discovery dispute letter (Doc. 295); Eckert discovery dispute letter (Doc. 298).

[2] Binder of purportedly privileged documents for *in camera* review (Doc. 305).

this document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted;

2. With respect to PRIV-00366 (Control No. 304699), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **OVERRULED in part and SUSTAINED in part**—this document shall be produced, but with the first three paragraphs (following the salutation "Guys,") redacted;

3. With respect to PRIV-00614 (Control No. 800947), the objection to production on attorney-client privilege grounds is **OVERRULED in part and SUSTAINED in part**—this document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted;

4. With respect to PRIV-00925 (Control No. 1900567), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **SUSTAINED**—this document shall *not* be produced;

5.      With respect to all other documents challenged by POM[3] and submitted for *in camera* review, the objections to production on attorney-client privilege and federal or state work-product protection grounds are **OVERRULED**—these documents shall be produced *without* redaction;

6.      Absent timely appeal of this order, the defendant shall produce the documents described in the preceding paragraphs to the plaintiff, in the manner described, **within 21 days** after entry of this order; and

7.      The parties shall each bear its own costs in connection with this discovery dispute.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

---

[3] The list of challenged documents is set forth in POM discovery dispute letter at 2, 5 (Doc. 295) and *id.* ex. 5 (Doc. 295-6).

District Court Opinion and Order

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

      Plaintiff,

      v.

ECKERT, SEAMANS CHERIN &
MELLOTT, LLC, *et al.*,

      Defendants.

:     Civil No. 1:20-CV-00292
:
:
:
:
:
:
:
:
:
:
:     Judge Jennifer P. Wilson

## **MEMORANDUM**

Before the court are two appeals from United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order resolving one of many discovery disputes in this case. (Docs. 361, 362.) Following an *in camera* review of 120 purportedly privileged documents, Judge Saporito's order determined which documents were protected by privilege and which were not. (Doc. 354.) Judge Saporito ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*) Defendants Eckert, Seamans Cherin & Mellott, LLC; Kevin M. Skjoldal; and Mark S. Stewart (collectively, "Eckert") timely appealed the decision. (Doc. 361.) So did third-party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). (Doc. 362.) For the reasons that follow, the court will grant in part and deny in part the appeals.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Neither party appeals the factual or procedural history stated in Judge Saporito's memorandum. As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion. Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert for an alleged breach of fiduciary duties to POM. (Doc. 1.) POM alleges that this breach stems from Eckert's representation of both POM and third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania. (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania. That was because Eckert represented Parx, a market competitor, in Pennsylvania. (*Id.* at 3–4.) In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through other counsel relating to the seizure and removal of

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

2

some of its skill games in Pennsylvania.[3] (*Id.* at 3.) During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, as well as motions to intervene. (*Id.* at 4–5.) In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia. (*Id.* at 5.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia. (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the procedural history of the discovery dispute underlying the instant appeals:

> This is one of a series of discovery disputes that the parties have been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).
>
> In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to

---

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018. (Doc. 166, p. 4.)

3

120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.)

On December 1, 2023, following an *in camera* review of the disputed documents and the parties' briefs, Judge Saporito issued a thorough, clear, and well-organized memorandum and order resolving the dispute. (Docs. 353, 354.) Judge Saporito's order resolved which documents were protected by privilege and which were not. (Doc. 354.) In his order, Judge Saporito sustained in part the assertions of privilege regarding four documents. (*Id.*) He determined that the majority of documents were not protected from production and ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*)

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision. (Docs. 361, 362.) In their appeals, they assert that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not

4

protected from disclosure by attorney-client privilege and the federal work-product doctrine. (Doc. 361, pp. 2–3; Doc. 362, p. 3.) The appeals were briefed and are ripe for disposition. (Docs. 366, 367, 373, 374.)

## STANDARD OF REVIEW

When a party appeals from a non-dispositive order issued by a United States Magistrate Judge, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting Fed. R. Civ. P. 72(a)). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.* (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). The party appealing the non-dispositive order has the burden of proof to establish that the order was clearly erroneous or contrary to law. *See NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (noting that under 28 U.S.C. § 636, "a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law"); *accord Haines*, 975 F.2d at 91 (citing 28 U.S.C. § 636(b)(1)(A)).

