# In the United States District Court for the Middle District of Pennsylvania

PACE-O-MATIC, INC.               )
                                 )
    *Plaintiff,*           )   [ELECTRONICALLY FILED]
                                 )
    *vs.*                 )   Docket No. 20-292
                                 )
ECKERT, SEAMANS, CHERIN          )   JUDGE WILSON
& MELLOT, LLC, *et al.*          )
                                 )
    *Defendants.*         )

## AMENDED NOTICE OF APPEAL

Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), files this amended notice of appeal to the United States Court of Appeals for the Third Circuit from orders in the above matter dated April 29, 2024 (Doc. 383), and July 3, 2024 (Doc. 398, denying reconsideration), along with supporting memoranda (Docs. 382 and 397).

July 11, 2024               **GA BIBIKOS LLC**

                 /s George A. Bibikos
                 George A. Bibikos (PA 91249)
                 5901 Jonestown Rd. #6330
                 Harrisburg, PA 17112
                 (717) 580-5305
                 gbibikos@gabibikos.com

                 *Counsel for Greenwood Gaming &*
                 *Entertainment, Inc. d/b/a Parx Casino*

# CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that the District Judge and counsel of record will be served automatically.

/s George A. Bibikos
George A. Bibikos

April 2024 Opinion

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,      :     Civil No. 1:20-CV-00292

        : 

     Plaintiff,      : 

        : 

     v.      : 

        : 

ECKERT, SEAMANS CHERIN &      : 

MELLOTT, LLC, *et al.*,      : 

        : 

     Defendants.      :     Judge Jennifer P. Wilson

## <u>MEMORANDUM</u>

Before the court are two appeals from United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order resolving one of many discovery disputes in this case. (Docs. 361, 362.) Following an *in camera* review of 120 purportedly privileged documents, Judge Saporito's order determined which documents were protected by privilege and which were not. (Doc. 354.) Judge Saporito ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*) Defendants Eckert, Seamans Cherin & Mellott, LLC; Kevin M. Skjoldal; and Mark S. Stewart (collectively, "Eckert") timely appealed the decision. (Doc. 361.) So did third-party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). (Doc. 362.) For the reasons that follow, the court will grant in part and deny in part the appeals.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Neither party appeals the factual or procedural history stated in Judge

Saporito's memorandum.  As such, the court will only restate the factual

background and procedural history necessary for clarity in this opinion.  Plaintiff,

Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert

for an alleged breach of fiduciary duties to POM.  (Doc. 1.)  POM alleges that this

breach stems from Eckert's representation of both POM and third-party

competitor, Parx, in matters in which POM and Parx had competing and adverse

commercial interests in the Commonwealth Court of Pennsylvania relating to

POM's development, production, and licensure of electronic "skill games" sold in

Pennsylvania.  (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia and was limited

to the state of Virginia despite POM's similar activity in Pennsylvania.  That was

because Eckert represented Parx, a market competitor, in Pennsylvania.  (*Id.* at

3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth

Court of Pennsylvania through other counsel relating to the seizure and removal of

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

some of its skill games in Pennsylvania.[3] (*Id.* at 3.) During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, as well as motions to intervene. (*Id.* at 4–5.) In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia. (*Id.* at 5.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia. (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the procedural history of the discovery dispute underlying the instant appeals:

> This is one of a series of discovery disputes that the parties have been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).

> In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to

---

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018. (Doc. 166, p. 4.)

3

120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.)

On December 1, 2023, following an *in camera* review of the disputed documents and the parties' briefs, Judge Saporito issued a thorough, clear, and well-organized memorandum and order resolving the dispute. (Docs. 353, 354.) Judge Saporito's order resolved which documents were protected by privilege and which were not. (Doc. 354.) In his order, Judge Saporito sustained in part the assertions of privilege regarding four documents. (*Id.*) He determined that the majority of documents were not protected from production and ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*)

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision. (Docs. 361, 362.) In their appeals, they assert that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not

4

protected from disclosure by attorney-client privilege and the federal work-product doctrine. (Doc. 361, pp. 2–3; Doc. 362, p. 3.) The appeals were briefed and are ripe for disposition. (Docs. 366, 367, 373, 374.)

## STANDARD OF REVIEW

When a party appeals from a non-dispositive order issued by a United States Magistrate Judge, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting Fed. R. Civ. P. 72(a)). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.* (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). The party appealing the non-dispositive order has the burden of proof to establish that the order was clearly erroneous or contrary to law. *See NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (noting that under 28 U.S.C. § 636, "a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law"); *accord Haines*, 975 F.2d at 91 (citing 28 U.S.C. § 636(b)(1)(A)).

## DISCUSSION

The appeals filed by Eckert and Parx contest Judge Saporito's findings with respect to attorney-client privilege.[4]  They argue both that he applied the wrong legal standard, and that he applied the standard incorrectly to the instant facts.

There is one threshold matter in which all parties agree that Judge Saporito was correct.  Because this is a diversity case, Pennsylvania law governs whether attorney-client privilege attaches to a particular document.  (Doc. 353, p. 10 (citing Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)).

The Supreme Court of Pennsylvania courts has stated that, "[b]ecause it 'has the effect of withholding relevant information from the factfinder,' courts construe the privilege narrowly to 'appl[y] only where necessary to achieve its purpose.'" *In re Estate of McAleer*, 248 A.3d 416, 425–26 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Twp. Of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Commw. Ct. 2018) ("Our federal courts have held that [t]o sustain this burden of proof, the party asserting the privilege must show,

---

[4] In their appeals, Eckert and Parx also assert that Judge Saporito was incorrect in finding that work-product doctrine did not protect the disputed documents.  (Doc. 361, pp. 2–3; Doc. 362, p. 3.)  Parx did not address this at all in its supporting brief.  (Doc. 366.)  Eckert only raised work-product doctrine in the last sentence of its brief.  (Doc. 367, pp. 26–27.)  It further explained its argument in a footnote.  (*Id.* at 27 n.5.)  But "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

6

by record evidence such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.")[5] (cleaned up).

Under Pennsylvania law, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15 A.3d at 59. Attorney-client privilege extends to confidential communications between lawyers and agents of a client where those agents are indispensable to or facilitate the lawyer's ability to provide legal advice. *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019).

The issues raised on appeal generally fall into two categories. The first is whether an attorney's communication is made for the purpose of obtaining or providing legal advice. Specifically, the court addresses to what extent attorney-client privilege applies to communications that, as a matter of content, primarily contain lobbying or legislative advice, and either entirely lack or only include a relatively small portion of legal advice. The second category relates to whether a communication is sufficiently confidential for the privilege to apply.

---

[5] Of note, in their central arguments, Eckert and Parx make no reference to affidavits regarding privilege. Parx does in its reply brief. (Doc. 374, pp. 6–7.) But as a general matter, "[a]rguments raised for the first time in a reply brief are generally waived." *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

7

With respect to the first category of issues, there is a dearth of factually analogous and binding case law. As a result, the parties and Judge Saporito rely heavily on persuasive authority.

Eckert raises six arguments in support of reversal of Judge Saporito's order. First, Judge Saporito assumed that legislative advice can never fall within the scope of attorney-client privilege. (Doc. 367, p. 2.) Second, Judge Saporito misapplied the standards for determining whether an inter-attorney legal memorandum is privileged. (*Id.*) Third, Judge Saporito misapplied the law when determining whether requisite confidentiality existed. (*Id.*) Fourth, the document PRIV-00949 is protected by attorney-client privilege. (*Id.*) Fifth, paragraphs three, five, and six of PRIV-00366 are protected by attorney-client privilege. (*Id.*) Sixth, documents PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are protected by attorney-client privilege. (*Id.* at 3.) Parx joins in Eckert's first and second arguments. (Doc. 366, pp. 10–19.)

The court addresses each of these arguments below.

**A. Judge Saporito's ruling was not contrary to law because it did not apply an incorrect standard regarding what constitutes legal advice. Nor did he clearly err in applying the standard to the specific documents that Eckert and Parx dispute.**

Eckert and Parx argue that Judge Saporito's memorandum and order were contrary to law because he assumed that when an attorney provides legislative advice, such advice can never be legal advice within the scope of attorney-client

8

privilege.  (Doc. 367, p. 15.)  They argue that Judge Saporito applied a non-existent *per se* rule.  (Doc. 366, p. 13.)  In addition to generally asserting that Judge Saporito used the wrong legal rule,[6] they also argue that Judge Saporito misapplied the rule with respect to five documents: PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, and PRIV-0074.  (Doc. 366, p. 15; Doc. 367, p. 16.)  The court will first address the rule Judge Saporito applied and will then address the specific documents argued by Eckert and Parx.

### 1.  Judge Saporito applied the correct legal standard.

Contrary to the arguments of Eckert and Parx, POM argues that Judge Saporito did not apply a per se rule.  Instead, he applied the correct legal standard.  (Doc. 373, p. 7–15.)  Judge Saporito's own language shows that POM is correct:

> It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted).  "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001).  "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

---

[6] In a footnote, Eckert provides a list of documents to which it argues Judge Saporito applied this erroneous rule.  (Doc. 367, p. 14 n.2.)

Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, lobbying efforts." *Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure legal advice, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165; *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

(Doc. 353, pp. 25–27.)

Judge Saporito then applied these rules to communications concerning

proposed legislation and other legislative, lobbying, and policy communications.

(Doc. 353, pp. 30–92.) In doing so, Judge Saporito concluded that the subject

matter of the communications at issue "concern[ed] legislative, political, or policy

10

advice only—not *legal* advice—and thus . . . is not protected by attorney client privilege." (*Id.* at 30 (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).)

Judge Saporito did not apply a *per se* rule. This argument, raised by Eckert and Parx, fails. It is not supported by Judge Saporito's explicit language. Nor is it supported implicitly by Judge Saporito's analysis. Instead, the court finds that Judge Saporito conducted a fact-specific inquiry to determine whether each of the communications at issue concerned legal advice. In doing so, Judge Saporito distinguished legal advice from legislative, political, or policy advice. But he did not state or imply that legal advice and the latter categories of advice are mutually exclusive. Rather, he merely found that certain at-issue communications contained various types of advice—none of them legal.

**2. Judge Saporito did not err in finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 are not protected by attorney-client privilege.**

Eckert argues that Judge Saporito erred in not finding that attorney-client privilege protected documents in which Eckert engaged in preparing for possible testimony before a legislative body. (Doc. 367, pp. 16–17.) Specifically, he erred in not finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 were protected on this basis. (*Id.*) Citing a treatise, which in turn cited *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), Eckert argues that other courts have found such communications privileged. (*Id.* (quoting Paul

11

R. Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("The work considered legal assistance by the court included preparation for possible testimony [and] analysis of the probable legal consequences and antitrust considerations of the proposed legislation.")).) Eckert also points out that the same treatise has relied on *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1 (2016). (*Id.* (quoting Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.")).)

POM distinguishes *Westinghouse* in two important ways. (Doc. 373, pp. 11–13.) First, *Westinghouse* did not center on attorney-client privilege. Instead, it concerned an attempt to disqualify a law firm from representing a client in antitrust litigation. 580 F.2d at 1312–13. The attempt to disqualify was rooted in a conflict of interest which arose from the firm's prior legislative efforts. *Id.* at 1313–14.

Second, *Westinghouse* does not stand for the proposition that legislative or lobbying advice qualifies as legal advice. (Doc. 373, pp. 12–13.) Rather, in *Westinghouse,* in preparing for the possible testimony, the law firm was "analyzing the probable legal consequences." *Id.* at 1313. That is to say, the conflict of interest did not arise because the firm was helping a client prepare for testimony.

12

Rather, the conflict arose because the firm was providing legal advice. That advice took the form of analyzing probable legal consequences of the proposed legislation, though it may have been interwoven with the firm's preparation for possible testimony.

Eckert does not raise any specific factual error that Judge Saporito purportedly committed with respect to PRIV-00106, PRIV-00107, and PRIV-00108. It merely asserts that these documents related to the preparation of possible testimony before a legislative body. (Doc. 367, p. 16.) That alone is not the basis for attorney-client privilege. And Eckert does not raise any other argument to convince this court that Judge Saporito erred.

Eckert raises the same argument regarding PRIV-00900. But PRIV-00900 contains no legal advice, nor was it conveyed for the purpose of providing or obtaining legal advice. It is correspondence seeking feedback on proposed written testimony to be provided to a state legislative committee. The correspondence does not include, seek, or relate to legal advice. Neither does the attached proposed testimony. And, unlike in *Westinghouse*, here the preparation for testimony does not involve or contain legal advice or analysis. Although preparation for testimony before a legislative body can be protected by attorney-client privilege, such is not the case here. For these reasons, the court will deny

13

Eckert's appeal with respect to PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900.

### 3. Judge Saporito did not err in finding that PRIV-0074 was not protected by attorney-client privilege.

Eckert argues that PRIV-0074 should be protected by attorney-client privilege because it analyzes whether proposed legislation would satisfy a particular legal standard. (Doc. 367, p. 16.) As Judge Saporito noted, PRIV-0074 consists of "email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation." (Doc. 353, p. 33.) It also "forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the 'gist of the bill.' The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether." (*Id.*)

The court finds that the majority of this communication does not relate to legal advice or analysis. Instead, it solely "concerns legislative, political, or policy advice only—not *legal* advice—and thus [is] not protected by attorney-client privilege." (*Id.*) There is an exception to this characterization. The sixth bullet point on the first page of PRIV-0074 does pertain to a legal analysis of the proposed legislation.

However, under the standard Judge Saporito applied, it was appropriate to conclude that attorney-client privilege did not apply. Under the standard set forth

in *Burton v. R.J. Reynolds Tobacco Co., Inc.*, "[l]egal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege." 170 F.R.D. 481, 484 (D. Kan. 1997). Judge Saporito expressly relied on that standard. (Doc. 353, p. 26.)

Eckert and Parx have not asserted that such reliance is incorrect. Eckert relies on a case that implicitly invokes the same standard. (Doc. 367, p. 13 (citing *Vacco v. Harrah's Operating Co.*, No. CIV. A 1:07-CV-0663, 2008 WL 4703719 (N.D.N.Y. Oct. 29, 2008); *see Vacco's*, 2008 WL 4703719, at *8 (finding that attorney-client privilege applied in part because the law firm's services to the client were primarily legal in nature).) And Parx explicitly relies on the predominant purpose standard:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. ***So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.*** . . . [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be

15

rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

(Doc. 366, pp. 13–14 (emphasis added by Parx) (quoting *In re Cty. Of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007)).)

Eckert and Parx have not contested the validity of the predominant purpose standard.  The predominant purpose of PRIV-0074 was not legal advice. Therefore, attorney-client privilege does not apply.  The court will deny the appeals with respect to PRIV-0074.

### B. Judge Saporito erred in finding that attorney-client privilege did not apply to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

Parx and Eckert argue that Judge Saporito missaplied the legal standard with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.  (Doc. 366, p. 15; Doc. 367, pp. 17–19.)[7]  A review of these documents shows that Parx and Eckert are correct.  Judge Saporito was correct in finding that these communications concerned legislative strategies for outlawing skill games.  (Doc. 353, p. 66.)  But he was incorrect in finding that they concerned legislative, political, or policy advice only—not legal advice.  (*Id.* at 66–67.) Rather, in the context of providing legislative advice, these communications do

---

[7] Of note, the page numbers that Parx and Eckert use appear to correspond to the page numbers of the memorandum attached to the email correspondence.  Parx and Eckert seek to shield the first, sixth, and occasionally second, pages of the legislative strategy memorandum.

16

provide legal analysis and advice. These communications circulate a legislative strategy memorandum. That memorandum addresses how to achieve legislative objectives within the context of existing state law. The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice. Furthermore, legal advice was the predominant purpose of the specific pages that Parx and Eckert identify. No other portions of these documents consist of legal advice. Nor do Parx or Eckert explain any reason for why the other portions should be protected.

Because they have shown that Judge Saporito erred with respect to these communications, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

### C. Judge Saporito did not err in finding that PRIV-00958 and PRIV-00960 were not protected by attorney-client privilege.

Next, Eckert argues that Judge Saporito applied the wrong confidentiality standard. (Doc. 367, pp. 19–20.) As a result, when he applied this incorrect standard to PRIV-00958 and PRIV-00960, he improperly found that they were not protected by attorney-client privilege.[8] (*Id.*) Specifically, Judge Saporito found that these communications were email messages from an Eckert attorney to Parx executives and a Parx lobbyist and they related to legislative strategy. (Doc. 353,

---

[8] In a footnote, Eckert asserts that Judge Saporito applied this incorrect standard to a large number of other documents. (Doc. 367, p. 21 n.4.)

17

pp. 88–89.)  Judge Saporito concluded that, although the legislative strategy outline attached to the emails "was prepared with some client input and conveyed in confidence," the subject matter was not legal advice and therefore not protected by attorney-client privilege.  (*Id.* at 89.)  He also noted that "there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney."  (*Id.*)  Eckert argues that Judge Saporito erred by requiring a communication to involve "confidential facts disclosed by the client" for it to be protected by attorney-client privilege.  (Doc. 367, pp. 19–20.)

Eckert argues that attorney-client privilege "applies to *all* information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."  (*Id.* at 20 (quoting *U.S. Healthcare, Inc. Sec. Litig.*, 1989 WL 11068, at *2 (E.D. Pa. Feb. 7, 1989)).)  For that reason, Eckert asserts that Judge Saporito was incorrect when he found that communications were not privileged because "nothing in the record" suggested that the communications "involved confidential facts disclosed by the client to the attorney."  (Doc. 353, pp. 88–89; Doc. 367, pp. 20–21.)

18

POM argues that Eckert's arguments fail for two reasons.[9]  First, Eckert has failed to bear its burden and show that the communications at issue were confidential.  (Doc. 373, p. 20 (citing *Gillard*, 15 A.3d at 59.)  To "sustain this burden . . . [Eckert] must show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of privilege." *Twp. of Neshannock*, 181 A.3d at 474.  Second, because neither of these documents involved legal advice, they are not privileged.  (Doc. 373, p. 20 (citing *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. Ct. 2023)).)

PRIV-00958 and PRIV-00960 do not concern legal advice.  And Eckert has not pointed to any binding Pennsylvania appellate court decision finding that attorney-client privilege extends to communications beyond those made for the purpose of obtaining or providing legal advice.  Rather, Pennsylvania courts apply attorney-client privilege to confidential communications "made for the purpose of obtaining or providing professional legal advice."  Gillard, 15 A.3d at 59; *Carlino*,

---

[9] More generally, POM also argues that Judge Saporito did not err in applying the confidentiality standard.  POM concedes that the "confidential facts" requirement which Judge Saporito used, although not explicitly overruled, is no longer used by Pennsylvania courts.  (Doc. 373, p. 17–18 & n.5.)  Even so, POM argues that Eckert has not shown clear error or a decision contrary to law.  The "confidential facts" phrasing that Judge Saporito used is quite similar to the "confidential information" language that comes from *U.S. Healthcare*—the only legal authority upon which Eckert relies.

19

301 A.3d at 479.  Because attorney-client privilege does not attach to PRIV-00958 and PRIV-00960, the court will deny Eckert's appeal with respect to them.

### D. Judge Saporito did not err in finding that PRIV-00949 is not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred by overruling its assertion of attorney-client privilege to PRIV-00949.  (Doc. 367, pp. 21–22.)  Omitting footnotes, Judge Saporito analyzed the communication as follows:

> PRIV-00949 [] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania.  The subject matter of these communications concerns legislative, political, or policy advice only—not legal advice—and thus they are not protected by attorney-client privilege.  *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426.  Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client.  *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.  Accordingly, the objection to production of PRIV-00949 [] on attorney-client privilege grounds is overruled.

(Doc. 353, pp. 86–87.)

Eckert argues that Judge Saporito erred in determining that the communication was not privileged due to the absence of "any communication whatsoever from a client."  (Doc. 367, p. 22.)  It further argues that the emails in this communication were "between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client."  (*Id.* at 24 (quoting *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D.

Pa. 1984)).) Eckert asserts that confidential client information appears in the uppermost emails of the thread. (*Id.* at 24.) According to Eckert, in those emails, Eckert attorneys pose and answer a question regarding what Eckert's clients would accept. (*Id.*) Eckert argues that "there is no plausible source of that information other than the referenced clients themselves." (*Id.*)

POM counters that Eckert's assumption about the source of the information is insufficient to show that Judge Saporito's factual findings were clearly erroneous. (Doc. 373, p. 21.) Eckert must show that the client was the source of the information, and that information was confidential. (*Id.*)

Having reviewed the communications contained in PRIV-00949, the court finds that Eckert has not met its burden. There is no indication that the emails contained in this thread include any information that came from an Eckert client. Moreover, a review of PRIV-00949 does not support Eckert's assertion that Judge Saporito erred in concluding that the communications did not concern legal advice. Because Eckert has failed to bear its burden, the court will deny Eckert's appeal insofar as it relates to PRIV-00949.

### E. Judge Saporito did not err in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that the fourth, fifth, and sixth paragraphs of PRIV-00366 were outside the scope of attorney-client

21

privilege.  (Doc. 367, pp. 24–25.)  Eckert argues that these paragraphs "discuss strategic considerations relating to proposed legislation, which . . . is not a subject matter excluded from the scope of attorney-client privilege."  (*Id.* at 24.)  Additionally, Eckert asserts that the sixth paragraph presents opinions and sets forth defense tactics, which weighs in favor of finding that privilege extends to that portion of the document.  (*Id.* at 24–25 (quoting *U.S. Fid. & Guar. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992)).)

The court finds that Judge Saporito was correct in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 do not concern legal advice.  The court denies Eckert's appeal insofar as it relates to the fourth, fifth, and sixth paragraphs of PRIV-00366.

### F. Judge Saporito did not err in finding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 were not protected by attorney-client privilege.  (Doc. 367, p. 25.)  Eckert asserts that Judge Saporito erred in three ways.  First, he concluded that legislative advice was categorically excluded from the scope of attorney-client privilege.  (*Id.*)  Second, he failed to appreciate that the email thread contained in this communication presented opinions and set forth defense tactics, which suggest the finding of privilege.  (*Id.* (citing *Barron*, 809 F.

22

Supp. at 364).) Third, Judge Saporito applied a "confidential client information" standard rather than recognizing that privilege "applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." (*Id.* at 26 (quoting *U.S. Healthcare*, 1989 WL 11068, at *2).)

With respect to Eckert's first argument, as noted above, Judge Saporito did not exclude legislative advice from the scope of attorney-client privilege. He merely distinguished between the two types of advice. Nothing in Judge Saporito's memorandum or order suggested that legislative advice cannot overlap with legal advice. And in these documents, he properly determined that their contents did not include or concern legal advice.

POM points out that Eckert does not assert that these communications contain legal advice. (Doc. 373, p. 23.) Rather, it asserts that they contain confidential information provided for the purpose of presenting opinions and defense tactics. (*Id.*) But Eckert has not presented authority applying attorney-client privilege to information unrelated to legal advice.

The court finds that these communications do not relate to legal advice. Eckert has failed to show clear error. These communications represent updates

regarding legislative affairs and strategy, lobbying, and public relations. They neither contain nor implicate legal advice. The court will deny Eckert's appeal with respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part the appeals to Judge Saporito's order. Specifically, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6, but will otherwise deny the appeals. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 29, 2024

24

April 2024 Order

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS CHERIN & | : | |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## ORDER

**AND NOW**, on this 29th day of April 2024, upon consideration of the

appeals filed in this case, Docs. 361, 362, and the memorandum and order of

Magistrate Judge Joseph Saporito, Docs. 353, 354, and for the reasons stated in the

accompanying memorandum, **IT IS ORDERED THAT:**

1) The appeals are **GRANTED IN PART AND DENIED IN PART**.

    (Docs. 161, 162.)  Specifically, the appeals are **GRANTED** with

    respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at

    1–2, 6; and PRIV-00755 at 1–2, 6, but **DENIED** in all other respects.

2) In Judge Saporito's memorandum, the court **REVERSES** the

    paragraph of Section III.D.3. in which Judge Saporito addresses

    PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00679.  (Doc.

353, pp. 88–89.)  In all other respects, the court **AFFIRMS** Judge

Saporito's memorandum.

3) The court **REVERSES** paragraph 5 of Judge Saporito's order, Doc.

354, with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6;

PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.  The court

**AFFIRMS** Judge Saporito's order in all other respects.

4) **Within 21 days** of this order's entry, Defendants **SHALL**

**PRODUCE** the documents directed in Judge Saporito's order, Doc.

354, without redaction, except for PRIV-00679, PRIV-00684, PRIV-

00685, and PRIV-00679, which Defendants **SHALL PRODUCE**

with redactions in accordance with this order and the findings of the

accompanying memorandum.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

July 2024 Opinion
(Reconsideration)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                     :         Civil No. 1:20-CV-00292
                                        :
     Plaintiff,                        :
                                        :
     v.                                :
                                        :
ECKERT, SEAMANS CHERIN &                :
MELLOTT, LLC, *et al.*,                 :
                                        :
     Defendants.                       :         Judge Jennifer P. Wilson

## **MEMORANDUM**

Before the court is a motion filed by third-party Greenwood Gaming &

Entertainment, Inc. d/b/a Parx Casino ("Parx") to reconsider this court's

memorandum and order affirming in part and reversing in part United States

Magistrate Judge Joseph Saporito, Jr.'s resolution of a discovery dispute.

(Doc. 387.)

Defendants Eckert, Seamans, Cherin & Mellott, LLC; Kevin M. Skjoldal;

and Mark S. Stewart (collectively, "Eckert") and Parx previously appealed Judge

Saporito's decision regarding one of many discovery disputes. Following an *in*

*camera* review of 120 purportedly privileged documents, Judge Saporito's order

determined which documents were protected by privilege and which were not.

(Doc. 354.) Judge Saporito ordered the unprotected documents to be produced

within 21 days unless the ruling was appealed. (*Id.*) Defendants and Parx

appealed. (Docs. 361, 362.)

1

The court granted the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6,[1] but otherwise denied the appeals. Parx now seeks reconsideration or certification for appeal. (Doc. 387.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert for an alleged breach of fiduciary duty to POM. (Doc. 1.) POM alleges that this breach stems from Eckert's representation of both POM and a third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania. (Doc. 166, pp. 1–2.)[3]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania. That was because Eckert represented Parx, a market competitor, in Pennsylvania. (*Id.* at

---

[1] These four documents are email communications with memoranda attachments. When pin citing to these four documents, the court utilizes the page numbers at the bottom of the memoranda attached to the emails.

[2] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth

Court of Pennsylvania through other counsel relating to the seizure and removal of

some of its skill games in Pennsylvania.[4]  (*Id.* at 3.)  During this litigation in the

Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon &

Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in

opposition to POM's position, as well as motions to intervene.  (*Id.* at 4–5.)  In

January 2020, POM learned that Eckert was allegedly involved in some capacity

with Parx's representation in the Commonwealth Court cases, assuming positions

materially adverse to POM's position despite Eckert's ongoing representation of

POM in Virginia.  (*Id.* at 5.)  After POM requested that Eckert withdraw from

representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew

from representing POM in Virginia.  (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the

procedural history of the discovery dispute underlying the instant motion:

> This is one of a series of discovery disputes that the parties have
> been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic,*
> *Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021
> WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021
> WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641
> (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5,
> 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).
>
> In response to Rule 34 requests for production served by POM,
> Eckert produced a 116-page privilege log describing 1,010 responsive

---

[4] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.  (Doc. 166, p. 4.)

email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to 120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.) The initial discovery dispute was litigated solely between POM and Eckert. The court referred this discovery dispute to Judge Saporito on June 28, 2023. (Doc. 313.)

On December 1, 2023, following an *in camera* review of the disputed documents and the parties' briefs, Judge Saporito issued a memorandum and order resolving which documents were protected by privilege and which were not. (Docs. 353, 354.) In his order, Judge Saporito sustained in part the assertions of privilege regarding four documents. (*Id.*) He determined that the majority of documents were not protected from production and ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*)

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision.[5] (Docs. 361, 362.) In their appeals, they asserted that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not protected from disclosure by attorney-client privilege and the federal work-product doctrine. (Doc. 361, pp. 2–3; Doc. 362, p. 3.)

On April 29, 2024, this court affirmed in part and reversed in part Judge Saporito's decision. (Doc. 383.) The court ordered the production of all of the documents at issue, instructing that PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 should be redacted. (*Id.*) On May 13, 2024, Parx filed the instant motion asking the court to reconsider its order or otherwise certify it for appeal to the Third Circuit. (Doc. 387.) Meanwhile, Parx requested that the court stay its order for production, which the court did on May 14, 2024. (Doc. 390.) While this motion was pending, Parx filed a notice of appeal on May 28, 2024. (Doc. 394.) The motion for reconsideration has been briefed and is ripe for disposition. (Docs. 388, 393, 396.)

## STANDARD OF REVIEW

A party seeking reconsideration of a district court's order must show either (1) "an intervening change in the controlling law"; (2) the availability of new

---

[5] Despite not having litigated the underlying discovery dispute, Parx appealed Judge Saporito's decision. No party protested Parx's appeal on this basis.

5

evidence that was not available when the court issued its prior order; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of." *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at *1 (M.D. Pa. May 17, 2011)). Additionally, a motion for reconsideration "may not be used to present a new legal theory for the first time" or "to raise new arguments that could have been made in support of the original motion." *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. PA. 2020) (citing *Vaidya Xerox Corp.*, No. 97-CV-00547, 1997 WL 732464, *2 (E.D. Pa. Nov. 25, 1997)). A "mere disagreement" with a court's legal conclusion is not a sufficient basis for reconsideration. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (citing *Mpala v. Smith*, No. 3:06-CV-00841, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007)).

Although a court may reconsider a prior order based on a party's motion, motions for reconsideration "should be granted sparingly as federal courts have a strong interest in the finality of judgments." *Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005). The decision of whether to grant a

motion for reconsideration is left to the discretion of the district court. *Le v. Univ. of Pa.*, 321 F.3d 403, 405 (3d Cir. 2003).

**DISCUSSION**

**A. Reconsideration**

Parx argues that this court should reconsider for five reasons, all of which are based on purportedly manifest errors of law and fact. (Doc. 388, pp. 10–24.) The court will consider each argument in turn.

**1. Parx's argument regarding legislative advice fails.**

Parx argues that this court erred by concluding that there is a difference between legislative advice and legal advice. (Doc. 388, p. 10.) While admitting that "Pennsylvania courts have yet to weigh in," Parx insists that this court has erred in finding that legislative and legal advice are distinct.[6] (*Id.* at 11.) Parx further argues that this court was incorrect in its understanding of Judge Saporito's

---

[6] So the record is clear, Parx makes multiple arguments regarding the relationship between legislative and legal advice for purposes of attorney-client privilege. First, Parx argues that the two are not mutually exclusive. (Doc. 388, p. 6.) The court agrees. Second, Parx argues that the court effectively found that the two are mutually exclusive. (*Id.* ("[T]he Court sub silentio endorsed a per se approach to the privilege analysis that exposes far more of Parx's privileged materials to public disclosure than it should.").) The assertion that this court applied a per se approach is demonstrably incorrect. The court found that portions of PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 were protected by attorney-client privilege. (Doc. 382, pp. 16–17; Doc. 383.) The court found that these documents, which concern legislative strategy, also concern legal advice. (Doc. 382, pp. 16–17 ("These communications circulate a legislative strategy memorandum. That memorandum addresses how to achieve legislative objectives within the context of existing state law. The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice.")) Third, Parx argues that advice from lawyers on legislative matters is *per se* legal advice, though it admits that no Pennsylvania court has found as such. (Doc. 388, pp. 10–11.)

7

ruling. (*Id.*) Though this court apparently misapprehended his ruling, Parx asserts that Judge Saporito erroneously "created a *per se* rule" determining that legislative advice could *never* constitute legal advice. (*Id.*)

Regarding the purported factual errors, Parx merely disagrees with this court's reading of Judge Saporito's memorandum. Because the court was not persuaded by this argument the first time, Parx seeks reconsideration to air its argument a second time. But, Parx points to no error.

Parx's legal argument likewise falls flat. It argues that this court erred. But Parx concedes that no binding case law supports its assertion of error. Nor does it point to any binding or persuasive authority for the proposition that legislative advice is per se legal advice.[7] The court will deny Parx's motion regarding legislative advice.

### 2. The court erred in overlooking Parx's declaration, but the error was harmless.

Parx next argues that this court erred by overlooking the declaration, which it provided on appeal to support its privilege claim. (*Id.* at 14.) In its reply brief in

---

[7] Indeed, for most of the cases cited by Parx, there is no explanation whatsoever as to the legal significance. (Doc. 388 (citing *Weissman v. Fruchtman*, No. 83 Civ. 8958, 1986 WL 15669, at \*15 (S.D.N.Y. Oct. 31, 1986); *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 24 (2016)).) In its prior memorandum, the court addressed two of these cases. (Doc. 382, pp. 11–14 (explaining why *Westinghouse* and *Harrington* were inapplicable to certain documents that Eckert argued were protected by attorney-client privilege).) Yet, in its current motion, Parx provides no explanation for how the court erred in its discussion of these cases.

8

support of its appeal from Judge Saporito's decision, Parx pointed to this sworn declaration, referring to it as an affidavit. (Doc. 374, p. 6.) When the court denied Parx's appeal, it stated that Parx had first raised the issue of an affidavit in its reply. (Doc. 382, p. 7 n.5.) The court concluded, therefore, that Parx had waived the issue. (*Id.*) But, in fact, Parx had raised the issue in its initial brief in support of its appeal, where it cited to a sworn declaration. (Doc. 366, p. 6 & n.1; Doc. 366-1.)

Accordingly, this court erred by not recognizing that Parx had referenced its sworn declaration with its initial supporting brief. But, upon further analysis, that error was harmless.

In support of its appeal from Judge Saporito's decision, Parx presented a declaration to support its claim of attorney-client privilege. (Doc. 366, p. 6 n.1 & Doc. 351-1.) Parx first filed the declaration on November 21, 2023, in connection with another discovery dispute in this case. (Doc. 351-1.) This declaration was docketed nearly five months after the court referred the instant dispute to Judge Saporito, on June 28, 2023. (Doc. 313.) In presenting its appeal, Parx "recognize[d] that the declaration has been submitted with another filing but note[d] for the Court's consideration that this appeal is the first opportunity for the company to weigh in on the latest discovery order and therefore must rely on the extant record to support it." (Doc. 366, p. 6 n.1.) In effect, Parx asks this court to

consider evidence on appeal that was not presented to Judge Saporito in the

original discovery dispute.[8]

_____

[8] The court seeks to clarify one issue for the record.  In opposing Parx's appeal, POM argues that the declaration is inconsequential, because this court conducted a document-by-document review of all of the documents at issue.  (Doc. 393, p. 7.)  To be clear, based on the arguments that Parx and Eckert presented on appeal, the court did not conduct an *in camera* review of all 120 documents.  The court did not perceive that such a review was necessary based on the arguments that were presented.

On appeal, Parx effectively raised four arguments.  First, it argued that all of the documents are protected based on its declaration.  (Doc. 366, pp. 10–12.)  Second, it argued that Judge Saporito erred by concluding that legislative advice cannot be legal advice per se.  (*Id.* at 13, 19.)  Third, it argued that the documents are protected because legislative advice is per se legal advice.  (*Id.* at 13–15 ("The question then becomes whether 'legislative advice' – for example, advice on pending legislation, drafting proposed legislation, monitoring and reviewing legislative efforts, and related matters – constitutes 'legal advice' that is protected from disclosure.").)  The court perceived this argument to hinge on the legal issue of whether legislative advice constitutes legal advice.  (Doc. 366, p. 15 (Parx arguing "[a]s in these cases, the documents at issue reflect legal analysis of existing and proposed legislation at both the state and local level.").)  The court did not find it necessary to conduct an in camera review of all 120 documents to address the legal question of whether the authorities Parx presented stood for the proposition that legislative advice was per se legal advice.

However, interspersed within its third argument, Parx also argued that "[f]or example, documents reflect analysis of legal consequences associated with certain pending legislation," and Parx cited nine documents as examples.  (*Id.*)  Parx did not specify *which* documents reflect such analysis beyond the examples it provided.  (*Id.*)  The court perceived this argument as a qualitatively different argument from the third explained above and addressed it as a separate argument.  This separate argument did not merely implicate "advice on pending legislation" and argue that such advice was legal advice.  Instead, it asserted that "documents" reflected "analysis of legal consequences" associated with consequences of pending legislation.  It was not arguing that legislative advice was per se legal advice.  Instead, it was asserting that certain documents contained legal advice in the form of analyzing the legal consequences of, among other things, pending legislation.  The court did not perceive this argument as extending to *all* of the documents then on appeal, but rather the documents specifically referenced by Parx.  Accordingly, the court reviewed the nine documents Parx cited.  The court found that five were not protected by privilege and four were partially protected.  Although the court conducted additional in camera review in response to Eckert's appeal, it concluded that no further review was required to adjudicate Parx's arguments.

10

Under Pennsylvania law, "[w]hether attorney-client privilege protects a particular communication is a question of law." *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1019 (Pa. Super. Ct. 2015) (quoting *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014)). This court reviews matters of law de novo on appeal from non-dispositive orders of a magistrate judge. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)).

Parx has presented no authority for its argument that a court must consider new evidence when reviewing a matter of law being appealed from a non-dispositive order by a magistrate judge. (Doc. 366, p. 6 n.1.) The court has not found any authority directly on point. Federal Rule of Civil Procedure 72(a), governing non-dispositive pretrial orders by magistrate judges, is silent on the issue. But Rule 72(b), governing dispositive motions handled by magistrate judges, offers helpful guidance.

When reviewing a magistrate judge's opinion on dispositive motions and prisoner petitions, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In addressing Rule 72(b), the Notes of Advisory Committee on Rules—1983 noted that "[t]he term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second

11

evidentiary hearing is required." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. This suggests that when making de novo determinations, the district court need not include new evidence in its deliberations. If the court need not consider new evidence when reviewing dispositive motions, it seems illogical that it would be required to do so for appeals of non-dispositive orders.

Because Parx presented its declaration with its supporting brief appealing Judge Saporito's decision, the court erred in stating that Parx had only done so in its reply. But this court was not obligated to consider this new evidence in any event.

Even if the declaration had been timely filed, Parx's declaration would be insufficient to bear its burden and show privilege in the documents now at issue. That is because the declaration was submitted in a different discovery dispute and makes no reference to the specific 120 documents at issue in this dispute.

### 3. Parx cannot raise a new argument for redaction.

Parx argues that, although this court applied the correct predominant-purpose test, it misapplied this test to PRIV-0074. (Doc. 388, p. 18.) This court found that "the majority of this communication does not relate to legal advice or analysis." (Doc. 382, p. 14.) The court found that one small portion of the document, the sixth bullet point on the first page, did pertain to a legal analysis. (*Id.*) But under the relevant legal standard, which Parx concedes was correct to

12

apply, "[l]egal advice must predominate for the communication to be protected. The [attorney-client] privilege does not apply where the legal advice is merely incidental to business advice." (*Id.* at 15 (quoting *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997)).)

On appeal, Parx argued that PRIV-0074 was protected by attorney-client privilege. (Doc. 366, p. 15.) It made no argument in the alternative that, if the court disagreed and found that only portions of the document pertained to legal advice, a redacted copy should be produced.[9] POM argues that Parx may not raise this new alternative argument for redaction in its motion for reconsideration. (Doc. 393, pp. 8–9.) POM is correct. A motion for reconsideration "may not be used to present a new legal theory for the first time [or] to raise new arguments that could have been made in support of the original motion." *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. Pa. 2020).[10]

---

[9] Parx argues that it did make this argument on appeal from Judge Saporito's order. (Doc. 396, p. 9 (citing Doc. 374, pp. 4, 7, 10–11).) But the cited pages do not appear to address either redaction or PRIV-0074. Moreover, Doc. 374, to which Parx cites, was its reply brief on appeal. As Parx should be aware, "[a]rguments raised for the first time in a reply brief are generally waived." *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

[10] Had Parx raised this issue on its initial appeal, the court would have considered it. The reason the court now rejects Parx's argument is because it has waived the issue.

Parx displays a knack for untimely developing its arguments. For example, in its reply brief for the instant motion, Parx presents a clear and cogent argument as to how this court should have applied the predominant purpose test and when and how redaction should be used. (Doc. 396, pp. 9–10.) But this argument, raised on reply, is deemed waived. Had it presented this argument earlier, it may well have prevailed. But its initial brief was cursory.

13

### 4. The court rejects Parx' argument regarding PRIV-00679; PRIV-00684; PRIV-00685; and PRIV-00755.

In its appeal from Judge Saporito's decision, Parx made few specific arguments regarding specific documents that concerned specific legal advice. One exception to that is the following passage from Parx's brief in support of its appeal:

> [T]he documents at issue reflect legal analysis of existing and proposed legislation at both the state and local level. *See* Doc. 351-1, Ex. A, Bonner Decl. at ¶ 8. For example, documents reflect analysis of legal consequences associated with certain pending legislation, preparing testimony, making recommendations about legislation, evaluating whether proposed legislation withstands judicial review, and evaluating the interests of the client in the event proposed legislation becomes law. *See, e.g.*, PRIV-0074, PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, PRIV-000679 at 6, PRIV-00684 at 2, 6; PRIV-00755 at 2, 6; PRIV-00685 at 2, 6, PRIV-000679 at 1, PRIV-00684 at 1, PRIV-00755 at 1, and PRIV-00685 at 1.

(Doc. 366, p. 15.)

In doing so, Parx specifically cited to pages 1 and 6 of PRIV-00679; pages 1, 2, and 6 of PRIV-00684; pages 1, 2, and 6 of PRIV-00685; and page 1 of PRIV-00755. Parx argued that these pages reflect legal analysis and thereby advice. The court agreed. (Doc. 382, p. 16.)

---

In another untimely argument, Parx asserts in its reply brief that "[e]ven if [it] did not specifically argue for redaction in the alternative, the Court is duty bound to order redactions of privileged information and should do so even without prompting in order to protect against disclosure of privileged information as prohibited by Fed. R. Civ. Pro. 26(b)(1) and Fed. R. Civ. Pro. 45(d)(3)(A)(iii)." (Doc. 396, p. 9.) Once again, this is an argument Parx could have included in its initial brief in support of its motion, but did not.

The court found that "legal advice was the predominant purpose of the specific pages that Parx and Eckert identify." (*Id.* at 17.) However, "[n]o other portions of these [four] documents consist of legal advice. Nor do Parx or Eckert explain any reason for why the other portions should be protected." (*Id.*) Therefore, the court granted the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6. (Doc. 383, ¶¶ 2–3.) The court ordered that Defendants produce PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 with redactions in accordance with its order and the findings of its memorandum. (*Id.* ¶ 4.) It ordered the production of the other documents at issue without redaction. (*Id.*)

Parx argues that it did not intend to protect only the cited pages of those documents. (Doc. 388, p. 20.) Instead, it sought to protect those documents in their entirety. (*Id.*) Citing *The Bluebook*, Parx argues that its use of the signal *e.g.* did not in any way limit its assertion of privilege to the pages it cited.[11] (*Id.* (citing *The Bluebook: A Uniform System of Citation* R. 1.2 (Columbia Law Review Ass'n et al eds., 19th ed. 2012)).) While the court appreciates the significance of the use of the signal *e.g.*, that does not eliminate Parx's burden as an appellant or movant to clearly explain to the court the relief it is seeking. Where Parx specifically cited

---

[11] Apparently for the court's benefit, Parx also provides an explanatory parenthetical of *The Bluebook*'s assessment that, when using *e.g.*, additional citation is unnecessary. (Doc. 388, p. 20.)

certain documents purportedly containing legal advice, the court conducted an in camera review. In some instances, the court found specific portions of documents protected by attorney-client privilege and sua sponte ordered those portions to be redacted. Parx assumed that the court would somehow intuit its argument with respect to other unspecified documents or portions of documents. That is not effective advocacy in a dispute over whether specific documents are privileged, even if it involves the technically correct usage of an introductory signal pursuant to *The Bluebook*.

Parx also argues that the court erred by not finding that page 2 of PRIV-00679 was privileged. (*Id.*) According to Parx, PRIV-00679 is identical to PRIV-00684, PRIV-00685, and PIV-00755. (*Id.*) Being identical, page 2 of PRIV-00679 must be privileged because the second page of PRIV-00684, PRIV-00685, and PIV-00755 are privileged. (*Id.*) When appealing Judge Saporito's decision, Parx specifically cited the latter as examples of privilege but omitted the former. Parx asserts that its omission was not intended to waive privilege. (*Id.* at 19–20.) Because Parx is the client to whom the privilege belongs, its intent controls. (*Id.* at 19 (citing *Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. Ct. 2018)).)[12]

---

[12] Parx provides no pin cite for this assertion or any explanation for how this case applies to its instant motion. (Doc. 388, pp. 19–20.) It does not explain how or why *McCullough* stands for the proposition that a party's subjective intent not to waive an argument impacts the analysis of that party's objective failure to raise an argument on appeal.

Parx's factual assertion that "all four documents are identical" is factually incorrect. Page 2 of PRIV-00679 is not the same as page 2 of the other documents. Rather, it is similar if not identical to portions of pages 3 and 4 of PRIV-00684, PRIV-00685, and PRIV-00755. The court found these pages did not consist of legal advice and that Parx did not explain any reason why they should be protected. (Doc. 382, p. 17.)

For the reasons stated above, the court will deny Parx's motion insofar as it is raised regarding PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755.

### 5. Parx may not raise new arguments regarding permitting and licensing on its motion for reconsideration.

Parx argues that "[c]onfidential communications about obtaining legal authorizations such as permits and licenses are protected by attorney-client privilege." (Doc. 388, p. 21 (citing *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 336, 1996 WL 50746 (E.D.N.Y. 1996)).) This is an entirely new argument. Parx did not raise this argument on appeal, though it could have. The court will deny Parx's motion with respect to this newly raised argument.

### B. Certification

A district court may certify an order for appeal if the court finds that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Thus,

certification under § 1292(b) is only proper when "(1) the issue involve[s] a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and (3) an immediate appeal of the order may materially advance the ultimate termination of the litigation." *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). The party seeking a certificate of appealability bears the burden of showing that the certificate should issue. *Consumer Fin. Protection Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. Feb. 26, 2021) (citing *Orson Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)).

Rather than providing a comprehensive analysis of these three requirements, Parx relies primarily on a single quote as the legal basis for the sufficiency of its request for certification:

> The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). Parx argues that, as this court acknowledged in its memorandum, whether legislative advice per se constitutes legal advice is a question of law. (Doc. 388, p. 23 (citing Doc. 382, pp. 7–8).) It argues, without citation, that there are substantial grounds for disagreement on whether legislative advice is per se legal advice. (*Id.*) And Parx

18

makes no argument about whether an immediate appeal of this issue would advance the ultimate termination of litigation.

While *Mohawk* may provide this court with discretion to certify the issue, Parx does not present argument to persuade the court to do so. And, other than its aforementioned quote of *Mohawk*, Parx presents nothing more than cursory conclusions as to why the first two elements of § 1292(b) are met. (*Id.*)

Although POM presents many counterarguments, the court here will only recount three of them. First, it argues that Parx has failed to show that the issue involves a controlling question of law. (Doc. 393, pp. 12–15.) The issue is not controlling, which the Third Circuit has explained to mean "serious to the conduct of the litigation, either practically or legally." (*Id.* at 13 (quoting *Katz v. Carte Blanceh Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc)).) Here, POM argues, the resolution of this issue will not impact "whether a trial occurs, or what claims or theories of recovery are presented at trial."[13] (*Id.* (citing *Union Pac. R. Co. v. ConAgra Poultry Co.*, 189 F. App'x 576, 579 (8th Cir. 2006)).)

Second, POM argues that Parx has not identified substantial grounds for difference of opinion. (*Id.* at 16–18.) That requirement is met when "there is

---

[13] POM argues that, even if this court's ruling were incorrect, it would not be reversible error under Third Circuit precedent. (Doc. 393, p. 13 (quoting *Summy-Long v. Penn St. Univ.*, 715 F. App'x 179, 184 (3d Cir. 2017) ("[A] district court's discovery ruling will not be reversed without determining that it resulted in actual and substantial prejudice and was a gross abuse of discretion resulting in fundamental unfairness.").)

19

genuine doubt or conflicting precedent as to the correct legal standard to be applied in the order at issue." (*Id.* (quoting *Small v. Lower Paxton Twp.*, No. 1:22-cv-1146, 2024 WL 691360, at *7 (M.D. Pa. Feb. 20, 2024)).) Neither are present here. (*Id.*) While Parx disagrees with the court's legal ruling, it has provided no precedent showing that legislative advice is per se legal advice. (*Id.*) But "a party's disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion' within the meaning of the statute." (*Id.* (quoting *Small*, 2024 WL 691360, at *7).)

In response, Parx raises a new argument: that the instant dispute is akin to this court's prior decision in which it certified a question to clarify how judicial estoppel interacts with attorney-client privilege. (Doc. 396, pp. 12–14.) Perhaps Parx should have raised that issue in its initial brief. Because it failed to do so, the issue is deemed waived. Parx raises no other meaningful argument that there are substantial ground for difference of opinion. It therefore fails to establish the second requirement for certification.

Third, POM argues that certification would not materially advance the ultimate termination of this litigation. (Doc. 393, pp. 18–22.) POM explains the theory underlying its case and how, while it expects that the documents at issue here would strengthen its case, they are not indispensable. (*Id.* & n.2.) For that

20

reason, an immediate appeal of the instant dispute would not impact termination of this litigation. (*Id.* at 21.)

In response, Parx argues that allowing an appeal of this issue would impact the ultimate termination of this litigation by "avoiding a situation in which the Court may be compelled to retry the case without the privilege documents after the Third Circuit weighs in at a later time." (Doc. 396, p. 16.) Once again, Parx could have raised this issue in its initial brief but failed to. The issue is deemed waived.[14] Other than the above quote from *Mohawk*, Parx presented no other argument regarding the third certification requirement. (Doc. 388, pp. 22–24.) It has not met its burden as to the third requirement for certification.

Because Parx has failed to meet its burden in showing the second and third requirements for certification, the court will deny its request.

## CONCLUSION

For the reasons stated above, the court will deny Parx's motion insofar as it seeks reconsideration and certification to appeal.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 3, 2024

---

[14] Parx also argues that POM would suffer no prejudice if the court certified the order for appeal. (Doc. 396, p. 17.) Yet again, Parx has waived the issue by not raising it earlier.

July 2024 Order
(Reconsideration)

Case 1:20-cv-00292-JPW Document 19 Page 54 Filed Date Filed 07/11/2024 Page 20 of 23

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC., : Civil No. 1:20-CV-00292

Plaintiff, :

v. :

ECKERT, SEAMANS CHERIN & :
MELLOTT, LLC, *et al.*, :

Defendants. : Judge Jennifer P. Wilson

## **ORDER**

**AND NOW**, on this 3rd day of July 2024, for the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT**:

1) The motion for reconsideration or certification filed by Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), Doc. 387, is **DENIED**;

2) This court's May 14, 2024 order, staying Defendant's production of discovery documents pending resolution of Parx's motion, is **LIFTED**;

3) However, given that Parx has apparently appealed the court's order to the Third Circuit, Docs. 394 and 395, the deadlines in Paragraph 4 of this court's order dated April 29, 2024, Doc. 383, are **STAYED** pending the resolution of Parx's appeal;

Case 1:20-cv-03029-JPW Document 19 Page 55 Filed 07/11/24 Page 23 of 23

4) Within **14 days** of the Third Circuit resolving the appeal, Parx **SHALL** file notice, no longer than three pages, with this court to (1) notify the court of the Circuit's resolution and (2) address any other reason this court should not lift the stay of production.

5) Within **14 days** of Parx filing such notice, POM and Eckert shall each be permitted to file a response of no longer than three pages.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania