**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

CASE NO. 24-1984

**PACE-O-MATIC, INC.,**

*Plaintiff-Appellee,*

v.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC, ET AL.,**

*Defendants,*

and

**GREENWOOD GAMING & ENTERTAINMENT, INC.,**

*Appellant.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:20-cv-00292

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
APPELLATE JURISDICTION**

**HUSCH BLACKWELL LLP**
Jeffrey B. Jensen
Michael Nolan
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
Jeff.Jensen@huschblackwell.com

**JAMES OTIS LAW GROUP LLC**
Michael Martinich-Sauter
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
Michael.martinich-sauter@james-otis.com

# **TABLE OF CONTENTS**

I.  The Court Lacks Jurisdiction Under *Perlman*...........................................................1

   A. *Perlman* does not apply, because Eckert is not "disinterested."..........................1

   B. *Perlman* does not apply, because Parx has alternative avenues for appellate review.................................................................................................................5

II. The Court Lacks Jurisdiction Under the Collateral-Order Doctrine.....................8

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Church of Scientology v. United States*, 506 U.S. 9 (1992) .......................................2

*Cunningham v. Hamilton Cnty.*, 527 U.S. 198 (1999) ...............................................11

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) .....................................6

*In re Flat Glass Antitrust Litig.*, 288 F.3d 83 (3d Cir. 2002) ....................................4

*In re Grand Jury (ABC Corp.)*, 705 F.3d 133 (3d Cir. 2012) ....................................2

*In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798 (3d Cir. 1979) .........4, 5

*In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231 (9th Cir. 1987) .......3

*In re Naranjo*, 768 F.3d 332 (4th Cir. 2014) ...................................................... 3, 4, 5

*In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998) ...................................................4

*In re Sealed Case*, 655 F.2d 1298 (D.C. Cir. 1981) ..................................... 5, 6, 7, 8

*In re Vargas*, 723 F.2d 1461 (10th Cir. 1983) ..........................................................4

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ....................................9, 10

*United States v. Ryan*, 402 U.S. 530 (1971) ..............................................................6

*Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350 (Fed. Cir. 2017) ........................6, 8

**Statutes**                                                               **Page(s)**

28 U.S.C. § 1292 ........................................................................................................8

This discovery dispute has been pending since May 2023. The dispute involves documents of core relevance to this breach-of-fiduciary-duty litigation: communications evidencing efforts by Defendant Eckert Seamans to lobby the Pennsylvania Legislature to ban the products of POM (Eckert's then-client). As described in the Motion to Dismiss, this lobbying effort was one component of Eckert's multi-faceted plan to destroy POM. Eckert carried out this misconduct at Parx's behest, while serving as the registered lobbying firm of Parx (who—unlike POM—apparently knew of Eckert's conflict from the outset). The documents at issue are highly relevant to this litigation: they provide direct, compelling evidence of actionable misconduct by the Defendants in this case, and they will be used to establish the liability of the Defendants in this case.

For more than a year, Eckert and Parx have avoided production of these highly relevant documents by advancing the novel—indeed, entirely unprecedented—theory that lobbying and legislative advice ***always*** constitutes legal advice protected by the attorney-client privilege. No court has ever accepted that theory, nor does any policy underlying the privilege support it. The District Court and the Magistrate Judge correctly and repeatedly rejected this theory. The documents at issue here simply are not privileged.

Rather than pursuing mandamus relief—the established mechanism for seeking immediate review of adverse privilege rulings, but one ordinarily resolved

1

on a more expedited timeline—Parx has sought to further delay the proceedings below by pursuing a purported direct appeal. The continued and unnecessary pendency of this discovery dispute prevents POM from conducting critical depositions, completing document discovery, and pursuing other key litigation objectives. Parx's delay tactics have gone on long enough. The Court should grant POM's motion to dismiss for lack of jurisdiction (the "Motion").

## I.    The Court Lacks Jurisdiction Under *Perlman*.

### A.    *Perlman* does not apply, because Eckert is not "disinterested."

The *Perlman* doctrine applies only if the challenged discovery order "is directed at a *disinterested* third party lacking a sufficient stake in the proceeding to risk contempt by refusing compliance." *In re Grand Jury (ABC Corp.)*, 705 F.3d 133, 144 (3d Cir. 2012) (emphasis added). In its Motion, POM identified several grounds for concluding that Eckert is not "disinterested" under the *Perlman* doctrine. Motion, 7-10. Parx's responses lack merit.

First, Parx contends that attorneys are "presumptively disinterested." Parx Brief in Opposition to Motion to Dismiss ("Opposition"), 11.[1] No authority supports

---

[1] Parx cites *Church of Scientology v. United States* for the proposition that "courts *presume* a third party would not voluntarily submit to contempt in order to prevent a non-party's privileged documents from disclosure." Opposition, 11. But the cited passage of *Church of Scientology* applies only to "a discovery order directed at a ***disinterested*** third party." 506 U.S. 9, 18 n.11 (1992) (emphasis added). Thus, any purported "presumption" would apply only to a ***disinterested*** third party.

that extraordinary position.  To be sure, in most cases, attorney-custodians *will* be disinterested, because they will have no particular stake in opposing production beyond their ethical obligation to assert colorable privilege claims on behalf of clients.

But here, Eckert is no ordinary attorney-custodian.  The documents at issue evidence Eckert's own misconduct, and they likely will establish Eckert's own liability in the underlying litigation.  Thus, Eckert is not similarly situated to the lawyers in cases like *ABC Corp.*, where the Court has applied *Perlman*.  Eckert has its own strong interests in opposing production of the documents and its own incentive to go into contempt rather than producing them.  Courts have consistently rejected application of *Perlman* where—as here—the documents at issue implicated the attorney-custodians in misconduct of their own.  *See, e.g.*, *In re Naranjo*, 768 F.3d 332, 345-46 (4th Cir. 2014) (finding *Perlman* inapplicable because the attorney-custodians were "alleged to have committed greater misdeeds than any attributed to the clients" and thus "might have a more substantial interest in keeping the documents confidential than do the [privilege holders]"); *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 233, 237 (9th Cir. 1987) (finding *Perlman* inapplicable where government had presented evidence of misconduct by both the privilege holder and the custodian-attorney, and describing "the attorney [as] an active participant in the litigation").  Because Eckert has its own strong interests in

3

opposing disclosure of the documents at issue, Eckert is not "disinterested," and *Perlman* does not apply. *Id.*

Second, Parx claims that it is irrelevant that Eckert has asserted its own work-product protections over the documents at issue. Opposition, 14-16. Parx contends that POM's argument improperly relies on out-of-circuit cases that conflict with this Court's precedent. But this Court has recognized that, where a custodian "asserts its own interests in the work product, it has the requisite incentives to risk contempt." *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.9 (3d Cir. 2002) (quotation omitted). Moreover, this Court has never suggested that its case law differs from the approach taken by every other Circuit to consider the issue. Indeed, in support of the passage from *Flat Glass* quoted above, the Court cited *In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998)—one of the out-of-circuit cases on which POM relies and that Parx claims are contrary to this Court's precedent. As reflected by *Flat Glass*, this Court's approach is entirely consistent with the approach taken by other Circuits. *See Naranjo*, 768 F.3d at 345; *Sealed Case*, 141 F.3d at 340; *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983).

*FMC Corp.* is not to the contrary. *FMC Corp.* did not even consider whether the attorney-custodian was "disinterested" within the meaning of *Perlman*. *See In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 801-02 (3d Cir. 1979). Instead, the case addressed whether a client (as opposed to an attorney) has standing

4

to assert the work-product protection.  *See id.*  Because *FMC Corp.* did not address the issue of whether the attorney was disinterested,[2] it cannot constitute precedent that Eckert is disinterested here.

Third, Parx apparently disputes the relevance of Eckert's role as a defendant in the underlying litigation.  Opposition, 16-17.  However, Parx fails to grapple with the core of POM's argument.  The documents at issue implicate Eckert in misconduct of its own, and Eckert may be held liable in the underlying litigation for the misconduct reflected in those documents.  Thus, Eckert has its own substantial interest in preventing the disclosure of the documents at issue.  For this reason, Eckert is not "disinterested" within the meaning of *Perlman*.  *See Naranjo*, 768 F.3d at 345-46; *see also* Motion, 9-10.

Eckert is not "disinterested" within the meaning of *Perlman*.  Thus, the *Perlman* doctrine does not apply, and the Court lacks appellate jurisdiction.

### B. *Perlman* does not apply, because Parx has alternative avenues for appellate review.

*Perlman* is inapplicable for a second, independent reason: *Perlman* applies "only 'in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.'"  *In re Sealed Case*, 655 F.2d 1298, 1301 (D.C. Cir. 1981) (Ginsburg, J.) (quoting *United States v. Ryan*,

---

[2] In *FMC Corp.*, the attorney-custodian had declared "that he would not disobey the court order."  604 F.2d at 800.

402 U.S. 530, 533 (1971)). In the Motion, POM identified three alternative avenues through which Parx could seek appellate review of the April 29 Order: certification under 28 U.S.C. § 1292(b); a petition for writ of mandamus; and a post-judgment appeal. *See* Motion, 11-14.[3] The availability of these alternative avenues for appellate review render *Perlman* inapplicable. *See Sealed Case*, 655 F.2d at 1301; *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1366 (Fed. Cir. 2017). Parx's responses lack merit.

First, Parx fails to explain why it could not have pursued a petition for writ of mandamus, which likely would have provided more expeditious review. It is well-established that "mandamus is an appropriate means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other confidentiality interest." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 482 (3d Cir. 1995).[4] Parx does not attempt to distinguish such cases. Instead,

---

[3] Parx argues at length that it cannot obtain immediate review of the April 29 Order by going into contempt. Opposition, 17-20. This argument is irrelevant, because POM did not argue that contempt provides a mechanism for Parx to obtain appellate review.

[4] Parx could not *prevail* in a mandamus proceeding, because (among other things) the April 29 Order is entirely correct. The Magistrate Judge spent months conducting a careful, document-by-document *in camera* review to determine whether the communications at issue involved *legal* advice, a prerequisite to applying the attorney-client privilege under Pennsylvania law, and issued a detailed 97-page opinion. ECF 353. In turn, the District Court carefully considered the objections filed by both Parx and Eckert. ECF 387; 397. The District Court rejected Parx's novel contention that lobbying and legislative advice *per se* constitutes privileged legal advice. *Id.* No cases cited by Parx below supported this

6

Parx offers the following argument: (a) mandamus relief is unavailable when "other process affords a litigant an opportunity for relief, such as a direct appeal," Opposition, 20; (b) *Perlman* provides "a direct appeal process such that mandamus is neither necessary nor appropriate," *id.* at 21; (c) for this reason, "[m]andamus is unavailable," *id.*; (d) Parx thus has "no meaningful alternatives" for appellate review, *id.*; and (e) as a result, *Perlman* applies.  This argument is circular: the *premise* that jurisdiction exists under *Perlman* is essential to the *conclusion* that jurisdiction exists under *Perlman*.  Circular arguments are fallacious ones.  Because Parx could have sought appellate review through a mandamus petition, this case is not within "the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." *Sealed Case*, 655 F.2d at 1301 (quotation omitted).

Second, Parx underestimates the relevance of Parx's ability to pursue a post-judgment appeal.  The *Perlman* standard does not ask whether an alternative appellate avenue is perfectly equivalent to an immediate direct appeal.  Instead, the inquiry is whether the absence of jurisdiction under *Perlman* "would render impossible *any review whatsoever* of an individual's claims." *Sealed Case*, 655 F.2d

---

unprecedented argument.  However, both the Magistrate Judge and the District Court found that individual documents or passages fell within the privilege.  These findings demonstrate the lower courts' careful consideration.  The April 29 Order would be upheld under *any* standard of review.  These substantive privilege issues are entirely distinct from the judicial-estoppel issues addressed by the prior appeal in this case.

at 1301 (quotation omitted; emphasis added).  The availability of a post-judgment appeal, while perhaps imperfect from Parx's perspective, provides an alternative avenue for appellate review that defeats jurisdiction under *Perlman*.  *Waymo*, 870 F.3d at 1366.

Third, Parx entirely ignores the availability of seeking certification under § 1292(b).  While the District Court denied certification here, *Perlman* does not require an alternative avenue for appeal to be *successful* in a particular case.  Instead, *Perlman* asks whether denying "immediate review would render impossible any review whatsoever of an individual's claims."  *Sealed Case*, 655 F.2d at 1301 (quotation omitted).[5]  The potential for review under § 1292(b) means that "any review" is not "impossible."  Moreover, the District Court denied Parx's request largely because Parx failed to meaningfully argue that the requirements for § 1292(b) were satisfied.  ECF 397 at 18-21.  The ineffectiveness of the § 1292(b) route here thus may be a problem of Parx's own making.

## II.    The Court Lacks Jurisdiction Under the Collateral-Order Doctrine.

In its Motion, POM presented two distinct grounds for finding that the Court lacks jurisdiction under the collateral-order doctrine.  First, POM explained that the

---

[5] As explained in the Motion, *Perlman* most often applies in the context of pre-indictment criminal matters.  Section 1292(b) applies only to *civil* matters.  28 U.S.C. § 1292(b).  Thus, this avenue for appellate review would not exist in the sorts of cases where *Perlman* ordinarily applies.

Supreme Court's holding in *Mohawk* directly controls the resolution of this case and forecloses application of the collateral-order doctrine.  *See* Motion, 16-18.  Parx entirely fails to respond to this argument.

Second, POM explained that, even if *Mohawk* did not directly control this case, the Supreme Court's reasoning in *Mohawk* applies with equal force to an immediate appeal pursued by a non-party privilege holder.  *See* Motion, 18-22.  The *Mohawk* Court focused on two key considerations: (a) the range of alternative avenues for obtaining appellate review of an adverse privilege ruling; and (b) the absence of a rule issued by the Supreme Court authorizing interlocutory appeals of adverse privilege rulings.  *See id.*  Parx's arguments on both points miss the mark.

As discussed above, Parx's arguments regarding alternative avenues for appellate review of the April 29 Order lack merit.  *See supra*, Part I.B.  Parx entirely ignores the availability of certification under § 1292(b).  The Supreme Court specifically identified the possibility of review under § 1292(b) as a factor undermining the application of the collateral-order doctrine.  *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110 (2009).  In addition, as discussed above, Parx could have pursued a petition for writ of mandamus.  The Supreme Court specifically identified the potential for pursuing a mandamus petition as a factor undermining the application of the collateral-order doctrine.  *Id.*  Parx also understates the impact of the availability of post-judgment review.  Parx does not deny that it could seek

9

post-judgment appellate review; instead, it contends that such relief would not avoid all possible forms of harm. *See* Opposition, 22-24. But the fact "[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment has never sufficed." *Mohawk*, 558 U.S. at 107 (cleaned up). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." *Id.* (cleaned up). The fact that Parx assesses a post-judgment appeal to be imperfect in this case does not justify creating an entirely new class of immediately appealable orders. Because non-parties like Parx possess a range of alternative avenues for appellate review of disclosure orders adverse to the attorney-client privilege, the collateral-order doctrine does not apply. *See id.* at 110-12.

*Mohawk* also emphasized that the authorization of new classes of interlocutory appeals should occur through "rulemaking, not expansion by court decision." *Mohawk*, 558 U.S. at 513. Because no rule authorized interlocutory appeals of disclosure orders adverse to the attorney-client privilege, *Mohawk* found that the collateral-order doctrine did not apply. *Id.* Here, no rule authorizes an interlocutory appeal by third parties in Parx's position, and thus *Mohawk* dictates that the collateral-order doctrine does not apply. *See id.*

Parx claims that because the Supreme Court has never issued a rule *prohibiting* jurisdiction in cases like this, the collateral-order doctrine applies until the Court issues such a rule. *See* Opposition, 27. No authority supports this reasoning, and Parx does not purport to cite any. The argument flips the Supreme Court's reasoning on its head. Under the reasoning of *Mohawk*, the collateral-order doctrine does not apply to appeals by third parties of disclosure orders adverse to the attorney-client privilege.

Ultimately, Parx's argument amounts to nothing more than highlighting its status as a non-party. But "a decision does not automatically become final merely because it is directed at someone other than a plaintiff or defendant." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 n.4 (1999) (rejecting application of collateral-order doctrine). The collateral-order doctrine does not apply here, and the Court lacks jurisdiction.

Respectfully submitted,


*/s/ Michael Martinich-Sauter*
Michael Martinich-Sauter*
JAMES OTIS LAW GROUP LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018 (Telephone)
michael.martinich-sauter@james-otis.com

Jeffrey B. Jensen
Michael Nolan
Bola Adeniran
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com



George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

**Counsel for Plaintiff Pace-O-Matic, Inc.**

12

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to L.A.R. 28.3(d), I certify that I am a member of the Bar of this Court.

I certify that, based on the word-count feature of Microsoft Word, this motion contains 2,590 words, excluding the items enumerated in Federal Rule of Appellate Procedure 32(f).

I certify that on July 23, 2024, I caused the foregoing to be served on all counsel of record via the Court's electronic filing system.

I certify that a virus detection program has been run on this file and that no virus was detected.

*/s/ Michael Martinich-Sauter*