# In the United States Court of Appeals for the Third Circuit

---

Docket No. 24-1984

---

## PACE-O-MATIC, INC.

*vs.*

## ECKERT, SEAMANS CHERIN & MELLOTT, LLC; MARK S. STEWART; KEVIN M. SKJOLDAL

## APPEAL OF GREENWOOD GAMING AND ENTERTAINMENT, INC., d/b/a PARX CASINO

---

*On direct appeal from an opinion and order of the United States District Court for the Middle District of Pennsylvania dated April 29, 2024, reconsideration denied July 3, 2024*

---

**BRIEF OF APPELLANT GREENWOOD GAMING & ENTERTAINMENT, INC., d/b/a PARX CASINO AND JOINT APPENDIX VOL. I (JA001-JA157)**

---

**GA BIBIKOS LLC**

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc.
d/b/a Parx Casino*

May 5, 2025

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   DISCLOSURE STATEMENT ............................................................. 9

III.  RELATED CASES ............................................................................. 9

IV.   JURISDICTIONAL STATEMENT .................................................... 9

    A.    The Court has jurisdiction under the Perlman doctrine. .....10

    B.    The Court has jurisdiction under the collateral-order
        doctrine. ...................................................................................11

    C.    Mohawk does not foreclose a non-party's appeal under
        Perlman or the collateral order doctrine. ............................13

V.    STATEMENT OF ISSUES ON APPEAL .......................................15

VI.   STATEMENT OF THE CASE .........................................................16

    A.    Background .............................................................................16

    B.    Procedural History.................................................................20

VII.  SUMMARY OF ARGUMENT........................................................27

VIII. ARGUMENT ...................................................................................28

    A.    The attorney-client privilege protects the documents
        from disclosure........................................................................28

        1.    Parx met its burden of proving that the attorney-
            client privilege protects documents containing
            advice on legislative matters. ......................................31

        2.    Advice on "legislative" matters is "legal" advice for
            purposes of the attorney-client privilege. .....................34

        3.    The "predominant purpose" test dictates that
            documents containing advice on legislative

matters should be protected in their entirety even if they contain some non-privileged information.........43

B.    The district court erred when it concluded that the attorney-client privilege does not protect the documents from disclosure.................................................................47

    1.    The district court ignored uncontested evidence supporting Parx's privilege claim. ...............................47

        a.    Parx should have prevailed on the burdens alone based on the uncontested declaration........48

        b.    The district court should have considered the uncontested declaration after Parx pointed out the district court's error.............................49

        c.    The district court's errors are not harmless.......53

    2.    The district court incorrectly held that "legislative" advice and "legal" advice are different for purposes of the privilege. ......................................56

    3.    The district court ordered the disclosure of privileged documents in their entirety without considering redaction.................................................60

IX.    CONCLUSION...........................................................................63

## TABLE OF AUTHORITIES

**Cases**

*A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044342, at *3 (D. Conn. Nov. 14, 2013) .....................................................42

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 572–73 (M.D. Pa. 2017)...........................................33

*Bennett v. Tucker*, 827 F.2d 63, 69-70 n.2 (7th Cir.1987).....................72

*Christy v. Horn*, 115 F.3d 201, 205 (3d Cir.1997)..................................13

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 211 F. Supp. 736, 740, 6 Fed. R. Serv. 2d 670 (N.D. Ill. 1962) .................62

*Commonwealth v. Chmiel*, 738 A.2d 406, 414 (Pa. 1999).......................31

*Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982) .................................................................................70

*Egan v. Delaware River Port Auth.*, 851 F.3d 263, 275 (3d Cir. 2017).................................................................................................61

*Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 208 (E.D. Pa. 2008) ...............................................................................................50

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423, 2001 WL 1046982 (E.D. Pa. 2001).................................................................................................63

*Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 24 (2016) ...............................................................................................42

*In re Air Crash at Belle Harbor*, 490 F.3d 99, 106 (2d Cir. 2007)................................................................................................12

*In re Cty. of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007) ..................*passim*

*In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997), *overruled on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009))............................................*passim*

*In re Grand Jury (ABC Corp.)*, 705 F.3d 133, 146 (3d Cir. 2012)...............................................................................15

*In re Grand Jury Matter #3*, 847 F.3d 157, 162-63 (2017) .....................11

*In re Grand Jury Subpoena (Corporation and Attorney)*, 745 F.3d 681, 686-87 (3d Cir. 2014) .....................................................10

*In re Investigating Grand Jury of Phila. County No. 88-00-3503*, 593 A.2d 402, 406 (Pa. 1991)...................................31

*In re Investigating Grand Jury of Philadelphia Cnty.*, 593 A.2d 402, 407 (Pa. 1991) ............................................34

*In re Search of Electronic Communications (Fattah)*, 802 F.3d 516, 529 (3d Cir. 2015)..................................................11

*Janesch v. Pennsylvania House of Representatives*, 299 A.3d 1030 (Pa. Cmwlth. 2023).................................................51

*Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001)........................................................................33

*Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) ....................................................24

*Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999)........................................................................56

*McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012)........................................................................72

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 110-11 (2009) .......................................................................14

*Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) ....................................................*passim*

*North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)..............................................................57

*Pa. Turnpike Comm'n v. Electronic Transaction Consultants Corp.*, 230 A.3d 548 (Pa. Cmwlth. 2020) ........................................61

*Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023)........*passim*

*Perlman v. United States*, 247 U.S. 7 (1918) .........................................10

*Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 446 (E.D.Tex.2003), *vacated in part on other grounds sub nom.*, vacated in part sub nom. *In re Texas Auto. Dealers Assn.*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003).............................................................................43

*Rodriguez v. Rozum*, 535 F. App'x 125, 135 (3d Cir. 2013) ....................55

*Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 608 (Pa. Super. 2017) .............................................................................19

*N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009).......................................................................................45

*SEPTA v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) ..........................................................................50

*Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014) ..........................................................................41

*Smith v. BIC Corp.*, 869 F.2d 194, 198–99 (3d Cir. 1989) .....................13

*Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) ................................................35

*U.S. v. Mitchell*, 652 F.3d 387, 392-93 (3d Cir. 2011)...........................13

*United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) ......................62

*United States v. Ryan*, 402 U.S. 530, 533 (1971) ..................................60

*United States v. Weisman*, No. 94 Cr. 760, 1995 WL 244522,
at \*4 (S.D.N.Y. Apr. 26, 1995) ........................................69

*Weissman v. Fruchtman*, No. 83 Civ. 8958(PKL), 1986 WL
15669, at \*15 (S.D.N.Y. Oct. 31, 1986) ...........................42

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311
(7th Cir. 1978) ..............................................................42

**Rules**

F.R.E. 501 ...................................................................................29

Fed. R. Civ. Pro. 26(b)(1) ...........................................................62

Fed. R. Civ. Pro. 45(d)(3)(A)(iii) .................................................62

M.D.L.R. 72.2 .............................................................................52

**Treatises**

8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW
§ 2296 (John T. McNaughton rev. ed. 1961) .................35

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70
cmt. e (2000) ...............................................................30

1 PAUL R. RICE, ATTORNEY CLIENT PRIVILEGE IN THE UNITED
STATES § 7:9 (2d ed. 1999) ...........................................36

**Other Authorities**

Bryan Lammon, *Perlman Appeals after Mohawk*, 84 U. CIN.
L. REV. 1 (2016) ...........................................................14

Grace M. Giesel, *The Legal Advice Requirement of the
Attorney-Client Privilege: A Special Problem for in-*

*House Counsel and Outside Attorneys Representing Corporations*, 48 MERCER L. REV. 1169, 1191 (1997)....................36

Justin Sweitzer, *Understanding Pennsylvania's Ongoing Debate over Skill Games*, City & State PA, *available here* (last visited April 27, 2025)........................................................40

Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), a non-party below, requests that the Court reverse orders and opinions of the district court affirming a magistrate judge's decision that the defendant Eckert, Seamans, Cherin & Mellot, LLC ("Eckert") must produce Parx's privileged communications regarding advice on "legislative" matters to the plaintiff Pace-O-Matic, Inc. ("POM") in connection with the underlying dispute between those parties.

## I.   INTRODUCTION

Parx is constrained to file yet another appeal from the district court's latest ruling calling for Eckert to disclose Parx's privileged materials to POM in the underlying case.

As the Court will recall, the district court previously used judicial estoppel in a novel way to circumvent Parx's privilege. Noting its concerns about the district court's novel approach to circumvent privilege, this Court reversed. *See Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023) ("Parties rely on the privilege as essential to open communications with counsel. To have it denied after the fact, and with little evidence of

1

the role of Parx, the client, in the positions Eckert was taking, gives us serious pause.") (hereafter "*POM v. Eckert I*").

This time, POM initiated a discovery dispute – under seal and obscured from public view on ECF – challenging Eckert's assertion that documents POM requested years earlier are privileged. The documents generally contain confidential communications among Parx and its lawyers and their respective privileged agents (including Parx's lobbyists and public-relations consultants) regarding advice on legislation and related legislative matters. Without Parx's input, consent, or participation, the district court referred the sealed dispute to a magistrate judge for resolution and directed an *in camera* review.

Following his review, the magistrate judge determined that the attorney-client privilege applied to *one* document and ordered Eckert to disclose the rest.  The magistrate judge created a new "standard" that "legislative advice" is not "legal advice" and categorically rejected privilege for any document that included any discussion about legislation or legislative matters. The magistrate judge cited the "predominant purpose" test but did not apply it correctly, opting instead to take a

2

categorical approach to the analysis by treating any document with legislative overtones as a "poison pill" of sorts to circumvent privilege.

Parx immediately appealed the magistrate judge's decision. Parx challenged the magistrate judge's novel, *per se* approach to the privilege analysis as inconsistent with the "predominant purpose" test, which dictates a more careful review than a categorical denial of privilege merely because a document mentions legislation. Parx supported the privilege claim by attaching a declaration of record that predates the magistrate judge's decision explaining how the privilege applies to legislative matters. Importantly, POM did not submit evidence to contradict the declaration.

The district court nevertheless denied Parx's appeal and adopted the magistrate judge's decision. The district court took the magistrate judge's novel approach a step further by suggesting that "legislative advice" and "legal advice" are different and mutually exclusive for purposes of the privilege. In effect, the district court adopted a new *per se* rule that the privilege does not protect confidential communications among lawyers, clients, and their respective privileged agents regarding anything relating to legislation or legislative matters. The district court

3

then refused to reconsider its decision, claimed that Parx waived all its arguments, and questioned counsel's advocacy despite agreeing with Parx that the court clearly erred in several respects.

As described in more detail below, the district court erred on multiple fronts, but the dispositive question on appeal is straightforward and should be resolved in Parx's favor: Does the attorney-client privilege protect confidential communications among clients and their lawyers (and their respective privileged agents, including lobbyists or public-relations consultants) regarding advice on "legislative" matters? The answer is yes.

Lawyers frequently consult with clients and their lobbyists and public-relations professionals to provide legal advice on legislative matters. As reflected in the documents at issue, this includes analysis and strategy regarding pending or desired legislation, drafting proposed legislation, monitoring, reviewing, summarizing, and advising on legislative proceedings, preparing testimony for legislative hearings, making recommendations about legislation, evaluating whether proposed legislation withstands judicial review, and evaluating the interests of the client in the event proposed legislation becomes law.

This is what *lawyers* do. When corporate clients such as Parx engage lawyers to help with legislative matters, they are not asking their lawyers for advice about buying lawn furniture. They are asking their lawyers to use their skills *as lawyers* in connection with "legal matters" as that ubiquitous shorthand is used throughout the case law in Pennsylvania and in this Circuit.

Simply put, the phrases "legal matters" or "legal advice" as used in the case law[1] cover "legislative" matters for purposes of the attorney-client privilege, and the district court erred by concluding otherwise. The error is significant. Before the decision, Parx and other similarly situated corporate clients had reasonable expectations that their confidential communications with lawyers and other privileged persons about "legal matters" such as pending legislation and related legislative efforts matters are protected by privilege. The district court's new rule removes certainty in the privilege analysis and exposes Parx's privileged documents to public consumption merely because a document involves discussions about legislative matters.

---

[1] Although the phrases "legal advice" and "legal matters" may have slightly different meanings depending on context, Parx may use these phrases interchangeably. Parx submits that, either way, its position on privilege prevails.

The district court's novel rule cannot stand. If the privilege does not protect advice on legal matters such as pending legislation or related legislative efforts as opposed to advice on enacted law, what is next on the privilege chopping block? Will the privilege no longer apply to lawyer-client communications about pending *rulemakings* simply because agencies have yet to promulgate the proposed regulation? Will the privilege no longer apply to lawyer-client communications about pending *litigation* simply because courts have yet to issue a decision?

Surely the privilege is not so narrow as to preclude its application to a variety of "legal" matters merely because lawyers and clients are discussing un-enacted legislation. Unless this Court reverses, the district court's new exception to the attorney-client privilege for legislative matters will spread throughout the jurisprudence and chip away at the protections afforded by the privilege in many other contexts.

Moreover, the magistrate judge and district court seemed to conflate advice on legislative matters with "lobbying." Parx acknowledges the limited application of the privilege to lobbying matters. But this case is *not* about lobbying. Parx is asking this Court to confirm that the attorney-client privilege protects from disclosure confidential

6

communications among clients, lawyers, and/or their respective privileged agents (sometimes including lobbyists and public-relations professionals) in connection with providing advice to clients on legislation and related legislative matters.

Finally, the district court compounded the problems in this case by refusing to reconsider its decision and creating more errors that harm Parx's interests in protecting its privileged documents. To illustrate:

- The district court ignored uncontested evidence supporting Parx's privilege claim.

- The district court admitted that it erroneously overlooked Parx's uncontested evidence but called the error "harmless" even though Parx should have prevailed on the burdens alone in that situation.

- The district court chastised Parx for failing to submit an affidavit to the magistrate judge before his decision and refused to consider it on that basis. But the affidavit was already of record and Parx as a non-party had no opportunity to assert privilege until *after* the magistrate judge's disclosure order. If the court had concerns, it could have remanded for the magistrate judge to consider the evidence but did not.

- The district court ordered the disclosure of privileged documents in their entirety without redactions, even though the court acknowledged that certain purportedly non-legal documents contain privileged information, because the privileged portion is "small."

- The district court improperly invoked wavier principles to circumvent Parx's arguments even though Parx raised and argued these issues in dozens of places.

7

As a final point, this all has to end. Parx is a non-party in the underlying case, yet the company has been compelled for almost five years to fend off repeated attempts by POM to discover Parx's privileged documents in Eckert's possession. The magistrate judge and district court have fueled POM's obsession with Parx's documents by using novel legal theories to circumvent the privilege and give POM unfettered access to Parx's sensitive information. That is inconsistent with the notion that courts should treat non-parties with greater care and offer them more protections due to their lack of control over underlying litigation.

In the end, it is clear that Parx's only forum to obtain meaningful relief – as a non-party unwillingly stuck in the middle of a years-long dispute between Eckert and one of its other clients – is this Court. Simply put, legal advice about legislative matters is no different than any other type of "legal" advice for purposes of the attorney-client privilege. The magistrate judge and district court erred as a matter of law by categorically denying the privilege for any document containing advice on "legislative" matters. That *per se* approach to the privilege analysis is inconsistent with case law and exposed far more of Parx's privileged materials to public disclosure than it should.

Accordingly, the Court should reverse, vacate the district court's order, and remand with instructions to (a) preclude the disclosure of the documents at issue in their entirety as a matter of law because advice on legislative matters that predominates the documents is protected by the privilege; or (b) conduct further review of the documents utilizing the proper standards announced by this Court in this appeal.

## II.    DISCLOSURE STATEMENT

Pursuant to Fed. R. App. Pro. 26.1 and LAR 26.1, Parx states that no publicly held corporation owns 10% or more of the company's stock.

## III.    RELATED CASES

None.

## IV.    JURISDICTIONAL STATEMENT

At the outset, the Court requested a jurisdictional analysis. *See* CA3-EFC Doc. 23. Parx appealed as a non-party privilege holder aggrieved by an adverse privilege order. The order compels Eckert to disclose Parx's privileged documents to POM. POM moved to dismiss this appeal, and the Court deferred ruling until now. The threshold question is whether the Court has jurisdiction. The answer is yes under either the *Perlman* doctrine or the collateral-order doctrine, and the Supreme Court's decision in *Mohawk* does not change that result.

9

### A.     *The Court has jurisdiction under the* Perlman *doctrine.*

Under *Perlman v. United States*, 247 U.S. 7 (1918), a non-party may file a direct appeal from an adverse interlocutory order directing the disclosure of its privileged materials held by a disinterested third party. *In re Grand Jury Subpoena (Corporation and Attorney)*, 745 F.3d 681, 686-87 (3d Cir. 2014) (cleaned up). *See also In re Search of Electronic Communications (Fattah)*, 802 F.3d 516, 529 (3d Cir. 2015) (applying *Perlman* to exercise jurisdiction over order compelling disclosure of privileged communications in possession of third party).

The *Perlman* doctrine is an exception to the general rule that appellate courts only have jurisdiction over final orders that dispose of all claims and all parties. *See, e.g., In re Grand Jury Matter #3*, 847 F.3d 157, 162-63 (2017). It assures meaningful appellate review of an order in civil or criminal proceedings directing someone other than the non-party privilege holder to disclose the non-party's privileged information. *See, e.g., Fattah*, 802 F.3d at 526 ("The reasoning behind *Perlman* lies in the inequity of leaving a privilege-holder 'powerless to avert the mischief of the order' and forcing him to 'accept its incidence and seek a remedy at some other time and in some other way.'") (citations omitted); *In re Air*

*Crash at Belle Harbor*, 490 F.3d 99, 106 (2d Cir. 2007) (noting that *Perlman* "applies to appeals from orders issued in … civil actions").

Here, *Perlman* gives Parx direct-appeal rights because (a) Parx is not a party in the underlying litigation; (b) Parx is the privilege holder; (c) Eckert has the privileged documents in its possession; (d) the order compels Eckert as defendant to disclose Parx's privileged materials to POM; and (e) Eckert has no interest in Parx's privileged documents because the privilege does not belong to Eckert – it belongs to Parx – and Eckert has no say about whether or not to withhold the documents (that decision is the client's).

Simply put, Parx may appeal when, as here, an order compels disclosure of privileged documents in possession of a third party.

### B.   *The Court has jurisdiction under the collateral-order doctrine.*

The Court's analysis may end here. *Perlman* applies and the Court has jurisdiction. Lest there be doubt, the Court has jurisdiction over Parx's direct appeal under the collateral-order doctrine as well.

Under the collateral-order doctrine, this Court has jurisdiction over an appeal from an order that (1) conclusively determines an issue; (2) the issue is separate from the merits of the case; and (3) will be effectively

unreviewable after final judgment. *See*, *e.g.*, *Smith v. BIC Corp.*, 869 F.2d 194, 198–99 (3d Cir. 1989).

The rationale behind the collateral-order doctrine is to ensure that certain rights and issues, which might be irreparably lost if parties wait until after trial, are protected and can be reviewed promptly by an appellate court. *See, e.g., U.S. v. Mitchell*, 652 F.3d 387, 392-93 (3d Cir. 2011). The doctrine aims to balance the final-order rule (which generally limits appeals to final orders to prevent piecemeal litigation) with the need to address urgent and important issues that warrant immediate attention in the jurisprudential sense. *See, e.g., Christy v. Horn*, 115 F.3d 201, 205 (3d Cir.1997).

Like the *Perlman* analysis, the collateral-order analysis here is straightforward and compels a conclusion that this Court has jurisdiction over Parx's non-party appeal. The district court's order (1) conclusively determines that Eckert must disclose Parx's privileged communications; (2) resolves issues totally separate from the merits of the case (*i.e.*, this Court can review the question of whether Parx's privileged documents may be disclosed in discovery without reaching the merits of POM's underlying fiduciary-duty claims against Eckert); and (3) will be

12

effectively unreviewable because Parx is not a party in the underlying litigation and cannot appeal a final judgment.

Accordingly, the Court has jurisdiction under the collateral-order doctrine.

### C.    *Mohawk does not foreclose a non-party's appeal under Perlman or the collateral order doctrine.*

Parx acknowledges the Supreme Court's decision in *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009), in which the Supreme Court held that parties may not appeal adverse privilege orders under the collateral-order doctrine. *Mohawk*, however, does not apply here.

Before *Mohawk*, a party subject to an adverse privilege ruling had the right to immediate appeal under the collateral-order doctrine. In *Mohawk*, the Supreme Court clarified that an adverse privilege ruling ***directed to a party*** in litigation is not necessarily a collateral order subject to immediate review, reasoning that a party may vindicate its rights by appealing after a final judgment on the merits or seeking certification and permissive appeal under 28 U.S.C. § 1292(b).

*Mohawk* did not alter the *Perlman* doctrine or other potential avenues for appeal when a *non-party* privilege holder challenges an

13

adverse privilege ruling that compels the disclosure of privileged documents in the possession of third parties. As this Court explained:

> We cannot say that the Supreme Court has abandoned that determination [*Perlman*] on the basis of a later case, *Mohawk*, that never cites, let alone discusses, *Perlman*. … We therefore conclude that the *Perlman* exception remains viable.

*See In re Grand Jury (ABC Corp.)*, 705 F.3d 133, 146 (3d Cir. 2012); *see also* Bryan Lammon, *Perlman Appeals after Mohawk*, 84 U. Cin. L. Rev. 1, 9-10 (2016) ("*Mohawk* neither discussed nor cited *Perlman*. And the two decisions are not inconsistent. The collateral order doctrine and *Perlman* appeals are distinct exceptions to the final-judgment rule.").

This Court has held that *Mohawk* does not preclude a direct appeal. Parx is not a party to the underlying litigation attempting to appeal an adverse privilege order and cannot otherwise vindicate its rights by appealing after the district court enters a final judgment in the underlying litigation between the parties. At that point, Parx will have suffered irreparable harm even if it prevails on a post-judgment appeal.

The *Perlman* doctrine and the collateral-order doctrine are not mutually exclusive. An order may be subject to appeal under both doctrines when as here, a non-party's privilege is involved. Consequently, the collateral-order doctrine may render *Perlman* unnecessary. The

14

Court here has jurisdiction under either (and both) doctrine(s). As one commentator put it, "[t]hey are different doctrinal avenues to similar destinations." *See* Lammon, *supra*, at 10.

Accordingly, the Court has jurisdiction under either the *Perlman* doctrine or the collateral-order doctrine despite *Mohawk.*

## V.    STATEMENT OF ISSUES ON APPEAL[2]

(1)    Did the district court err and abuse its discretion by holding that the attorney client privilege does not apply to confidential communications among a client and its lawyers (and their respective agents) regarding advice on "legislative" matters when (a) Parx met its burden of proving the privilege applies to advice on "legislative" matters with uncontested evidence; (b) as a matter of law, advice on "legislative"

---

[2] Parx raised and argued the issues at D.C. ECF Doc. Nos. 362 at p. 3 (notice of appeal raising challenge to magistrate judge's ruling that privilege does not apply to "legislative" advice); 366 at pp. 6, 8, 9-14 (burden-shifting analysis; challenging magistrate judge's *per se* application to deny privilege for "legislative" advice vs. predominant purpose analysis); 366 Tab "A" (declaration supporting privilege claim); 374 at pp. 7-13 (burden-shifting analysis; challenging magistrate judge's *per se* application to deny privilege for "legislative" advice vs. predominant purpose analysis); 387 at p. 5 (motion to reconsider adverse privilege determination regarding "legislative advice"); 388 at p. 6 (challenging adverse privilege determination regarding "legislative advice"), p. 10 (burdens; declaration supporting privilege claim), pp. 13-17 (redaction of privileged information under predominant purpose test); and 396 at p. 4 (burdens; declaration supporting privilege claim), pp. 5-9 (redaction of privileged information under predominant purpose test).

matters is "legal" in nature such that the privilege applies; and (c) the "predominant purpose" test dictates that all such documents are privileged in their entirety? (*Suggested answer: yes.*)

(2) Did the district court err and abuse its discretion when it held that the attorney-client privilege does not apply to confidential communications among a client and its lawyers (and their respective agents) regarding advice on "legislative" matters by (a) admittedly ignoring uncontested evidence and then refusing to review it on reconsideration; (b) holding that "legislative advice" and "legal advice" are different for purposes of the privilege; and (c) ordering disclosure of admittedly privileged information within documents without even considering redaction? (*Suggested answer: yes.*)

## VI.    STATEMENT OF THE CASE

Insofar as it relates to the merits of this appeal, the relevant background and procedural history are as follows.

### A.    *Background*

At the outset, the Court may benefit from a brief summary of Parx's relationships with its lawyers and third-party professionals engaged to act on behalf of the company.

Parx, a non-party here, is a licensed casino in Pennsylvania. *See* JA270. POM, the plaintiff suing Eckert in the underlying proceedings, manufactures un-regulated and un-taxed gaming machines. *See* JA271-JA272. Casinos in Pennsylvania (including Parx) and manufacturers of these so-called "skill" games (including POM) have adverse business interests. *See* JA272. The legality or illegality of so-called "skill" games is a topic that all three branches of Pennsylvania's government and local governments have been debating and evaluating for several years.

Parx is also corporation. As a corporation, Parx can only act through its authorized officers or directors or professional agents engaged to speak and act on its behalf. *See, e.g.*, *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 608 (Pa. Super. 2017). To that end, Parx engages lawyers to provide legal advice on a variety of topics and expects its counsel to understand the company's business and be proactive regarding proposed and existing laws and proposed and existing regulations affecting the company's business. *See* JA267.

In addition to lawyers, Parx engages professionals to provide lobbying and public-relations services. *See* JA265-JA267. Parx expects its lawyers to work with its other professionals so they may assist counsel

17

in providing legal advice regarding legislative and policy matters affecting Parx's interests. *See* JA265-JA267.

By engaging lawyers and other professionals to act on Parx's behalf and encouraging their cooperation, Parx does *not* intend to forgo the protections of the attorney-client privilege. *See* JA268. To the contrary, Parx expressly instructs its lawyers and agents to maintain confidentiality so they may freely discuss legal matters affecting Parx's interests without fear of having those communications disclosed. *See* JA268.

With that background in mind, Parx is not a party in the underlying litigation and never has been. This is a longstanding dispute between POM and Eckert. *See* JA239-JA263. POM alleges that Eckert breached a fiduciary duty to POM by having some of its attorneys in one office represent POM in Virginia while separate attorneys in separate offices represented Parx and a dozen other casinos, allegedly without a conflict waiver adequately in place, with respect to state-court litigation in Pennsylvania in which the interests of the casinos and POM were adverse. *See* JA369, JA432.

Several years ago, POM requested documents from Eckert during discovery. *See* JA466 (sealed).  Eckert produced thousands of documents and, not surprisingly given Eckert's role as legal counsel for Parx and many other casinos in a variety of matters, a log identifying more than one thousand privileged documents. *See* JA277-JA392.

Years after POM received this discovery, POM decided to challenge the privilege log with respect to 120 documents withheld from disclosure and demanded an *in camera* review. *See* JA466 (sealed). POM submitted its objections and requests for relief under seal, with court approval, such that ECF users cannot access the documents online or otherwise. *See* JA466 (sealed). *See* M.D. L.R. 5.8. Eckert filed a responsive letter under seal as well. *See* JA514 (sealed).

As part of its submissions, POM annotated Eckert's privilege log with its own narrative in a column described as "Evidence of Predominant Legislative/Lobbying Purpose (Note: Column Added by POM)" and, in that column, suggested that the predominant purpose of each entry is "legislative/lobbying" that is not privileged. JA485 (sealed). Without Parx's input, consent, or participation, the district court

19

assigned the sealed discovery dispute to a magistrate judge to conduct an *in camera* review and resolve the matter. *See* JA463-JA464.

The vast majority of the documents at issue include email communications (and corresponding attachments) to or from Eckert lawyers (on one hand) and to or from Parx or Parx's agents (on the other), including lobbyists and public relations professionals. *See* JA277-JA392. The emails discuss legislative matters regarding "skill" games, including drafting, reviewing, advising, and commenting on proposed legislation; monitoring, summarizing, advising, and reporting on existing law or proposed changes to the law; and other discussions about legal matters that are intended to help counsel inform Parx of its legal rights, obligations, and interests under existing law or any proposed or desired changes to existing law. *See* JA277-JA392.

### B. *Procedural History*

After his *in camera* review, the magistrate judge issued an order upholding the privilege for *one document* and rejecting the privilege claim for all other documents in question. *See* JA058-JA060. In his opinion, the magistrate judge concluded that the attorney-client privilege did not

apply to the documents involving what he called "legislative advice." *See* JA084-JA152.

For the vast majority of documents, and seemingly in lockstep with the "legislative/lobbying" annotations that POM unilaterally marked in Eckert's privilege log, the magistrate judge repeated verbatim the following mantra approximately 40 times throughout the opinion: "The subject matter of th[e] communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege." *See, e.g.*, JA084-JA152 (emphasis in original).

Parx appealed the magistrate judge's decision to the district court and filed corresponding briefs in support. *See* JA158. This was the first opportunity for Parx to demonstrate with evidence how the privilege applies to advice regarding legislative matters. Parx explained that advice on legislative matters is "legal" advice protected by the privilege and challenged the magistrate judge's analysis as inconsistent with the "predominate purpose" test by creating a *per se* standard to reject privilege claims if documents merely discuss "legislative" matters. *See* JA159-JA160.

In support of the privilege claim on appeal, Parx submitted a declaration of its then Chief Counsel, Thomas C. Bonner, Esq. *See* JA264. The declaration is of record and predates the magistrate judge's decision. *See* JA265, JA061. Parx previously submitted the declaration at MDPA-ECF Doc. 351 in connection with another similar dispute initiated by POM in which POM unsuccessfully moved the district court for leave to take a second deposition seeking privileged testimony from one of Parx's agents that POM separately has sued in state court.[3]

As Mr. Bonner explained in his declaration, communications among Parx, its agents, and its lawyers involve advice on legal matters such as pending legislation and related legislative matters and may involve other matters such as lobbying, politics, public relations, and related strategies in order to provide complete advice to the company. *See* JA266 (stating communications among client, lawyers, and agents "was necessary so that both Parx's outside and in-house counsel could provide legal advice

---

[3] The cases are captioned *POM of PA, LLC, d/b/a Pace-O-Matic v. Peter J. Shelly and Shelly Communications, Inc., d/b/a Shelly Lyons Public Affairs & Communications*, CV22-00305 (Lyco. Cty., filed 3/23/2022); *POM of PA, LLC, d/b/a Pace-O-Matic v. Richard Gmerek and Gmerek Government Relations, Inc.*, No. CV-22-00362 (Lyco. Cty., filed 4/8/2022); *POM of PA, LLC, d/b/a Pace-O-Matic v. Sean D. Schafer and Schafer Government Affairs, Inc.*, CV22-00363 (Lyco. Cty., filed 4/8/2022).

to Parx regarding its legal options under existing law or proposed new legislation.").

Mr. Bonner also explained that (a) Parx engages lawyers and other third-party professionals to speak and act on its behalf; (b) communications among Parx, its counsel (both in-house and outside counsel), and their respective agents are for purposes of Parx obtaining legal advice on legal matters, including legislative matters; and (c) Parx expects communications among its lawyers and consultants for purposes of providing advice to the company to be confidential. *See* JA265-JA268. POM did not submit any evidence to contradict the testimony reflected in Mr. Bonner's declaration.

The district court upheld the entirety of the magistrate judge's analysis, opinion, and order except with respect to *four* documents. *See* JA174-JA175. In its opinion affirming the magistrate judge's order, the Court differentiated between "legislative" and "legal" advice. The Court described the documents at issue as "***communications that, as a matter of content, primarily contain lobbying or legislative advice, and either entirely lack or only include a relatively small portion of legal advice***." *See* JA012.

23

From the premise that legal advice and legislative advice are somehow different and mutually exclusive, the Court rejected Parx's arguments and upheld the magistrate judge's conclusions that the privilege does not apply to any documents that mention legislative matters. *See* JA011-JA029.

The district court did not accept or credit Mr. Bonner's declaration. *See* JA012. The district court instead concluded that Parx did not support its privilege claim with evidence and that Parx waived any opportunity to rely on Mr. Bonner's declaration by only mentioning it in a reply brief. *See* JA012 n.5 ("Of note, in their central arguments, Eckert and Parx make no reference to affidavits regarding privilege. Parx does in its reply brief. (Doc. 374, pp. 6–7.) But as a general matter, '[a]rguments raised for the first time in a reply brief are generally waived.' *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted)[.]" The district court admittedly did not review all documents, presumably relying on the magistrate judge's summaries. *See* JA043.

Parx filed a motion for a stay, reconsideration, and a protective request for certification of the appeal pursuant to 28 U.S.C. § 1292(b). *See* JA200. Parx also timely appealed as of right to this Court on May

24

28, 2024. *See* JA001. In its motion for reconsideration and corresponding briefs, Parx argued that the district court overlooked Mr. Bonner's declaration; erred by upholding the magistrate judge's *per se* approach to privilege when legislative matters are involved instead of applying the "predominant purpose" test correctly; and erred by refusing to consider redaction of admittedly privileged information. *See* JA200-JA205.

On July 3, 2024, the district court stayed the order pending this appeal but otherwise denied the requests to reconsider and the request for certification, holding that Parx waived essentially all of its arguments. *See* JA218-JA238. Despite its criticisms, the district court agreed with Parx that the court erred by overlooking Mr. Bonner's uncontested affidavit but called the error "harmless" because (a) the oversight did not affect the burden-shifting analysis required by the case law; and (b) the district court would not review a declaration that Parx failed to present to the magistrate judge for consideration before his decision. *See* JA218-JA238.

The district court also agreed with Parx that documents contain privileged information and, at a minimum, should be redacted accordingly, but nevertheless they should be produced in their entirety

without redaction because Parx allegedly never argued the predominant purpose test or redaction principles. *See* JA011-JA054. Finally, the district court refused to consider Parx's reply arguments presumably because Parx should have anticipated POM's arguments and addressed them before POM filed its brief in opposition to Parx's reconsideration bid. *See* JA011-JA054.

After the district court's order denying reconsideration, Parx timely filed an amended notice of appeal on July 11, 2024. *See* JA003. Meanwhile, in yet another sealed discovery dispute, POM pursued documents and deposition testimony from yet another of Parx's professional agents (this time, a lobbyist). *See* JA262-JA263. POM challenged objections to POM's questions during a deposition that called for advice that Parx's lawyers and other agents provided to the company about legislative matters. *See* JA262. Again, Mr. Bonner submitted a declaration in support of the privilege claims. *See* JA270. The district court stayed its resolution of that dispute because the outcome of this appeal will dictate how to resolve these privilege issues. *See* JA275.

In the interim, POM filed a motion to dismiss this appeal for lack of jurisdiction. *See* Doc. 5. After full briefing, the Court then issued an

order deferring its ruling on POM's motion to dismiss and instructed the parties to brief the jurisdictional issues with the merits. *See* CA3-EFC Doc. 23. After issuing a briefing schedule, the Court granted Parx a short extension to file and serve its opening brief and joint appendix by May 5, 2025. This is Parx's opening brief.

## VII.  SUMMARY OF ARGUMENT

The Court should reverse. The attorney-client privilege protects the documents from disclosure. First, Parx met its burden of proving with uncontested evidence that the attorney-client privilege protects documents containing advice on legislative matters. Second, advice on "legislative" matters embodied in the documents at issue is "legal" in nature such that the attorney-client privilege protects them from disclosure. Finally, the "predominant purpose" test dictates that the documents should be protected in their entirety because advice on legislative matters predominates even if they contain some non-privileged information.

The district court erred when it concluded that the attorney-client privilege does not protect the documents from disclosure. First, the district court ignored uncontested evidence supporting the application of

the privilege but refused to review it on reconsideration despite admitting the error. Second, the district court incorrectly differentiated between "legislative" and "legal" matters to circumvent Parx's privilege and create a novel, *per se* rule that the privilege never applies to advice on legislative matters. Finally, the district court refused to consider redaction of privileged information in documents as required by case law.

## VIII. ARGUMENT

As described below, the attorney-client privilege protects the documents from disclosure. The district court erred by concluding otherwise. The Court should order that the documents are not subject to disclosure as a matter of law and, if necessary, remand with instructions to conduct a further review through the proper lens as announced by the Court in this appeal in order to protect from disclosure any documents containing confidential communications among Parx and its lawyers or their respective agents about legislative matters.

### A.    *The attorney-client privilege protects the documents from disclosure.*

The attorney-client privilege is the oldest and most revered of all the common law privileges. *Commonwealth v. Chmiel*, 738 A.2d 406, 414 (Pa. 1999). It promotes frank and open client-attorney communication

that, in turn, fosters an orderly administration of the justice system. *In re Investigating Grand Jury of Phila. County No. 88-00-3503*, 593 A.2d 402, 406 (Pa. 1991).

Under Pennsylvania law, which applies in this diversity action, *see* F.R.E. 501, the attorney-client privilege attaches to confidential communications between lawyers and clients regarding legal matters. *See, e.g.*, 42 Pa.C.S. § 5928; *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019); *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). The elements are:

- The holder of the privilege is or sought to become a client.

- The person to whom the communication was made is a member of the bar of a court, or his subordinate.

- The communication related to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter.

- The privilege is not being asserted for the purpose of committing a crime or tort.

- The privilege has been claimed and is not waived.

*See, e.g.*, *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) (*affirmed by equally divided court at* 605 Pa. 468, 992 A.2d 65 (2010).

29

The privilege also extends to confidential communications between lawyers and agents of the client who assist lawyers with providing legal advice to the client. If a third party is an "agent" of the client (or an agent of the client's lawyer) assisting with legal matters, their discussions are also privileged. *See BouSamra*, 210 A.3d at 985 (agents of the client or the client's lawyer who assist with legal advice are privilege third parties); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. e (2000) ("If the third person is an agent for the purpose of the privilege, communications through or in the presence of that person are privileged[.]"); *see also Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 572-73 (M.D. Pa. 2017).

Finally, the privilege analysis involves a shifting burden of proof. The party asserting the privilege has the initial burden to prove that the privilege applies. *See, e.g.*, *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001). In turn, the opponent of the privilege has the burden to prove that the privilege does not apply or that an exception or waiver applies. *In re Investigating Grand Jury of Phila. County*, 593 A.2d 402, 407 (Pa. 1991) ("*Philadelphia County*") (burden of proof is upon party asserting that disclosure of information would not violate privilege);

*Nationwide*, 924 A.2d at 1266 (setting forth the burden-shifting analysis developed by both Pennsylvania state and federal courts).

With that background in mind, (1) Parx met its burden of proving that documents containing confidential communications among Parx, its lawyers, and its agents regarding legislative matters are protected by the attorney-client privilege; (2) advice on "legislative" matters is "legal" advice that the attorney-client privilege protects from disclosure; and (3) the documents are privileged in their entirety under the predominant purpose test even if they contain some non-privileged information.

### 1. Parx met its burden of proving that the attorney-client privilege protects documents containing advice on legislative matters.

As a threshold matter, Parx met its burden of proving that documents containing advice on legislative matters is protected by the attorney-client privilege. "To sustain this burden of proof, the party asserting the privilege must show, ***by record evidence such as affidavits***, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege." *See Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) (cleaned up; emphasis added).

31

Here, Parx attached Mr. Bonner's previous declaration to support its privilege claim. *See* JA264. That declaration is of record and predates the magistrate judge's decision. *See* JA265, JA061. Mr. Bonner's testimony reflected in his declarations is entirely consistent with other declarations submitted on Parx's behalf in connection with other privilege disputes. *See* JA264-JA274.

Mr. Bonner's declaration explains how documents at issue involve confidential communications among Parx, its lawyers, and its agents for purpose of securing advice on "legal matters":

- Parx and Eckert have a long-standing attorney-client relationship. *See* JA265-266.

- That relationship extends to Parx's agents who Parx engaged to assist in-house counsel and Eckert with providing legal advice to the company regarding existing law or proposed new legislation and other legal matters. *See* JA266.

- The email communications are confidential to Parx. Parx has authorized its agents to discuss legal matters with Eckert or other lawyers in confidence to preserve privilege. *See* JA266-JA267.

- The documents at issue involve advice on legal matters, including drafting, reviewing, and commenting on proposed legislation, monitoring, summarizing, reporting, and advising on existing law or proposed changes to the law, and other discussions that are intended to help counsel inform Parx of its legal rights, obligations, and interests under existing law or any proposed changes to existing law. *See* JA266-JA267.

- Eckert and Parx both timely asserted privilege objections. Eckert submitted a privilege log. *See* JA277. Parx immediately upon learning of the magistrate judge's adverse privilege ruling filed an appeal and asserted privilege. *See* JA158.

- Neither Eckert nor Parx waived the privilege, nor has anyone claimed that Parx or Eckert waived the privilege.

Once Parx met its burden, POM had the obligation to demonstrate that the privilege does not apply or an exception to the privilege applies. *Philadelphia County*, 593 A.2d at 407 (burden of proof is upon party asserting that disclosure of information would not violate privilege); *Nationwide*, 924 A.2d at 1266 (same).

POM did not meet its burden. POM did not assert any exception to the privilege. (Indeed, there are no exceptions that even remotely apply here.) More importantly, POM did not submit any evidence to contradict Parx's evidence that the documents at issue contain confidential communications about legal matters such as advice on proposed or desired legislation and related legislative matters. In fact, POM has failed to come forward with anything – let alone evidence – to show that the privilege does not apply or that a waiver or an exception does.[4]

---

[4] Even POM should agree because it has invoked privilege to protect communications among its lawyers, lobbyists, and public-relations professionals. *See, e.g.*, JA393. If POM seeks to protect such communications here or in its various other

In the end, Parx submitted evidence demonstrating that it has satisfied each element of the test for applying the attorney-client privilege under Pennsylvania law. Parx thereby met its burden of demonstrating that it sought out and discussed legal advice from its lawyers and consultants such that their communications embodied in documents should be privileged and protected from disclosure. POM did not meet its burden of proof.  Based on the burdens, Parx should prevail here without further analysis.

Accordingly, the attorney-client privilege applies and precludes the discovery of the documents at issue.

### 2. Advice on "legislative" matters is "legal" advice for purposes of the attorney-client privilege.

Notwithstanding that straightforward analysis, the magistrate judge and the district court rejected Parx's privilege claims based solely on the fact that documents contained so-called "legislative advice," not "legal" advice. The question then becomes whether "legislative advice" –

---

state litigations against Parx's lobbyists and public relations professionals, POM may be taking irreconcilably inconsistent positions by invoking privilege on one hand to protect similar documents from disclosure while arguing for disclosure of Parx's documents involving the same kinds of communications. Ironically, this would be the sort of "fast and loose" behavior to which judicial estoppel should apply. *Cf. Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133, at *4 n.6 (3d Cir. Nov. 13, 2023) (judicial estoppel did not apply to Parx).

*e.g.*, advice on pending or desired legislation, drafting proposed legislation, monitoring, reviewing, or advising on legislative efforts, and related legal services – is protected from disclosure.  The answer is yes.

As a threshold matter, the attorney-client privilege in Pennsylvania applies when a client has confidential communications to obtain advice on "legal matters." *See, e.g.*, *See BouSamra*, *supra*; 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2296 (John T. McNaughton rev. ed. 1961) ("A matter committed to a professional legal adviser is *prima facie* so committed for the sake of legal advice ... and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice.").

The phrase "legal matters" is broader than legal "advice" and includes things like discussions with lawyers and other privileged persons about potential legal problems, potential litigation matters, or potential legal options or strategies for future legal actions; obtaining opinions of law, legal services, or assistance in a legal proceeding; or seeking services that require the skills a lawyer possesses. *See, e.g.*, Grace M. Giesel, *The Legal Advice Requirement of the Attorney-Client*

*Privilege: A Special Problem for in-House Counsel and Outside Attorneys Representing Corporations*, 48 MERCER L. REV. 1169, 1191 (1997).

Similarly, "legal advice" generally means "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *See* 1 PAUL R. RICE, ATTORNEY CLIENT PRIVILEGE IN THE UNITED STATES § 7:9 (2d ed. 1999). As the Second Circuit thoughtfully explained, "legal advice" means more than just applying law to fact for a given client. The modern and "complete" lawyer does much more than that when rendering legal advice to a client:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. ***So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.*** … [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

*In re County of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007) (emphasis added); *Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D.

Pa. 2014) (communications about strengths/weaknesses of claim or defense, options, strategy, and settlement constitute legal advice for purposes of apply attorney-client privilege).

Although Pennsylvania courts have yet to weigh in, several courts have concluded that advice on legislation and related legislative matters is protected by the attorney-client privilege (all emphases added):

- *Weissman v. Fruchtman*, No. 83 Civ. 8958(PKL), 1986 WL 15669, at *15 (S.D.N.Y. Oct. 31, 1986) (finding attorney-client privilege properly invoked where client sought ***legal advice on pending legislation*** and stating that "[a]n in camera review of the documents in question reveals communications between City agencies and the Corporation Counsel's office seeking ***legal advice on pending legislation***").

- *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978) (noting that legal work for the client included "***preparation of possible testimony [and] analyzing the probable legal consequences and antitrust considerations of the proposed legislation***").

- *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 24 (2016) ("If a lawyer who is also a lobbyist gives advice that ***requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect***.").

- *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044342, at *4 (D. Conn. Nov. 14, 2013) ("The Court finds the redactions on the following documents are protected by the attorney-client privilege because ***they either reflect confidential requests for legal advice from Progressive to its attorney-***

37

*lobbyists*, or ***reflect the attorney-lobbyists providing confidential legal advice, such as the interpretation and/or analysis of legislation***.").

▪ *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 446 (E.D.Tex.2003), *vacated in part on other grounds sub nom.*, vacated in part sub nom. *In re Texas Auto. Dealers Assn.*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003) (holding that ***"[l]egal advice on pending or existing legislation can be privileged*** and stating that "[b]oth PRIV 28–29 and PRIV 30–49 discuss proposed changes to a piece of legislation. These communications relate to legal services because the proposed changes required Coffey's legal analysis and attention. The fact that these communications relate to lobbying efforts does not affect the privileged nature of the documents. ***Obtaining a legal opinion on the effect of proposed legislation or on the best way to accomplish certain goals through proposed legislation necessarily involves legal analysis and opinion, which is protected by the attorney-client privilege***.").

As in these cases in which courts expressly acknowledged that advice on legislation matters is protected by the attorney-client privilege, the documents at issue here reflect legal analysis of existing and proposed legislation at both the state and local level. Without revealing privileged information here, the documents at issue reflect analysis of legal consequences associated with certain pending legislation, preparing testimony, making recommendations about legislation, evaluating whether proposed legislation withstands judicial review, and evaluating

38

the interests of the client in the event proposed legislation becomes law. *See* JA277-JA392.

This is the essence of providing legal advice to clients. Indeed, how could advice from lawyers about legislative matters involve anything other than "legal" advice? Advice about legislation is not accounting advice, or financial advice, or business advice, or personal advice, or medical advice, or even lobbying advice.

When Parx and its professional agents are engaged in discussions with its lawyers, or when the lawyers and professionals engage in discussions on Parx's behalf, ***Parx wants advice on legal matters. Period.*** *See* JA264-JA274. Sometimes, the advice that Parx needs also includes advice on pending legislative or policy matters that affect (or may affect) its rights and obligations under existing and future law and wants to know how to conform its behavior accordingly. But that does not destroy the privilege. *See In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997), *overruled on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)).

The Court should not park its common sense at the door when reviewing these privilege issues. *N.L.R.B. v. Jackson Hosp. Corp.*, 257

F.R.D. 302, 307 (D.D.C. 2009). The documents contain advice on legal matters and should not be subject to public consumption merely because lawyers are discussing pending or desired legislation and related legislative matters as opposed to enacted law. It is largely irrelevant that the subject matter is pending or desired legislation and related legislative issues. Rather, ***what matters is clients are seeking out lawyers to use their skill set to advise on legislative matters in ways that require the input of trained lawyers***. *See, e.g.*, *County of Erie*, 473 F.3d at 420-21.

Moreover, consider the enormity and complexity of the topics reflected in the documents. The legality or illegality of so-called "skill games" is a topic that all three branches of Pennsylvania's government have evaluated for years and continue to debate. *See, e.g.*, Justin Sweitzer, *Understanding Pennsylvania's Ongoing Debate over Skill Games*, City & State PA, *available [here](#)* (last visited April 27, 2025). The legislatures at the state and local level are considering legislation regarding the legality or illegality of so-called "skill games"; the executive branch is evaluating the legality of skill games; and state courts at all

levels are considering cases involving that very issue. There is no consensus among the branches of government at state and local levels.

This uncertain landscape, particularly around the time of the communications reflected in the documents at issue, favors a broader application of the attorney-client privilege. Parx's lawyers and agents must be free to communicate about legislative and other initiatives that affect Parx's interests without fear that those communications will become matters of public knowledge merely because the topic is legislation or related legislative matters as opposes to enacted law.

Finally, it is bad policy to construe "legal advice" so narrowly as to exclude a lawyer's discussions about legislative matters from the protections of the attorney-client privilege. The better rule is that communications regarding legislation of the type reflected in the documents should be covered by the privilege. The courts should not limit the scope of the privilege when confidential communications contain advice about legislation and related legislative matters because:

- This confidentiality encourages the client to provide all relevant information to its attorneys, including details about pending legislation that may impact the company.

- Upholding the privilege ensures the preservation of trust and confidentiality in the attorney-client relationship. Clients

41

such as Parx need assurance that their communications with its agents and attorneys, especially regarding legislative matters affecting its business, will be kept confidential to facilitate effective legal representation.

- Applying the privilege to documents related to pending legislation allows attorneys to provide well-informed and comprehensive legal advice. This is crucial for clients such as Parx to navigate the complex legal landscape surrounding legislative matters that affect the client's interests.

- Providing the privilege for documents related to pending or desired legislation encourages clients to seek legal advice on compliance matters. This, in turn, promotes adherence to laws and regulations, contributing to the overall stability and fairness of the legal system.

- Recognizing the attorney-client privilege in the context of pending legislation aligns with the longstanding legal tradition of confidentiality between attorneys and clients.

These points are not merely academic. Parx and similarly situated clients undoubtedly will be reluctant to engage in open and candid discussions with their attorneys for fear that, as in this case, such communications are susceptible to disclosure in litigation ***that does not even involve the client*** and that is based on allegedly tortious conduct ***the client was not even aware of, much less participated in***. This understandable hesitancy undermines the very purpose of the attorney-client privilege, which is to foster trust and facilitate the uninhibited

exchange of information between clients and their lawyers. *See POM v. Eckert I*, 2023 WL 7491133, at \*4 n.6.

Accordingly, the attorney-client privilege protects from disclosure documents that contain advice on legislative matters.

> **3.    The "predominant purpose" test dictates that documents containing advice on legislative matters should be protected in their entirety even if they contain some non-privileged information.**

Having determined that confidential communications advice on involving legislative matters is protected by the attorney-client privilege, the question then becomes whether the documents should be protected in their entirety even if they contain some non-privileged information. The answer is yes.

The attorney-client privilege applies to mixed communications – ones between lawyers and clients (or their respective agents) that involve legal matters and other matters such as business advice, accounting, lobbying, communications advice, or other professional advice – when the primary purpose of the communication is legal in nature:

> The Third Circuit has held that even when "the decision includes consideration of" various business concerns, the attorney-client privilege still applies to the communications if the decision "was infused with legal concerns and was reached only after securing legal advice."

43

*See, e.g.*, *SEPTA v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) (citing *Ford*, 110 F.3d at 966; *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 208 (E.D. Pa. 2008); 1 PAUL R. RICE, ATTORNEY CLIENT PRIVILEGE IN THE UNITED STATES § 7:2 (2019)).

If legal advice in a document predominates, the document is privileged in its entirety because legal and non-legal advice are so intertwined that they cannot be sorted out. *See, e.g.*, *County of Erie*, 473 F.3d at 420-21. If legal advice in a document does not predominate, the privileged portions – however small – nevertheless should be redacted. *County of Erie*, 473 F.3d at 421. In other words, the party requesting privileged information is not entitled to it merely because it is located within a document that contains non-privileged information. *See, e.g.*, *Janesch v. Pennsylvania House of Representatives*, 299 A.3d 1030 (Pa. Cmwlth. 2023) (redacting privileged information from non-privileged documents such as invoices).

In *Ford*, for example, this Court addressed documents containing information discussed during a "Policy and Strategy Committee" for Ford Motor Company. The meeting included top executives, counsel, and other professionals. Among non-legal information, the communications

44

involved counsel's opinion on the legal implications of proposed courses of action. This Court held that the privilege applied to protect the documents that embodied these communications from disclosure:

> Our review of the final minutes, the draft minutes, the report Nolte summarized at the meeting, and relevant affidavits, leads us to conclude that ***the communications in the meeting were made for the purpose of securing legal advice***. Ford clearly had concerns about the Bronco II; this is not surprising given that the product was in the early stages of its development. ***Nolte examined the legal implications of some of those concerns and proposed a particular course of action, contained in his report to the Policy and Strategy Committee, to address them.*** The Policy and Strategy Committee meeting itself was called in part to discuss Nolte's proposal. The discussion at the meeting, then, was intended to secure Nolte's legal advice.
>
> The court later stated that the minutes were "business records" that memorialized "essentially business and safety decisions." We disagree with the district court's conclusions as to the nature of the documents. ***The documents do not contain merely factual material nor do they detail mere business decisions; in that respect, the district court clearly erred in describing these documents***. ***Certainly, the ultimate decision reached by the Policy and Strategy Committee could be characterized as a business decision, but the Committee reached that decision only after examining the legal implications of doing so.*** Even if the decision was driven, as the district court seemed to assume, principally by profit and loss, economics, marketing, public relations, or the like, ***it was also infused with legal concerns, and was reached only after securing legal advice***. At all events, ***disclosure of the documents would reveal that legal advice***. We thus hold

> that the minutes of the 1982 meeting are protected from discovery by the attorney-client privilege.

*See Ford*, 110 F.3d at 966 (emphasis added).

There is no meaningful difference between the facts here and the situation in *Ford*. Here, for example, a corporate client has questions about the legal implications of pending or desired legislation as well as related lobbying and public relations efforts as part of its business. *See* JA264-JA274. The client engaged the services of lawyers to answer those legal and other questions and, from time to time, engaged other professionals to discuss these matters confidentially with Parx's lawyers (both in-house and outside counsel) to aid them in providing legal advice to Parx as the client so the client may evaluate the existing and future legal framework within which it makes informed business decisions. *See* JA264-JA274.

As in *Ford*, documents reflecting advice on legal matters – though intertwined with potentially non "legal" but interrelated matters – should be protected in their entirety. *See also County of Erie*, 473 F.3d 413 at 420-21. The communications embodied in the documents at issue here involve advice on legal matters regardless of whether the communications also involve ancillary discussions regarding politics,

business considerations, public relations, communications, or other matters which, standing alone and untethered from legal advice, might well be characterized as "non-legal." *See id.*

Accordingly, the attorney-client privilege protects from disclosure in their entirety documents that contain advice on legislative matters.

### B. The district court erred when it concluded that the attorney-client privilege does not protect the documents from disclosure.

The analysis above is dispositive in Parx's favor, yet the district court concluded that the attorney-client privilege does not protect the documents from disclosure. Among other things, the district court (a) ignored uncontested evidence supporting Parx's privilege claim; (b) incorrectly held that "legislative" advice is not privileged because "legislative" advice is different from "legal" advice; and (c) ordered the disclosure of privileged documents in their entirety without even considering redaction. The district court erred on all fronts.

#### 1. The district court ignored uncontested evidence supporting Parx's privilege claim.

As a threshold matter, the district court initially overlooked and then later refused to consider Parx's uncontested declaration supporting its privilege claim, reasoning that (a) Parx failed to support its claim with

47

evidence and waived its reliance on Mr. Bonner's declaration by only mentioning it in reply; (b) calling the oversight "harmless error"; and (c) refusing to credit the declaration on reconsideration because Parx failed to submit it to the magistrate judge for review before he rendered his decision. *See* JA042-JA043. This is wrong.

### a.   Parx should have prevailed on the burdens alone based on the uncontested declaration.

*First*, Parx should have prevailed on the burdens alone based on the uncontested declaration.

An appellate court should reverse a district court's decision for plain error when it ignores uncontested evidence from (and then rules against) the party with the burden of proof on an issue. *See, e.g.*, *Rodriguez v. Rozum*, 535 F. App'x 125, 135 (3d Cir. 2013) ("This application of Pennsylvania law to the evidence highlights the third error committed by the District Court: the District Court both ignored key evidence and failed to view evidence in the light most favorable to the Commonwealth.").

Here, as noted above, Parx attached Mr. Bonner's declaration to its opening brief on direct appeal from the magistrate judge's opinion and order. *See* JA264-JA274. There is no mention of Mr. Bonner's declaration

in the district court's privilege analysis on direct appeal despite identifying the shifting burdens. *See* JA006-JA029. Parx did not wait until its reply brief to "mention" Mr. Bonner's affidavit. *See* JA259 (ECF notice reflecting declaration attached to opening brief). To the contrary, the district court plainly overlooked the fact that Parx submitted Mr. Bonner's affidavit with its opening brief on appeal and then incorrectly suggested that Parx waived the right to rely on it by only mentioning the affidavit in a reply brief. *See* JA011 n.5.

This oversight alone should constitute reversible error. *See Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999). The district court should have considered the declaration given that Parx had the burden on this privilege issue, but it did not.

> **b.  The district court should have considered the uncontested declaration after Parx pointed out the district court's error.**

*Second*, the district court should have considered the declaration after Parx pointed out the district court's error but declined to do so.

As this Court has held, a district court's outright refusal to even consider material evidence presented to it on reconsideration is reversible error. *See Max's Seafood Cafe*, 176 F.3d at 678 (stating that "it

was not consistent with the wise exercise of discretion for the District Court to have declined even to consider [the evidence presented to it]").

Indeed, the purpose of reconsideration is to correct these types of clear evidentiary errors that may affect the outcome of decision *before* burdening the appellate courts with appeals challenging mistakes the district courts easily could have corrected. *See, e.g., North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (reconsideration is appropriate to correct a clear error of law or fact or to prevent manifest injustice).

Here, although the district court acknowledged its clear error, *see* JA041-JA043, the court nevertheless refused to consider Mr. Bonner's declaration as required by the burden-shifting analysis in the case law because Parx submitted the affidavit on appeal after the magistrate judge issued his opinion and order such that he did not have the chance to review. This is wrong.

As a threshold matter, Parx is not a party in the district court. The dispute is between Eckert and POM, and there are countless ongoing discovery disputes. *See* JA239-JA263. POM raised this particular dispute years after the original discovery requests. *See* JA256. POM filed its

50

dispute under seal. *See* JA296. The ECF record does not reveal the substance of the dispute or specific documents involved and to which of Eckert's clients they belong. *See* JA239-JA263. It would be incongruous to deny a non-party's privilege when it had no meaningful notice or opportunity to weigh in until after a magistrate judge issued an adverse disclosure order.

Indeed, unlike previous discovery disputes over privilege in which the magistrate judge and district court notified Parx about and invited its participation (and requested consent for previous *in camera* reviews), *see* JA245 (docket annotation for hearing transcript in which magistrate judge asked Parx for consent to submit privileged documents *in camera* for review), neither the magistrate judge nor the district court informed Parx that its privileged documents were at issue or invited Parx to participate in this dispute. *See* JA239-JA263. This approach is curious given that the district court is well aware of Parx's longstanding efforts in this case to protect its privileged documents from disclosure to POM. *See* JA239-JA263 (docket sheets reflecting Parx's participation in privilege disputes since June 2020).

51

In short, Parx had no meaningful notice or opportunity to weigh in until after the magistrate judge ordered Eckert to disclose Parx's documents. In any event, if the district court had any concerns that the magistrate judge did not have the opportunity to consider the declaration that Parx submitted as soon as it was able, the district court has appellate powers over non-dispositive decisions rendered by magistrate judges, *see* M.D.L.R. 72.2, and could have remanded for further proceedings. It did not.

Instead, the district court placed an untenable burden on Parx – a non-party – to presciently submit evidence in support of a privilege claim in a sealed discovery dispute. The Court should not endorse that approach. As soon as the magistrate judge issued his decision, Parx immediately appealed and supported its privilege claims with proper evidence that is of record, predates the magistrate judge's ruling, and readily available to him and district court. *See* JA265.

Unfortunately, this is not the first time the magistrate judge and district court improperly denied Parx's privilege after the fact, as this Court will recall. *See POM v. Eckert I*, 2023 WL 7491133, at *4 n.6 (reversing district court's adverse privilege ruling and stating that

"[p]arties rely on the privilege as essential to open communications with counsel. ***To have it denied after the fact, and with little evidence of the role of Parx, the client, in the positions Eckert was taking, gives us serious pause***.").

Indeed, to reject uncontested evidence under these circumstances not only defies logic and constitutes reversible error but may also implicate Parx's due process rights. *See, e.g.*, *United States v. Ryan*, 402 U.S. 530, 533 (1971); *Pa. Turnpike Comm'n v. Electronic Transaction Consultants Corp.*, 230 A.3d 548 (Pa. Cmwlth. 2020) (protecting third-party rights by providing notice and an opportunity to be heard before disclosing confidential information).

Accordingly, the district court should have considered the declaration after Parx pointed out the district court's error.

### c.    The district court's errors are not harmless.

Finally, the district court's errors are not harmless. To the contrary, the errors changed the trajectory of this dispute.

An error is only "harmless" if it had no effect on the outcome of a dispute. *See, e.g.*, *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 276 (3d Cir. 2017) ("Under the harmless error standard, the erroneous

53

exclusion or admission of evidence will not require reversal 'if it is highly probable that the error did not contribute to the judgment.'") (quoting *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002)).

Here, the district court readily acknowledged its errors but refused to consider Parx's uncontested evidence to support its privilege claim. The uncontested affidavit *prima facie* satisfied Parx's burden as a matter of law. *See e.g.*, *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 211 F. Supp. 736, 740, 6 Fed. R. Serv. 2d 670 (N.D. Ill. 1962) ("Defendants have filed ***uncontroverted affidavits*** in support of these claims of privilege. ***These affidavits are sufficient to constitute a prima facie showing that such documents are entitled to protection from discovery*** by virtue of the work product doctrine.") (emphasis added).

The district court's refusal is significant because it disrupted the proper burden-shifting analysis that the case law requires. *See Nationwide, supra.* After Parx satisfied its burden with Mr. Bonner's declaration, the burden shifted to POM to demonstrate that the privilege does not apply or that a waiver or an exception to the privilege applies. But that did not happen. Consequently, the court essentially excused POM from satisfying its burden in this privilege dispute.

Just as Parx had the burden to prove its privilege claim with evidence, POM had the obligation to support its position with contrary *evidence*, not the mere *ipse dixit* of counsel. *See, e.g.*, *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423, 2001 WL 1046982 (E.D. Pa. 2001) (*ipse dixit* insufficient to establish privilege burdens). But POM did not support its position with evidence. In fact, ***there is no evidence on the privilege issue other than Parx's***. The evidence is uncontradicted. Mr. Bonner's declaration is dispositive.

Parx should have prevailed without further analysis based solely on the burdens, yet Parx did not prevail. These errors affected the outcome of this privilege dispute such that this Court is duty bound to reverse. *See Egan, supra.* Indeed, the district court could have obviated the need for this appeal had it granted reconsideration and properly credited Mr. Bonner's uncontested declaration in support of Parx's privilege claim. The district court erred when it failed to do so.

Accordingly, the Court should reverse because the district court erred by admittedly ignoring uncontested evidence that Parx submitted to support its privilege claim and refused to reconsider that decision.

55

### 2. The district court incorrectly held that "legislative" advice and "legal" advice are different for purposes of the privilege.

Apart from those threshold problems, the district court erred as a matter of law by upholding the magistrate judge's *per se* rule that so-called "legislative advice" (a phrase created by the magistrate judge) is not "legal" advice that is protected by the attorney-client privilege. Compounding the problem, the district court expressly stated that legislative advice and legal advice are different and mutually exclusive. In effect, the district court's holding is that advice on legislative matters is never protected by the attorney-client privileged. That is wrong.

This Court has flatly rejected a categorical approach to the privilege analysis. In *Ford*, *supra*, for example, this Court overruled the trial judge in that case who categorized documents as containing "business advice" and categorically declined to apply the privilege on that basis. *See Ford*, 110 F.3d at 966.

Here, as in *Ford*, the magistrate judge looked for anything in the documents that involved what he subjectively believed to be "legislative" in nature and repeated the mantra that the privilege does not apply because the documents involve "legislative" advice, not "legal" advice. *See*

JA090 ("The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege.") (emphasis in original; statement repeated verbatim more than 40 times in the opinion).

The magistrate judge applied the privilege too narrowly and, by doing so, *per se* precluded its application anytime a communication between lawyers and clients (or their agents) contains a discussion about legislation or legislative matters. That was error. Rather than casting the legal advice in the documents as "legislative" advice to circumvent the privilege, the magistrate judge should have considered the representation of Parx in totality before applying an improper, *per se* rule precluding application of the privilege altogether simply because a communication discussed legislation or legislative matters.

In other words, like the judge in *Ford*, the magistrate judge here did not explain whether the predominant purpose of the communication for the client was legal in nature as opposed to something else despite the district court's attempt to defend his review. *See* JA015 (stating that the magistrate judge "conducted a fact-specific inquiry to determine whether each of the communications at issue concerned legal advice").

The magistrate judge also did not appreciate that the communications are all infused with legal advice. *See Ford*, *supra.* Instead, the magistrate judge treated discussions among Parx, its lawyers, and/or its third-party lobbyists and consultants about legislative matters essentially as a "poison pill" of sorts that destroys the privilege even though the predominant purpose of these communications is to develop legal advice and strategies to assist Parx.

Simply put, the magistrate judge erred, and that error persisted when the district court adopted the magistrate judge's analysis. If this Court reversed the trial judge's categorical approach in *Ford*, then surely it should reverse the categorical approach developed by the magistrate judge and endorsed by the district court.  The magistrate judge created a shorthand to circumvent the privilege when legislative matters are involved. The district court adopted that approach. Although such a rule might be expedient to apply, it was wrong for the magistrate judge (and the district court) to treat entire documents that contain what the magistrate judge labeled as "legislative advice" as unprotected by the attorney-client privilege.

Similarly, the district court compounded the error further by expressly stating that "legislative advice" and "legal" advice somehow are different and mutually exclusive. By treating legislative advice as different from legal advice to circumvent the attorney-client privilege, the district court endorsed a novel, *per se* approach to the privilege analysis that exposes far more of Parx's privileged materials to public disclosure than it should. As Parx argued above, legislative advice and legal advice are not mutually exclusive. The type of advice embodied in the documents at issue is legal advice for purposes of the attorney-client privilege, and the district court erred by concluding otherwise.

Parx is not nit-picking. The magistrate judge's categorical approach endorsed by the district court is wrong on the law and undermines the privilege. Forcing the disclosure of all communications that relate in any way to legislation and related matters is flat out wrong. If left to stand, the decision risks creating a chilling effect on clients seeking legal advice in these crucial areas. *See POM v. Eckert I*, 2023 WL 7491133, at *4 n.6 ("Parties rely on the privilege as essential to open communications with counsel. To have it denied after the fact … gives us serious pause.").

Accordingly, the Court should reverse because legislative advice is legal advice that is protected by the attorney-client privilege.

### 3. The district court ordered the disclosure of privileged documents in their entirety without considering redaction.

Finally, the district court erred when it rejected Parx's suggestion to redact portions of "non" legal documents that the district court acknowledged as containing privileged information, concluding (again, incorrectly) that Parx somehow waived that argument. *See* JA046.

As noted above, when documents contain both privileged and non-privileged information, the courts look at the "predominant purpose" of the document to determine whether a privilege applies. If legal advice in a document predominates, the document is privileged in its entirety because legal and non-legal advice are so intertwined that they cannot be sorted out. If legal advice in a document does not predominate, the privileged portions – however small – nevertheless should be redacted. *See, e.g., County of Erie*, 473 F.3d at 420–21; *Ford*, 110 F.3d at 966.

Accordingly, a district court is duty bound to order the privileged portions of predominantly "non" legal documents redacted. *See County of*

*Erie*, 473 F.3d at 421. The *Erie* court said this about redacting privileged portions of mixed-purpose communications:

> ***Importantly, redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication***. *See, e.g., United States v. Weisman*, No. 94 Cr. 760, 1995 WL 244522, at \*4 (S.D.N.Y. Apr. 26, 1995) (recognizing the availability of redaction to protect legal advice in hybrid documents); *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982) ("In those instances where both privileged and non-privileged material exist, the privileged material has been deleted.").

*County of Erie*, 473 F.3d at 421 n.8 (emphasis added).

As noted above, Parx submits that that advice on legal matters, including legislation and related legislative matters, is protected by the privileged and predominates in the documents such that they should be protected in their entirety. If there is some question about whether non-legal (including non-legislative) advice predominates in a document, the district court must first make that determination and then order redaction of any privileged information, *see, e.g., County of Erie*, 473 F.3d at 420–21; *Ford*, 110 F.3d at 966, including redaction of any advice on legislative matters as Parx has explained throughout this brief.

Here, the district court agreed with Parx's analysis on reconsideration and acknowledged that redaction is proper for documents

61

with "small" amounts of privileged information but stated that Parx waived the issue. *See* JA046. That is wrong. Parx raised the arguments in response to the district court's order on appeal from the magistrate judge's order to produce documents containing privileged information without redaction. *See* JA045. This was Parx's first opportunity to raise the point. Again, the district court placed an unfair burden on Parx to raise an argument for redaction that was unnecessary until after the Court issued its decision on direct appeal refusing to consider that option.

Indeed, whether Parx raised the issue or not, the district court is duty bound to follow the predominant purpose test and either protect documents in their entirety or order redactions of any privileged information found in predominantly non-legal documents. The district court has the obligation to do so even without prompting in order to protect against disclosure of privileged information as prohibited by Fed. R. Civ. Pro. 26(b)(1) and Fed. R. Civ. Pro. 45(d)(3)(A)(iii).

Accordingly, the district court erred by ordering the disclosure of privileged documents in their entirety without considering redaction.[5]

---

[5] Parx is constrained to make a final point here for purposes of correcting the record. In its opinions, the district court claimed that Parx waived many arguments that supported both its appeal and bid for reconsideration, including arguments Parx raised in its reply briefs that responded to arguments raised by POM in its opposition

## IX.    CONCLUSION

WHEREFORE, the Court should reverse; vacate the district court's order; remand with instructions to (a) issue a protective order to prevent the disclosure of Parx's privileged documents, or (b) conduct a proper privilege review based on this Court's announcement of the proper standard in this appeal; and order such other relief as the Court deems necessary or appropriate.

May 5, 2025                                     Respectfully submitted,

                                               **GA BIBIKOS LLC**

                                               /s George A. Bibikos
                                               George A. Bibikos (PA 91249)
                                               5901 Jonestown Rd. #6330
                                               Harrisburg, PA 17112
                                               (717) 580-5305
                                               gbibikos@gabibikos.com

                                               *Counsel for Parx Casino*

---

briefs. *See, e.g.*, JA011, JA012, JA046,JA046, JA049, JA053, JA054. The district court is mistaken about waiver. As noted, Parx raised and argued all the issues before the district court in dozens of places and argued those issues in its notice of appeal, motion for reconsideration, and four briefs. *See supra* n.2. To the extent the district court concluded that Parx waived arguments by only raising them in reply, the district court is mistaken again. These reply arguments are just that. "[I]t is well settled that 'where an appellee raises a[n] argument not addressed by the appellant in its opening brief, the appellant may reply.' *Bennett v. Tucker*, 827 F.2d 63, 69-70 n.2 (7th Cir.1987). This court may thus consider Appellants' policy argument because Appellees raised it for the first time in their brief."). *See McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012). Parx raised arguments in its reply brief in response to specific arguments that POM raised in its opposition papers. Parx has no obligation to predict and then respond to as yet unasserted opposition arguments in order to avoid waiver. That is nonsensical.

## CERTIFICATIONS

Word Count. In accordance with Fed. R. App. Pro. 27(d)(2)(A), the attached contains 12,674 words (excluding exempt content) as calculated by the word-count feature of Microsoft Word.

Electronic Version. The text of the electronic brief and hard copies provided to the Court (if any) are identical.

Virus Scan. The electronic brief has been checked for viruses using Apple MacOS XProtect.

Bar Admission. The undersigned counsel is a member of the bar of this Court.

Service. On May 5, 2025, I caused a copy of the foregoing to be served via ECF on the following counsel of record:

Robert S. Tintner, Esq.
Peter C. Buckley, Esq.
Fox Rothschild LLP
2001 Market St., Suite 1700
Philadelphia, PA 19103
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
*Counsel for Eckert Defendants*

George W. Westervelt, Jr., Esq.
706 Monroe St
P.O. Box 549
Stroudsburg, PA 18360-0549
geowwest@ptd.net
*Counsel for Pace-O-Matic, Inc.*

Omobolanle A. Adeniran, Esq.
Michael Nolan, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
bola.adeniran@huschblackwell.com
michael.nolan@huschblackwell.com
*Counsel for Pace-O-Matic, Inc.*

Michael Martinich-Sauter, Esq.
James Otis Law Group LLC
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
Michael.martinich-sauter@james-otis.com
*Counsel for Pace-O-Matic, Inc.*

Jeffrey Jensen
TORRIDON LAW PLLC
801 17th Street NW, Suite 1100
Washington, DC 20006
(202) 249-6900 (Telephone)
jjensen@torridonlaw.com

/s George A. Bibikos
George A. Bibikos

Case: 24-1984    Document: 28    Page: 74    Date Filed: 05/05/2025

# In the United States Court of Appeals for the Third Circuit

Docket No. 24-1984

PACE-O-MATIC, INC.

*vs.*

ECKERT, SEAMANS CHERIN & MELLOTT, LLC; MARK S. STEWART; KEVIN M. SKJOLDAL

APPEAL OF GREENWOOD GAMING AND ENTERTAINMENT, INC., d/b/a PARX CASINO

*On direct appeal from an opinion and order of the United States District Court for the Middle District of Pennsylvania dated April 29, 2024, reconsideration denied July 3, 2024*

**JOINT APPENDIX VOL. I**
**JA001-JA157**

**GA BIBIKOS LLC**

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino*

May 5, 2025

# TABLE OF CONTENTS

**Volume I**

Parx Notice of Appeal to CA3 (Doc. 394 filed 5-28-2024) ................ JA001

Parx Amended Notice of Appeal to CA3 (Doc. 399 filed 7-11-2024)................................................................................. JA003

District Court Opinion in Support of Order Granting in Part and Denying in Part Appeals from Magistrate Judge Decision (Doc. 382 filed 4-29-2024)........................................ JA006

District Court Order Granting in Part and Denying in Part Appeals from Magistrate Judge Decision (Doc. 383 filed 4-29-2024) ................................................................................ JA031

District Court Opinion in Support of Order Denying Parx's Motion for Reconsideration, Denying Certification, and Granting Stay of Disclosure Order Pending Appeal (Doc. 397 filed 7-3-2024) ........................................................... JA034

District Court Order Denying Parx's Motion for Reconsideration, Denying Certification, and Granting Stay of Disclosure Order Pending Appeal (Doc. 398 filed 7-3-2024) ................................................................................ JA055

Order of Magistrate Judge on Appeal (Doc. 354 filed 12-1-2023)................................................................................. JA058

Opinion of Magistrate Judge on Appeal (Doc. 353 filed 12-1-2023)................................................................................. JA061

**Volume II**

Parx Appeal from Magistrate Judge Decision (Doc. 362 filed 12-15-2023) ........................................................... JA158

Eckert Appeal from Magistrate Judge Decision (Doc. 367 filed
　　12-15-2023) ................................................................................ JA166

Copy of District Court Order Granting in Part and Denying in
　　Part Appeals from Magistrate Judge Decision (Doc. 383
　　filed 4-29-2024) ......................................................................... JA174

Copy of District Court Opinion in Support of Order Granting
　　in Part and Denying in Part Appeals from Magistrate
　　Judge Decision (Doc. 382 filed 4-29-2024) .............................. JA176

Parx Combined Motion for Reconsideration or Certification
　　and for Stay of 4-29-2024 Order Pending Appeal (Doc.
　　387 filed 5-13-2024) ................................................................. JA200

District Court Order Staying Disclosure Order Pending
　　Reconsideration (Doc. 390 filed 5-14-2024) ............................ JA215

Copy of District Court Order Denying Parx's Motion for
　　Reconsideration, Denying Certification, and Granting
　　Stay of Disclosure Order Pending Appeal (Doc. 398 filed
　　7-3-2024) ................................................................................... JA216

Copy of District Court Opinion in Support of Order Denying
　　Parx's Motion for Reconsideration, Denying
　　Certification, and Granting Stay of Disclosure Order
　　Pending Appeal (Doc. 397 filed 7-3-2024) .............................. JA218

Docket Entries ........................................................................... JA239

Declaration of Thomas Bonner (11-7-2023) (attached as Tab
　　"A" to Doc. 366 filed 1-12-2024) ............................................. JA264

Declaration of Thomas Bonner (9-25-2024) (attached as Tab
　　"A" to Doc. 439 filed 9-25-2025) ............................................. JA270

Order of District Court Deferring Ruling on Privilege
　　Objections Pending Appeal (Doc. 451 filed 10-25-2024)......... JA275

Eckert Privilege Log (not confidential – attached as Exhibit 1 to Doc. 295 filed under seal 5-26-2023) .................................. JA277

POM Privilege Log (not confidential – attached as Exhibit 2 to Doc. 367 filed 1-12-24) ...................................................... JA393

Second Amended Complaint (Doc. 243 filed 7-14-2022).................. JA396

Answer to Second Amended Complaint (Doc. 325 filed 7-26-2023)................................................................................... JA432

Order of District Court Requiring Defendants to Submit Documents for *in camera* Review (Doc. 300 filed 6-8-2023)................................................................................... JA463

Order of District Court Referring *in camera* Review to Magistrate Judge (Doc. 313 filed 6-28-2023)......................... JA465

**Volume III (Sealed Appendix)**

POM Discovery Letter (Doc. 295 filed under seal 5-26-2023) ......... JA466

POM Annotations to Condensed Version of Eckert Privilege Log (attached to POM Discovery Letter as Exhibit 5 to Doc. 295 filed under seal 5-26-2023)..................................... JA474

Documents Referenced in Eckert Annotated Privilege Log (attached to POM Discovery Letter as Exhibit 6 to Doc. 295 filed under seal 5-26-2023)............................................. JA485

Eckert Opposition to POM Discovery Letter (Doc. 298 filed under seal 6-7-2023) ............................................................. JA514

# In the United States District Court for the Middle District of Pennsylvania

PACE-O-MATIC, INC.    )
          )
    *Plaintiff,*  )  [ELECTRONICALLY FILED]
          )
   *vs.*     )  Docket No. 20-292
          )
ECKERT, SEAMANS, CHERIN )  JUDGE WILSON
& MELLOT, LLC    )
          )
   *Defendant.* )

## NOTICE OF APPEAL

Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), hereby appeals to the United States Court of Appeals for the Third Circuit from an order of the court in the above-captioned matter dated April 29, 2024 (Doc. 383) and associated memorandum (Doc. 382).

May 28, 2024      Respectfully submitted,

            **GA BIBIKOS LLC**

            /s George A. Bibikos
            George A. Bibikos
            5901 Jonestown Rd. #6330
            Harrisburg, PA 17112
            (717) 580-5305
            gbibikos@gabibikos.com

            *Counsel for Greenwood Gaming &*
            *Entertainment, Inc. d/b/a Parx Casino*

JA001

Case 1:24-19840292-JPW Document 28 Page 480 Filed Date Filed: 05/05/2025

# CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that the District Judge and counsel of record will be served automatically.

/s George A. Bibikos
George A. Bibikos

JA002

# In the United States District Court for the Middle District of Pennsylvania

| | | |
|---|---|---|
| PACE-O-MATIC, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | [ELECTRONICALLY FILED] |
| | ) | |
| *vs.* | ) | Docket No. 20-292 |
| | ) | |
| ECKERT, SEAMANS, CHERIN & MELLOT, LLC, *et al.* | ) | JUDGE WILSON |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## AMENDED NOTICE OF APPEAL

Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), files this amended notice of appeal to the United States Court of Appeals for the Third Circuit from orders in the above matter dated April 29, 2024 (Doc. 383), and July 3, 2024 (Doc. 398, denying reconsideration), along with supporting memoranda (Docs. 382 and 397).

July 11, 2024

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos (PA 91249)
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino*

JA003

# CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that the District Judge and counsel of record will be served automatically.

/s George A. Bibikos
George A. Bibikos

Case: 24-1882 Document: 28 Page: 183 Date Filed: 05/05/2025

April 2024 Opinion

Case 1:20-cv-00292 Document 420 Filed 05/05/2025 Page 84 of 237

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| Plaintiff, | : | |
| v. | : | |
| ECKERT, SEAMANS CHERIN & MELLOTT, LLC, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are two appeals from United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order resolving one of many discovery disputes in this case. (Docs. 361, 362.) Following an *in camera* review of 120 purportedly privileged documents, Judge Saporito's order determined which documents were protected by privilege and which were not. (Doc. 354.) Judge Saporito ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*) Defendants Eckert, Seamans Cherin & Mellott, LLC; Kevin M. Skjoldal; and Mark S. Stewart (collectively, "Eckert") timely appealed the decision. (Doc. 361.) So did third-party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). (Doc. 362.) For the reasons that follow, the court will grant in part and deny in part the appeals.

1

JA006

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Neither party appeals the factual or procedural history stated in Judge Saporito's memorandum.  As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion.  Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert for an alleged breach of fiduciary duties to POM.  (Doc. 1.)  POM alleges that this breach stems from Eckert's representation of both POM and third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania.  (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania.  That was because Eckert represented Parx, a market competitor, in Pennsylvania.  (*Id.* at 3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through other counsel relating to the seizure and removal of

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

2

JA007

some of its skill games in Pennsylvania.[3] (*Id.* at 3.) During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, as well as motions to intervene. (*Id.* at 4–5.) In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia. (*Id.* at 5.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia. (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the procedural history of the discovery dispute underlying the instant appeals:

> This is one of a series of discovery disputes that the parties have been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).

> In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to

---

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018. (Doc. 166, p. 4.)

3

120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.)

On December 1, 2023, following an *in camera* review of the disputed documents and the parties' briefs, Judge Saporito issued a thorough, clear, and well-organized memorandum and order resolving the dispute. (Docs. 353, 354.) Judge Saporito's order resolved which documents were protected by privilege and which were not. (Doc. 354.) In his order, Judge Saporito sustained in part the assertions of privilege regarding four documents. (*Id.*) He determined that the majority of documents were not protected from production and ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*)

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision. (Docs. 361, 362.) In their appeals, they assert that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not

4

JA009

protected from disclosure by attorney-client privilege and the federal work-product doctrine. (Doc. 361, pp. 2–3; Doc. 362, p. 3.) The appeals were briefed and are ripe for disposition. (Docs. 366, 367, 373, 374.)

## STANDARD OF REVIEW

When a party appeals from a non-dispositive order issued by a United States Magistrate Judge, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting Fed. R. Civ. P. 72(a)). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.* (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). The party appealing the non-dispositive order has the burden of proof to establish that the order was clearly erroneous or contrary to law. *See NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (noting that under 28 U.S.C. § 636, "a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law"); *accord Haines*, 975 F.2d at 91 (citing 28 U.S.C. § 636(b)(1)(A)).

5

JA010

## DISCUSSION

The appeals filed by Eckert and Parx contest Judge Saporito's findings with respect to attorney-client privilege.[4] They argue both that he applied the wrong legal standard, and that he applied the standard incorrectly to the instant facts.

There is one threshold matter in which all parties agree that Judge Saporito was correct. Because this is a diversity case, Pennsylvania law governs whether attorney-client privilege attaches to a particular document. (Doc. 353, p. 10 (citing Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)).

The Supreme Court of Pennsylvania courts has stated that, "[b]ecause it 'has the effect of withholding relevant information from the factfinder,' courts construe the privilege narrowly to 'appl[y] only where necessary to achieve its purpose.'" *In re Estate of McAleer*, 248 A.3d 416, 425–26 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Twp. Of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Commw. Ct. 2018) ("Our federal courts have held that [t]o sustain this burden of proof, the party asserting the privilege must show,

---

[4] In their appeals, Eckert and Parx also assert that Judge Saporito was incorrect in finding that work-product doctrine did not protect the disputed documents. (Doc. 361, pp. 2–3; Doc. 362, p. 3.) Parx did not address this at all in its supporting brief. (Doc. 366.) Eckert only raised work-product doctrine in the last sentence of its brief. (Doc. 367, pp. 26–27.) It further explained its argument in a footnote. (*Id.* at 27 n.5.) But "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

6

JA011

by record evidence such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.")[5] (cleaned up).

Under Pennsylvania law, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15 A.3d at 59. Attorney-client privilege extends to confidential communications between lawyers and agents of a client where those agents are indispensable to or facilitate the lawyer's ability to provide legal advice. *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019).

The issues raised on appeal generally fall into two categories. The first is whether an attorney's communication is made for the purpose of obtaining or providing legal advice. Specifically, the court addresses to what extent attorney-client privilege applies to communications that, as a matter of content, primarily contain lobbying or legislative advice, and either entirely lack or only include a relatively small portion of legal advice. The second category relates to whether a communication is sufficiently confidential for the privilege to apply.

---

[5] Of note, in their central arguments, Eckert and Parx make no reference to affidavits regarding privilege. Parx does in its reply brief. (Doc. 374, pp. 6–7.) But as a general matter, "[a]rguments raised for the first time in a reply brief are generally waived." *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

7

JA012

With respect to the first category of issues, there is a dearth of factually analogous and binding case law. As a result, the parties and Judge Saporito rely heavily on persuasive authority.

Eckert raises six arguments in support of reversal of Judge Saporito's order. First, Judge Saporito assumed that legislative advice can never fall within the scope of attorney-client privilege. (Doc. 367, p. 2.) Second, Judge Saporito misapplied the standards for determining whether an inter-attorney legal memorandum is privileged. (*Id.*) Third, Judge Saporito misapplied the law when determining whether requisite confidentiality existed. (*Id.*) Fourth, the document PRIV-00949 is protected by attorney-client privilege. (*Id.*) Fifth, paragraphs three, five, and six of PRIV-00366 are protected by attorney-client privilege. (*Id.*) Sixth, documents PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are protected by attorney-client privilege. (*Id.* at 3.) Parx joins in Eckert's first and second arguments. (Doc. 366, pp. 10–19.)

The court addresses each of these arguments below.

**A. Judge Saporito's ruling was not contrary to law because it did not apply an incorrect standard regarding what constitutes legal advice. Nor did he clearly err in applying the standard to the specific documents that Eckert and Parx dispute.**

Eckert and Parx argue that Judge Saporito's memorandum and order were contrary to law because he assumed that when an attorney provides legislative advice, such advice can never be legal advice within the scope of attorney-client

8

JA013

privilege.  (Doc. 367, p. 15.)  They argue that Judge Saporito applied a non-existent *per se* rule.  (Doc. 366, p. 13.)  In addition to generally asserting that Judge Saporito used the wrong legal rule,[6] they also argue that Judge Saporito misapplied the rule with respect to five documents: PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, and PRIV-0074.  (Doc. 366, p. 15; Doc. 367, p. 16.)  The court will first address the rule Judge Saporito applied and will then address the specific documents argued by Eckert and Parx.

### 1.  Judge Saporito applied the correct legal standard.

Contrary to the arguments of Eckert and Parx, POM argues that Judge Saporito did not apply a per se rule.  Instead, he applied the correct legal standard. (Doc. 373, p. 7–15.)  Judge Saporito's own language shows that POM is correct:

> It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted). "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001). "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

---

[6] In a footnote, Eckert provides a list of documents to which it argues Judge Saporito applied this erroneous rule.  (Doc. 367, p. 14 n.2.)

9

Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, lobbying efforts." *Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure legal advice, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165; *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

(Doc. 353, pp. 25–27.)

Judge Saporito then applied these rules to communications concerning proposed legislation and other legislative, lobbying, and policy communications. (Doc. 353, pp. 30–92.) In doing so, Judge Saporito concluded that the subject matter of the communications at issue "concern[ed] legislative, political, or policy

10

JA015

advice only—not *legal* advice—and thus . . . is not protected by attorney client privilege." (*Id.* at 30 (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).)

Judge Saporito did not apply a *per se* rule. This argument, raised by Eckert and Parx, fails. It is not supported by Judge Saporito's explicit language. Nor is it supported implicitly by Judge Saporito's analysis. Instead, the court finds that Judge Saporito conducted a fact-specific inquiry to determine whether each of the communications at issue concerned legal advice. In doing so, Judge Saporito distinguished legal advice from legislative, political, or policy advice. But he did not state or imply that legal advice and the latter categories of advice are mutually exclusive. Rather, he merely found that certain at-issue communications contained various types of advice—none of them legal.

### 2. Judge Saporito did not err in finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in not finding that attorney-client privilege protected documents in which Eckert engaged in preparing for possible testimony before a legislative body. (Doc. 367, pp. 16–17.) Specifically, he erred in not finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 were protected on this basis. (*Id.*) Citing a treatise, which in turn cited *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), Eckert argues that other courts have found such communications privileged. (*Id.* (quoting Paul

11

R. Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("The work considered legal assistance by the court included preparation for possible testimony [and] analysis of the probable legal consequences and antitrust considerations of the proposed legislation.")).)  Eckert also points out that the same treatise has relied on *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1 (2016).  (*Id.* (quoting Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.")).)

POM distinguishes *Westinghouse* in two important ways.  (Doc. 373, pp. 11–13.)  First, *Westinghouse* did not center on attorney-client privilege. Instead, it concerned an attempt to disqualify a law firm from representing a client in antitrust litigation.  580 F.2d at 1312–13.  The attempt to disqualify was rooted in a conflict of interest which arose from the firm's prior legislative efforts.  *Id.* at 1313–14.

Second, *Westinghouse* does not stand for the proposition that legislative or lobbying advice qualifies as legal advice.  (Doc. 373, pp. 12–13.)  Rather, in *Westinghouse,* in preparing for the possible testimony, the law firm was "analyzing the probable legal consequences."  *Id.* at 1313.  That is to say, the conflict of interest did not arise because the firm was helping a client prepare for testimony.

12

JA017

Rather, the conflict arose because the firm was providing legal advice.  That advice took the form of analyzing probable legal consequences of the proposed legislation, though it may have been interwoven with the firm's preparation for possible testimony.

Eckert does not raise any specific factual error that Judge Saporito purportedly committed with respect to PRIV-00106, PRIV-00107, and PRIV-00108.  It merely asserts that these documents related to the preparation of possible testimony before a legislative body.  (Doc. 367, p. 16.)  That alone is not the basis for attorney-client privilege.  And Eckert does not raise any other argument to convince this court that Judge Saporito erred.

Eckert raises the same argument regarding PRIV-00900.  But PRIV-00900 contains no legal advice, nor was it conveyed for the purpose of providing or obtaining legal advice.  It is correspondence seeking feedback on proposed written testimony to be provided to a state legislative committee.  The correspondence does not include, seek, or relate to legal advice.  Neither does the attached proposed testimony.  And, unlike in *Westinghouse*, here the preparation for testimony does not involve or contain legal advice or analysis.  Although preparation for testimony before a legislative body can be protected by attorney-client privilege, such is not the case here.  For these reasons, the court will deny

13

JA018

Eckert's appeal with respect to PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900.

### 3. Judge Saporito did not err in finding that PRIV-0074 was not protected by attorney-client privilege.

Eckert argues that PRIV-0074 should be protected by attorney-client privilege because it analyzes whether proposed legislation would satisfy a particular legal standard. (Doc. 367, p. 16.) As Judge Saporito noted, PRIV-0074 consists of "email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation." (Doc. 353, p. 33.) It also "forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the 'gist of the bill.' The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether." (*Id.*)

The court finds that the majority of this communication does not relate to legal advice or analysis. Instead, it solely "concerns legislative, political, or policy advice only—not *legal* advice—and thus [is] not protected by attorney-client privilege." (*Id.*) There is an exception to this characterization. The sixth bullet point on the first page of PRIV-0074 does pertain to a legal analysis of the proposed legislation.

However, under the standard Judge Saporito applied, it was appropriate to conclude that attorney-client privilege did not apply. Under the standard set forth

14

in *Burton v. R.J. Reynolds Tobacco Co., Inc.*, "[l]egal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege." 170 F.R.D. 481, 484 (D. Kan. 1997). Judge Saporito expressly relied on that standard. (Doc. 353, p. 26.)

Eckert and Parx have not asserted that such reliance is incorrect. Eckert relies on a case that implicitly invokes the same standard. (Doc. 367, p. 13 (citing *Vacco v. Harrah's Operating Co.*, No. CIV. A 1:07-CV-0663, 2008 WL 4703719 (N.D.N.Y. Oct. 29, 2008); *see Vacco's*, 2008 WL 4703719, at *8 (finding that attorney-client privilege applied in part because the law firm's services to the client were primarily legal in nature).) And Parx explicitly relies on the predominant purpose standard:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. ***So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.*** . . . [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be

15

JA020

rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

(Doc. 366, pp. 13–14 (emphasis added by Parx) (quoting *In re Cty. Of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007)).)

Eckert and Parx have not contested the validity of the predominant purpose standard. The predominant purpose of PRIV-0074 was not legal advice. Therefore, attorney-client privilege does not apply. The court will deny the appeals with respect to PRIV-0074.

### B. Judge Saporito erred in finding that attorney-client privilege did not apply to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

Parx and Eckert argue that Judge Saporito missaplied the legal standard with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6. (Doc. 366, p. 15; Doc. 367, pp. 17–19.)[7] A review of these documents shows that Parx and Eckert are correct. Judge Saporito was correct in finding that these communications concerned legislative strategies for outlawing skill games. (Doc. 353, p. 66.) But he was incorrect in finding that they concerned legislative, political, or policy advice only—not legal advice. (*Id.* at 66–67.) Rather, in the context of providing legislative advice, these communications do

---

[7] Of note, the page numbers that Parx and Eckert use appear to correspond to the page numbers of the memorandum attached to the email correspondence. Parx and Eckert seek to shield the first, sixth, and occasionally second, pages of the legislative strategy memorandum.

16

JA021

provide legal analysis and advice. These communications circulate a legislative strategy memorandum. That memorandum addresses how to achieve legislative objectives within the context of existing state law. The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice. Furthermore, legal advice was the predominant purpose of the specific pages that Parx and Eckert identify. No other portions of these documents consist of legal advice. Nor do Parx or Eckert explain any reason for why the other portions should be protected.

Because they have shown that Judge Saporito erred with respect to these communications, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

## C. Judge Saporito did not err in finding that PRIV-00958 and PRIV-00960 were not protected by attorney-client privilege.

Next, Eckert argues that Judge Saporito applied the wrong confidentiality standard. (Doc. 367, pp. 19–20.) As a result, when he applied this incorrect standard to PRIV-00958 and PRIV-00960, he improperly found that they were not protected by attorney-client privilege.[8] (*Id.*) Specifically, Judge Saporito found that these communications were email messages from an Eckert attorney to Parx executives and a Parx lobbyist and they related to legislative strategy. (Doc. 353,

---

[8] In a footnote, Eckert asserts that Judge Saporito applied this incorrect standard to a large number of other documents. (Doc. 367, p. 21 n.4.)

17

JA022

pp. 88–89.)  Judge Saporito concluded that, although the legislative strategy outline attached to the emails "was prepared with some client input and conveyed in confidence," the subject matter was not legal advice and therefore not protected by attorney-client privilege.  (*Id.* at 89.)  He also noted that "there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney."  (*Id.*)  Eckert argues that Judge Saporito erred by requiring a communication to involve "confidential facts disclosed by the client" for it to be protected by attorney-client privilege.  (Doc. 367, pp. 19–20.)

Eckert argues that attorney-client privilege "applies to *all* information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."  (*Id.* at 20 (quoting *U.S. Healthcare, Inc. Sec. Litig.*, 1989 WL 11068, at *2 (E.D. Pa. Feb. 7, 1989)).)  For that reason, Eckert asserts that Judge Saporito was incorrect when he found that communications were not privileged because "nothing in the record" suggested that the communications "involved confidential facts disclosed by the client to the attorney."  (Doc. 353, pp. 88–89; Doc. 367, pp. 20–21.)

18

JA023

POM argues that Eckert's arguments fail for two reasons.[9]  First, Eckert has failed to bear its burden and show that the communications at issue were confidential.  (Doc. 373, p. 20 (citing *Gillard*, 15 A.3d at 59.)  To "sustain this burden . . . [Eckert] must show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of privilege."  *Twp. of Neshannock*, 181 A.3d at 474.  Second, because neither of these documents involved legal advice, they are not privileged.  (Doc. 373, p. 20 (citing *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. Ct. 2023)).)

PRIV-00958 and PRIV-00960 do not concern legal advice.  And Eckert has not pointed to any binding Pennsylvania appellate court decision finding that attorney-client privilege extends to communications beyond those made for the purpose of obtaining or providing legal advice.  Rather, Pennsylvania courts apply attorney-client privilege to confidential communications "made for the purpose of obtaining or providing professional legal advice."  Gillard, 15 A.3d at 59; *Carlino*,

---

[9] More generally, POM also argues that Judge Saporito did not err in applying the confidentiality standard.  POM concedes that the "confidential facts" requirement which Judge Saporito used, although not explicitly overruled, is no longer used by Pennsylvania courts.  (Doc. 373, p. 17–18 & n.5.)  Even so, POM argues that Eckert has not shown clear error or a decision contrary to law.  The "confidential facts" phrasing that Judge Saporito used is quite similar to the "confidential information" language that comes from *U.S. Healthcare*—the only legal authority upon which Eckert relies.

19

301 A.3d at 479. Because attorney-client privilege does not attach to PRIV-00958 and PRIV-00960, the court will deny Eckert's appeal with respect to them.

### D. Judge Saporito did not err in finding that PRIV-00949 is not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred by overruling its assertion of attorney-client privilege to PRIV-00949. (Doc. 367, pp. 21–22.) Omitting footnotes, Judge Saporito analyzed the communication as follows:

> PRIV-00949 [] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania. The subject matter of these communications concerns legislative, political, or policy advice only— not legal advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00949 [] on attorney-client privilege grounds is overruled.

(Doc. 353, pp. 86–87.)

Eckert argues that Judge Saporito erred in determining that the communication was not privileged due to the absence of "any communication whatsoever from a client." (Doc. 367, p. 22.) It further argues that the emails in this communication were "between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client." (*Id.* at 24 (quoting *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D.

20

JA025

Pa. 1984)).)  Eckert asserts that confidential client information appears in the

uppermost emails of the thread.  (*Id.* at 24.)  According to Eckert, in those emails,

Eckert attorneys pose and answer a question regarding what Eckert's clients would

accept.  (*Id.*)  Eckert argues that "there is no plausible source of that information

other than the referenced clients themselves."  (*Id.*)

POM counters that Eckert's assumption about the source of the information

is insufficient to show that Judge Saporito's factual findings were clearly

erroneous.  (Doc. 373, p. 21.)  Eckert must show that the client was the source of

the information, and that information was confidential.  (*Id.*)

Having reviewed the communications contained in PRIV-00949, the court

finds that Eckert has not met its burden.  There is no indication that the emails

contained in this thread include any information that came from an Eckert client.

Moreover, a review of PRIV-00949 does not support Eckert's assertion that Judge

Saporito erred in concluding that the communications did not concern legal advice.

Because Eckert has failed to bear its burden, the court will deny Eckert's appeal

insofar as it relates to PRIV-00949.

### E. Judge Saporito did not err in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that the fourth, fifth,

and sixth paragraphs of PRIV-00366 were outside the scope of attorney-client

21

JA026

privilege. (Doc. 367, pp. 24–25.) Eckert argues that these paragraphs "discuss strategic considerations relating to proposed legislation, which . . . is not a subject matter excluded from the scope of attorney-client privilege." (*Id.* at 24.) Additionally, Eckert asserts that the sixth paragraph presents opinions and sets forth defense tactics, which weighs in favor of finding that privilege extends to that portion of the document. (*Id.* at 24–25 (quoting *U.S. Fid. & Guar. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992)).)

The court finds that Judge Saporito was correct in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 do not concern legal advice. The court denies Eckert's appeal insofar as it relates to the fourth, fifth, and sixth paragraphs of PRIV-00366.

**F. Judge Saporito did not err in finding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are not protected by attorney-client privilege.**

Eckert argues that Judge Saporito erred in concluding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 were not protected by attorney-client privilege. (Doc. 367, p. 25.) Eckert asserts that Judge Saporito erred in three ways. First, he concluded that legislative advice was categorically excluded from the scope of attorney-client privilege. (*Id.*) Second, he failed to appreciate that the email thread contained in this communication presented opinions and set forth defense tactics, which suggest the finding of privilege. (*Id.* (citing *Barron*, 809 F.

22

JA027

Supp. at 364).) Third, Judge Saporito applied a "confidential client information" standard rather than recognizing that privilege "applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." (*Id.* at 26 (quoting *U.S. Healthcare*, 1989 WL 11068, at \*2).)

With respect to Eckert's first argument, as noted above, Judge Saporito did not exclude legislative advice from the scope of attorney-client privilege. He merely distinguished between the two types of advice. Nothing in Judge Saporito's memorandum or order suggested that legislative advice cannot overlap with legal advice. And in these documents, he properly determined that their contents did not include or concern legal advice.

POM points out that Eckert does not assert that these communications contain legal advice. (Doc. 373, p. 23.) Rather, it asserts that they contain confidential information provided for the purpose of presenting opinions and defense tactics. (*Id.*) But Eckert has not presented authority applying attorney-client privilege to information unrelated to legal advice.

The court finds that these communications do not relate to legal advice. Eckert has failed to show clear error. These communications represent updates

23

JA028

regarding legislative affairs and strategy, lobbying, and public relations. They neither contain nor implicate legal advice. The court will deny Eckert's appeal with respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part the appeals to Judge Saporito's order. Specifically, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6, but will otherwise deny the appeals. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 29, 2024

24

JA029

April 2024 Order

JA030

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

   Plaintiff,

   v.

ECKERT, SEAMANS CHERIN &
MELLOTT, LLC,

   Defendant.

:  Civil No. 1:20-CV-00292
:
:
:
:
:
:
:
:
:
:
:  Judge Jennifer P. Wilson

## <u>ORDER</u>

**AND NOW**, on this 29th day of April 2024, upon consideration of the appeals filed in this case, Docs. 361, 362, and the memorandum and order of Magistrate Judge Joseph Saporito, Docs. 353, 354, and for the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1) The appeals are **GRANTED IN PART AND DENIED IN PART**. (Docs. 161, 162.)  Specifically, the appeals are **GRANTED** with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6, but **DENIED** in all other respects.

2) In Judge Saporito's memorandum, the court **REVERSES** the paragraph of Section III.D.3. in which Judge Saporito addresses PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00679.  (Doc.

353, pp. 88–89.)  In all other respects, the court **AFFIRMS** Judge

Saporito's memorandum.

3) The court **REVERSES** paragraph 5 of Judge Saporito's order, Doc.

354, with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6;

PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.  The court

**AFFIRMS** Judge Saporito's order in all other respects.

4) **Within 21 days** of this order's entry, Defendants **SHALL**

**PRODUCE** the documents directed in Judge Saporito's order, Doc.

354, without redaction, except for PRIV-00679, PRIV-00684, PRIV-

00685, and PRIV-00679, which Defendants **SHALL PRODUCE**

with redactions in accordance with this order and the findings of the

accompanying memorandum.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

JA032

Case 1:21-cv-02429 Document 28 Filed 05/05/2022

July 2024 Opinion
(Reconsideration)

JA033

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                    :      Civil No. 1:20-CV-00292
                                       :
    Plaintiff,                     :
                                       :
                                       :
    v.                             :
                                       :
ECKERT, SEAMANS CHERIN &               :
MELLOTT, LLC, *et al.*,                :
                                       :
                                       :
    Defendants.                    :      Judge Jennifer P. Wilson

## <u>MEMORANDUM</u>

Before the court is a motion filed by third-party Greenwood Gaming &

Entertainment, Inc. d/b/a Parx Casino ("Parx") to reconsider this court's

memorandum and order affirming in part and reversing in part United States

Magistrate Judge Joseph Saporito, Jr.'s resolution of a discovery dispute.

(Doc. 387.)

Defendants Eckert, Seamans, Cherin & Mellott, LLC; Kevin M. Skjoldal;

and Mark S. Stewart (collectively, "Eckert") and Parx previously appealed Judge

Saporito's decision regarding one of many discovery disputes.  Following an *in*

*camera* review of 120 purportedly privileged documents, Judge Saporito's order

determined which documents were protected by privilege and which were not.

(Doc. 354.)  Judge Saporito ordered the unprotected documents to be produced

within 21 days unless the ruling was appealed.  (*Id.*)  Defendants and Parx

appealed.  (Docs. 361, 362.)

1

JA034

The court granted the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6,[1] but otherwise denied the appeals. Parx now seeks reconsideration or certification for appeal. (Doc. 387.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert for an alleged breach of fiduciary duty to POM. (Doc. 1.) POM alleges that this breach stems from Eckert's representation of both POM and a third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania. (Doc. 166, pp. 1–2.)[3]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania. That was because Eckert represented Parx, a market competitor, in Pennsylvania. (*Id.* at

---

[1] These four documents are email communications with memoranda attachments. When pin citing to these four documents, the court utilizes the page numbers at the bottom of the memoranda attached to the emails.

[2] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

2

JA035

3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth

Court of Pennsylvania through other counsel relating to the seizure and removal of

some of its skill games in Pennsylvania.[4]  (*Id.* at 3.)   During this litigation in the

Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon &

Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in

opposition to POM's position, as well as motions to intervene.  (*Id.* at 4–5.)  In

January 2020, POM learned that Eckert was allegedly involved in some capacity

with Parx's representation in the Commonwealth Court cases, assuming positions

materially adverse to POM's position despite Eckert's ongoing representation of

POM in Virginia.  (*Id.* at 5.)  After POM requested that Eckert withdraw from

representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew

from representing POM in Virginia.  (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the

procedural history of the discovery dispute underlying the instant motion:

> This is one of a series of discovery disputes that the parties have been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).
>
> In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive

---

[4] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.  (Doc. 166, p. 4.)

3

JA036

email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to 120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.)  The initial discovery dispute was litigated solely between

POM and Eckert.  The court referred this discovery dispute to Judge Saporito on

June 28, 2023.  (Doc. 313.)

On December 1, 2023, following an *in camera* review of the disputed

documents and the parties' briefs, Judge Saporito issued a memorandum and order

resolving which documents were protected by privilege and which were not.

(Docs. 353, 354.)  In his order, Judge Saporito sustained in part the assertions of

privilege regarding four documents.  (*Id.*)  He determined that the majority of

documents were not protected from production and ordered the unprotected

documents to be produced within 21 days unless the ruling was appealed.  (*Id.*)

4

JA037

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision.[5] (Docs. 361, 362.) In their appeals, they asserted that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not protected from disclosure by attorney-client privilege and the federal work-product doctrine. (Doc. 361, pp. 2–3; Doc. 362, p. 3.)

On April 29, 2024, this court affirmed in part and reversed in part Judge Saporito's decision. (Doc. 383.) The court ordered the production of all of the documents at issue, instructing that PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 should be redacted. (*Id.*) On May 13, 2024, Parx filed the instant motion asking the court to reconsider its order or otherwise certify it for appeal to the Third Circuit. (Doc. 387.) Meanwhile, Parx requested that the court stay its order for production, which the court did on May 14, 2024. (Doc. 390.) While this motion was pending, Parx filed a notice of appeal on May 28, 2024. (Doc. 394.) The motion for reconsideration has been briefed and is ripe for disposition. (Docs. 388, 393, 396.)

## STANDARD OF REVIEW

A party seeking reconsideration of a district court's order must show either (1) "an intervening change in the controlling law"; (2) the availability of new

---

[5] Despite not having litigated the underlying discovery dispute, Parx appealed Judge Saporito's decision. No party protested Parx's appeal on this basis.

JA038

evidence that was not available when the court issued its prior order; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of." *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at *1 (M.D. Pa. May 17, 2011)). Additionally, a motion for reconsideration "may not be used to present a new legal theory for the first time" or "to raise new arguments that could have been made in support of the original motion." *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. PA. 2020) (citing *Vaidya Xerox Corp.*, No. 97-CV-00547, 1997 WL 732464, *2 (E.D. Pa. Nov. 25, 1997)). A "mere disagreement" with a court's legal conclusion is not a sufficient basis for reconsideration. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (citing *Mpala v. Smith*, No. 3:06-CV-00841, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007)).

Although a court may reconsider a prior order based on a party's motion, motions for reconsideration "should be granted sparingly as federal courts have a strong interest in the finality of judgments." *Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005). The decision of whether to grant a

6

JA039

motion for reconsideration is left to the discretion of the district court. *Le v. Univ. of Pa.*, 321 F.3d 403, 405 (3d Cir. 2003).

## DISCUSSION

## A. Reconsideration

Parx argues that this court should reconsider for five reasons, all of which are based on purportedly manifest errors of law and fact. (Doc. 388, pp. 10–24.) The court will consider each argument in turn.

### 1. Parx's argument regarding legislative advice fails.

Parx argues that this court erred by concluding that there is a difference between legislative advice and legal advice. (Doc. 388, p. 10.) While admitting that "Pennsylvania courts have yet to weigh in," Parx insists that this court has erred in finding that legislative and legal advice are distinct.[6] (*Id.* at 11.) Parx further argues that this court was incorrect in its understanding of Judge Saporito's

---

[6] So the record is clear, Parx makes multiple arguments regarding the relationship between legislative and legal advice for purposes of attorney-client privilege. First, Parx argues that the two are not mutually exclusive. (Doc. 388, p. 6.) The court agrees. Second, Parx argues that the court effectively found that the two are mutually exclusive. (*Id.* ("[T]he Court sub silentio endorsed a per se approach to the privilege analysis that exposes far more of Parx's privileged materials to public disclosure than it should.").) The assertion that this court applied a per se approach is demonstrably incorrect. The court found that portions of PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 were protected by attorney-client privilege. (Doc. 382, pp. 16–17; Doc. 383.) The court found that these documents, which concern legislative strategy, also concern legal advice. (Doc. 382, pp. 16–17 ("These communications circulate a legislative strategy memorandum. That memorandum addresses how to achieve legislative objectives within the context of existing state law. The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice.")) Third, Parx argues that advice from lawyers on legislative matters is *per se* legal advice, though it admits that no Pennsylvania court has found as such. (Doc. 388, pp. 10–11.)

7

ruling. (*Id.*) Though this court apparently misapprehended his ruling, Parx asserts that Judge Saporito erroneously "created a *per se* rule" determining that legislative advice could *never* constitute legal advice. (*Id.*)

Regarding the purported factual errors, Parx merely disagrees with this court's reading of Judge Saporito's memorandum. Because the court was not persuaded by this argument the first time, Parx seeks reconsideration to air its argument a second time. But, Parx points to no error.

Parx's legal argument likewise falls flat. It argues that this court erred. But Parx concedes that no binding case law supports its assertion of error. Nor does it point to any binding or persuasive authority for the proposition that legislative advice is per se legal advice.[7] The court will deny Parx's motion regarding legislative advice.

### 2. The court erred in overlooking Parx's declaration, but the error was harmless.

Parx next argues that this court erred by overlooking the declaration, which it provided on appeal to support its privilege claim. (*Id.* at 14.) In its reply brief in

---

[7] Indeed, for most of the cases cited by Parx, there is no explanation whatsoever as to the legal significance. (Doc. 388 (citing *Weissman v. Fruchtman*, No. 83 Civ. 8958, 1986 WL 15669, at *15 (S.D.N.Y. Oct. 31, 1986); *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 24 (2016)).) In its prior memorandum, the court addressed two of these cases. (Doc. 382, pp. 11–14 (explaining why *Westinghouse* and *Harrington* were inapplicable to certain documents that Eckert argued were protected by attorney-client privilege).) Yet, in its current motion, Parx provides no explanation for how the court erred in its discussion of these cases.

JA041

support of its appeal from Judge Saporito's decision, Parx pointed to this sworn declaration, referring to it as an affidavit. (Doc. 374, p. 6.) When the court denied Parx's appeal, it stated that Parx had first raised the issue of an affidavit in its reply. (Doc. 382, p. 7 n.5.) The court concluded, therefore, that Parx had waived the issue. (*Id.*) But, in fact, Parx had raised the issue in its initial brief in support of its appeal, where it cited to a sworn declaration. (Doc. 366, p. 6 & n.1; Doc. 366-1.)

Accordingly, this court erred by not recognizing that Parx had referenced its sworn declaration with its initial supporting brief. But, upon further analysis, that error was harmless.

In support of its appeal from Judge Saporito's decision, Parx presented a declaration to support its claim of attorney-client privilege. (Doc. 366, p. 6 n.1 & Doc. 351-1.) Parx first filed the declaration on November 21, 2023, in connection with another discovery dispute in this case. (Doc. 351-1.) This declaration was docketed nearly five months after the court referred the instant dispute to Judge Saporito, on June 28, 2023. (Doc. 313.) In presenting its appeal, Parx "recognize[d] that the declaration has been submitted with another filing but note[d] for the Court's consideration that this appeal is the first opportunity for the company to weigh in on the latest discovery order and therefore must rely on the extant record to support it." (Doc. 366, p. 6 n.1.) In effect, Parx asks this court to

9

consider evidence on appeal that was not presented to Judge Saporito in the

original discovery dispute.[8]

---

[8] The court seeks to clarify one issue for the record. In opposing Parx's appeal, POM argues that the declaration is inconsequential, because this court conducted a document-by-document review of all of the documents at issue. (Doc. 393, p. 7.) To be clear, based on the arguments that Parx and Eckert presented on appeal, the court did not conduct an *in camera* review of all 120 documents. The court did not perceive that such a review was necessary based on the arguments that were presented.

On appeal, Parx effectively raised four arguments. First, it argued that all of the documents are protected based on its declaration. (Doc. 366, pp. 10–12.) Second, it argued that Judge Saporito erred by concluding that legislative advice cannot be legal advice per se. (*Id.* at 13, 19.) Third, it argued that the documents are protected because legislative advice is per se legal advice. (*Id.* at 13–15 ("The question then becomes whether 'legislative advice' – for example, advice on pending legislation, drafting proposed legislation, monitoring and reviewing legislative efforts, and related matters – constitutes 'legal advice' that is protected from disclosure.").) The court perceived this argument to hinge on the legal issue of whether legislative advice constitutes legal advice. (Doc. 366, p. 15 (Parx arguing "[a]s in these cases, the documents at issue reflect legal analysis of existing and proposed legislation at both the state and local level.").) The court did not find it necessary to conduct an in camera review of all 120 documents to address the legal question of whether the authorities Parx presented stood for the proposition that legislative advice was per se legal advice.

However, interspersed within its third argument, Parx also argued that "[f]or example, documents reflect analysis of legal consequences associated with certain pending legislation," and Parx cited nine documents as examples. (*Id.*) Parx did not specify *which* documents reflect such analysis beyond the examples it provided. (*Id.*) The court perceived this argument as a qualitatively different argument from the third explained above and addressed it as a separate argument. This separate argument did not merely implicate "advice on pending legislation" and argue that such advice was legal advice. Instead, it asserted that "documents" reflected "analysis of legal consequences" associated with consequences of pending legislation. It was not arguing that legislative advice was per se legal advice. Instead, it was asserting that certain documents contained legal advice in the form of analyzing the legal consequences of, among other things, pending legislation. The court did not perceive this argument as extending to *all* of the documents then on appeal, but rather the documents specifically referenced by Parx. Accordingly, the court reviewed the nine documents Parx cited. The court found that five were not protected by privilege and four were partially protected. Although the court conducted additional in camera review in response to Eckert's appeal, it concluded that no further review was required to adjudicate Parx's arguments.

10

JA043

Case 1:24-cv-00922 Document 28 Page 31 Filed 07/31/24 Filed 05/05/2025

Under Pennsylvania law, "[w]hether attorney-client privilege protects a particular communication is a question of law." *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1019 (Pa. Super. Ct. 2015) (quoting *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014)). This court reviews matters of law de novo on appeal from non-dispositive orders of a magistrate judge. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)).

Parx has presented no authority for its argument that a court must consider new evidence when reviewing a matter of law being appealed from a non-dispositive order by a magistrate judge. (Doc. 366, p. 6 n.1.) The court has not found any authority directly on point. Federal Rule of Civil Procedure 72(a), governing non-dispositive pretrial orders by magistrate judges, is silent on the issue. But Rule 72(b), governing dispositive motions handled by magistrate judges, offers helpful guidance.

When reviewing a magistrate judge's opinion on dispositive motions and prisoner petitions, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In addressing Rule 72(b), the Notes of Advisory Committee on Rules—1983 noted that "[t]he term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second

11

JA044

evidentiary hearing is required." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. This suggests that when making de novo determinations, the district court need not include new evidence in its deliberations. If the court need not consider new evidence when reviewing dispositive motions, it seems illogical that it would be required to do so for appeals of non-dispositive orders.

Because Parx presented its declaration with its supporting brief appealing Judge Saporito's decision, the court erred in stating that Parx had only done so in its reply. But this court was not obligated to consider this new evidence in any event.

Even if the declaration had been timely filed, Parx's declaration would be insufficient to bear its burden and show privilege in the documents now at issue. That is because the declaration was submitted in a different discovery dispute and makes no reference to the specific 120 documents at issue in this dispute.

### 3. Parx cannot raise a new argument for redaction.

Parx argues that, although this court applied the correct predominant-purpose test, it misapplied this test to PRIV-0074. (Doc. 388, p. 18.) This court found that "the majority of this communication does not relate to legal advice or analysis." (Doc. 382, p. 14.) The court found that one small portion of the document, the sixth bullet point on the first page, did pertain to a legal analysis. (*Id.*) But under the relevant legal standard, which Parx concedes was correct to

12

apply, "[l]egal advice must predominate for the communication to be protected. The [attorney-client] privilege does not apply where the legal advice is merely incidental to business advice." (*Id.* at 15 (quoting *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997)).)

On appeal, Parx argued that PRIV-0074 was protected by attorney-client privilege. (Doc. 366, p. 15.) It made no argument in the alternative that, if the court disagreed and found that only portions of the document pertained to legal advice, a redacted copy should be produced.[9] POM argues that Parx may not raise this new alternative argument for redaction in its motion for reconsideration. (Doc. 393, pp. 8–9.) POM is correct. A motion for reconsideration "may not be used to present a new legal theory for the first time [or] to raise new arguments that could have been made in support of the original motion." *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. Pa. 2020).[10]

---

[9] Parx argues that it did make this argument on appeal from Judge Saporito's order. (Doc. 396, p. 9 (citing Doc. 374, pp. 4, 7, 10–11).) But the cited pages do not appear to address either redaction or PRIV-0074. Moreover, Doc. 374, to which Parx cites, was its reply brief on appeal. As Parx should be aware, "[a]rguments raised for the first time in a reply brief are generally waived." *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

[10] Had Parx raised this issue on its initial appeal, the court would have considered it. The reason the court now rejects Parx's argument is because it has waived the issue.

Parx displays a knack for untimely developing its arguments. For example, in its reply brief for the instant motion, Parx presents a clear and cogent argument as to how this court should have applied the predominant purpose test and when and how redaction should be used. (Doc. 396, pp. 9–10.) But this argument, raised on reply, is deemed waived. Had it presented this argument earlier, it may well have prevailed. But its initial brief was cursory.

13

**4. The court rejects Parx' argument regarding PRIV-00679; PRIV-00684; PRIV-00685; and PRIV-00755.**

In its appeal from Judge Saporito's decision, Parx made few specific arguments regarding specific documents that concerned specific legal advice. One exception to that is the following passage from Parx's brief in support of its appeal:

> [T]he documents at issue reflect legal analysis of existing and proposed legislation at both the state and local level. *See* Doc. 351-1, Ex. A, Bonner Decl. at ¶ 8. For example, documents reflect analysis of legal consequences associated with certain pending legislation, preparing testimony, making recommendations about legislation, evaluating whether proposed legislation withstands judicial review, and evaluating the interests of the client in the event proposed legislation becomes law. *See, e.g.*, PRIV-0074, PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, PRIV-000679 at 6, PRIV-00684 at 2, 6; PRIV-00755 at 2, 6; PRIV-00685 at 2, 6, PRIV-000679 at 1, PRIV-00684 at 1, PRIV-00755 at 1, and PRIV-00685 at 1.

(Doc. 366, p. 15.)

In doing so, Parx specifically cited to pages 1 and 6 of PRIV-00679; pages 1, 2, and 6 of PRIV-00684; pages 1, 2, and 6 of PRIV-00685; and page 1 of PRIV-00755. Parx argued that these pages reflect legal analysis and thereby advice. The court agreed. (Doc. 382, p. 16.)

---

In another untimely argument, Parx asserts in its reply brief that "[e]ven if [it] did not specifically argue for redaction in the alternative, the Court is duty bound to order redactions of privileged information and should do so even without prompting in order to protect against disclosure of privileged information as prohibited by Fed. R. Civ. Pro. 26(b)(1) and Fed. R. Civ. Pro. 45(d)(3)(A)(iii)." (Doc. 396, p. 9.) Once again, this is an argument Parx could have included in its initial brief in support of its motion, but did not.

JA047

The court found that "legal advice was the predominant purpose of the specific pages that Parx and Eckert identify." (*Id.* at 17.) However, "[n]o other portions of these [four] documents consist of legal advice. Nor do Parx or Eckert explain any reason for why the other portions should be protected." (*Id.*) Therefore, the court granted the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6. (Doc. 383, ¶¶ 2–3.) The court ordered that Defendants produce PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755 with redactions in accordance with its order and the findings of its memorandum. (*Id.* ¶ 4.) It ordered the production of the other documents at issue without redaction. (*Id.*)

Parx argues that it did not intend to protect only the cited pages of those documents. (Doc. 388, p. 20.) Instead, it sought to protect those documents in their entirety. (*Id.*) Citing *The Bluebook*, Parx argues that its use of the signal *e.g.* did not in any way limit its assertion of privilege to the pages it cited.[11] (*Id.* (citing *The Bluebook: A Uniform System of Citation* R. 1.2 (Columbia Law Review Ass'n et al eds., 19th ed. 2012)).) While the court appreciates the significance of the use of the signal *e.g.*, that does not eliminate Parx's burden as an appellant or movant to clearly explain to the court the relief it is seeking. Where Parx specifically cited

_____

[11] Apparently for the court's benefit, Parx also provides an explanatory parenthetical of *The Bluebook*'s assessment that, when using *e.g.*, additional citation is unnecessary. (Doc. 388, p. 20.)

15

JA048

certain documents purportedly containing legal advice, the court conducted an in camera review. In some instances, the court found specific portions of documents protected by attorney-client privilege and sua sponte ordered those portions to be redacted. Parx assumed that the court would somehow intuit its argument with respect to other unspecified documents or portions of documents. That is not effective advocacy in a dispute over whether specific documents are privileged, even if it involves the technically correct usage of an introductory signal pursuant to *The Bluebook*.

Parx also argues that the court erred by not finding that page 2 of PRIV-00679 was privileged. (*Id.*) According to Parx, PRIV-00679 is identical to PRIV-00684, PRIV-00685, and PIV-00755. (*Id.*) Being identical, page 2 of PRIV-00679 must be privileged because the second page of PRIV-00684, PRIV-00685, and PIV-00755 are privileged. (*Id.*) When appealing Judge Saporito's decision, Parx specifically cited the latter as examples of privilege but omitted the former. Parx asserts that its omission was not intended to waive privilege. (*Id.* at 19–20.) Because Parx is the client to whom the privilege belongs, its intent controls. (*Id.* at 19 (citing *Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. Ct. 2018)).)[12]

---

[12] Parx provides no pin cite for this assertion or any explanation for how this case applies to its instant motion. (Doc. 388, pp. 19–20.) It does not explain how or why *McCullough* stands for the proposition that a party's subjective intent not to waive an argument impacts the analysis of that party's objective failure to raise an argument on appeal.

16

Parx's factual assertion that "all four documents are identical" is factually incorrect. Page 2 of PRIV-00679 is not the same as page 2 of the other documents. Rather, it is similar if not identical to portions of pages 3 and 4 of PRIV-00684, PRIV-00685, and PRIV-00755. The court found these pages did not consist of legal advice and that Parx did not explain any reason why they should be protected. (Doc. 382, p. 17.)

For the reasons stated above, the court will deny Parx's motion insofar as it is raised regarding PRIV-00679, PRIV-00684, PRIV-00685, and PRIV-00755.

### 5. Parx may not raise new arguments regarding permitting and licensing on its motion for reconsideration.

Parx argues that "[c]onfidential communications about obtaining legal authorizations such as permits and licenses are protected by attorney-client privilege." (Doc. 388, p. 21 (citing *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 336, 1996 WL 50746 (E.D.N.Y. 1996)).) This is an entirely new argument. Parx did not raise this argument on appeal, though it could have. The court will deny Parx's motion with respect to this newly raised argument.

### B. Certification

A district court may certify an order for appeal if the court finds that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Thus,

17

JA050

certification under § 1292(b) is only proper when "(1) the issue involve[s] a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and (3) an immediate appeal of the order may materially advance the ultimate termination of the litigation." *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). The party seeking a certificate of appealability bears the burden of showing that the certificate should issue. *Consumer Fin. Protection Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. Feb. 26, 2021) (citing *Orson Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)).

Rather than providing a comprehensive analysis of these three requirements, Parx relies primarily on a single quote as the legal basis for the sufficiency of its request for certification:

> The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). Parx argues that, as this court acknowledged in its memorandum, whether legislative advice per se constitutes legal advice is a question of law. (Doc. 388, p. 23 (citing Doc. 382, pp. 7–8).) It argues, without citation, that there are substantial grounds for disagreement on whether legislative advice is per se legal advice. (*Id.*) And Parx

18

JA051

makes no argument about whether an immediate appeal of this issue would advance the ultimate termination of litigation.

While *Mohawk* may provide this court with discretion to certify the issue, Parx does not present argument to persuade the court to do so. And, other than its aforementioned quote of *Mohawk*, Parx presents nothing more than cursory conclusions as to why the first two elements of § 1292(b) are met. (*Id.*)

Although POM presents many counterarguments, the court here will only recount three of them. First, it argues that Parx has failed to show that the issue involves a controlling question of law. (Doc. 393, pp. 12–15.) The issue is not controlling, which the Third Circuit has explained to mean "serious to the conduct of the litigation, either practically or legally." (*Id.* at 13 (quoting *Katz v. Carte Blanceh Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc)).) Here, POM argues, the resolution of this issue will not impact "whether a trial occurs, or what claims or theories of recovery are presented at trial."[13] (*Id.* (citing *Union Pac. R. Co. v. ConAgra Poultry Co.*, 189 F. App'x 576, 579 (8th Cir. 2006)).)

Second, POM argues that Parx has not identified substantial grounds for difference of opinion. (*Id.* at 16–18.) That requirement is met when "there is

---

[13] POM argues that, even if this court's ruling were incorrect, it would not be reversible error under Third Circuit precedent. (Doc. 393, p. 13 (quoting *Summy-Long v. Penn St. Univ.*, 715 F. App'x 179, 184 (3d Cir. 2017) ("[A] district court's discovery ruling will not be reversed without determining that it resulted in actual and substantial prejudice and was a gross abuse of discretion resulting in fundamental unfairness.").)

19

genuine doubt or conflicting precedent as to the correct legal standard to be applied in the order at issue." (*Id.* (quoting *Small v. Lower Paxton Twp.*, No. 1:22-cv-1146, 2024 WL 691360, at *7 (M.D. Pa. Feb. 20, 2024)).) Neither are present here. (*Id.*) While Parx disagrees with the court's legal ruling, it has provided no precedent showing that legislative advice is per se legal advice. (*Id.*) But "a party's disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion' within the meaning of the statute." (*Id.* (quoting *Small*, 2024 WL 691360, at *7).)

In response, Parx raises a new argument: that the instant dispute is akin to this court's prior decision in which it certified a question to clarify how judicial estoppel interacts with attorney-client privilege. (Doc. 396, pp. 12–14.) Perhaps Parx should have raised that issue in its initial brief. Because it failed to do so, the issue is deemed waived. Parx raises no other meaningful argument that there are substantial ground for difference of opinion. It therefore fails to establish the second requirement for certification.

Third, POM argues that certification would not materially advance the ultimate termination of this litigation. (Doc. 393, pp. 18–22.) POM explains the theory underlying its case and how, while it expects that the documents at issue here would strengthen its case, they are not indispensable. (*Id.* & n.2.) For that

20

reason, an immediate appeal of the instant dispute would not impact termination of this litigation. (*Id.* at 21.)

In response, Parx argues that allowing an appeal of this issue would impact the ultimate termination of this litigation by "avoiding a situation in which the Court may be compelled to retry the case without the privilege documents after the Third Circuit weighs in at a later time." (Doc. 396, p. 16.) Once again, Parx could have raised this issue in its initial brief but failed to. The issue is deemed waived.[14] Other than the above quote from *Mohawk*, Parx presented no other argument regarding the third certification requirement. (Doc. 388, pp. 22–24.) It has not met its burden as to the third requirement for certification.

Because Parx has failed to meet its burden in showing the second and third requirements for certification, the court will deny its request.

## CONCLUSION

For the reasons stated above, the court will deny Parx's motion insofar as it seeks reconsideration and certification to appeal.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 3, 2024

---

[14] Parx also argues that POM would suffer no prejudice if the court certified the order for appeal. (Doc. 396, p. 17.) Yet again, Parx has waived the issue by not raising it earlier.

21

JA054

Case 1:24-cv-01029-JRW Document 20 me Page 09-133 Filed Date Filed: 05/05/2025

July 2024 Order
(Reconsideration)

Case 1:20-cv-00292-JPW Document 398-4 Filed 07/01/24 Page 134 of 253
Case 1:24-cv-00990 Document 26 Filed 05/05/2025

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                     :      Civil No. 1:20-CV-00292

    Plaintiff,                       :

    v.                               :

ECKERT, SEAMANS CHERIN &                :
MELLOTT, LLC, *et al.*,                 :

    Defendants.                      :      Judge Jennifer P. Wilson

## ORDER

**AND NOW**, on this 3rd day of July 2024, for the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT**:

1) The motion for reconsideration or certification filed by Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), Doc. 387, is **DENIED**;

2) This court's May 14, 2024 order, staying Defendant's production of discovery documents pending resolution of Parx's motion, is **LIFTED**;

3) However, given that Parx has apparently appealed the court's order to the Third Circuit, Docs. 394 and 395, the deadlines in Paragraph 4 of this court's order dated April 29, 2024, Doc. 383, are **STAYED** pending the resolution of Parx's appeal;

JA056

4) Within **14 days** of the Third Circuit resolving the appeal, Parx

**SHALL** file notice, no longer than three pages, with this court to (1)

notify the court of the Circuit's resolution and (2) address any other

reason this court should not lift the stay of production.

5) Within **14 days** of Parx filing such notice, POM and Eckert shall each

be permitted to file a response of no longer than three pages.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

    Plaintiff,

    v.

ECKERT SEAMANS CHERIN & MELLOTT, LLC,

    Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## ORDER

AND NOW, this 1st day of December, 2023, upon consideration of the parties' submissions[1] and the purportedly privileged documents submitted for *in camera* review,[2] and in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT**:

1. With respect to PRIV-00105 (Control No. 1900236), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **OVERULED in part and SUSTAINED in part**—

---

[1] POM discovery dispute letter (Doc. 295); Eckert discovery dispute letter (Doc. 298).

[2] Binder of purportedly privileged documents for *in camera* review (Doc. 305).

JA058

this document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted;

2. With respect to PRIV-00366 (Control No. 304699), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **OVERRULED in part and SUSTAINED in part**—this document shall be produced, but with the first three paragraphs (following the salutation "Guys,") redacted;

3. With respect to PRIV-00614 (Control No. 800947), the objection to production on attorney-client privilege grounds is **OVERRULED in part and SUSTAINED in part**—this document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted;

4. With respect to PRIV-00925 (Control No. 1900567), the objection to production on attorney-client privilege grounds is **OVERRULED**, but the objection to production on federal work-product protection grounds is **SUSTAINED**—this document shall *not* be produced;

- 2 -

JA059

5.     With respect to all other documents challenged by POM[3] and submitted for *in camera* review, the objections to production on attorney-client privilege and federal or state work-product protection grounds are **OVERRULED**—these documents shall be produced *without* redaction;

6.     Absent timely appeal of this order, the defendant shall produce the documents described in the preceding paragraphs to the plaintiff, in the manner described, **within 21 days** after entry of this order; and

7.     The parties shall each bear its own costs in connection with this discovery dispute.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

---

[3] The list of challenged documents is set forth in POM discovery dispute letter at 2, 5 (Doc. 295) and *id.* ex. 5 (Doc. 295-6).

- 3 -

JA060

Case 1:24-1984 Document 28 Page 313 Date Filed: 05/05/2025
Case 1:20-cv-00292 Document 628 Page 139 of 217 Filed: 06/05/2025

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

    Plaintiff,

    v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

    Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## MEMORANDUM

This is a diversity action in which the plaintiff, Pace-O-Matic, Inc. ("POM") has brought a state-law breach of fiduciary duty action against the defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"). POM, a Wyoming corporation with a principal place of business in Georgia, is a former client of Eckert, a law firm based in Harrisburg, Pennsylvania. POM claims that Eckert breached its professional duties of loyalty and confidentiality by undertaking the concurrent representation of another client in litigation against POM. For relief, POM seeks an award of compensatory and punitive damages plus declaratory and injunctive relief against Eckert.

This is one of a series of discovery disputes that the parties have

JA061

been unable to resolve without a court ruling. *See, e.g.*, *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).

In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to 120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for *in camera* review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert

- 2 -

submitted a tabbed binder containing copies of the 120 challenged documents for *in camera* review (*see* Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

## I.   BACKGROUND

POM develops, produces, and licenses electronic "skill games" sold in Pennsylvania and elsewhere. Beginning in 2016, POM engaged Eckert to represent it in Virginia with respect to litigation over whether those skill games were illegal gambling devices under Virginia law. That representation was limited to Virginia, as Eckert represented other clients with adverse commercial interests in Pennsylvania. One of those other clients was Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), with which Eckert had a prior existing attorney-client relationship.

In June 2018, POM filed a lawsuit concerning its skill games in the Commonwealth Court against the City of Philadelphia and the Pennsylvania Department of Revenue. *POM of Pa., LLC v. Pa. Dep't of Revenue*, No. 418 MD 2018 (Pa. Commw. Ct. filed June 8, 2018). About one month later, POM filed a second lawsuit concerning its skill games

- 3 -

in the Commonwealth Court against the Pennsylvania State Police. *POM of Pa., LLC v. Pa. State Police*, No. 503 MD 2018 (Pa. Commw. Ct. filed July 20, 2018). On November 20, 2019, the Commonwealth Court issued an opinion in the first case denying an application for summary relief by the state department of revenue, which had the effect of placing both actions on an active litigation schedule. *See POM of Pa., LLC v. Pa. Dep't of Revenue*, 221 A.3d 717 (Pa. Commw. Ct. 2019) (denying state department of revenue's motion for summary relief in Case No. 418); *see also POM of Pa., LLC v. Pa. State Police*, No. 503 M.D. 2018, 2019 WL 6173719 (Pa. Commw. Ct. Nov. 20, 2019) (citing Case No. 418 opinion in denying state police motion for summary relief in Case No. 503).

On December 12, 2019, POM filed a motion for a preliminary injunction against the Pennsylvania State Police in Case No. 503. POM sought to enjoin the state police from seizing its skill games from its customers. On December 18, 2019, Parx and another casino filed an amicus brief in opposition to POM's motion for a preliminary injunction. Parx appeared through counsel of record Kevin McKeon of Hawke McKeon & Sniscak, LLP ("HMS") and Adrian King of Ballard Spahr, LLP

- 4 -

JA064

("Ballard").[1] On January 15, 2020, the Commonwealth Court held a hearing on POM's application for a preliminary injunction. On February 14, 2020, the casinos filed applications to intervene as parties in both of POM's Commonwealth Court cases.

At some point in January 2020, POM learned that Eckert was involved in representing Parx in connection with the Commonwealth Court cases and requested that it withdraw from that representation. Eckert declined and instead withdrew from representing POM in the Virginia matters. On February 20, 2020, POM filed the complaint in this action, alleging that Mark Stewart and other attorneys at Eckert had been behind the litigation efforts of Parx in both Commonwealth Court cases, despite a conflict of interest. POM claimed that Eckert's representation of Parx in the Commonwealth Court cases, directly adverse to POM, amounted to a breach of its fiduciary duties to POM as its client—namely, its professional duties of loyalty and confidentiality.

In connection with an earlier discovery dispute, we conducted an *in*

---

[1] King was co-counsel with McKeon in both Commonwealth Court cases. It is our understanding that he and his firm represent another casino group that joined Parx in filing the amicus brief and, later, the initial motions to intervene.

- 5 -

*camera* review of other documents responsive to POM's discovery requests and third-party subpoenas. Among the documents produced for that earlier *in camera* inspection were email messages and SMS text messages concerning the POM Commonwealth Court litigation, exchanged between Stewart and other Eckert attorneys on the one hand and other attorneys or corporate representatives for Parx on the other hand. These communications all concerned efforts by Parx to participate in the Commonwealth Court litigation—first as an amicus curiae with respect to a motion by POM for preliminary injunctive relief, and then later as an intervenor seeking full party status, but at all times in direct opposition to the interests of the petitioner, POM, which was also a client of Eckert at the time.

Our initial February 2021 ruling concerned several categories of documents withheld from production, two of which are relevant to the current dispute. One category was transmittal messages, which "are not privileged unless they reveal the client's confidences." *See Pace-O-Matic*, 2021 WL 602733, at *8. A second category was communications concerning legislative, lobbying, or public relations services, which are generally not privileged. *See id.* at *9–*10. Eckert, Parx, and HMS

- 6 -

appealed a portion of our initial ruling concerning another category of documents, as to which we had found Eckert, Parx, and HMS judicially estopped from asserting attorney-client privilege. But Eckert, Parx, and HMS did not challenge our ruling with respect to any other categories of documents, including our rulings with respect to transmittal messages and communications predominantly concerned with legislative, lobbying, or public relations services. *See Pace-O-Matic*, 2021 WL 1264323, at \*2; *see also Pace-O-Matic*, 2022 WL 2441556, at \*2; *Pace-O-Matic*, 2021 WL 5330641, at \*1.

Meanwhile, HMS-attorney McKeon filed praecipes for withdrawal of appearance in both Commonwealth Court cases on December 13, 2021. On January 11, 2022, the Commonwealth Court denied previously filed motions by POM to disqualify McKeon from both cases on the ground that his recently filed praecipes for withdrawal rendered the motions moot, and it directed another HMS attorney of record and the firm itself to withdraw their appearances as well, which they did a few days later. The state appellate court also struck the proposed intervenors' amicus brief in Case No. 503, and it struck their applications to intervene in both cases, but without prejudice to refiling similar applications to intervene

- 7 -

prepared by counsel *without* a conflict of interest. In June 2022, now represented by other counsel of record, Parx and other casinos filed renewed applications to intervene in both Commonwealth Court cases.

The two Commonwealth Court cases brought by POM involved different defendants, but essentially identical legal issues. In February 2023, POM appears to have opted to pursue its claims exclusively in Case No. 503, filing a praecipe of discontinuance in Case No. 418. Both defendants (the Pennsylvania Department of Revenue and the City of Philadelphia) and the proposed intervenors (Parx and other casino operators) filed appeals to the Supreme Court of Pennsylvania, each of which was ultimately quashed for lack of jurisdiction because the state department of revenue's counterclaim against POM remained pending, notwithstanding POM's discontinuance of its own claims. *See POM of Pa., LLC v. Pa. Dep't of Revenue*, Docket Nos. 10 EAP 2023, 11 EAP 2023, 12 EAP 2023 (Pa. quashed July 21, 2023) (per curiam).

Meanwhile, the other Commonwealth Court case, Case No. 503, moved forward, and a hearing was held on the casinos' application to intervene on July 19, 2023. Following this hearing and some additional briefing by the parties and the proposed intervenors, the Commonwealth

- 8 -

JA068

Court denied the casinos' applications to intervene on August 14, 2023. The Commonwealth Court also entered a stay of proceedings in both of the cases involving POM pending resolution of related appellate issues in two other Commonwealth Court cases involving skill games, to which POM was not a party: *In re Three Pa. Skill Amusement Devices*, No. 707 CD 2023 (Pa. Commw. Ct. filed Apr. 21, 2023), and *In re Four Pa. Skill Amusement Devices*, No. 761 CD 2023 (Pa. Commw. Ct. filed Mar. 8, 2023).[2] Parx and other casino operators have filed an appeal to the

---

[2] On November 14, 2023, the Commonwealth Court, sitting en banc, entered a decision affirming a trial court order granting motions to return property and to suppress evidence in criminal proceedings involving the seizure of four skill game machines from a retail establishment. *In re Four Pa. Skill Amusement Devices*, No. 761 CD 2023, 2023 WL 7509657 (Pa. Commw. Ct. Nov. 14, 2023) (en banc), *petition for allocatur filed*, No. 607 MAL 2023 (Pa. filed Nov. 15, 2023). Although the trial court's order had found that the seized games were legal games of skill, the Commonwealth's appeal and the appellate court's decision in this case were limited to jurisdictional and procedural issues—the appellate court noted that the Commonwealth had failed to preserve any substantive challenges to the trial court's order with respect to the legality of skill games. *See id.* at *3. On November 15, 2023, the Commonwealth filed a petition for allowance of appeal in the Supreme Court of Pennsylvania. *In re Four Pa. Skill Amusement Devices*, No. 607 MAL 2023 (Pa. filed Nov. 15, 2023). The case remains pending before the state supreme court.

Yesterday, the Commonwealth Court, sitting en banc, entered a decision affirming a trial court order granting a petition to return property filed in connection with an administrative enforcement seizure of three POM-developed skill game machines from a liquor-licensed

*(continued on next page)*

- 9 -

JA069

Supreme Court of Pennsylvania from the Commonwealth Court order denying their application to intervene, which remains pending before the state supreme court. *See POM of Pa., LLC v. Pa. State Police*, No. 28 EAP 2023 (Pa. filed Sept. 12, 2023).

## II. APPLICABLE STANDARDS

### A. Attorney-Client Privilege

This is a diversity case. Therefore, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). *See generally* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the

---

restaurant. *In re Three Pa. Skill Amusement Devices*, No. 707 CD 2023, 2023 WL 8264547 (Pa. Commw. Ct. Nov. 30, 2023) (en banc). In this case, the appellate court squarely addressed the substantive issue of whether POM's skill games were prohibited "slot machines" or gambling devices, expressly finding that the POM skill games were neither slot machines, *id.* at \*4–\*6, nor gambling devices, *id.* at \*6–\*10. The Commonwealth's time for seeking a discretionary appeal to the state supreme court has not yet expired with respect to yesterday's appellate decision, and news reports indicate that the Commonwealth intends to seek review in the Supreme Court of Pennsylvania. *See, e.g.*, Charles Thompson, *'Skill games' played for money score biggest win yet in Pennsylvania courts*, Harrisburg Patriot-News, Dec. 1, 2023, 2023 WLNR 40809233.

JA070

client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 387 (M.D. Pa. 2010) (noting that, under Pennsylvania law, the attorney-client privilege is generally disfavored and should be narrowly construed). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Id.* at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their

- 11 -

agents are present, the communication is not made in confidence, and the privilege does not attach." *Id.* at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

## B. Work-Product Doctrine

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp.*

- 12 -

JA072

*Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

- 13 -

JA073

indemnitor, insurer, or agent).” Fed. R. Civ. P. 26(b)(3)(A). “In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation.” *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether “the parties have the right to cross-examine witnesses or to subject an opposing party’s presentation of proof to equivalent disputation,” *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as “litigation.” This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients’ rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H (“In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against

- 14 -

each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute

- 15 -

JA075

waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

## III.   DISCUSSION

### A. Email Strings

The documents at issue here consist entirely of email messages, some with attachments. As a general rule, "each version of an email string (i.e. a forward or reply of a previous email message) must be considered as a separate, unique document." *Rhoads Indus., Inc. v. Bldg. Materials Corp. of America*, 254 F.R.D. 238, 240 (E.D. Pa. 2008); *accord United States v. Davita, Inc.*, 301 F.R.D. 676, 684–85 (N.D. Ga. 2014);

- 16 -

JA076

*Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336–37 (M.D. Pa. 2013).

> For example, an email string consisting of four email messages would have four distinct versions: (1) the most recent version consisting of Email 4 (most recent), Email 3, Email 2, and Email 1 (original email), (2) a prior version consisting of Email 3, Email 2, and Email 1, (3) a prior version consisting of Email 2 and Email 1, and (4) the original Email 1. Additionally[,] there could be other email strings consisting of some or all of Emails 1–4.

*Rhoads Indus.*, 254 F.R.D. at 240 n.4. Thus, "each message of the string which is privileged must be separately logged in order to claim privilege in that particular document." *Rhoads Indus.*, 254 F.R.D. at 240–41; *see also Davita*, 301 F.R.D. at 685 ("[T]he Court simply requires that Defendants ensure that each withheld email within a string be logged in some fashion *at least once.*").

The Eckert privilege log before us appears to be defective. It describes the author, the recipients, the subject line, and the time and date for the *top email only* in each email string produced for *in camera* review. While prior email messages within a string have occasionally been separately logged and produced for *in camera* review, many are clearly not otherwise described in the privilege log. This can be problematic when those prior email messages involve additional

- 17 -

JA077

recipients not identified in the privilege log description of the top email message. *See, e.g., Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012) ("If listing only the recipients of the last e-mail in a chain fails to disclose everyone to whom an allegedly privilege communication has been sent, the listing cannot be adequate. Moreover, if the recipient(s) at an e-mail address cannot be adequately identified, it is impossible to determine whether the privilege is properly asserted."). Any inadequacy in the Eckert privilege log is moot, however, as the most appropriate remedy in our view would have been *in camera* inspection of a select sample of the withheld documents, which we have already done. *See generally Nat'l Labor Relations Bd. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009) (outlining four common remedies for a privilege log that fails to comply with the requirements of Fed. R. Civ. P. 26(b)(5)).[3]

### B. State-Law Work-Product Protection

In addition to attorney-client privilege, virtually every document listed on Eckert's 116-page privilege log is marked as being withheld on

---

[3] We note that an alternative remedy for such a defective privilege log is to deem the inadequate log an outright *waiver* of any attorney-client privilege that might otherwise apply. *See id.; see also Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D. W. Va. 2015). But we do not find Eckert's conduct in this instance merits such a severe sanction.

JA078

the basis of work-product protection.[4] Most of these documents are marked as being protected under the *state* work-product protection rule, Pa. R. Civ. P. 4003.3, with no related litigation identified as the basis for protection from disclosure. Whereas the federal work-product rule shields materials from disclosure only if they are prepared *in anticipation of litigation*, the Pennsylvania state work-product rule provides significantly broader protection from disclosure, protecting "the mental impressions and processes of an attorney acting on behalf of a client, *regardless of whether the work product was prepared in anticipation of litigation.*" *BouSamra v. Excela Health*, 210 A.3d 966, 976 (Pa. 2019) (emphasis added); *see also id.* at 976 n.6 (discussing distinctions between the language of Pa. R. Civ. P. 4003.3 and the language of Fed. R. Civ. P. 26(b)(3)(A)). As we have noted above, it is the *federal* work-product standard—not the state rule—that controls the proper scope of discovery in a federal diversity case such as this. *See United Coal Cos.*, 839 F.2d at 966; *Barron Indus.*, 809 F. Supp. at 364 n.10; *see also Coregis Ins. Co. v.*

---

[4] Among the purportedly privileged documents submitted for *in camera* review, we have identified only one for which work-product protection is not asserted by Eckert: PRIV-00597 (Control No. 801161). With respect to this document, Eckert has asserted attorney-client privilege only.

*Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. App'x 58, 60 (3d Cir. 2003). Thus, with respect to all documents withheld from production on state-law work-product protection grounds, Eckert's objections to disclosure are overruled.[5]

---

[5] These documents include: PRIV-00036 (Control No. 600512); PRIV-00040 (Control No. 600332); PRIV-00056 (Control No. 1900242); PRIV-00057 (Control No. 502252); PRIV-00062 (Control No. 600848); PRIV-00065 (Control No. 500116); PRIV-00066 (Control No. 600637); PRIV-00067 (Control No. 1900210); PRIV-00068 (Control No. 1900237); PRIV 00069 (Control No. 1900231); PRIV-00071 (Control No. 1900229); PRIV-00072 (Control No. 500973); PRIV-00072 (Control No. 500242); PRIV-00075 (Control No. 1900239); PRIV-00076 (Control No. 304115); PRIV-00077 (Control No. 1900168); PRIV-00079 (Control No. 304194); PRIV-00081 (Control No. 501149); PRIV-00084 (Control No. 1900216); PRIV-00089 (Control No. 304526); PRIV-00090 (Control No. 800811); PRIV-00092 (Control No. 304193); PRIV-00101 (Control No. 2000181); PRIV-00102 (Control No. 800483); PRIV-00106 (Control No. 304653); PRIV-00107 (Control No. 400309); PRIV-00108 (Control No. 304428); PRIV-00175 (Control No. 304601); PRIV-00199 (Control No. 304484); PRIV-00232 (Control No. 400468); PRIV-00262 (Control No. 304160); PRIV-00263 (Control No. 1800457); PRIV-00264 (Control No. 304508); PRIV-00265 (Control No. 1800543); PRIV-00271 (Control No. 304122); PRIV-00305 (Control No. 900215); PRIV-00308 (Control No. 304159); PRIV-00321 (Control No. 900706); PRIV-00322 (Control No. 600330); PRIV-00323 (Control No. 304483); PRIV-00329 (Control No. 304139); PRIV-00333 (Control No. 1900224); PRIV-00334 (Control No. 304576); PRIV-00335 (Control No. 304575); PRIV-00493 (Control No. 800930); PRIV-00495 (Control No. 800305); PRIV-00496 (Control No. 801228); PRIV-00497 (Control No. 801231); PRIV-00554 (Control No. 1102670); PRIV-00614 (Control No. 800947); PRIV-00651 (Control No. 801264); PRIV-00653 (Control No. 1102545); PRIV-00654 (Control No. 801204); PRIV-00655 (Control No. 801206); PRIV-00656 (Control No. 8012070;

*(continued on next page)*

- 20 -

## C. Transmittal Messages

Several of the documents logged by Eckert are mere transmittal

messages to or from attorneys forwarding other messages or documents

---

PRIV-00657 (Control No. 801205); PRIV-00660 (Control No. 801345); PRIV-00677 (Control No. 1001314); PRIV-00679 (Control No. 1000448); PRIV-00684 (Control No. 1000446); PRIV-00685 (Control No. 501131); PRIV-00692 (Control No. 1001312); PRIV-00701 (Control No. 500660); PRIV-00703 (Control No. 1001050); PRIV-00711 (Control No. 502250); PRIV-00722 (Control No. 501421); PRIV-00740 (Control No. 500940); PRIV-00751 (Control No. 502397); PRIV-00755 (Control No. 400483); PRIV-00760 (Control No. 402110); PRIV-00761 (Control No. 402019); PRIV-00762 (Control No. 502333); PRIV-00763 (Control No. 500757); PRIV-00782 (Control No. 801235); PRIV-00783 (Control No. 1102560); PRIV-00784 (Control No. 1500588); PRIV-00786 (Control No. 1500798); PRIV-00787 (Control No. 302906); PRIV-00788 (Control No. 1001628); PRIV-00804 (Control No. 1001578); PRIV-00806 (Control No. 1001753); PRIV-00807 (Control No. 1001756); PRIV-00810 (Control No. 1401405); PRIV-00816 (Control No. 1401278); PRIV-00817 (Control No. 1401350); PRIV-00830 (Control No. 1500644); PRIV-00832 (Control No. 1500638); PRIV-00843 (Control No. 302368); PRIV-00874 (Control No. 1401723); PRIV-00881 (Control No. 1401459); PRIV-00900 (Control No. 303143); PRIV-00902 (Control No. 1500490); PRIV-00911 (Control No. 302166); PRIV-00912 (Control No. 303907); PRIV-00913 (Control No. 1500840); PRIV-00919 (Control No. 302985); PRIV-00935 (Control No. 2000675); PRIV-00938 (Control No. 1500868); PRIV-00942 (Control No. 1800563); PRIV-00946 (Control No. 1500479); PRIV-00948 (Control No. 1500835); PRIV-00949 (Control No. 302621); PRIV-00950 (Control No. 1500447); PRIV-00958 (Control No. 302301); PRIV-00960 (Control No. 302303); PRIV-00971 (Control No. 1700641); PRIV-00973 (Control No. 1701132); PRIV-00987 (Control No. 1400275); PRIV-00988 (Control No. 1103273); PRIV-00991 (Control No. 304063); PRIV-00996 (Control No. 304259); PRIV-00998 (Control No. 1900215); and PRIV-01008 (Control No. 301569).

JA081

that are not themselves privileged or otherwise protected from disclosure. It is well settled that "[t]ransmittal documents themselves are not privileged unless they reveal the client's confidences." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010). Likewise, work-product protection does not attach to mere transmittal letters that do not contain the mental impressions of counsel. *See Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 214 (D. Del. 2000); *see also Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La. 1996) ("Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not privileged simply because they are written by or to an attorney."). Although "attached documents may themselves be protected by the attorney-client privilege or the work-product doctrine, . . . the transmittal messages are not." *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336 (M.D. Pa. 2013).

PRIV-00668 (Control No. 1600115)[6] is one such transmittal

---

[6] This document is found at Tab 1-1 of the binder of purportedly privileged documents submitted for *in camera* review. The binder is divided into three sections (1, 2, and 3) representing the three categories of withheld documents for which Eckert's objections to production are

*(continued on next page)*

message, sent to an Eckert attorney, Kevin M. Skjoldal, from his administrative assistant, Denise Kline,[7] forwarding a copy of a document that is not itself privileged or otherwise protected from disclosure. Specifically, the only attachment to this email transmittal message as produced for *in camera* review is a PDF copy of the First Amended Complaint with exhibits filed *by POM*, Eckert's adversary in this case, and its two co-plaintiffs in *Queen of Virginia Skill & Entertainment, LLC v. Platania*, No. 19-cv-00065 (W.D. Va. filed Dec. 4, 2019), ECF No. 9, available on that court's public docket record.[8] Accordingly, the objections to production of PRIV-00668 (Control No. 1600115) on attorney-client privilege and work-product protection grounds are overruled.

PRIV-00991 (Control No. 304063)[9] is another such transmittal message, sent from Eckert attorney Mark S. Stewart to Eckert attorney

---

challenged by POM. Within each category, the documents are divided by numbered tabs, starting at "1" for each category. Thus, "Tab 1-1" refers to the first numbered tab within category 1.

[7] The message itself contains only the assistant's signature block.

[8] Counsel of record for the plaintiffs in the *Queen of Virginia* lawsuit included Anthony F. Troy, who was an attorney in Eckert's Richmond, Virginia, office at the time. The litigation sought to enjoin enforcement action by a local prosecutor with respect to an electronic skill game terminal manufactured and distributed by POM's co-plaintiffs, which operated on software provided by POM.

[9] Tab 2-109.

JA083

Susan A. Yocum, forwarding an email message from attorney-lobbyist Sean Schafer[10] summarizing and circulating various documents received by a friendly legislator from pro-skill games lobbyists. The email chain and attachments were produced to POM in discovery with the transmittal email message from Stewart to Yocum redacted.[11] The brief, six-word transmittal message does not reveal any client confidences, nor does it contain the mental impressions of counsel. Accordingly, the objection to production of PRIV-00991 (Control No. 304063) on attorney-client privilege grounds is overruled.

Other transmittal messages contain attachments concerning non-privileged lobbying services, legislative strategy, or policy advice, which are addressed below. We will note whenever a document also includes a non-privileged transmittal message.

### D. Lobbying Services, Legislative Strategy, and Policy Advice

Most of the documents described on Eckert's privilege log involve communications among lawyers concerning lobbying services, legislative strategy, and policy advice that do not contain or implicate confidential

---

[10] Schafer appears to be a principal of Schafer Government Affairs, Inc., a firm offering public affairs and government relations services.
[11] ECKERT019558–ECKERT019586.

JA084

client communications or legal advice communicated to the client.

It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted). "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001). "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

> Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client,

- 25 -

JA085

including on matters that may also be the subject of the lobbying efforts."

*Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure *legal advice*, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165;

- 26 -

JA086

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

### 1. *Summaries of Public Meetings*

PRIV-00036 (Control No. 600512)[12] consists of an email message from Eckert attorney Kristine Marsilio to Eckert attorney Stewart that merely summarizes the content of a public meeting by a state legislative committee. It does not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-00036 (Control No. 600512) on attorney-client privilege grounds is overruled.

PRIV-00041 (Control No. 600510)[13] consists of an email message sent from Marsilio to Stewart and an attached document, both of which merely summarize the content of public meetings by two separate state legislative committees. The email message and attachment do not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Eckert has also asserted federal work-product protection, under Fed. R. Civ. P. 26(b)(3), identifying POM's

---

[12] Tab 2-1. The first page of this document is a transmittal message.
[13] Tab. 2-3.

- 27 -

Commonwealth Court cases as the underlying litigation. But the email message merely describes a reference to that litigation by a witness at one of the public meetings; there is nothing in this message and attachment to suggest that either was prepared in anticipation of litigation. Accordingly, the objection to production of PRIV-00041 (Control No. 600510) on attorney-client privilege and federal work-product protection grounds is overruled.

PRIV-000946 (Control No. 1500479)[14] is an email message from Eckert attorney David "Neil" Hittinger to Eckert attorney Stewart that merely summarizes the content of a public meeting by a state legislative committee. It does not contain any legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-000946 (Control No. 1500479) on attorney-client privilege grounds is overruled.

PRIV-000948 (Control No. 1500835)[15] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding Hittinger's preparation of a document merely summarizing the content

---

[14] Tab 2-100.
[15] Tab 2-101.

- 28 -

of a public meeting by a state legislative committee, and a copy of that document as an attachment. The email chain includes a prior email message from attorney-lobbyist Richard Gmerek[16] to Stewart and nine executives or in-house attorneys at a non-party casino group, Mohegan Gaming & Entertainment, which likewise merely summarized the content of that same public state legislative committee meeting.[17] None of these communications contain legal analysis or advice. *See Robinson*, 214 F.R.D. at 445; *Phelps Dodge*, 852 F. Supp. at 164. Accordingly, the objection to production of PRIV-000948 (Control No. 1500835) on attorney-client privilege grounds is overruled.

### 2. Draft Legislation

PRIV-00040 (Control No. 600332)[18] is a draft legislative amendment sent to an Eckert attorney, Stewart, from another Eckert attorney, Tara A. Burns, the author of this draft legislation. In addition to this draft legislation—which proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to add a provision permitting municipalities to prohibit video

---

[16] Gmerek appears to be a principal of Gmerek Government Relations Inc., a firm offering political and government relations services.

[17] Eckert's privilege log mistakenly indicates that privilege is asserted on behalf of Parx rather than Mohegan.

[18] Tab 2-2. The first page of this document is a transmittal message.

gaming terminals at truck stops within their borders—Burns also attached copies of publicly available state statutes related to the proposed legislative amendment. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) ("[A]dvice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege."); *Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 426 (E.D.N.C. 1991) ("If the communication essentially involves the giving of political advice, then it is not privileged."). Moreover, there is nothing in the record before us to suggest that this communication between Eckert attorneys involved any confidential client information, nor any communication whatsoever to or from a client. As the Supreme Court of the United States has observed:

> [T]he protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental

- 30 -

JA090

impressions, conclusions, opinions or legal theories.

*Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481–82 (D. Del. 2005) (attorney-client privilege did not shield inter-attorney communication "reflect[ing] attorney thought processes"); *Martin*, 136 F.R.D. at 426–27 ("[M]emoranda or briefs prepared by counsel for his own use in prosecuting his client's case which do not reveal information supplied in confidence by the client, or memoranda which merely summarize the case law but contain no factual application to the client, are not privileged.") (citations omitted); *Shore Acres Nursing Home, Inc. v. Continental Med. Sys., Inc.*, No. 91-0067, 1992 WL 57916, at *5 (E.D. Pa. Mar. 17, 1992) ("[I]n order for the privilege to apply, the communication must be given incident to a request for, or the rendition of, legal advice. The privilege does not apply to legal advice unless it could arguably reveal a *client's* confidences. Accordingly, memoranda or briefs prepared by counsel for his/her own use or memoranda which merely summarize the case law but contain no factual application to the client are not privileged.") (cleaned up); *Commonwealth v. Chmiel*, 889 A.2d 501, 599 (Pa. 2005) ("First and foremost is the rule that the [attorney-client] privilege applies only to

- 31 -

JA091

confidential communications made by the client to the attorney in connection with the provision of legal services."); *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. Ct. 2004) ("In addition to confidential communications which flow from a client to his or her attorney, we have held that the attorney-client privilege applies to confidential communications which flow from an attorney to his or her client to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney."); *cf. Sodexomagic, LLC v. Drexel Univ.*, 294 F. Supp. 3d 404, 405 (E.D. Pa. 2018) (draft contracts not protected by attorney-client privilege). *See generally Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 490 (S.D.N.Y. 1993) ("[A] draft document prepared by an attorney is privileged if it contains information provided in confidence by the client and subsequently maintained in confidence. In the absence of such confidential information supplied by the client, the draft document is not privileged merely because the attorney prepared it."). Accordingly, the objection to production of PRIV-00040 (Control No. 600332) on attorney-client privilege grounds is overruled.

- 32 -

PRIV-00074 (Control No. 500242)[19] and PRIV-00075 (Control No. 1900239)[20] consist of email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation. The first email message, PRIV-00074, also forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the "gist of the bill." The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York*

---

[19] Tab 2-14.
[20] Tab 2-15.

JA093

*City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00074 (Control No. 500242) and PRIV-00075 (Control No. 1900239) on attorney-client privilege grounds is overruled.

PRIV-00101 (Control No. 800483),[21] PRIV-00321 (Control No. 900706),[22] PRIV-00322 (Control No. 600330),[23] and PRIV-00323 (Control No. 304483)[24] are email messages exchanged between Eckert attorneys Stewart, Burns, Skjoldal, and Michael McAuliffe Miller, transmitting and discussing revisions to draft ordinances that would make skill games a public nuisance in adopting municipalities. One of the email messages also includes copies of publicly available state statutes related to the proposed municipal legislation. Another email message includes comments by Skjoldal indicating that Miller had shared the draft ordinance with a third-party municipal official, who called Skjoldal to thank him for sending it to Miller and to ask if he had also drafted a version *regulating* rather than prohibiting skill games. The subject matter of these communications concerns legislative, political, or policy

---

[21] Tab 2-26.
[22] Tab 2-41.
[23] Tab 2-42.
[24] Tab 2-43.

- 34 -

JA094

advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00101 (Control No. 800483), PRIV-00321 (Control No. 900706), PRIV-00322 (Control No. 600330), and PRIV-00323 (Control No. 304483) on attorney-client privilege grounds is overruled.

PRIV-00189 (Control No. 304484)[25] and PRIV-00232 (Control No. 400468)[26] are email messages exchanged between Eckert attorneys Stewart and Burns concerning draft electronic skill games legislation. The attached draft legislation, authored by Burns and attached to one of

---

[25] Tab 2-32.
[26] Tab 2-33.

JA095

these emails, proposed amending Title 10 of the Pennsylvania Statutes[27] to ban electronic skill games. Burns also attached a copy of a publicly filed legislative proposal, Senate Bill 710, which likewise sought to prohibit electronic skill games. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice— and thus it is not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00189 (Control No. 304484) and PRIV-00232 (Control No. 400468) on attorney-client privilege grounds is overruled.

---

[27] This title contains various statutes regulating gaming in connection with the activities of charitable organizations, including Pennsylvania's Bingo Law and Local Option Small Games of Chance Act.

JA096

PRIV-00874 (Control No. 1401723)[28] is an email message from Eckert attorney Hittinger to Eckert attorney Stewart concerning Senate Bill 710 and forwarding a copy of draft legislation that Eckert attorneys had previously prepared, which had proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00874 (Control No. 1401723) on attorney-client privilege grounds is overruled.

---

[28] Tab 2-89.

JA097

PRIV-00973 (Control No. 1701132)[29] is an email exchange between Eckert attorneys Stewart and Hittinger in which Hittinger summarized and attached copies of a dozen different draft legislative proposals concerning skill games that Hittinger found on Eckert's document system, which appears to include both drafts prepared by Eckert attorneys and copies of bills actually proposed in the state legislature. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273; *cf. Sodexomagic*, 294 F. Supp. 3d at 405. *See generally Bowne of New York City*, 150 F.R.D. at 490. Accordingly, the objection to production of PRIV-00973 (Control No. 1701132) on attorney-client privilege grounds is

---

[29] Tab 2-106.

JA098

overruled.

### 3. Other Lobbying, Legislative, and Policy Communications

PRIV-00056 (Control No. 1900242),[30] PRIV-00057 (Control No. 502252),[31] PRIV-00062 (Control No. 60848),[32] PRIV-00068 (Control No. 1900210),[33] PRIV-00069 (Control No. 1900231),[34] PRIV-00071 (Control No. 1900229),[35] PRIV-00072 (Control No. 500973),[36] PRIV-00076 (Control No. 304115),[37] PRIV-00077 (Control No. 1900168),[38] PRIV-00079 (Control No. 304194),[39] PRIM-00084 (Control No. 1900216),[40] PRIV-00089 (Control No. 304526),[41] PRIV-00090 (Control No. 800811),[42] PRIV-00092 (Control No. 304193),[43] and PRIV-00101 (Control No. 2000181)[44] consist of email messages exchanged between Eckert attorneys Stewart and

---

[30] Tab 2-4.
[31] Tab 2-5.
[32] Tab 2-6.
[33] Tab 2-10.
[34] Tab 2-11.
[35] Tab 2-12.
[36] Tab 2-13.
[37] Tab 2-16.
[38] Tab 2-17.
[39] Tab 2-18.
[40] Tab 2-21.
[41] Tab 2-22.
[42] Tab 2-23.
[43] Tab 2-24.
[44] Tab 2-25.

JA099

Yocum and Eckert legal assistant Jennifer Skoff concerning the preparation of a "skill games industry letter." Some of these email messages include drafts of a letter expressly intended for distribution to a mailing list of state legislators on behalf of a group of (ultimately) thirteen separate casino groups.[45] One of the email messages includes a draft of a "collaborative letter" addressed to an official of the Pennsylvania Gaming Control Board requesting temporary relief from a particular table-gaming regulation on behalf of a group of eleven separate casino groups.[46] Some of the messages also include forwarded email messages about the skill games industry letter reflecting email exchanges with non-Eckert attorneys representing the non-party casino groups. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications between Eckert attorneys involved any confidential client information. *See Chmiel*, 889 A.2d at 599;

---

[45] The number of casino group signatories grew as revised drafts of the letter were circulated.

[46] PRIV-00090 (Control No. 800811).

*Slusaw*, 861 A.2d at 273. Indeed, based on the context provided by our *in camera* review of all of these contested documents, the "industry letter" was prepared not on behalf of the three clients listed on Eckert's privilege log (Parx, Mohegan, and Cordish[47]), but a larger group that also included non-client casino groups, which shared a common *commercial* or *business* interest in opposition to electronic skill games and joint lobbying efforts directed at the state legislature, not a common *legal* interest that would permit them to share confidential communications without waiver of any attorney-client privilege that might otherwise apply. *See United States v. BDO Siedman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007); *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 118 & n.6 (E.D. Pa. 2011) ("The common interest binding parties to the communication must be legal in nature, and not merely commercial or business related."). Accordingly, the objection to production of PRIV-00056 (Control No.

---

[47] The privilege log identifies the third client as "Stadium Casino," owner and operator of the Philly Live! Hotel & Casino. It is our understanding that Stadium Casino began as a joint venture between Parx and the Cordish Companies, but Cordish had acquired Parx's share of Stadium Casino prior to the time period at issue here. The materials submitted for *in camera* review refer to all three entities at times—Cordish, Live!, and Stadium Casino—but references are predominantly to Cordish. Thus, we too will generally refer to Cordish rather than Live! or Stadium Casino.

- 41 -

JA101

1900242), PRIV-00057 (Control No. 502252), PRIV-00062 (Control No. 60848), PRIV-00068 (Control No. 1900210), PRIV-00069 (Control No. 1900231), PRIV-00071 (Control No. 1900229), PRIV-00072 (Control No. 500973), PRIV-00076 (Control No. 304115), PRIV-00077 (Control No. 1900168), PRIV-00079 (Control No. 304194), PRIM-00084 (Control No. 1900216), PRIV-00089 (Control No. 304526), PRIV-00090 (Control No. 800811), PRIV-00092 (Control No. 304193), and PRIV-00101 (Control No. 2000181) on attorney-client privilege grounds is overruled.

PRIV-00081 (Control No. 501149)[48] is an email exchange between Eckert attorney Stewart and Mohegan in-house counsel David Rome concerning corrections to the signature block to be used for Mohegan on the aforementioned "industry letter." The email chain also included additional emails exchanged between Stewart, Rome, Gmerek, and other Mohegan executives providing updates on legislative and lobbying developments with respect to electronic skill games. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D.

---

[48] Tab 2-20.

- 42 -

JA102

at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00081 (Control No. 501149) on attorney-client privilege grounds is overruled.

PRIV-00065 (Control No. 500116),[49] PRIV-00066 (Control No. 600637),[50] and PRIV-00067 (Control No. 1900210)[51] consist of email messages exchanged between Eckert attorneys Stewart, Yocum, and Sjkodal and attorney-lobbyist Schafer regarding an email message and attached letter that had been distributed to state legislators by a public relations firm on behalf of Tom Marino, *POM's* vice president of government affairs and public relations. Marino's letter concerned electronic skill game legislation, and while his letter and the internal Eckert email messages referenced "legal memos," these memos were non-confidential documents circulated widely and made publicly available on the internet by POM, a business adversary to Parx, the purported client

---

[49] Tab 2-7.
[50] Tab 2-8.
[51] Tab 2-9.

- 43 -

JA103

on whose behalf privilege is asserted.[52] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00065 (Control No. 500116), PRIV-00066 (Control No. 600637), and PRIV-00067 (Control No. 1900210) on attorney-client privilege grounds is overruled.

PRIV-00080 (Control No. 900657)[53] is an email exchange between Eckert attorneys Stewart and Skjoldal regarding the same Marino letter. For the same reasons stated in the preceding paragraph, this email exchange is not protected from disclosure by attorney-client privilege. Eckert, however, has also asserted federal work-product protection with respect to this communication. The email exchange included a summary

---

[52] We note that, at the time, POM was still a client of Eckert as well, in connection with POM's activities in Virginia.

[53] Tab 2-19.

by Sjkodal of the non-confidential "legal memos" disseminated by Parx's adversary, POM, commenting that the arguments presented by Marino in his letter and the referenced non-confidential legal memos "parrot" those set forth in POM's Commonwealth Court briefs. It is clear upon *in camera* review that this communication predominantly—if not exclusively—concerns Eckert's legislative or lobbying strategy, and that these email messages were not prepared in connection with the litigation at all. Accordingly, the objection to production of PRIV-00080 (Control No. 900657) on attorney-client privilege and federal work-product protection grounds is overruled.

PRIV-00105 (Control No. 1900236)[54] is a three-message chain of email messages. The two most recent messages involve a discussion between Eckert attorneys Stewart and Yocum about attendance at an upcoming press conference by a state senator regarding skill games legislation. The earliest message in the chain, sent on June 2, 2019, at 11:01 a.m., is an email to Stewart from William J. Downey of Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), an attorney representing Harrah's, a non-party casino group, apparently addressing both the press

---

[54] Tab 2-27.

- 45 -

conference and the Commonwealth Court litigation. Harrah's later joined with Parx in filing an amicus brief and moving to intervene in the Commonwealth Court litigation. The subject matter of the two most recent communications solely between Eckert attorneys concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that any of these three email messages involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. The earliest email message, from Downey to Stewart, however, is properly withheld from disclosure under the federal work-product doctrine, as it was prepared in anticipation of the underlying Commonwealth Court litigation, and disclosure of Downey's mental impressions to the Eckert attorneys did not constitute waiver of that protection. *See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Thus, the objection to production of PRIV-00105 (Control No. 1900236) on attorney-client privilege grounds is overruled, and the objection to production of this document on federal work-product

JA106

protection grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted.

PRIV-00106 (Control No. 304653),[55] PRIV-00107 (Control No. 400309),[56] and PRIV-00108 (Control No. 304428)[57] is an email exchange between Eckert attorney Stewart, Cordish executives Joe Weinberg and Robert Norton, Cordish general counsel Charles Jacobs, and Richard W. Hayden of Saul Ewing LLP, another outside attorney for Cordish. The emails concerned upcoming testimony to be presented at a state legislative gaming oversight committee meeting by Ballard attorney King, accompanied by Stewart and Brownstein attorney Downey. The first email included, as an attachment, a copy of King's draft testimony summarizing the information and arguments previously shared with legislators in a recent "industry letter" regarding skill games, apparently the same one we have touched on previously in this opinion. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by

---

[55] Tab 2-28.
[56] Tab 2-29.
[57] Tab 2-30.

- 47 -

attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00106 (Control No. 304653), PRIV-00107 (Control No. 400309), and PRIV-00108 (Control No. 304428) on attorney-client privilege grounds is overruled.

PRIV-00175 (Control No. 304601)[58] and PRIV-00996 (Control No. 304259)[59] consist of email messages exchanged between Eckert attorneys Stewart and Burns discussing whether and when Burns had time to review and summarize recently introduced legislation—Senate Bill 784—concerning the legality of electronic skill games. The email chain also included a non-privileged prior email message from attorney-lobbyist Gmerek to Stewart and a dozen Mohegan executives or in-house attorneys, advising them of the senate bill's introduction and providing a brief summary of its background. The email chain, as represented in PRIV-00996, was produced to POM in discovery with the most recent

---

[58] Tab 2-31.
[59] Tab 2-110.

- 48 -

email message from Stewart to Burns redacted; the Gmerek email message and attachments were produced without redaction.[60] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00175 (Control No. 304601) and PRIV-00996 (Control No. 304259) on attorney-client privilege grounds is overruled.

PRIV-00262 (Control No. 304160),[61] PRIV-00263 (Control No. 1800457),[62] PRIV-00264 (Control No. 304508),[63] and PRIV-00265 (Control No. 1800543)[64] consist of an exchange of email messages among Eckert attorneys Stewart, Burns, Yocum, Marsilio, and Skjoldal about an upcoming legislative committee hearing on proposed legislation to tax

---

[60] ECKERT019101–ECKERT019114.

[61] Tab 2-34.

[62] Tab 2-35.

[63] Tab 2-36.

[64] Tab 2-37.

- 49 -

and regulate—rather than prohibit—skill games, House Bill 1598. The email chain also included earlier, clearly non-privileged emails exchanged between Eckert attorney Stewart, attorney-lobbyists Schafer and Gmerek, Parx executive Green, Parx general counsel Tom Bonner, and Ryan Skoczylas, who served as chief of staff to a state senator at the time.[65] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.

---

[65] It is beyond cavil that the inclusion of a state government official—the chief of staff for Senator Tommy Tomlinson, who sponsored or advocated anti-skill games legislation favored by the casino groups on multiple occasions—in *each* of these earlier email messages precludes any argument that these earlier communications are protected by attorney-client privilege. *See, e.g., Sandoz Inc. v. Lannett Co.*, 570 F. Supp. 3d 258, 265 (E.D. Pa. 2021) ("Attorney-client privilege will not ordinarily attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege.") (citing *BouSamra v. Excela Health*, 210 A.3d 966, 982 (Pa. 2019)); *see also Teleglobe Commc'ns Corp.*, 493 F.3d at 364 (noting that application of the exception to waiver of attorney-client privilege under the common-interest doctrine requires not only a shared *legal* interest, but also that "the communication must be shared with the *attorney* of the member of the community of interest") (emphasis in original).

JA110

Accordingly, the objection to production of PRIV-00262 (Control No. 304160), PRIV-00263 (Control No. 1800457), PRIV-00264 (Control No. 304508), and PRIV-00265 (Control No. 1800543) on attorney-client privilege grounds is overruled.

PRIV-00308 (Control No. 304159)[66] and PRIV-00998 (Control No. 1900215)[67] consist of email messages exchanged between Eckert attorneys Stewart and Yocum concerning attendance at an upcoming legislative committee hearing on proposed legislation to tax and regulate—rather than prohibit—skill games, House Bill 1598. The email chain also includes an earlier non-privileged email message from attorney-lobbyist Gmerek to Parx executive Green, Parx general counsel Bonner, attorney-lobbyist Schafer, and Eckert attorney Stewart reporting on the upcoming hearing and the anticipated roster of witnesses who would present testimony. The email chain, as represented in PRIV-00998, was produced to POM in discovery with the two email messages between Stewart and Yocum redacted; the Gmerek email message was produced without redaction.[68] The subject matter of these communications

---

[66] Tab 2-40.

[67] Tab 2-111.

[68] ECKERT019061.

- 51 -

concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00308 (Control No. 304159) and PRIV-00998 (Control No. 1900215) on attorney-client privilege grounds is overruled.

PRIV-00271 (Control No. 304122)[69] and PRIV-00305 (Control No. 900215)[70] consist of email messages exchanged between Eckert attorneys Stewart, Skjoldal, and Burns regarding the drafting of a cover letter to accompany a draft ordinance making skill games a public nuisance in adopting municipalities, for consideration by unspecified municipal officials to whom the letter was to be sent. Attached to the first email message is an initial draft cover letter prepared by Burns. Attached to the second email message is a revised draft cover letter prepared by Skjoldal. The second email message also includes prior email messages

---

[69] Tab 2-38.
[70] Tab 2-39.

- 52 -

forwarding both draft cover letters to Eckert attorneys Miller and G. Edward Schweikert for comment. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00271 (Control No. 304122) and PRIV-00305 (Control No. 900215) on attorney-client privilege grounds is overruled.

PRIV-00329 (Control No. 304139)[71] is an email message from Eckert attorney Stewart to Eckert attorney Yocum forwarding a copy of the final version of the draft nuisance ordinance cover letter discussed in the preceding paragraph. The email chain includes an earlier transmittal message from Stewart to Parx executive Green forwarding the very same document. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus

---

[71] Tab 2-44.

they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Finally, based on Stewart's own comments, the attached cover letter was disseminated widely to third-party municipal officials, and thus it cannot be considered confidential information. Accordingly, the objection to production of PRIV-00329 (Control No. 304139) on attorney-client privilege grounds is overruled.

PRIV-00333 (Control No. 1900224),[72] PRIV-00334 (Control No. 304576),[73] and PRIV-00335 (Control No. 304575)[74] consist of email messages exchanged between Eckert attorneys Stewart and Yocum discussing whether to add information about the state gaming board's local law enforcement grant program to their cover letter to municipal officials forwarding a draft ordinance designed to make skill games a public nuisance. The email chain also includes prior email messages in which Stewart considered whether to forward this same information on

---

[72] Tab 3-1.
[73] Tab 3-2.
[74] Tab 3-3.

- 54 -

JA114

to Eckert's casino group clients as well. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00333 (Control No. 1900224), PRIV-00334 (Control No. 304576), and PRIV-00335 (Control No. 304575) on attorney-client privilege grounds is overruled.

PRIV-00366 (Control No. 304699)[75] is an email message from Eckert attorney Stewart to Cordish executives Weinberg, Norton, and Joe Billhimer. Stewart's seven-paragraph email message addressed both developments in POM's Commonwealth Court cases and developments in state skill games legislation. The first three paragraphs of Stewart's message discussed the Commonwealth Court's November 20, 1999, skill games decision and legal arguments being floated by both sides, but without any factual application at all. The last four paragraphs of the

---

[75] Tab 2-45.

message, however, summarized recent developments on the legislative / lobbying front with respect to skill games. Appended to the email message was a copy of a public "co-sponsorship" memorandum from two non-party state representatives, Jim Marshall and Scott Conklin, to all members of the state house indicating the intent of Marshall and Conklin to introduce legislation to legalize and regulate skill games in club liquor-licensed establishments. The subject matter of this communication predominantly concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that any part of this email message involved any confidential client information, particularly in the absence of factual application whatsoever to the client. *See Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Nevertheless, we find that the first three paragraphs are properly withheld from disclosure under the federal work-product doctrine, as this segregable portion of Stewart's message appears to have been prepared in anticipation of the client's intervention in the underlying Commonwealth Court litigation.

- 56 -

JA116

*See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Thus, the objection to production of PRIV-00366 (Control No. 304699) on attorney-client privilege grounds is overruled, and the objection to production of this document on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the first three paragraphs (following the salutation, "Guys,") redacted.

PRIV-00493 (Control No. 800930),[76] PRIV-00495 (Control No. 800305),[77] PRIV-00496 (Control No. 801228),[78] and PRIV-00497 (Control No. 801231)[79] consist of email messages exchanged between Eckert attorney Stewart and Cordish executives Weinberg, Norton, and Billhimer, concerning a public "co-sponsorship" memorandum from the non-party state senate majority leader, Jake Corman, to all members of the state senate indicating his intent to introduce legislation to legalize and regulate the placement of skill games in liquor-licensed establishments statewide. Stewart's initial email message also conveyed

---

[76] Tab 2-46.
[77] Tab 2-47.
[78] Tab 2-48.
[79] Tab 2-49.

JA117

a proposal by Parx executives to hold a casino industry meeting and legislative reception. Senator Corman's co-sponsorship memorandum was attached to the first email in the chain. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00493 (Control No. 800930), PRIV-00495 (Control No. 800305), PRIV-00496 (Control No. 801228), and PRIV-00497 (Control No. 801231) on attorney-client privilege grounds is overruled.

PRIV-00597 (Control No. 801161)[80] consists of an exchange of email messages between Eckert attorney Stewart and Cordish executive Norton regarding the agenda for the aforementioned industry meeting. The email chain includes a prior message from Stewart to a number of casino executives and outside counsel providing a schedule and logistical details for the meeting. The subject matter of these communications

---

[80] Tab 2-51.

- 58 -

concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00597 (Control No. 801161) on attorney-client privilege grounds is overruled.

PRIV-00554 (Control No. 1102670)[81] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger concerning an upcoming legislative hearing. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of

---

[81] Tab 2-50.

JA119

PRIV-00554 (Control No. 1102670) on attorney-client privilege grounds is overruled.

PRIV-00614 (Control No. 800947)[82] is an email chain concerning a public "co-sponsorship" memorandum by a non-party state representative, Martina A. White, indicating her intent to introduce legislation allocating the local share derived from Philadelphia-area casinos to SEPTA. The initial email message in the chain is from attorney-lobbyist Gmerek to a blind distribution list providing a brief summary of the co-sponsorship memorandum and forwarding a copy of the memorandum. The next and final email message is from Eckert attorney Stewart to Cordish executives Weinberg, Norton, and Billhimer, forwarding Gmerek's email message and the co-sponsorship memorandum, and providing some legal analysis and factual application to the client, Cordish. The subject matter of Gmerek's initial email message concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this portion of the

---

[82] Tab 2-52.

JA120

communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. The latest email message, from Stewart to the Cordish executives, however, is shielded from disclosure by attorney-client privilege. *See Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at *5. Thus, the objection to production of PRIV-00614 (Control No. 800947) on attorney-client privilege grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted.

PRIV-00651 (Control No. 801264)[83] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger concerning an upcoming legislative hearing on House Bill 1983. The email chain also included a prior email message on the same subject from Hittinger to Ballard attorney King, attorney-lobbyist Gmerek, and Stewart. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to

---

[83] Tab 2-53.

suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00651 (Control No. 801264) on attorney-client privilege grounds is overruled.

PRIV-00653 (Control No. 1102545),[84] PRIV-00654 (Control No. 801204);[85] PRIV-00655 (Control No. 801206),[86] PRIV-00656 (Control No. 801207),[87] and PRIV-00657 (Control No. 801205)[88] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger and Eckert legal assistant Skoff concerning Hittinger's attendance at a legislative committee hearing, brief comments on questions asked by various state representatives, and discussion about obtaining a transcript or recording of the hearing. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426.

---

[84] Tab 2-54.
[85] Tab 2-55.
[86] Tab 2-56.
[87] Tab 2-57.
[88] Tab 2-58.

JA122

Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00653 (Control No. 1102545), PRIV-00654 (Control No. 801204); PRIV-00655 (Control No. 801206), PRIV-00656 (Control No. 801207), and PRIV-00657 (Control No. 801205) on attorney-client privilege grounds is overruled.

PRIV-00660 (Control No. 801345)[89] consists of email messages exchanged between Eckert attorneys Hittinger and Stewart regarding questions asked at the aforementioned hearing by a non-party state representative, Marcia Hahn, and about prior interactions Stewart and attorney-lobbyist Gmerek had with her. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any

---

[89] Tab 2-59.

- 63 -

JA123

communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00660 (Control No. 801345) on attorney-client privilege grounds is overruled.

PRIV-00677 (Control No. 1001314)[90] is an email exchange between Eckert attorneys Stewart and Burns regarding proposed skill games legislation in Virginia, House Bill 881, to legalize and regulate electronic skill games by carving out an exception to a general statewide ban on skill games to permit their placement in "family entertainment centers." This Virginia legislation paralleled similar proposed legislation in Pennsylvania, which Stewart and the casino groups opposed. The most recent email message in the chain from Burns to Stewart contains a summary of the Virginia bill's provisions, without factual application to any client. Burns also attached a PDF copy of the Virginia bill to that message. The email chain also included an earlier, non-privileged transmittal email message from attorney-lobbyist Gmerek to Parx executive Green, attorney-lobbyist Schafer, and Eckert attorney Stewart merely forwarding a link to a newspaper article reporting on the Virginia

---

[90] Tab 1-2.

- 64 -

legislature's approval of legislation generally banning skill games.[91] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00677 (Control No. 1001314) on attorney-client privilege grounds is overruled.

PRIV-00692 (Control No. 1001312),[92] PRIV-00711 (Control No. 502250),[93] and PRIV-00722 (Control No. 501421)[94] consists of email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum and Eckert legal assistant Skoff regarding the status of Virginia House Bill 881, which ultimately was adopted with amendments and

---

[91] *See* Marie Albiges, *Lawmakers approve casinos in Portsmouth, Norfolk, and 3 other cities*, Newport News Daily Press (Mar. 8, 2020), https://www.dailypress.com/2020/03/08/lawmakers-approve-casinos-in-portsmouth-norfolk-and-3-other-cities/ [https://perma.cc/9ZVJ-HH7L], *also available at* 2020 WLNR 6975695 (Mar. 9, 2020).

[92] Tab 1-3.

[93] Tab 1-4.

[94] Tab 1-5.

signed into law by the state governor. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00692 (Control No. 1001312), PRIV-00711 (Control No. 502250), and PRIV-00722 (Control No. 501421) on attorney-client privilege grounds is overruled.

PRIV-00679 (Control No. 1000448),[95] PRIV-00684 (Control No. 1000446),[96] and PRIV-00755 (Control No. 400483)[97] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger concerning attached drafts of a memorandum prepared by Hittinger on legislative strategies for outlawing skill games. The subject matter of these communications concerns legislative, political, or policy advice

---

[95] Tab 2-61.
[96] Tab 2-62.
[97] Tab 2-69.

JA126

only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client; the memorandum itself merely summarized pertinent case law without factual application to any client whatsoever. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00679 (Control No. 1000448), PRIV-00684 (Control No. 1000446), and PRIV-00755 (Control No. 400483) on attorney-client privilege grounds is overruled.

PRIV-00685 (Control No. 500257)[98] is a transmittal email message from Eckert attorney Stewart to attorney-lobbyist Gmerek, forwarding, without any substantive comment, a copy of the non-privileged legislative strategies memorandum prepared by Eckert attorney Hittinger, discussed in the preceding paragraph. Accordingly, the objection to production of PRIV-00685 (Control No. 500257) on attorney-client

---

[98] Tab 2-63.

JA127

privilege grounds is overruled.

PRIV-00701 (Control No. 500660)[99] and PRIV-00703 (Control No. 1001050)[100] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding a "legal update"[101] prepared by Hittinger with respect to "Windfall Amusements 777," an unlicensed "mini-casino" operating with 60 to 90 skill machines in a Berks County shopping plaza storefront. The email chain includes prior transmittal email messages circulated among a larger group of attorney-lobbyists regarding a casino lobbyist meeting, but documents attached to these earlier email messages are not attached to the two email chains presented for *in camera* review. In one of these two email chains, Stewart has forwarded a copy of a fact sheet prepared by Ballard attorney King regarding Windfall Amusements 777 for Hittinger to consider incorporating into the "legal update" he was preparing.[102] In the second

---

[99] Tab 2-65.

[100] Tab 2-66.

[101] Despite labeling the document prepared by Hittinger a "legal update," it contains only factual information and no legal advice.

[102] It is unclear from the context provided in this email exchange whether this "legal update" was intended for distribution to Eckert attorneys, Eckert clients, or the wider casino industry group. The intended recipients, however, are immaterial, as none of the information or attached documents contain any confidential client information.

- 68 -

JA128

email chain, Hittinger has forwarded a copy of a "legal update" he has prepared regarding the Windfall Amusements 777 facility, incorporating facts and photographs Stewart had received from King. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege.[103] *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00701 (Control No. 500660) and PRIV-00703 (Control No. 1001050) on attorney-client privilege grounds is overruled.

PRIV-00740 (Control No. 500940)[104] is an email from Eckert

---

[103] Indeed, we note that there is nothing in the record before us to suggest any litigation—or even consideration of litigation—by Parx or any other Eckert client with respect to this facility. Though not material to the discovery dispute at issue, we note by way of background that Windfall Amusements 777 was ultimately raided and shut down by state police. *See generally* Gillian McGoldrick, *Berks County DA seizes nearly 60 skills, gambling machines from illegal gambling parlor*, Lancaster Newspapers (Aug. 21, 2020), 2020 WLNR 23665432.

[104] Tab 2-67.

attorney to Cordish executive Weinberg forwarding a proposed draft letter for Weinberg to use to personally lobby state legislators to oppose legislation that would expand the availability of skill games. The draft letter itself is intended for non-confidential dissemination to multiple recipients in the state legislature. The email message from Stewart further indicates that the draft letter is not provided in response to any request by Weinberg or Cordish, but at the behest of Parx executive Green. The email message provides additional comments on the industry group's broader lobbying and public relations efforts in opposition to skill games expansion. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Finally, while both Weinberg/Cordish and Green/Parx were clients of Stewart, the two clients shared at most a common *commercial* or *business* interest in opposition to electronic skill games and joint lobbying efforts directed at the state legislature, not a common *legal*

JA130

interest that would permit them to share confidential communications without waiver of any attorney-client privilege that might otherwise apply. *See BDO Siedman*, 492 F.3d at 815–16; *Processed Egg Prods.*, 278 F.R.D. at 118 & n.6; *see also Teleglobe Commc'ns Corp.*, 493 F.3d at 364 (noting that application of the exception to waiver of attorney-client privilege under the common-interest doctrine requires not only a shared *legal* interest, but also that "the communication must be shared with the *attorney* of the member of the community of interest") (emphasis in original). Accordingly, the objection to production of PRIV-00740 (Control No. 500940) on attorney-client privilege grounds is overruled.

PRIV-00751 (Control No. 502397)[105] is an email message from Eckert attorney Stewart to Cordish executive Weinberg providing him with an "FYI" regarding the identity of a lobbyist recently hired by POM. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client

_____

[105] Tab 2-68.

- 71 -

information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00751 (Control No. 502397) on attorney-client privilege grounds is overruled.

PRIV-00760 (Control No. 402110),[106] PRIV-00761 (Control No. 402019),[107] PRIV-00762 (Control No. 502333),[108] and PRIV-00763 (Control No. 500757)[109] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding an attached summary by Hittinger of key provisions of proposed legislation to legalize skill games, House Bill 1325. The latest of these email messages, PRIV-00763, included a copy of a prior transmittal email message from Stewart to Parx executives Green and Hausler, Parx general counsel Bonner, attorney-lobbyist Gmerek, and non-lawyer public relations consultant Shelly, distributing a copy of Hittinger's summary without additional comment. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148

---

[106] Tab 2-70.
[107] Tab 2-71.
[108] Tab 2-72.
[109] Tab 2-73.

- 72 -

F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00760 (Control No. 402110), PRIV-00761 (Control No. 402019), PRIV-00762 (Control No. 502333), and PRIV-00763 (Control No. 500757) on attorney-client privilege grounds is overruled.

PRIV-00782 (Control No. 801235),[110] PRIV-00783 (Control No. 1102560),[111] PRIV-00784 (Control No. 1500588),[112] PRIV-00786 (Control No. 1500798),[113] PRIV-00787 (Control No. 302906),[114] PRIV-00788 (Control No. 1001628),[115] and PRIV-00804 (Control No. 1001578)[116] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding newly proposed legislation to legalize skill games, Senate Bill 1256, and the drafting of a memorandum summarizing the key provisions of this proposed legislation. Each of

---

[110] Tab 2-74.
[111] Tab 2-75.
[112] Tab 2-76.
[113] Tab 2-77.
[114] Tab 2-78.
[115] Tab 2-79.
[116] Tab 2-80.

JA133

these email chains include prior non-privileged transmittal email messages from attorney-lobbyist Gmerek to Stewart and various Parx or Mohegan casino group executives forwarding a PDF copy of the actual bill.[117] One includes a complete copy of Senate Bill 1256 itself as an attachment. Several others include a copy of one of two versions of Hittinger's memorandum summarizing the key provisions of the bill. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00782 (Control No. 801235), PRIV-00783 (Control No. 1102560), PRIV-00784 (Control No. 1500588), PRIV-00786 (Control No. 1500798), PRIV-00787 (Control No. 302906), PRIV-00788 (Control No. 1001628), and PRIV-00804 (Control

---

[117] One of the email chains produced for *in camera* review started with an initial message from Gmerek to Stewart and various Parx executives. The rest started with an initial message from Gmerek to Stewart and various Mohegan executives.

- 74 -

No. 1001578) on attorney-client privilege grounds is overruled.

PRIV-00806 (Control No. 1001753)[118] is a transmittal email message from Eckert attorney Hittinger to Mohegan executives Anthony Carlucci and Raymond Pineault, Eckert attorney Stewart, and attorney-lobbyist Gmerek forwarding copies of his memorandum summarizing the key provisions of Senate Bill 1256 and a copy of the bill itself. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00806 (Control No. 1001753) on attorney-client privilege grounds is overruled.

PRIV-00807 (Control No. 1001756)[119] is a transmittal email message from Eckert attorney Hittinger to Parx executives Green and Hausler, Parx general counsel Bonner, Eckert attorney Stewart, and

---

[118] Tab 2-81.
[119] Tab 2-82.

JA135

attorney-lobbyist Gmerek forwarding copies of his memorandum summarizing the key provisions of Senate Bill 1256 and a copy of the bill itself. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00807 (Control No. 1001756) on attorney-client privilege grounds is overruled.

PRIV-00810 (Control No. 1401405),[120] PRIV-00816 (Control No. 1401278),[121] and PRIV-00817 (Control No. 1401350)[122] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger concerning the preparation of a second "industry letter" on behalf of the same thirteen casino groups, this time focused on the industry's opposition to Senate Bill 1256. One of these email chains includes a prior exchange of email messages between Hittinger and attorney-lobbyist

---

[120] Tab 2-83.

[121] Tab 2-84.

[122] Tab 2-85.

Gmerek regarding the letter's composition. A second email chain includes prior email messages circulated among a number of lobbyists and public relations consultants for the casino groups regarding a conference call, as well as a draft of this second industry letter that had been circulated to the conference call participants by Stewart. A third email chain includes a prior email message from attorney-lobbyist Gmerek summarizing the content of testimony presented at a public hearing before a state legislative committee. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Indeed, based on the context provided by our *in camera* review of all of these contested documents, the "industry letter" was prepared not on behalf of the three clients listed on Eckert's privilege log (Parx, Mohegan, and Cordish), but a larger group that also included non-client casino groups, which shared a common *commercial* or *business* interest in opposition to electronic skill

- 77 -

games and joint lobbying efforts directed at the state legislature, but not a common *legal* interest that would permit them to share confidential communications without waiver of any attorney-client privilege that might otherwise apply. *See BDO Siedman*, 492 F.3d at 815–16; *Processed Egg Prods.*, 278 F.R.D. at 118 & n.6. Accordingly, the objection to production of PRIV-00810 (Control No. 1401405), PRIV-00816 (Control No. 1401278), and PRIV-00817 (Control No. 1401350) on attorney-client privilege grounds is overruled.

PRIV-00830 (Control No. 1500644)[123] and PRIV-00832 (Control No. 1500638)[124] consist of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding an upcoming state legislative hearing on skill games. In these email messages, Stewart requested and Hittinger provided questions for friendly legislators to ask at the hearing.[125] The subject matter of these communications concerns

---

[123] Tab 2-86.

[124] Tab 2-87.

[125] We pause to underscore that these questions were expressly intended for disclosure to third party government officials, and thus any claim of confidentiality or privilege with respect to the questions themselves is untenable. *See supra* note 65. Indeed, a subsequent, revised version of these same questions, as they were ultimately communicated from Stewart to attorney-lobbyist Gmerek, was produced to POM in discovery. *See* Doc. 295-7 (ECKERT005188–ECKERT005190).

legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00830 (Control No. 1500644) and PRIV-00832 (Control No. 1500638) on attorney-client privilege grounds is overruled.

PRIV-00843 (Control No. 302368)[126] is an email message from Eckert attorney Stewart to Cordish executive Weinberg concerning an upcoming state senate committee hearing on skill games legislation, Senate Bill 1256. The message includes an invitation to join Stewart in dining with Senator Tommy Tomlinson and Parx executive Green the evening before the hearing, logistical information about the hearing itself, and an outline of casino industry speakers scheduled to appear at the hearing, including Weinberg and Green. Attached to the email message was a copy of Eckert attorney Hittinger's memorandum

---

[126] Tab 2-88.

JA139

summarizing the key provisions of Senate Bill 1256[127] and a one-page set of talking points in opposition to the bill. The subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice—and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00843 (Control No. 302368) on attorney-client privilege grounds is overruled.

PRIV-00881 (Control No. 1401459)[128] consists of an exchange of email messages between Eckert attorneys Stewart and Hittinger and non-lawyer lobbyist Joseph M. Uliana concerning a list of key legislative issues for the casino industry group, prepared in connection with upcoming lobbyist meetings with state legislators. The email chain also included prior email messages between Uliana, Stewart, Ballard lawyer King, attorney-lobbyist Gmerek, and attorney-lobbyist Alex Urrea

---

[127] See PRIV-00804 (Control No. 1001578), PRIV-00806 (Control No. 1001753), or PRIV-00807 (Control No. 1001756), discussed *supra*.

[128] Tab 2-90.

concerning the agenda for those meetings with state legislators. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00881 (Control No. 1401459) on attorney-client privilege grounds is overruled.

PRIV-00900 (Control No. 303143)[129] is a chain of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding drafting prepared testimony for an upcoming state legislative committee hearing. Attached is a copy of draft testimony prepared by Stewart on behalf of Eckert client Mohegan, to be presented at the public hearing by Mohegan executive Carlucci. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re*

---

[129] Tab 2-91.

*Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00900 (Control No. 303143) on attorney-client privilege grounds is overruled.

PRIV-00902 (Control No. 1500490)[130] is a chain of email messages exchanged between Eckert attorneys Stewart and Hittinger regarding a casino industry lobbyist conference call, in which Stewart asked Hittinger to cover the call because he had another commitment, and Hittinger reported on the "relatively uneventful" call. The email chain includes prior email message circulated among a larger group of casino lobbyists, including non-lawyer lobbyists Uliana and Shelly, with call-in information for the conference call. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these

---

[130] Tab 2-92.

JA142

communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00902 (Control No. 1500490) on attorney-client privilege grounds is overruled.

PRIV-00911 (Control No. 302166),[131] PRIV-00912 (Control No. 303907),[132] and PRIV-00913 (Control No. 1500840)[133] are email messages exchanged between Eckert attorneys Stewart and Hittinger regarding time-sensitive efforts to conduct fact research on the status of skill games legislation in Virginia and other states in connection with preparing a friendly Pennsylvania state legislator, Senator Tommy Tomlinson, to respond to anticipated remarks by a pro-skill games legislator, Senator Gene Yaw. The email chain included prior email messages exchanged between Stewart and attorney-lobbyists Gmerek and Schafer regarding the same issue. One of the email messages included a copy of a draft response to Yaw prepared for Tomlinson by Schafer. The subject matter of these communications concerns legislative, political, or policy advice

---

[131] Tab 2-93.
[132] Tab 2-94.
[133] Tab 2-95.

only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information.[134] *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00911 (Control No. 302166), PRIV-00912 (Control No. 303907), and PRIV-00913 (Control No. 1500840) on attorney-client privilege grounds is overruled.

PRIV-00919 (Control No. 302985)[135] consists of email messages exchanged between Eckert attorneys Stewart and Hittinger and attorney-lobbyist Gmerek regarding the preparation of proposed "poison pill" legislative amendments for unspecified friendly legislators to use in a floor fight on skill games legislation. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client

---

[134] We note that this draft response was expressly prepared for a third party government official, Senator Tomlinson, with the expectation that Tomlinson would further convey these remarks to other, adverse legislators, and thus any claim of confidentiality or privilege with respect to the draft response is untenable. *See supra* note 65.

[135] Tab 2-96.

privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00919 (Control No. 302985) on attorney-client privilege grounds is overruled.

PRIV-00935 (Control No. 2000675),[136] PRIV-00938 (Control No. 1500868),[137] and PRIV-00942 (Control No. 1800563)[138] consist of email messages exchanged between Eckert attorneys Stewart, Hittinger, Yocum, Marsilio, and Sarah C. Stoner regarding an attempt by Hittinger to locate a "one-pager" for Stewart on the legality of skill games under the Pennsylvania criminal code, Title 18. Ultimately, Hittinger forwarded a "two-pager"—a draft letter on that issue from the previous year addressed to the chairman of the Pennsylvania gaming control board—to Stewart. The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus

---

[136] Tab 2-97.
[137] Tab 2-98.
[138] Tab 2-99.

JA145

they are not protected by attorney-client privilege. *See Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Hickman*, 329 U.S. at 508; *SmithKline Beecham*, 232 F.R.D. at 481–82; *Martin*, 136 F.R.D. at 426–27; *Shore Acres Nursing Home*, 1992 WL 57916, at \*5; *Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00935 (Control No. 2000675), PRIV-00938 (Control No. 1500868), and PRIV-00942 (Control No. 1800563) on attorney-client privilege grounds is overruled.

PRIV-00949 (Control No. 302621)[139] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania.[140] The subject matter of these

---

[139] Tab 1-7.

[140] We note that the most recent email message in this email string makes reference to POM's Commonwealth Court litigation. But Eckert has expressly omitted federal work-product protection as a basis for its objection to disclosure of these communications. In any event, the substantive content of this email chain does not reveal the mental impressions of counsel with respect to the Commonwealth Court litigation, but merely speculates on the implications that a
*(continued on next page)*

- 86 -

communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00949 (Control No. 302621) on attorney-client privilege grounds is overruled.

PRIV-000950 (Control No. 1500447)[141] consists of an email message from Eckert attorney Stewart to Eckert attorney Hittinger instructing the latter to conduct factual research as outlined in an attached prior email message from Gmerek to Stewart, Parx executive Bob Green, and non-lawyer public relations consultant Pete Shelly, which summarized the content of a public meeting by a state legislative committee and posed

---

Commonwealth Court victory for the casino groups would have on their broader legislative and business strategy vis-à-vis POM and other skill games proponents.

[141] Tab 2-102.

- 87 -

several questions for general factual research.[142] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-000950 (Control No. 1500447) on attorney-client privilege grounds is overruled.

PRIV-00958 (Control No. 302301)[143] is an email message from Eckert attorney Stewart to Parx executives Green and Eric Hausler and attorney-lobbyist Gmerek forwarding an attached outline of potential gaming legislation prepared by Stewart based on a prior discussion about legislative strategy involving Stewart, Green, and possibly Hausler and Gmerek. PRIV-00960 (Control No. 302303)[144] is an email message from

---

[142] By "general," we mean fact research regarding skill games and video gaming terminals at a statewide or industry-wide level. There is nothing to suggest any application whatsoever of the hearing testimony or Gmerek's questions to any potentially confidential client information.

[143] Tab 2-103.

[144] Tab 2-104.

Eckert attorney Stewart forwarding the same legislative strategy outline to Eckert attorneys Hittinger, Stoner, Marsilio, and Yocum. Although the attached legislative strategy outline was prepared with some client input and conveyed in confidence, the subject matter of this communication concerns legislative, political, or policy advice only—not *legal* advice— and thus it is not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney.[145] *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00958 (Control No. 302301) and PRIV-00960 (Control No. 302303) on attorney-client privilege grounds is overruled.

PRIV-00971 (Control No. 1700641)[146] is an exchange of email messages between Eckert attorney Stewart and Cordish executives Weinberg and David Cordish discussing legislative strategy with respect to video lottery terminals or video gaming terminals. The subject matter

---

[145] Based on our *in camera* review of this document, the "highly confidential" designation applied to this outline by Stewart appears to reflect his sensitivity to disclosure of the strategy itself, not any underlying confidential facts communicated by the client.

[146] Tab 2-105.

- 89 -

of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00971 (Control No. 1700641) on attorney-client privilege grounds is overruled.

PRIV-00987 (Control No. 1400275)[147] is an exchange of email messages between Eckert attorneys Stewart and Hittinger about attendance at an upcoming press conference by two state legislators regarding skill games legislation. This email chain includes a prior email message from attorney-lobbyist Gmerek to Stewart and ten Mohegan executives or in-house attorneys, advising them of the press conference. PRIV-00988 (Control No. 1103273)[148] is an email message from Hittinger to Stewart summarizing the content of public statements made by the legislators and other speakers at the press conference. The subject matter

---

[147] Tab 2-107.
[148] Tab 2-108.

JA150

of these communications concerns legislative, political, or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-00987 (Control No. 1400275) and PRIV-00988 (Control No. 1103273) on attorney-client privilege grounds is overruled.

PRIV-01008 (Control No. 301569)[149] is an email message from Eckert attorney Stewart to Eckert attorney Hittinger discussing a recent state legislative committee hearing on video gaming terminals and skill games and asking Hittinger to prepare a draft letter to the committee offering additional information or arguments to supplement or counter the responses given by witnesses at the hearing.[150] The email chain also included a non-privileged prior email message from attorney-lobbyist

---

[149] Tab 2-112.

[150] The hearing included testimony by a panel of state police officials, a panel of video gaming termina industry representatives, and a panel of skill game industry representatives.

JA151

Gmerek to Stewart, forwarding a summary of the content of the public hearing—i.e., a summary of key questions asked by legislators and responses by the witnesses. This email chain was produced to POM in discovery with the most recent email message from Stewart to Hittinger redacted; the Gmerek transmittal message was produced without redaction, but the attached summary of questions and answers was withheld from production.[151] The subject matter of these communications concerns legislative, political, or policy advice only—not *legal* advice— and thus they are not protected by attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426. Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273. Accordingly, the objection to production of PRIV-01008 (Control No. 301569) on attorney-client privilege grounds is overruled.

### E. Litigation Report

PRIV-00925 (Control No. 1900567)[152] is an exchange of email

---

[151] ECKERT018746.

[152] Tab 1-6.

messages between Eckert attorneys Stewart and Yocum and Parx in-house counsel Robert Mulhern Jr. These email messages concern a request by Parx for a description of pending and recently closed litigation matters and judgments for use in connection with an application by Parx for a Virginia gaming license, which required disclosure of this information to state regulators. Attached to Yocum's response to Mulhern's request is a memorandum describing all litigation matters within the preceding five years in which Eckert represented Parx or was otherwise aware of the litigation, including the two POM Commonwealth Court cases. Based on our *in camera* review of this attachment, the memorandum includes only non-confidential factual background and procedural information. The email messages and attached memorandum do not include any confidential client information; indeed, it is clear that the information was conveyed with the intent that it be disclosed to state regulators in connection with the client's application for a gaming license. *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.

Eckert has also asserted federal work-product protection. The memorandum describes numerous pending litigation matters, but it does not convey any mental impressions, conclusions, opinions, or legal

- 93 -

JA153

theories of an attorney, limiting itself to a purely factual description of each litigation matter and its procedural status. Based on our *in camera* review of the memorandum, however, it appears that this factual summary was originally prepared as part of the firm's regular report on pending litigation handled by Eckert, and then incorporated into this memorandum in response to a specific request by the client for this same information. Under these circumstances, we find this information is properly withheld from disclosure under the federal work-product doctrine, as the primary motivating purpose of the initial creation of this factual compilation was to aid in the management of ongoing litigation matters. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990). Disclosure of this factual information to Virginia gaming regulators does not appear to constitute waiver of work-product protection, as there is nothing before us to suggest that the application itself is publicly available or otherwise accessible to an adversary. *See Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. Finally, there is nothing in the record before us to suggest that POM has a substantial need for these materials and cannot, without undue hardship, obtain their substantial equivalent by other means. *See* Fed.

- 94 -

R. Civ. P. 26(b)(3).

Thus, the objection to production of PRIV-00925 (Control No. 1900567) on attorney-client privilege grounds is overruled, but the objection to production of this document on federal work-product protection grounds is sustained. This document shall not be produced.

## IV.  CONCLUSION

For the foregoing reasons, the objections to production by Eckert will be granted in part and sustained in part. Of the 120 documents for which Eckert's objections to production have been challenged by POM, one shall be withheld from production altogether, three shall be produced with redactions as described below, and 116 shall be produced *without* redactions.

With respect to PRIV-00105 (Control No. 1900236),[153] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by William J. Downey at 11:01 a.m. on June 2, 2019, redacted.

---

[153] Tab 2-27.

JA155

With respect to PRIV-00366 (Control No. 304699),[154] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is overruled in part and sustained in part. This document shall be produced, but with the first three paragraphs (following the salutation "Guys,") redacted.

With respect to PRIV-00614 (Control No. 800947),[155] the objection to production on attorney-client privilege grounds is overruled in part and sustained in part. This document shall be produced, but with the email sent by Mark S. Stewart at 12:56 p.m. on February 9, 2020, redacted.

With respect to PRIV-00925 (Control No. 1900567),[156] the objection to production on attorney-client privilege grounds is overruled, but the objection to production on federal work-product protection grounds is sustained. This document shall *not* be produced.

With respect to all other documents challenged by POM and submitted for *in camera* review, the objections to production on attorney-

---

[154] Tab 2-45.
[155] Tab 2-52.
[156] Tab 1-6.

client privilege and federal or state work-product protection grounds are overruled. These documents shall be produced *without* redaction.

Absent a timely appeal of this decision, Eckert shall produce the documents described in the preceding paragraphs to POM, in the manner described, within 21 days after entry of the accompanying order.

The parties shall each bear its own costs in connection with this discovery dispute.

An appropriate order follows.

Dated: December 1, 2023
                            *s/Joseph F. Saporito, Jr.*
                            JOSEPH F. SAPORITO, JR.
                            United States Magistrate Judge

JA157

# CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I caused a copy of the foregoing to be served via ECF on the following counsel of record:

Robert S. Tintner, Esq.
Peter C. Buckley, Esq.
Fox Rothschild LLP
2001 Market St., Suite 1700
Philadelphia, PA 19103
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
*Counsel for Mark S. Stewart, Kevin M. Skjoldal, and Eckert, Seamans, Cherin & Mellot, LLC*

George W. Westervelt, Jr., Esq.
706 Monroe St
P.O. Box 549
Stroudsburg, PA 18360-0549
geowwest@ptd.net
*Counsel for Pace-O-Matic, Inc.*

Omobolanle A. Adeniran, Esq.
Michael Nolan, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
bola.adeniran@huschblackwell.com
michael.nolan@huschblackwell.com
*Counsel for Pace-O-Matic, Inc.*

Michael Martinich-Sauter, Esq.
James Otis Law Group LLC
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
Michael.martinich-sauter@james-otis.com
*Counsel for Pace-O-Matic, Inc.*

Jeffrey Jensen
TORRIDON LAW PLLC
801 17th Street NW, Suite 1100
Washington, DC 20006
(202) 249-6900 (Telephone)
jjensen@torridonlaw.com

/s George A. Bibikos
George A. Bibikos