## DISCUSSION

The appeals filed by Eckert and Parx contest Judge Saporito's findings with respect to attorney-client privilege.[4] They argue both that he applied the wrong legal standard, and that he applied the standard incorrectly to the instant facts.

There is one threshold matter in which all parties agree that Judge Saporito was correct. Because this is a diversity case, Pennsylvania law governs whether attorney-client privilege attaches to a particular document. (Doc. 353, p. 10 (citing Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)).

The Supreme Court of Pennsylvania courts has stated that, "[b]ecause it 'has the effect of withholding relevant information from the factfinder,' courts construe the privilege narrowly to 'appl[y] only where necessary to achieve its purpose.'" *In re Estate of McAleer*, 248 A.3d 416, 425–26 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Twp. Of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Commw. Ct. 2018) ("Our federal courts have held that [t]o sustain this burden of proof, the party asserting the privilege must show,

---

[4] In their appeals, Eckert and Parx also assert that Judge Saporito was incorrect in finding that work-product doctrine did not protect the disputed documents. (Doc. 361, pp. 2–3; Doc. 362, p. 3.) Parx did not address this at all in its supporting brief. (Doc. 366.) Eckert only raised work-product doctrine in the last sentence of its brief. (Doc. 367, pp. 26–27.) It further explained its argument in a footnote. (*Id.* at 27 n.5.) But "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

by record evidence such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.")[5] (cleaned up).

Under Pennsylvania law, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15 A.3d at 59. Attorney-client privilege extends to confidential communications between lawyers and agents of a client where those agents are indispensable to or facilitate the lawyer's ability to provide legal advice. *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019).

The issues raised on appeal generally fall into two categories. The first is whether an attorney's communication is made for the purpose of obtaining or providing legal advice. Specifically, the court addresses to what extent attorney-client privilege applies to communications that, as a matter of content, primarily contain lobbying or legislative advice, and either entirely lack or only include a relatively small portion of legal advice. The second category relates to whether a communication is sufficiently confidential for the privilege to apply.

---

[5] Of note, in their central arguments, Eckert and Parx make no reference to affidavits regarding privilege. Parx does in its reply brief. (Doc. 374, pp. 6–7.) But as a general matter, "[a]rguments raised for the first time in a reply brief are generally waived." *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

7

With respect to the first category of issues, there is a dearth of factually analogous and binding case law. As a result, the parties and Judge Saporito rely heavily on persuasive authority.

Eckert raises six arguments in support of reversal of Judge Saporito's order. First, Judge Saporito assumed that legislative advice can never fall within the scope of attorney-client privilege. (Doc. 367, p. 2.) Second, Judge Saporito misapplied the standards for determining whether an inter-attorney legal memorandum is privileged. (*Id.*) Third, Judge Saporito misapplied the law when determining whether requisite confidentiality existed. (*Id.*) Fourth, the document PRIV-00949 is protected by attorney-client privilege. (*Id.*) Fifth, paragraphs three, five, and six of PRIV-00366 are protected by attorney-client privilege. (*Id.*) Sixth, documents PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are protected by attorney-client privilege. (*Id.* at 3.) Parx joins in Eckert's first and second arguments. (Doc. 366, pp. 10–19.)

The court addresses each of these arguments below.

**A. Judge Saporito's ruling was not contrary to law because it did not apply an incorrect standard regarding what constitutes legal advice. Nor did he clearly err in applying the standard to the specific documents that Eckert and Parx dispute.**

Eckert and Parx argue that Judge Saporito's memorandum and order were contrary to law because he assumed that when an attorney provides legislative advice, such advice can never be legal advice within the scope of attorney-client

8

privilege.  (Doc. 367, p. 15.)  They argue that Judge Saporito applied a non-existent *per se* rule.  (Doc. 366, p. 13.)  In addition to generally asserting that Judge Saporito used the wrong legal rule,[6] they also argue that Judge Saporito misapplied the rule with respect to five documents: PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, and PRIV-0074.  (Doc. 366, p. 15; Doc. 367, p. 16.)  The court will first address the rule Judge Saporito applied and will then address the specific documents argued by Eckert and Parx.

### 1.  Judge Saporito applied the correct legal standard.

Contrary to the arguments of Eckert and Parx, POM argues that Judge Saporito did not apply a per se rule.  Instead, he applied the correct legal standard.  (Doc. 373, p. 7–15.)  Judge Saporito's own language shows that POM is correct:

> It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted). "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001). "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

---

[6] In a footnote, Eckert provides a list of documents to which it argues Judge Saporito applied this erroneous rule.  (Doc. 367, p. 14 n.2.)

9

Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, lobbying efforts." *Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure legal advice, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165; *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

(Doc. 353, pp. 25–27.)

Judge Saporito then applied these rules to communications concerning

proposed legislation and other legislative, lobbying, and policy communications.

(Doc. 353, pp. 30–92.) In doing so, Judge Saporito concluded that the subject

matter of the communications at issue "concern[ed] legislative, political, or policy

10

advice only—not *legal* advice—and thus . . . is not protected by attorney client privilege." (*Id.* at 30 (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).)

Judge Saporito did not apply a *per se* rule. This argument, raised by Eckert and Parx, fails. It is not supported by Judge Saporito's explicit language. Nor is it supported implicitly by Judge Saporito's analysis. Instead, the court finds that Judge Saporito conducted a fact-specific inquiry to determine whether each of the communications at issue concerned legal advice. In doing so, Judge Saporito distinguished legal advice from legislative, political, or policy advice. But he did not state or imply that legal advice and the latter categories of advice are mutually exclusive. Rather, he merely found that certain at-issue communications contained various types of advice—none of them legal.

### 2. Judge Saporito did not err in finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in not finding that attorney-client privilege protected documents in which Eckert engaged in preparing for possible testimony before a legislative body. (Doc. 367, pp. 16–17.) Specifically, he erred in not finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 were protected on this basis. (*Id.*) Citing a treatise, which in turn cited *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), Eckert argues that other courts have found such communications privileged. (*Id.* (quoting Paul

11

R. Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("The work considered legal assistance by the court included preparation for possible testimony [and] analysis of the probable legal consequences and antitrust considerations of the proposed legislation.")).) Eckert also points out that the same treatise has relied on *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1 (2016). (*Id.* (quoting Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.")).)

POM distinguishes *Westinghouse* in two important ways. (Doc. 373, pp. 11–13.) First, *Westinghouse* did not center on attorney-client privilege. Instead, it concerned an attempt to disqualify a law firm from representing a client in antitrust litigation. 580 F.2d at 1312–13. The attempt to disqualify was rooted in a conflict of interest which arose from the firm's prior legislative efforts. *Id.* at 1313–14.

Second, *Westinghouse* does not stand for the proposition that legislative or lobbying advice qualifies as legal advice. (Doc. 373, pp. 12–13.) Rather, in *Westinghouse,* in preparing for the possible testimony, the law firm was "analyzing the probable legal consequences." *Id.* at 1313. That is to say, the conflict of interest did not arise because the firm was helping a client prepare for testimony.

12

Rather, the conflict arose because the firm was providing legal advice. That advice took the form of analyzing probable legal consequences of the proposed legislation, though it may have been interwoven with the firm's preparation for possible testimony.

Eckert does not raise any specific factual error that Judge Saporito purportedly committed with respect to PRIV-00106, PRIV-00107, and PRIV-00108. It merely asserts that these documents related to the preparation of possible testimony before a legislative body. (Doc. 367, p. 16.) That alone is not the basis for attorney-client privilege. And Eckert does not raise any other argument to convince this court that Judge Saporito erred.

Eckert raises the same argument regarding PRIV-00900. But PRIV-00900 contains no legal advice, nor was it conveyed for the purpose of providing or obtaining legal advice. It is correspondence seeking feedback on proposed written testimony to be provided to a state legislative committee. The correspondence does not include, seek, or relate to legal advice. Neither does the attached proposed testimony. And, unlike in *Westinghouse*, here the preparation for testimony does not involve or contain legal advice or analysis. Although preparation for testimony before a legislative body can be protected by attorney-client privilege, such is not the case here. For these reasons, the court will deny

13

Eckert's appeal with respect to PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900.

### 3. Judge Saporito did not err in finding that PRIV-0074 was not protected by attorney-client privilege.

Eckert argues that PRIV-0074 should be protected by attorney-client privilege because it analyzes whether proposed legislation would satisfy a particular legal standard. (Doc. 367, p. 16.) As Judge Saporito noted, PRIV-0074 consists of "email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation." (Doc. 353, p. 33.) It also "forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the 'gist of the bill.' The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether." (*Id.*)

The court finds that the majority of this communication does not relate to legal advice or analysis. Instead, it solely "concerns legislative, political, or policy advice only—not *legal* advice—and thus [is] not protected by attorney-client privilege." (*Id.*) There is an exception to this characterization. The sixth bullet point on the first page of PRIV-0074 does pertain to a legal analysis of the proposed legislation.

However, under the standard Judge Saporito applied, it was appropriate to conclude that attorney-client privilege did not apply. Under the standard set forth

14

in *Burton v. R.J. Reynolds Tobacco Co., Inc.*, "[l]egal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege." 170 F.R.D. 481, 484 (D. Kan. 1997). Judge Saporito expressly relied on that standard. (Doc. 353, p. 26.)

Eckert and Parx have not asserted that such reliance is incorrect. Eckert relies on a case that implicitly invokes the same standard. (Doc. 367, p. 13 (citing *Vacco v. Harrah's Operating Co.*, No. CIV. A 1:07-CV-0663, 2008 WL 4703719 (N.D.N.Y. Oct. 29, 2008); *see Vacco's*, 2008 WL 4703719, at *8 (finding that attorney-client privilege applied in part because the law firm's services to the client were primarily legal in nature).) And Parx explicitly relies on the predominant purpose standard:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. ***So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.*** . . . [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be

15

rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

(Doc. 366, pp. 13–14 (emphasis added by Parx) (quoting *In re Cty. Of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007)).)

Eckert and Parx have not contested the validity of the predominant purpose standard. The predominant purpose of PRIV-0074 was not legal advice. Therefore, attorney-client privilege does not apply. The court will deny the appeals with respect to PRIV-0074.

### B. Judge Saporito erred in finding that attorney-client privilege did not apply to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

Parx and Eckert argue that Judge Saporito missaplied the legal standard with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6. (Doc. 366, p. 15; Doc. 367, pp. 17–19.)[7] A review of these documents shows that Parx and Eckert are correct. Judge Saporito was correct in finding that these communications concerned legislative strategies for outlawing skill games. (Doc. 353, p. 66.) But he was incorrect in finding that they concerned legislative, political, or policy advice only—not legal advice. (*Id.* at 66–67.) Rather, in the context of providing legislative advice, these communications do

---

[7] Of note, the page numbers that Parx and Eckert use appear to correspond to the page numbers of the memorandum attached to the email correspondence. Parx and Eckert seek to shield the first, sixth, and occasionally second, pages of the legislative strategy memorandum.

provide legal analysis and advice. These communications circulate a legislative strategy memorandum. That memorandum addresses how to achieve legislative objectives within the context of existing state law. The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice. Furthermore, legal advice was the predominant purpose of the specific pages that Parx and Eckert identify. No other portions of these documents consist of legal advice. Nor do Parx or Eckert explain any reason for why the other portions should be protected.

Because they have shown that Judge Saporito erred with respect to these communications, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

## C. Judge Saporito did not err in finding that PRIV-00958 and PRIV-00960 were not protected by attorney-client privilege.

Next, Eckert argues that Judge Saporito applied the wrong confidentiality standard. (Doc. 367, pp. 19–20.) As a result, when he applied this incorrect standard to PRIV-00958 and PRIV-00960, he improperly found that they were not protected by attorney-client privilege.[8] (*Id.*) Specifically, Judge Saporito found that these communications were email messages from an Eckert attorney to Parx executives and a Parx lobbyist and they related to legislative strategy. (Doc. 353,

---

[8] In a footnote, Eckert asserts that Judge Saporito applied this incorrect standard to a large number of other documents. (Doc. 367, p. 21 n.4.)

17

pp. 88–89.)  Judge Saporito concluded that, although the legislative strategy outline attached to the emails "was prepared with some client input and conveyed in confidence," the subject matter was not legal advice and therefore not protected by attorney-client privilege.  (*Id.* at 89.)  He also noted that "there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney."  (*Id.*)  Eckert argues that Judge Saporito erred by requiring a communication to involve "confidential facts disclosed by the client" for it to be protected by attorney-client privilege.  (Doc. 367, pp. 19–20.)

Eckert argues that attorney-client privilege "applies to *all* information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."  (*Id.* at 20 (quoting *U.S. Healthcare, Inc. Sec. Litig.*, 1989 WL 11068, at *2 (E.D. Pa. Feb. 7, 1989)).)  For that reason, Eckert asserts that Judge Saporito was incorrect when he found that communications were not privileged because "nothing in the record" suggested that the communications "involved confidential facts disclosed by the client to the attorney."  (Doc. 353, pp. 88–89; Doc. 367, pp. 20–21.)

18

POM argues that Eckert's arguments fail for two reasons.[9]  First, Eckert has

failed to bear its burden and show that the communications at issue were

confidential.  (Doc. 373, p. 20 (citing *Gillard*, 15 A.3d at 59.)  To "sustain this

burden . . . [Eckert] must show, by record evidence such as affidavits, sufficient

facts as to bring the communications at issue within the narrow confines of

privilege."  *Twp. of Neshannock*, 181 A.3d at 474.  Second, because neither of

these documents involved legal advice, they are not privileged.  (Doc. 373, p. 20

(citing *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470,

479 (Pa. Super. Ct. 2023)).)

PRIV-00958 and PRIV-00960 do not concern legal advice.  And Eckert has

not pointed to any binding Pennsylvania appellate court decision finding that

attorney-client privilege extends to communications beyond those made for the

purpose of obtaining or providing legal advice.  Rather, Pennsylvania courts apply

attorney-client privilege to confidential communications "made for the purpose of

obtaining or providing professional legal advice."  Gillard, 15 A.3d at 59; *Carlino*,

---

[9] More generally, POM also argues that Judge Saporito did not err in applying the confidentiality standard.  POM concedes that the "confidential facts" requirement which Judge Saporito used, although not explicitly overruled, is no longer used by Pennsylvania courts.  (Doc. 373, p. 17–18 & n.5.)  Even so, POM argues that Eckert has not shown clear error or a decision contrary to law.  The "confidential facts" phrasing that Judge Saporito used is quite similar to the "confidential information" language that comes from *U.S. Healthcare*—the only legal authority upon which Eckert relies.

301 A.3d at 479. Because attorney-client privilege does not attach to PRIV-00958 and PRIV-00960, the court will deny Eckert's appeal with respect to them.

### D. Judge Saporito did not err in finding that PRIV-00949 is not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred by overruling its assertion of attorney-client privilege to PRIV-00949. (Doc. 367, pp. 21–22.) Omitting footnotes, Judge Saporito analyzed the communication as follows:

> PRIV-00949 [] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania. The subject matter of these communications concerns legislative, political, or policy advice only— not legal advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00949 [] on attorney-client privilege grounds is overruled.

(Doc. 353, pp. 86–87.)

Eckert argues that Judge Saporito erred in determining that the communication was not privileged due to the absence of "any communication whatsoever from a client." (Doc. 367, p. 22.) It further argues that the emails in this communication were "between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client." (*Id.* at 24 (quoting *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D.

20

Pa. 1984)).) Eckert asserts that confidential client information appears in the uppermost emails of the thread. (*Id.* at 24.) According to Eckert, in those emails, Eckert attorneys pose and answer a question regarding what Eckert's clients would accept. (*Id.*) Eckert argues that "there is no plausible source of that information other than the referenced clients themselves." (*Id.*)

POM counters that Eckert's assumption about the source of the information is insufficient to show that Judge Saporito's factual findings were clearly erroneous. (Doc. 373, p. 21.) Eckert must show that the client was the source of the information, and that information was confidential. (*Id.*)

Having reviewed the communications contained in PRIV-00949, the court finds that Eckert has not met its burden. There is no indication that the emails contained in this thread include any information that came from an Eckert client. Moreover, a review of PRIV-00949 does not support Eckert's assertion that Judge Saporito erred in concluding that the communications did not concern legal advice. Because Eckert has failed to bear its burden, the court will deny Eckert's appeal insofar as it relates to PRIV-00949.

**E. Judge Saporito did not err in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 are not protected by attorney-client privilege.**

Eckert argues that Judge Saporito erred in concluding that the fourth, fifth, and sixth paragraphs of PRIV-00366 were outside the scope of attorney-client

privilege.  (Doc. 367, pp. 24–25.)  Eckert argues that these paragraphs "discuss strategic considerations relating to proposed legislation, which . . . is not a subject matter excluded from the scope of attorney-client privilege."  (*Id.* at 24.)  Additionally, Eckert asserts that the sixth paragraph presents opinions and sets forth defense tactics, which weighs in favor of finding that privilege extends to that portion of the document.  (*Id.* at 24–25 (quoting *U.S. Fid. & Guar. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992)).)

The court finds that Judge Saporito was correct in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 do not concern legal advice.  The court denies Eckert's appeal insofar as it relates to the fourth, fifth, and sixth paragraphs of PRIV-00366.

### F. Judge Saporito did not err in finding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 were not protected by attorney-client privilege.  (Doc. 367, p. 25.)  Eckert asserts that Judge Saporito erred in three ways.  First, he concluded that legislative advice was categorically excluded from the scope of attorney-client privilege.  (*Id.*)  Second, he failed to appreciate that the email thread contained in this communication presented opinions and set forth defense tactics, which suggest the finding of privilege.  (*Id.* (citing *Barron*, 809 F.

22

Supp. at 364).)  Third, Judge Saporito applied a "confidential client information" standard rather than recognizing that privilege "applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."  (*Id.* at 26 (quoting *U.S. Healthcare*, 1989 WL 11068, at *2).)

With respect to Eckert's first argument, as noted above, Judge Saporito did not exclude legislative advice from the scope of attorney-client privilege.  He merely distinguished between the two types of advice.  Nothing in Judge Saporito's memorandum or order suggested that legislative advice cannot overlap with legal advice.  And in these documents, he properly determined that their contents did not include or concern legal advice.

POM points out that Eckert does not assert that these communications contain legal advice.  (Doc. 373, p. 23.)  Rather, it asserts that they contain confidential information provided for the purpose of presenting opinions and defense tactics.  (*Id.*)  But Eckert has not presented authority applying attorney-client privilege to information unrelated to legal advice.

The court finds that these communications do not relate to legal advice. Eckert has failed to show clear error.  These communications represent updates

23

regarding legislative affairs and strategy, lobbying, and public relations. They neither contain nor implicate legal advice. The court will deny Eckert's appeal with respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part the appeals to Judge Saporito's order. Specifically, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6, but will otherwise deny the appeals. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 29, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS CHERIN & MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## **ORDER**

**AND NOW**, on this 29th day of April 2024, upon consideration of the appeals filed in this case, Docs. 361, 362, and the memorandum and order of Magistrate Judge Joseph Saporito, Docs. 353, 354, and for the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1) The appeals are **GRANTED IN PART AND DENIED IN PART**. (Docs. 161, 162.)  Specifically, the appeals are **GRANTED** with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6, but **DENIED** in all other respects.

2) In Judge Saporito's memorandum, the court **REVERSES** the paragraph of Section III.D.3. in which Judge Saporito addresses PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00679.  (Doc.

353, pp. 88–89.)  In all other respects, the court **AFFIRMS** Judge

Saporito's memorandum.

3) The court **REVERSES** paragraph 5 of Judge Saporito's order, Doc.

354, with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6;

PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.  The court

**AFFIRMS** Judge Saporito's order in all other respects.

4) **Within 21 days** of this order's entry, Defendants **SHALL**

**PRODUCE** the documents directed in Judge Saporito's order, Doc.

354, without redaction, except for PRIV-00679, PRIV-00684, PRIV-

00685, and PRIV-00679, which Defendants **SHALL PRODUCE**

with redactions in accordance with this order and the findings of the

accompanying memorandum.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania