# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

CASE NO. 24-1984

---

## PACE-O-MATIC, INC.,

*Plaintiff-Appellee*,

v.

## ECKERT SEAMANS CHERIN & MELLOTT, LLC, ET AL.,

*Defendants*,

and

## GREENWOOD GAMING & ENTERTAINMENT, INC.,

*Appellant*.

---

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:20-cv-00292

---

## BRIEF OF APPELLEE PACE-O-MATIC, INC.

---

**JAMES OTIS LAW GROUP LLC**
Michael Martinich-Sauter
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-sauter@james-otis.com

*Additional counsel listed in signature block*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES........................................................................iii

JURISDICTIONAL STATEMENT..............................................................1

ISSUES PRESENTED FOR REVIEW.........................................................1

RELATED CASES......................................................................................2

STATEMENT OF THE CASE.....................................................................2

I.  The Underlying Litigation....................................................................2

II. The Instant Discovery Dispute.............................................................6

SUMMARY OF ARGUMENT....................................................................9

ARGUMENT............................................................................................12

I.  Parx Has Failed to Establish Appellate Jurisdiction..........................12

A. The *Perlman* doctrine does not apply..............................................15

  1.  The purportedly privileged documents are not controlled by a disinterested third party............................................................................15

  2.  Parx has adequate alternative avenues for appellate review of its privilege claims................................................................................19

B.  The collateral-order doctrine does not apply.................................21

  1.  *Mohawk* directly forecloses the application of the collateral-order doctrine to this appeal..................................................................22

  2.  *Mohawk*'s reasoning applies with equal force to an appeal brought by a third-party privilege holder...........................................................25

C. Eckert did not file a notice of appeal and thus is not a party to this appeal......28

II. Parx Has Not Demonstrated That the Documents at Issue Were Made Predominantly for the Purpose of Providing Legal Advice................................29

    A. The District Judge and the Magistrate Judge correctly concluded that "legislative advice" does not automatically constitute legal advice protected by the attorney-client privilege................................................................31

    B. The District Court correctly found that the Bonner Declaration did not satisfy Parx's burden to establish the applicability of the attorney-client privilege.....40

    C. The District Court did not err with respect to redaction...................................46

    D. The predominant-purpose test does not affect the outcome of this appeal.......49

III. Parx Fails to Challenge the Finding Below That Nearly All of the Documents at Issue Do Not Disclose Information Conveyed in Confidence Between an Attorney and a Client, and This Uncontested Finding Provides an Independent Basis to Affirm the Lower Court Orders as to Those Documents........................50

CONCLUSION...............................................................................................................52

CERTIFICATE OF COMPLIANCE...............................................................................54

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*,
No. 3:07-cv-929, 2013 WL 6044342 (D. Conn. Nov. 14, 2013)..........................39

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,
920 F.2d 1127 (3d Cir. 1990)..................................................................................14

*Atlas Biologicals, Inc. v. Kutrubes*,
50 F.4th 1307 (10th Cir. 2022) ...............................................................................14

*Behrens v. Pelletier*,
516 U.S. 299 (1996) ................................................................................................23

*BouSamra v. Excela Health*,
210 A.3d 967 (Pa. 2019).........................................................................................18

*Burkert v. Equitable Life Assurance Soc'y*,
287 F.3d 293 (3d Cir. 2002)....................................................................................18

*Carbis Walker, LLP v. Hill, Barth & King, LLC*,
930 A.2d 573 (Pa. Super. 2007)..............................................................................48

*Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*,
301 A.3d 470 (Pa. Super. 2023)................................................................. 30, 31, 51

*Continental Casualty Co. v. Dominick D'Andrea, Inc.*,
150 F.3d 245 (3d Cir. 1998)............................................................................. 46, 47

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*,
19 F.4th 236 (3d Cir. 2021).....................................................................................12

*Cunningham v. Hamilton Cnty.*,
527 U.S. 198 (1999) ................................................................................................24

*Delalla v. Hanover Ins.*,
660 F.3d 180 (3d Cir. 2011).....................................................................................13

**Cases (Continued)**                                              **Page(s)**

*Diamond v. Charles*,
   476 U.S. 54 (1986) ..............................................................................28

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
   511 U.S. 863 (1994).............................................................................22

*Diversified Indus., Inc. v. Meredith*,
   572 F.2d 596 (8th Cir. 1977) (en banc) ................................................32

*Doe v. College of N.J.*,
   997 F.3d 489 (3d Cir. 2021)..................................................................12

*Doe v. Schuylkill Cnty. Courthouse*,
   343 F.R.D. 289 (M.D. Pa. 2023) ...........................................................43

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
   442 F.3d 812 (3d Cir. 2006)..................................................................44

*Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*,
   816 F.3d 1319 (11th Cir. 2016)..............................................................26

*Ellis v. Blum*,
   643 F.2d 68 (2d Cir. 1981)....................................................................14

*Erie Telecommunications, Inc. v. City of Erie*,
   853 F.2d 1084 (3d Cir. 1988).................................................................52

*Gagliardi v. Kratzenberg*,
   188 F. App'x 86 (3d Cir. 2006)..............................................................33

*Gillard v. AIG Ins. Co.*,
   15 A.3d 44 (Pa. 2011) .................................................................. 30, 31, 32

*Glenmede Tr. Co. v. Thompson*,
   56 F.3d 476 (3d Cir. 1995).....................................................................13

*Haines v. Liggett Grp. Inc.*,
   975 F.2d 81 (3d Cir. 1992)............................................................... 20, 44

**Cases (Continued)** **Page(s)**

*Harrington v. Freedom of Info. Comm'n*,
144 A.3d 405 (Conn. 2016) ........................................................ 37, 38

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023) ..............................................................47

*In re Abbot Labs.*,
96 F.4th 371 (3d Cir. 2024) ...................................................... 14, 15

*In re Chevron Corp.*,
749 F. Supp. 2d 141 (S.D.N.Y. 2010) ...............................................34

*In re Cnty. of Erie*,
473 F.3d 413 (2d Cir. 2007) ............................................ 31, 32, 33, 49

*In re Estate of McAleer*,
248 A.3d 416 (Pa. 2021) ........................................................... 34, 35

*In re Flat Glass Antitrust Litig.*,
288 F.3d 83 (3d Cir. 2002) ...............................................................16

*In re Grand Jury (ABC Corp.)*,
705 F.3d 133 (3d Cir. 2012) .................................................... *passim*

*In re Grand Jury Subpoena (Newparent, Inc.)*,
274 F.3d 563 (1st Cir. 2001) .................................................... 26, 45

*In re Grand Jury Subpoena Dated June 5, 1985*,
825 F.2d 231 (9th Cir. 1987) ................................................... 16, 17

*In re Grand Jury Subpoena*,
190 F.3d 375 (5th Cir. 1999) ............................................................16

*In re Grand Jury Subpoena*,
204 F.3d 516 (4th Cir. 2000) ............................................................32

*In re Grand Jury Subpoena*,
745 F.3d 681 (3d Cir. 2014) .............................................................18

**Cases (Continued)** **Page(s)**

*In re Grand Jury Subpoenas*,
974 F.3d 842 (8th Cir. 2020)...................................................................19

*In re Lindsey*,
158 F.3d 1263 (D.C. Cir. 1998)...............................................................33

*In re Naranjo*,
768 F.3d 332 (4th Cir. 2014)................................................... 16, 17, 18

*In re Sealed Case*,
655 F.2d 1298 (D.C. Cir. 1981) ............................................... 19, 20, 21

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007)....................................................................35

*In re Three Pa. Skill Amusement Devices*,
306 A.3d 432 (Pa. Cmwlth. 2023)...........................................................3

*In re Vargas*,
723 F.2d 1461 (10th Cir. 1983)...............................................................19

*Kars 4 Kids Inc. v. Am. Can!*,
8 F.4th 209 (3d Cir. 2021).......................................................................47

*LabMD Inc. v. Boback*,
47 F.4th 164 (3d Cir. 2022)......................................................................52

*Levy v. Senate of Pa.*,
65 A.3d 361 (Pa. 2013)...................................................................29, 31

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ...................................................................... *passim*

*Montgomery Cnty. v. MicroVote Corp.*,
175 F.3d 296 (3d Cir. 1999)....................................................................29

*Mullin v. Balicki*,
875 F.3d 140 (3d Cir. 2017).....................................................................51

**Cases (Continued)** **Page(s)**

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   73 F.4th 157 (3d Cir. 2023)..................................................................13

*Perlman v. United States*,
   247 U.S. 7 (1918) .................................................................................15

*Robinson v. Texas Auto. Dealers Ass'n*,
   214 F.R.D. 432 (E.D. Tex. 2003).........................................................39

*Rosner v. United States*,
   958 F.3d 163 (2d Cir. 2020).................................................................20

*Saint-Jean v. Palisades Interstate Park Comm'n*,
   49 F.4th 830 (3d Cir. 2022)..................................................................21

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987) .............................................................................27

*Swint v. Chambers Cnty. Comm'n*,
   514 U.S. 35 (1995) ...............................................................................28

*Tornay v. United States*,
   840 F.2d 1424 (9th Cir. 1988)..............................................................50

*Township of Neshannock v. Kirila Contractors, Inc.*,
   181 A.3d 467 (Pa. Cmwlth. 2018)................................................ 40, 42

*United States v. Brown*,
   809 F.3d 371 (7th Cir. 2016)................................................................49

*United States v. Dupree*,
   617 F.3d 724 (3d Cir. 2010).................................................................47

*United States v. Franz*,
   772 F.3d 134 (3d Cir. 2014).................................................................46

*United States v. Frederick*,
   182 F.3d 496 (7th Cir. 1999)........................................................ 32, 34

**Cases (Continued)**                                                      **Page(s)**

*United States v. Gillette*,
   738 F.3d 63 (3d Cir. 2013)..................................................................49

*United States v. Nocito*,
   64 F.4th 76 (3d Cir. 2023)..................................................................24

*United States v. Rockwell Int'l*,
   897 F.2d 1255 (3d Cir. 1990)..............................................................43

*United States v. Ryan*,
   402 U.S. 530 (1971) ...........................................................................19

*United States v. Scarfo*,
   41 F.4th 136 (3d Cir. 2022)................................................................29

*United States v. Wampler*,
   624 F.3d 1330 (10th Cir. 2010)..........................................................22

*United Steelworkers of Am. v. N.J. Zinc Co.*,
   828 F.2d 1001 (3d Cir. 1987)..............................................................51

*Valero Energy Corp. v. United States*,
   569 F.3d 626 (7th Cir. 2009)........................................................ 42, 43

*Waymo LLC v. Uber Techs., Inc.*,
   870 F.3d 1350 (Fed. Cir. 2017)...........................................................20

*Webb v. Dep't of Justice*,
   117 F.4th 560 (3d Cir. 2024)..............................................................29

*Weissman v. Fruchtman*,
   No. 83-Civ-8958, 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986).............39

*Westinghouse Elec. Corp. v. Republic of the Philippines*,
   951 F.2d 1414 (3d Cir. 1991)........................................................ 34, 35

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*,
   580 F.2d 1311 (7th Cir. 1978).............................................................38

**Cases (Continued)**                                                      **Page(s)**

*Will v. Hallock*,
  546 U.S. 345 (2006) ...................................................................................21


**Statutes**                                                               **Page(s)**

28 U.S.C. § 1291 ........................................................................................12

28 U.S.C. § 1292 ................................................................................. 20, 27

28 U.S.C. § 1651 ..........................................................................................1

28 U.S.C. § 2072 ........................................................................................27


**Other Authorities**                                                      **Page(s)**

Pa. Dep't of State, *Lobbying Disclosure Registration Search* ................................33

Securities & Exchange Comm'n, *Commission Guidance Regarding Disclosure Related to Climate Change*, S.E.C. Release No. 9106, 2010 WL 2199526 (Feb. 2, 2010) ...................................................................................36


**Rules**                                                                  **Page(s)**

Pa. R. Professional Conduct 1.7............................................................17


**Treatises**                                                              **Page(s)**

Paul R. Rice, 1 Attorney-Client Privilege in the United States (Dec. 2024 Update) ...................................................................... 29, 35, 51

## JURISDICTIONAL STATEMENT

The District Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because the Plaintiff is not a citizen of the same State as any Defendant and the amount in controversy exceeds $75,000. *See generally* Joint Appendix 396-430 (operative complaint).

For the reasons stated in Part I of the Argument, the Court lacks appellate jurisdiction over this appeal. However, the Court has discretion to construe this improper appeal as a petition for a writ of mandamus, over which the Court could exercise jurisdiction under the All Writs Act, 28 U.S.C. § 1651.

## ISSUES PRESENTED FOR REVIEW

1.      Whether "legislative advice" necessarily constitutes legal advice protected by the attorney-client privilege? *See* Argument, Part II.A.

2.      Whether Parx established the applicability of the attorney-client privilege based solely on a declaration that was not presented to the Magistrate Judge, did not discuss the particular documents at issue, and conflicted with other evidence in the record, including the allegedly privileged documents themselves? *See* Argument, Part II.B.

3.      Whether the District Court erred by not ordering unspecified additional redactions? *See* Argument, Part II.C.

1

4. Whether the Court should affirm because Parx does not challenge an independent basis for the Magistrate Judge's rejection of the attorney-client privilege that applies to all but five documents at issue? *See* Argument, Part III.

## RELATED CASES

The Court previously considered a different consolidated interlocutory appeal arising out of the same District Court case. *See* Case Nos. 22-2445, 22-2446, 22-2902, 22-2958, 22-2959.

## STATEMENT OF THE CASE

### I. The Underlying Litigation

This interlocutory appeal arises from a lawsuit filed by Pace-O-Matic, Inc. ("POM") against the law firm that previously represented POM, Eckert Seamans Cherin & Mellott LLC ("Eckert"), as well as two Eckert partners. *See generally* Joint Appendix ("JA") 396-430 (operative complaint); JA063-070 (Magistrate Judge's summary of the background). POM designs electronic skill games that are distributed in several states, including Pennsylvania. JA398 ¶ 1. In Pennsylvania, as in many jurisdictions, whether POM can operate turns on whether the outcome of POM's games depends predominantly on skill or predominantly on chance. *See, e.g.*, *Commonwealth v. Dent*, 992 A.2d 190, 192-93 (Pa. Super. 2010). If its games are classified as depending predominantly on skill, then POM can operate freely in a jurisdiction. *Cf. id.* But if classified as depending predominantly on chance, POM's

2

games would constitute illegal gambling, and POM would effectively be foreclosed from operating in the jurisdiction. *Cf. id.* Proper regulatory classification thus presents an existential question for POM. In 2014, a Pennsylvania court concluded that the outcome of POM's games depends predominantly on skill and thus that those games are legal under Pennsylvania law. D.Ct. #13-1.[1] Every subsequent case to consider the legality of POM's games has similarly found them to be lawful under Pennsylvania law. *See, e.g.*, *In re Three Pa. Skill Amusement Devices*, 306 A.3d 432 (Pa. Cmwlth. 2023), *review granted*.

In 2016, POM hired Eckert to provide legal services in connection with POM's entry into the Virginia market. JA400 ¶¶ 7-8; JA403 ¶¶ 24-25. Most notably, POM retained Eckert to persuade regulators that POM's games constitute lawful games of skill rather than illegal gambling, and to defend the legality of POM's games if challenged. *See id.*[2] Among other things, Eckert secured a formal opinion letter from Virgina regulators that POM's games are "predominantly a game of skill"

---

[1] Citations with the format "D.Ct. #" are citations of the docket in the underlying district-court litigation *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*, No. 1:20-cv-292-JPW (M.D. Pa.). For example, "D.Ct. #13-1" refers to docket entry 13-1 in the District Court. Unless otherwise noted, citations of district-court documents refer to the ECF page numbers inserted on the top of the document rather than a document's internal pagination.

[2] Eckert's representation of POM also included a broader range of services, including transactional work, legal work relating to the marketing of POM skill games, zoning, commercial litigation, and intellectual property disputes. JA403, ¶ 24; D.Ct. # 13-2 at 6 ¶ 18.

and thus do not constitute gambling. D.Ct. #13-2 at 70; *id.* at 5, ¶ 17. That opinion letter relies heavily on the fact that POM's games had "been found to be a game of skill by the Court of Common Pleas of Beaver County, Pennsylvania." *Id.* at 70. Eckert also initiated litigation on behalf of POM against a local official, arguing that the "outcome [of POM games] depended predominantly on skill rather than chance." D.Ct. #13-2 at 20; *see also id.* at 5, ¶ 16.

Unbeknownst to POM, from the very beginning of Eckert's representation, senior partners at Eckert were representing another client—Parx Casino—in a wide-ranging plan to expel POM from the Pennsylvania market. JA404-415, ¶¶ 27-84. Contemporaneous emails demonstrate that Eckert immediately recognized that its representation of Parx created a conflict of interest. JA400-402, ¶¶ 9-19. Just a month into Eckert's representation of POM, the head of Eckert's gaming practice— individual Defendant Mark Stewart—noted in an internal email that his work for Parx would be "adverse [to POM] in VA and PA." JA401, ¶ 10. He also indicated that his work for Parx would involve "adverse legislative action and potential litigation" against POM. JA400-401, ¶ 9. In another internal email, he explained that Eckert's work for Parx would involve "actively opposing [POM] on legal and legislative fronts." JA401, ¶ 12. And one of his colleagues noted that Eckert's work for Parx would involve arguing that POM's games constitute unlawful "gambling device[s]." *Id.* ¶ 13. Despite recognizing these glaring conflicts, Eckert never

advised POM of them or sought to obtain POM's consent to the conflicts. JA402, ¶ 17. And although Eckert never notified POM of its simultaneous representation of Parx, contemporaneous internal emails uncovered in this case indicate that Eckert *did* notify Parx. *Id.* ¶ 18.

On behalf of Parx, Eckert implemented a multi-pronged campaign to attack POM and drive it from Pennsylvania.[3] Most relevant to this appeal, Eckert implemented wide-ranging lobbying efforts at both the state and local levels seeking the enactment of legislation that would outlaw POM's games. JA405, ¶¶ 32-34; JA413, ¶ 78; JA418, ¶¶ 98-99. Eckert also sought to persuade law-enforcement and regulatory agencies to go after POM and its games—including through criminal prosecutions—on the baseless theory that POM's games constituted illegal games of chance. JA405-406, ¶¶ 36-42; *see also* D.Ct. # 448 & exhibits thereto (detailing contacts between Eckert and the Pennsylvania State Police). Eckert undertook this effort to obtain a criminal prosecution of its own client, POM, at the behest of Parx. JA406, ¶¶ 40-41. Finally, Eckert litigated directly against POM—though it did so surreptitiously, declining to enter an appearance in the case so that POM would not know of Eckert's involvement. *See* JA410-412, ¶¶ 60-75.

---

[3] Eckert also performed work directly adverse to POM's interest on behalf of casino clients other than Parx, including Mohegan; Cordish Companies; and Caesars Entertainment. JA414, ¶¶ 80-81.

Eventually, in the fall of 2019, POM learned of Eckert's conflicted representation and demanded that Eckert cease representing clients in matters adverse to POM. JA416, ¶ 91. Eckert refused and, instead, dropped POM as a client. *Id.* ¶¶ 91-92. POM then filed this litigation, bringing claims against Eckert for breach of fiduciary duty and fraud.

## II.   The Instant Discovery Dispute

As noted above, one course of misconduct by Eckert at issue in this litigation involved lobbying and legislative efforts to ban POM's skill games in Pennsylvania. *See, e.g.*, JA396-398; JA401, ¶ 12; JA404, ¶¶ 29-31; JA405, ¶¶ 32-35; JA413, ¶¶ 77-78; JA418, ¶¶ 98-99; JA422, ¶ (5); JA423, ¶ 116. POM served written discovery requests on Eckert seeking evidence of Eckert's anti-POM activities, including this lobbying and legislative campaign. Eckert withheld more than one thousand responsive communications based on assertions of the attorney-client privilege and/or the work-product doctrine. JA277-392.

In May 2023, POM moved to compel the production of 120 documents withheld by Eckert based on the attorney-client privilege. JA466-473.[4] POM

---

[4] Parx states that POM "initiated [this] discovery dispute—under seal and obscured from public view on ECF," implying that POM filed its motion to compel under seal for sinister reasons. Parx Br. 2. To be clear, POM filed its motion under seal because the motion and its exhibits contained information that *Eckert* had designated as confidential under the protective order. In particular, Eckert had designated its privilege log as confidential, and the motion to compel extensively discussed the contents of the privilege log. *See* JA466-473. POM had no desire to

contended that these documents were not privileged, because they were not made for the purpose of providing legal advice but instead were made for non-legal purposes like lobbying or public-relations strategy. *Id.* POM submitted a number of evidentiary exhibits to substantiate its arguments. *See* JA277-392, JA474-513; *see also* D.Ct. #295, Exhibits 4, 7, 8, 9. For some of the communications, the apparent lobbying or political nature of the communication is clear from the privilege log itself. For example, the subject line of one email is "Reminder: Casino Lobbyist Meeting Tomorrow." JA356. For other documents, POM was able to submit other documents obtained in discovery showing the context and apparent content of the communications at issue. *See, e.g.*, JA474-513; D.Ct. #295, Exhibits 4, 7, 8, 9.

For most of the documents at issue, Parx asserted a purported attorney-client privilege belonging to Parx. *See* JA466-473; JA277-392. However, some of the communications were withheld based on a purported privilege belonging to other casinos, including Cordish and Mohegan Sun Pocono. *See id.*; *see also infra* at n.5. Eckert filed an opposition to POM's motion. JA514-525. Parx did not file any response to the motion.

The District Court referred the discovery dispute to then-Magistrate Judge Joseph Saporito. JA465. The Magistrate Judge conducted a detailed, document-by-

---

maintain these materials under seal, and in fact POM specifically challenged Eckert's designation of the privilege log as confidential. JA471-473; *see also* D.Ct. #311 (order agreeing with POM and de-designating the privilege log).

7

document *in camera* review of the 120 documents addressed by POM's motion to compel. *See generally* JA061-157. On December 1, 2023, the Magistrate Judge ordered that 116 of the documents at issue should be produced in their entirety; three of the documents should be produced with specific redactions; and one of the documents should be withheld entirely. JA058-060. The Magistrate Judge issued a 97-page Memorandum detailing his analysis regarding each of the documents at issue, including a document-by-document evaluation of whether each communication was made predominantly for the purpose of legal advice. JA061-157. With regard to all of the documents that he ordered to be produced, the Magistrate Judge concluded that those documents did not involve legal advice but instead were made predominantly for non-legal legislative or political purposes. *See generally id.* With regard to the overwhelming majority of the documents at issue, the Magistrate Judge also identified a second, independent basis for rejecting the privilege: the documents did not contain information communicated in confidence between an attorney and a client. *See generally id.*

Parx and Eckert both sought reconsideration of the Magistrate Judge's order by the District Judge. JA158-160; JA166-168. On April 29, 2024, the District Judge issued an order that upheld the Magistrate Judge's in all aspects except as to certain passages in four documents. JA031-032; JA006-029. In particular, the District Judge

ordered that additional portions of four documents should be redacted. *Id.* However, the District Judge otherwise upheld the Magistrate Judge's order. *Id.*

On May 13, 2024, Parx filed a motion for reconsideration or, in the alternative, certification for immediate appeal under 28 U.S.C. § 1292(b). JA200-205. On July 3, 2024, the District Court denied Parx's motion. JA034-054. However, the District Court stayed enforcement of the discovery order pending the resolution of this appeal. D.Ct. #398.

## SUMMARY OF ARGUMENT

As an initial matter, the Court lacks jurisdiction over this appeal. *See* Part I. Parx could have pursued a writ of mandamus, the well-recognized mechanism for obtaining immediate appellate review of adverse privilege rulings. But Parx has instead sought to evade the stringent standard applicable to mandamus actions by invoking two narrow exceptions to the general rules of appellate jurisdiction: the *Perlman* doctrine and the collateral-order doctrine. Neither doctrine applies here.

The *Perlman* doctrine is inapplicable for two independent reasons. *See* Part I.A. First, the doctrine applies only if the documents are held by a "disinterested" custodian. Here, the documents are held by Eckert, which is not "disinterested" but instead has its own strong incentives to oppose production. *See* Part I.A.1. Second, *Perlman* does not apply, because Parx has adequate alternative means to obtain immediate appellate review of the lower court's privilege rulings. *See* Part I.A.2.

9

As for the collateral-order doctrine, Parx's argument is foreclosed by the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, which held that the collateral-order doctrine does not apply to "disclosure orders adverse to the attorney-client privilege." *See* Part I.B. Parx seeks to distinguish *Mohawk* on the ground that Parx is a third party, while the privilege holder in *Mohawk* was a party. However, this argument conflicts with *Mohawk*'s own characterization of its holding. *See* Part I.B.1. In addition, the Supreme Court's reasoning in *Mohawk* applies with equal force to an appeal brought by a third-party privilege holder like Parx. *See* Part I.B.2.

The Court does, however, have discretion to reach the merits by construing Parx's improper notice of appeal as a petition for writ of mandamus, subject to the stringent standard that governs writ petitions. And if the Court reaches the merits, it should affirm the lower court's orders. Parx's privilege argument rests on the novel theory that *all* "legislative advice" *necessarily* constitutes legal advice protected by the attorney-client privilege. That radical theory conflicts with the applicable case law and the policies underlying the privilege. *See* Part II.A. Instead, the District Judge and Magistrate Judge correctly concluded that a lawyer's advice in the legislative context is privileged only if that advice constitutes *legal* advice. Applying this correct legal standard, the Magistrate Judge conducted an exhaustive, document-by-document *in camera* review of the 120 documents at issue. After conducting that

10

review—and as detailed in a 97-page Memorandum—the Magistrate Judge concluded that the documents at issue in this appeal do not involve legal advice. The District Judge upheld those findings. Parx has presented no basis for setting aside the carefully considered findings of the Magistrate Judge and District Judge.

Parx also argues that a declaration—originally filed in connection with a wholly distinct discovery dispute—dictates that the documents at issue must be privileged. This contention lacks merit for several reasons. *See* Part II.B. The declaration does not even discuss the specific documents at issue, and it falls far short of demonstrating that any of those documents is privileged. Moreover, other evidence in the record—including the allegedly privileged documents themselves— conflicts with anything in the declaration that could plausibly be said to support Parx's position. Finally, the declaration was not submitted to the Magistrate Judge when he was considering this discovery dispute. This Court's precedent precludes setting aside a Magistrate Judge's order based on evidence that was not submitted to the Magistrate Judge.

Finally, Parx claims that the District Court erred by failing to "consider[] redaction" of privileged information. This argument fails for several reasons as well. *See* Part II.C. For one thing, Parx's characterization simply is not accurate: both the Magistrate Judge and the District Judge *did* order the redaction of passages that they found to be privileged. And they took this approach even though Parx had not asked

them to consider redaction. Because Parx did not raise the issue of redaction until its motion to reconsider, it has waived its ability to argue in favor of additional redactions on appeal. Moreover, Parx has failed to demonstrate that any portion of any document at issue is actually privileged—a necessary prerequisite to redaction. For the foregoing reasons, Parx's privilege arguments lack merit.

There is also an independent basis for affirming the lower court's orders as to all but five of the documents at issue. *See* Part III. Setting aside those five documents, the Magistrate Judge rejected privilege on two independent bases: (1) the documents do not involve legal advice; and (2) the documents do not disclose information conveyed in confidence between an attorney and a client. Parx has not challenged this second holding on appeal. Parx's failure to challenge this independent basis for rejecting the attorney-client privilege is fatal to its appeal.

## ARGUMENT

### I.    Parx Has Failed to Establish Appellate Jurisdiction.

***Standard of Review.*** The Court exercises *de novo* review of whether it possesses appellate jurisdiction. *Doe v. College of N.J.*, 997 F.3d 489, 493 n.3 (3d Cir. 2021).

"Generally, [the Court has] jurisdiction over only 'final decisions of the district courts of the United States.'" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 241 (3d Cir. 2021) (quoting 28 U.S.C. § 1291). "A 'final decision'

is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 174 (3d Cir. 2023) (quotation omitted). Discovery orders compelling the production of documents in a pending case—the sorts of rulings at issue in this appeal—do not fit this bill and thus ordinarily are not immediately appealable. *See In re Grand Jury (ABC Corp.)*, 705 F.3d 133, 142 (3d Cir. 2012).

The Court has long recognized an important safety valve to permit immediate appellate review of privilege issues: a petition for a writ of mandamus. *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 482 (3d Cir. 1995) ("[M]andamus is an appropriate means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other confidentiality interest."). Parx has not pursued the mandamus route, even as an alternative theory for appellate jurisdiction. Instead, Parx has invoked two narrow exceptions to the standard jurisdictional rules: the *Perlman* doctrine and the collateral-order doctrine. As described below, neither of these exceptions applies here.

Parx cannot use its baseless direct-appeal theories to evade the "stringent" standard applicable to mandamus petitions. *Delalla v. Hanover Ins.*, 660 F.3d 180, 183 n.2 (3d Cir. 2011). That is particularly true here. For one thing, before the District Court, Parx asserted that its privilege arguments presented "a case of first impression" based on issues "that the courts in this Circuit and the Pennsylvania

13

state courts have not squarely addressed." D.Ct. #388 at 25, 24. Parx's own characterization of the novelty of its arguments almost inherently defeats mandamus relief. *See In re Abbot Labs.*, 96 F.4th 371, 381 (3d Cir. 2024) ("Without binding authority to guide it, the District Court's conclusion that sham litigation triggers the crime-fraud exception was not a clear and indisputable abuse of discretion or error of law." (cleaned up)). In addition, Parx effectively seeks to second-guess the Magistrate Judge's factual findings, which were based on a careful document-by-document *in camera* review of the communications at issue and explained at length in a 97-page Memorandum. JA061-157. Such arguments do not justify mandamus relief. *See Ellis v. Blum*, 643 F.2d 68, 81 (2d Cir. 1981) (Friendly, J.) ("[E]ssentially factual disputes are not amenable to the mandamus remedy.").

As described below, Parx has not demonstrated direct appellate jurisdiction under either *Perlman* or the collateral-order doctrine. However, the Court has discretion to construe an improper notice of appeal as a petition for an extraordinary writ under the All Writs Act. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1133 (3d Cir. 1990). Although Parx has not asked the Court to do so here, the Court is not necessarily bound by Parx's framing of this jurisdictional issue, especially where the parties have fully briefed the merits issues and where this issue is likely to recur in this litigation absent review from this Court. *Cf. Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1323 (10th Cir. 2022). If the Court were

14

to construe this appeal as a mandamus proceeding, it should apply the stringent standard applicable to petitions for extraordinary writs. *See Abbot Labs.*, 96 F.4th at 379. For the reasons described in Parts II and III below, Parx cannot prevail on the merits under *any* standard, let alone the especially demanding standard applicable to extraordinary writs.

## A. The *Perlman* doctrine does not apply.

The *Perlman* doctrine derives from the Supreme Court's decision in *Perlman v. United States*, 247 U.S. 7 (1918). The *Perlman* doctrine permits a privilege holder to pursue an interlocutory appeal to challenge an order requiring the disclosure of "privileged information [that] is controlled by a disinterested third party who is likely to disclose that information rather than be held in contempt for the sake of an immediate appeal." *ABC Corp.*, 705 F.3d at 138. The *Perlman* doctrine does not apply here for two independent reasons. First, the purportedly privileged documents are not "controlled by a disinterested third party." Second, Parx possesses adequate alternative options to obtain appellate review of its privilege claims.

### 1. The purportedly privileged documents are not controlled by a disinterested third party.

The *Perlman* doctrine "permits an interlocutory appeal of a disclosure order if it is directed at a disinterested third party lacking a sufficient stake in the proceeding to risk contempt by refusing compliance." *ABC Corp.*, 705 F.3d at 144. This exception to the final-decision rule "reflect[s] concern that where the subject of

15

the discovery order (characteristically the custodian of documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege." *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.9 (3d Cir. 2002) (quotation omitted).

This rationale applies only where the third party holding the documents is "disinterested." *ABC Corp.*, 705 F.3d at 144. However, where the party holding the documents has its own interest in opposing production, "it has the requisite incentives to risk contempt" in order to obtain immediate appellate review. *Flat Glass*, 288 F.3d at 90 n.9 (cleaned up). Thus, *Perlman* does not apply where the party holding the contested documents is not disinterested. *See, e.g.*, *In re Naranjo*, 768 F.3d 332, 345 (4th Cir. 2014); *In re Grand Jury Subpoena*, 190 F.3d 375, 385 (5th Cir. 1999). In particular, where the documents at issue implicate the custodian itself in misconduct, the custodian is not disinterested, and *Perlman* does not apply. *See, e.g.*, *Naranjo*, 768 F.3d at 345-46 (rejecting application of *Perlman* where documents were held by attorneys, and reasoning that "given that the lawyers are alleged to have committed greater misdeeds than any attributed to the clients, the [custodians] might have a more substantial interest in keeping the documents confidential than do the [privilege holders]"); *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 233, 237 (9th Cir. 1987) (rejecting application of *Perlman* where government had presented evidence of misconduct by both the

16

privilege holder-client and the custodian-attorney, and describing "the attorney [as] an active participant in the litigation"). This principle applies where the custodian is an attorney. *Id.*

Here, the documents at issue are held by Eckert, which is not disinterested. Eckert is the defendant in the underlying litigation. The documents at issue apparently reflect efforts by Eckert to persuade the Pennsylvania Legislature and other government actors to take action that would have severely harmed POM— which, at the time, was Eckert's client. This legislative activity forms a core component of POM's breach of fiduciary duty and fraud claims against Eckert. *See, e.g.*, JA396-398; JA401, ¶ 12; JA404, ¶¶ 29-31; JA405, ¶¶ 32-35; JA413, ¶¶ 77-78; JA418, ¶¶ 98-99; JA422, ¶ (5); JA423, ¶ 116. Production of the documents at issue would likely implicate Eckert in serious misconduct of its own and expose Eckert to substantial potential liability in this litigation. Those documents may also result in significant professional disciplinary consequences for Eckert. *See, e.g.*, Pa. R. Professional Conduct 1.7 (addressing conflicts of interest). Thus, Eckert has its own extremely strong interest in avoiding production of the documents at issue. Because Eckert has a strong interest of its own in avoiding production of the documents at issue, *Perlman* does not apply. *Naranjo*, 768 F.3d at 345-46; *Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d at 233, 237.

17

An additional consideration buttresses this conclusion. In addition to asserting the attorney-client privilege, Eckert has also asserted federal and state work-product protections over the documents at issue in this appeal. *See generally* JA277-392; *see also* D.Ct. #367, at 26-27 & 27 n.5; D.Ct. #361.[5] The federal work-product protection belongs to both the lawyer and the client, and the Pennsylvania work-product protection belongs exclusively to the lawyer. *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014); *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019). Thus, where an attorney-custodian asserts the work-product doctrine over the documents at issue, the custodian has its own independent interest in opposing production, and *Perlman* does not apply. *Naranjo*, 768 F.3d at 345 (holding

---

[5] There is one document at issue in this appeal—PRIV-00597—over which Eckert did not assert either the federal or state work-product doctrines. JA344. However, that document does not involve Eckert's representation of Parx but instead involves a different client, Cordish. JA118-119. Thus, Parx lacks standing to challenge the production of that document. *ABC Corp.*, 705 F.3d at 142 (holding that certain appellants lacked standing to appeal order where privilege belonged to different party); *Burkert v. Equitable Life Assurance Soc'y*, 287 F.3d 293, 295-96 (3d Cir. 2002) (surveying Pennsylvania cases and agreeing that "only the client has standing to assert the [attorney-client] privilege" (quotation omitted)). Thus, PRIV-00597 cannot support the Court's jurisdiction over this appeal. For the same reason, Parx also lacks standing to challenge the disclosure of 18 other documents, where the purported privilege holder was solely Cordish or Mohegan—not Parx. The documents involving Eckert's representation of Cordish are PRIV-00106; PRIV-00107; PRIV-00108; PRIV-00366; PRIV-00493; PRIV-00495; PRIV-00496; PRIV-00497; PRIV-00597; PRIV-00614; PRIV-00751; PRIV-00843; PRIV-00971. *See* JA107, JA115, JA117, JA118, JA120-121, JA131, JA139-140, JA149-150. The documents involving Eckert's representation of Mohegan are PRIV-00081; PRIV-00175; PRIV-00806; PRIV-00900; PRIV-00948; and PRIV-00996. *See* JA089, JA088-89 & nn. 16-17, JA102, JA135, JA296, JA380, JA391.

18

that *Perlman* did not apply where attorney-custodians "argu[ed] that the subpoenaed documents are protected work product" (relying on *Flat Glass*, 288 F.3d at 90 n.9)); *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983) (holding that *Perlman* did not apply, because attorney-custodian "also claimed the work-product privilege"); *In re Sealed Case*, 655 F.2d 1298, 1301 (D.C. Cir. 1981) (R.B. Ginsburg, J.) (holding that *Perlman* did not apply where attorney-custodian contended "that the work product doctrine shields these documents from disclosure"). Because Eckert asserts its own work-product protections over the documents at issue, Eckert is not disinterested. Thus, the *Perlman* doctrine does not apply.

> ### 2.   Parx has adequate alternative avenues for appellate review of its privilege claims.

The *Perlman* doctrine is inapplicable for a second, independent reason. The Supreme Court "has stressed that [jurisdiction under *Perlman*] is available only 'in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.'" *Sealed Case*, 655 F.2d at 1301 (R.B. Ginsburg, J.) (quoting *United States v. Ryan*, 402 U.S. 530, 533 (1971)). For this reason, "[t]he *sine qua non* of the *Perlman* exception is the inability of the privilege holder to obtain appellate review at the juncture when documents otherwise would be produced." *In re Grand Jury Subpoenas*, 974 F.3d 842, 844 (8th Cir. 2020). Where the privilege holder can obtain appellate review through other avenues, *Perlman* does not apply. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350,

19

1366 (Fed. Cir. 2017) (holding that a discovery order could be adequately reviewed on appeal after judgment and thus *Perlman* did not apply).

Here, Parx has adequate alternative means of obtaining appellate review of the relevant disclosure orders. Most notably, Parx could have challenged the lower court orders through a petition for writ of mandamus. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 88-89 (3d Cir. 1992). But for reasons that are unclear, Parx has never petitioned for a writ of mandamus, even in the alternative. Because Parx could have obtained immediate appellate review through a mandamus proceeding, this case does not fall within "the limited class of cases where denial of immediate review [under *Perlman*] would render impossible any review whatsoever of an individual's claims." *Sealed Case*, 655 F.2d at 1301 (quotation omitted).

In addition, certification under 28 U.S.C. § 1292(b) provided another mechanism for Parx to obtain immediate appellate review. *Cf. Rosner v. United States*, 958 F.3d 163, 167 (2d Cir. 2020) (holding that *Perlman* did not apply where privilege holder, who was a party to the litigation, had "available to him several potential avenues of review, including mandamus and certification under 28 U.S.C. § 1292(b)"). Parx sought certification under § 1292(b). JA200-204. While the District Court declined that request, *Perlman* does not require that an alternative appellate avenue be *successful* in a particular case. Instead, the doctrine asks only whether denying "immediate review [under *Perlman*] would render impossible any

review whatsoever of an individual's claims." *Sealed Case*, 655 F.2d at 1301 (quotation omitted). The potential for review under § 1292(b) means that "any review whatsoever" is not "impossible." *Id.* Moreover, the District Court rejected certification under § 1292(b) largely because Parx failed to meaningfully argue that the requirements for § 1292(b) were satisfied. JA051-054. Where Parx's own advocacy decisions have prevented review pursuant to § 1292(b), it cannot complain that § 1292(b) has deprived it of an adequate means for appellate review. Because Parx has multiple alternative avenues for appellate review of the discovery decisions at issue here, *Perlman* does not apply.

**B.    The collateral-order doctrine does not apply.**

Parx also invokes the collateral-order doctrine. Parx Br. 11-15. The collateral-order "doctrine recognizes a small class of orders that, even without terminating the proceedings, are nonetheless subject to [immediate] appeal." *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 835 (3d Cir. 2022) (cleaned up). "To fit within that class, an order must have three characteristics: (1) It must conclusively determine the disputed question; (2) It must resolve an important issue completely separate from the merits of the action; and (3) It must be effectively unreviewable on appeal from a final judgment." *Id.* (quotation omitted). "The[se] conditions are stringent." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation omitted). The Supreme Court has "repeatedly stressed that the 'narrow' exception should stay that

way." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *see also United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) (Gorsuch, J.) ("In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this 'stringent' test should be understood as small, modest, and narrow.").

In *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), the Supreme Court considered "whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine." *Id.* at 103. The Court unanimously held "that they do not." *Id.* Parx seeks to evade the holding of *Mohawk* on the ground that Parx is a third party to the underlying litigation, while *Mohawk* involved an appeal by a party. *See* Parx Br. 13-15. Parx's argument fails for two reasons. First, the scope of *Mohawk*'s holding encompasses appeals by third parties, and thus *Mohawk* directly controls the outcome of this case. Second, even if the holding of *Mohawk* did not directly control this case, the reasoning of *Mohawk* applies with equal force to an appeal brought by a third party like Parx. Thus, the collateral-order doctrine does not provide jurisdiction over this appeal.

1.    ***Mohawk* directly forecloses the application of the collateral-order doctrine to this appeal.**

When applying the collateral-order doctrine, courts look to "the entire category to which a claim belongs." *Mohawk*, 558 U.S. at 107 (quotation omitted). "[A]ppealability determinations are made for classes of decisions, not individual

22

orders in specific cases." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996). Thus, the scope of *Mohawk*'s holding depends on the scope of the "category" or "class" of orders it addressed.

Throughout its opinion, the *Mohawk* Court repeatedly made clear that the category of orders at issue was "disclosure orders adverse to the attorney-client privilege." *Mohawk*, 558 U.S. at 103 ("The question before us is whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine."); *see also id.* at 108 ("collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege"); *id.* at 112 ("In short, the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs."); *id.* at 113 ("sufficiently effective review of adverse attorney-client privilege rulings can be had without resort to the [collateral-order] doctrine"); *id.* at 114 ("In sum, we conclude that the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege."). The Supreme Court never suggested that whether an order constitutes a "disclosure order[] adverse to the attorney-client privilege" depends on the identity of the privilege holder. *See id.* Thus, on its own terms, *Mohawk* applies to *all* disclosure orders adverse to the attorney-client privilege, including those where the privilege holder is a third party. *See id.*; *cf. Cunningham*

23

*v. Hamilton Cnty.*, 527 U.S. 198, 204 n.4 (1999) (rejecting application of the collateral-order doctrine, and explaining that "a decision does not automatically become final merely because it is directed at someone other than a plaintiff or defendant").

Consistent with *Mohawk*'s own characterization of its holding, this Court has applied *Mohawk* even where the privilege holder was a third party. In *United States v. Nocito*, 64 F.4th 76 (3d Cir. 2023), several non-party entities intervened in a pending criminal prosecution, contending that the Government had wrongfully obtained a document reflecting an attorney-client communication over which they controlled the privilege and had used that communication in the prosecution. *Id.* at 79-80. The third-party privilege holders sought an order requiring the "return" of that privileged information and preventing the Government from using the information. *Id.* at 80. When the district court denied the privilege holders' request, they sought immediate appellate review. *Id.* The Court rejected several proffered bases for jurisdiction over the appeal. In rejecting the application of the collateral-order doctrine, the Court explained that "the Supreme Court has held 'orders adverse to the attorney-client privilege' do not warrant immediate appeal under the collateral order doctrine." *Id.* at 83 n.4 (quoting *Mohawk*, 558 U.S. at 108-09). *Nocito* thus confirms that *Mohawk* applies even when the privilege holder is a third party.

24

Here, Parx seeks to appeal a disclosure order adverse to Parx's claim of attorney-client privilege. In *Mohawk*, the Supreme Court held that the collateral-order doctrine does not apply to such orders. 558 U.S. at 103. The collateral-order doctrine thus does not apply here.

### 2.    *Mohawk*'s reasoning applies with equal force to an appeal brought by a third-party privilege holder.

Parx claims that *Mohawk* does not apply, because the privilege holder in that case was a party to the litigation rather than (as here) a third party. Parx Br. 13-15. Even if the specific holding of *Mohawk* did not control, the Supreme Court's reasoning would still dictate that the collateral-order doctrine does not apply here. In particular, both of the core considerations on which the *Mohawk* Court relied apply with equal force to an appeal brought by a third-party privilege holder.

First, the Supreme Court emphasized that privilege holders already possess an array of options for seeking appellate review of orders adverse to the attorney-client privilege. In addition to post-judgment appeal, privilege holders can seek immediate appellate review through a mandamus proceeding; certification under 28 U.S.C. § 1292(b); or by going into contempt, which would permit an immediate appeal. *Mohawk*, 558 U.S. at 111-12. The Court also emphasized that "protective orders are available to limit the spillover effects of disclosing sensitive information." *Id.* at 112. In light of these appellate alternatives and procedural safeguards, "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-

client privilege." *Id.* at 108. For this reason, such appeals fail the third requirement of the collateral-order doctrine, *i.e.*, whether the class of orders would be effectively unreviewable absent immediate appeal. *Id.* Moreover, "the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs." *Id.* at 112. Thus, the Supreme Court held that the collateral-order doctrine did not apply to disclosure orders adverse to the attorney-client privilege.

This analysis applies equally to appeals brought by third-party privilege holders like Parx. Like a party, a third-party privilege holder like Parx can avail itself of a variety of alternative means to obtain immediate appellate review of privilege claims. A third-party privilege holder can raise its privilege claims through a mandamus petition. *See Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325-26 (11th Cir. 2016) (applying *Mohawk* to appeal brought by non-party privilege holder, in part because the privilege holder could have raised its privilege claims through mandamus). A third-party privilege holder can also seek certification under § 1292(b). Indeed, Parx successfully obtained certification under § 1292(b) of a different privilege ruling in this case. A third-party privilege holder can intervene for the limited purpose of protecting its privilege, which in turn would permit it to pursue a post-judgment appeal. *See In re Grand Jury Subpoena (Newparent, Inc.)*, 274 F.3d 563, 570 (1st Cir. 2001) (holding that

privilege holder can intervene under Rule 24); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-76 (1987) (explaining that an intervenor can pursue a post-judgment appeal). And under at least some circumstances, a third-party privilege holder can challenge a privilege ruling through the traditional contempt route. For example, the Court has indicated that even when a discovery order is directed at the privilege holder's lawyer rather than the privilege holder itself, that privilege holder "could properly be held in contempt for directing the [lawyer] to withhold [the documents]." *ABC Corp.*, 705 F.3d at 147. Thus, a third-party privilege holder possesses substantially the same set of alternative appellate options that the *Mohawk* Court found to render the collateral-order doctrine inapplicable. Moreover, as with a party, a non-party can obtain a protective order limiting disclosure of disputed documents. *See Mohawk*, 558 U.S. at 112. *Mohawk*'s reasoning applies with equal force to appeals brought by third-party privilege holders, and thus the collateral-order doctrine does not support jurisdiction here.

Second, the Supreme Court emphasized that it has not exercised its rulemaking authority under 28 U.S.C. §§ 2072(c) and 1292(e) to provide for appellate jurisdiction over orders adverse to the attorney-client privilege. *Mohawk*, 558 U.S. at 113-14. "Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect." *Swint v. Chambers Cnty.*

27

*Comm'n*, 514 U.S. 35, 48 (1995). In light of the Supreme Court's statutory authority under §§ 2072(c) and 1292(e), "rulemaking, not expansion by court decision, [is] the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk*, 558 U.S. at 113 (quotation omitted). Because the Supreme Court has not used its rulemaking authority to permit immediate appeals of orders adverse to the attorney-client privilege, the Court concluded that the collateral-order doctrine did not apply to such appeals. *Id.* at 113-14. The Supreme Court similarly has not used its rulemaking authority to authorize immediate appeals by third-party privilege holders. For this reason as well, the collateral-order doctrine does not authorize Parx's appeal. *See id.* The Court lacks appellate jurisdiction.

### C.  Eckert did not file a notice of appeal and thus is not a party to this appeal.

Eckert submitted a letter stating that it joins Parx's brief and request for relief. 3d Cir. Docket #32. Eckert did not file a notice of appeal. Because the filing of a timely notice of appeal is a prerequisite to this Court's jurisdiction, there is no jurisdiction to consider a purported appeal by Eckert. *See Diamond v. Charles*, 476 U.S. 54, 62-63 (1986) (holding that, where litigant failed to file a notice of appeal but instead filed a "letter of interest," that litigant was not an appellant in the case); *id.* at 63 ("To appear before the Court as an appellant, a party must file a notice of

appeal, the statutory prerequisite to invoking this Court's jurisdiction."); *see also*

*Webb v. Dep't of Justice*, 117 F.4th 560, 564-65 (3d Cir. 2024).

## II.    Parx Has Not Demonstrated That the Documents at Issue Were Made Predominantly for the Purpose of Providing Legal Advice.

***Standards of Review***. The Court "exercises de novo review over specific legal issues

underlying the claim of attorney-client privilege and review[s] factual

determinations for clear error." *United States v. Scarfo*, 41 F.4th 136, 170 n.26 (3d

Cir. 2022). Whether a communication is made predominantly for the purpose of

obtaining legal advice presents a mixed question of law and fact that the Court

reviews *de novo*. *See Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 301-02

(3d Cir. 1999).

Not every communication between a lawyer and client is privileged.[6] *Levy v.*

*Senate of Pa.*, 65 A.3d 361, 368-69 (Pa. 2013). Instead, "the privilege is limited to

communications related to the legal advice sought by the client." *Id.*; *see also*

*Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa.

---

[6] The vast majority of the communications at issue in this appeal are communications solely among attorneys, rather than communications between attorney and client. However, courts generally recognize a derivative protection for communications solely among attorneys if that intra-attorney communication discloses the contents of an otherwise privileged communication between attorney and client. *See* PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 5:8 (Dec. 2024 Update).

Super. 2023) (noting that the privilege applies only to communications "made for the purpose of obtaining or providing professional legal advice"); *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 n.8 (Pa. 2011) (characterizing this as "the central requirement" of the privilege). Thus, the privilege does not apply where an attorney is providing advice that is not *legal* advice. *Gillard*, 15 A.3d at 52 n.8.

Here, both the Magistrate Judge and the District Judge concluded that the documents at issue in this appeal did not involve legal advice and thus did not fall within the attorney-client privilege. *See generally* JA006-026, JA061-157. The Magistrate Judge conducted a detailed, document-by-document *in camera* review of the documents. *See* JA061-157. Based on this careful review, he concluded that— although the documents included legislative, political, and policy advice—they did not involve *legal* advice. *See id.* And he set out his factual findings supporting this conclusion in a detailed, 97-page Memorandum. *Id.* The District Judge rejected Parx's and Eckert's requests to reconsider the Magistrate Judge's holding. *See* JA006-029.

Parx challenges these conclusions on appeal. For the reasons stated below, Parx's arguments lack merit.

**A.    The District Judge and the Magistrate Judge correctly concluded that "legislative advice" does not automatically constitute legal advice protected by the attorney-client privilege.**

As noted above, the attorney-client privilege applies only to communications that predominantly involve *legal* advice. *Levy*, 65 A.3d at 368-69; *Gillard*, 15 A.3d at 52 n.8; *Carlino E. Brandywine*, 301 A.3d at 479. Based on his careful *in camera* review, the Magistrate Judge concluded that the documents at issue included legislative, political, or policy advice—but they did not involve legal advice. *See generally* JA061-157.

Parx challenges this holding by arguing that "legislative advice" *necessarily* constitutes legal advice. Parx Br. 34-43. Although "legislative advice" is not a legally recognized category with a clear connotation, Parx provides examples of what it has in mind: "advice on pending or desired legislation, drafting proposed legislation, monitoring, reviewing, or advising on legislative efforts." *Id.* at 35. In Parx's view, because the lower court found all of the documents at issue to involve "legislative advice" along these lines, all of those documents necessarily must be privileged. *See id.* at 34-43.

Parx's novel theory conflicts with deeply entrenched judicial understandings of what constitutes legal advice. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). "It requires a

31

lawyer to rely on legal education and experience to inform judgment." *Id.* Importantly, not all advice that lawyers provide constitutes legal advice. "When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." *Id.* at 421; *see also Gillard*, 15 A.3d at 52 n.8.

When determining whether a lawyer's advice constitutes *legal* advice, courts often consider whether non-attorney professionals regularly provide the same kind of advice. *See, e.g.*, *In re Grand Jury Subpoena*, 204 F.3d 516, 523 (4th Cir. 2000) ("A client may not 'buy' a privilege by retaining an attorney to do something that a non-lawyer could do just as well." (quotation omitted)); *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) (emphasizing that a client "must not be allowed, by hiring a lawyer to do the work that an accountant . . . normally would do, to obtain greater protection from government investigators than a taxpayer who did not use a lawyer as his tax preparer would be entitled to"); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) (en banc) (rejecting attorney-client privilege because "[t]he work that Law Firm was employed to perform could have been performed just as readily by non-lawyers"). This reference point makes perfect sense: if non-lawyers (*i.e.*, people without "legal education and experience") can regularly provide certain advice, then providing that advice likely does not "require[] a lawyer to rely on legal education and experience." *Cnty. of Erie*, 473 F.3d at 419.

Applying that analysis here, non-lawyer professionals—including lobbyists, political or policy advisors, and communications consultants—routinely provide precisely the sorts of "legislative advice" that Parx claims to be privileged. In particular, those non-lawyer professionals regularly provide "advice on pending or desired legislation, drafting proposed legislation, monitoring, reviewing, or advising on legislative efforts." Parx Br. 35. The fact that these other non-lawyer professionals can provide such "legislative advice" just as readily as can a lawyer demonstrates that these services do not "require[] a lawyer to rely on legal education and experience." *Cnty. of Erie*, 473 F.3d at 419. Thus, such legislative services do not involve *legal* advice, even if some lawyers may be skillful in that arena. *Id.*; *see also In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("Lindsey's advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege.").[7] "Courts would have no hesitation in allowing otherwise appropriate discovery of lay lobbyists, public relations consultants, media representatives, and political organizers. There is no sound reason for reaching a different result where someone with a law degree engages in similar

---

[7] It is telling that Eckert was registered as a lobbying firm for Parx from July 13, 2016 to December 31, 2022, and Mark Stewart has been registered as a lobbyist for Parx since July 13, 2016. *See* Pa. Dep't of State, *Lobbying Disclosure Registration Search*, at www.palobbyingservices.pa.gov/Public/wfSearch.aspx (last visited June 2, 2025); *see also Gagliardi v. Kratzenberg*, 188 F. App'x 86, 88 n.3 (3d Cir. 2006) (noting that the Court "may take judicial notice of public records").

activities." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010). Indeed, "[t]hrowing the cloak of privilege over this type of [legislative] work [by Eckert] would create [a lobbyist's] privilege usable only by lawyers," thereby "reward[ing] lawyers for doing nonlawyers' work, and creat[ing] a privileged position for lawyers in competition with other [legislative and lobbying professionals]." *Frederick*, 182 F.3d at 500, 502. There is no basis for this result. Moreover, "[t]he privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (cleaned up). But non-lawyer professionals routinely dispense the same advice, without the protections of privilege. This fact demonstrates that the protections of privilege are not an essential condition for such communications to occur. Parx's categorical position that *all* legislative advice *necessarily* constitutes legal advice lacks merit.

Rejecting Parx's absolutist approach also accords with the policies underlying the attorney-client privilege. "Because [the attorney-client privilege] has the effect of withholding relevant information from the factfinder, courts construe the privilege narrowly to apply only where necessary to achieve its purpose." *In re Estate of McAleer*, 248 A.3d 416, 425-26 (Pa. 2021) (cleaned up). The purpose of the attorney-

34

client privilege is to "encourag[e] attorney-client communication to enhance compliance with law and facilitat[e] the administration of justice." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 360 (3d Cir. 2007).[8] But, as a general matter, "[i]t is not apparent how the attorney-client privilege's policy of effectuating greater compliance with the law . . . is furthered in the legislative context." PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7:20 (Dec. 2024 Update). Parties may have legitimate interests in seeking changes to the law. But those self-serving private interests do not implicate the *public* interests underlying the privilege. For this reason, applying the privilege categorically to all legislative advice would not be "necessary to achieve [the privilege's] purpose." *Estate of McAleer*, 248 A.3d at 425-26.

Importantly, the foregoing analysis does not mean that the attorney-client privilege will *never* apply to advice in the legislative context. Instead, communications arising in that context can fall within the privilege if they predominantly relate to legal advice, as opposed to lobbying advice, legislative strategy, policy or political considerations, or other non-legal matters. Both the Magistrate Judge and the District Judge recognized this fact. JA014-015; JA040 n.6;

---

[8] Parx notes that the privilege "promotes frank and open client-attorney communication." Parx Br. 28. "Full and frank communication is not an end in itself, however, but merely a means to achieve the ultimate purpose of the privilege: promoting broader public interests in the observance of law and administration of justice." *Westinghouse*, 951 F.2d at 1423 (cleaned up).

JA086. Indeed, the District Judge specifically permitted Eckert to withhold portions of four documents involving "legislative strategies" because they contained privileged legal advice. JA021-022; *see also* JA040 n.6.

Other advice in the legislative context may also constitute privileged legal advice. For example, a client might engage a lawyer to analyze pending legislation to advise what the client must do to comply with the legislation if enacted. Under those circumstances, the lawyer's advice likely would constitute legal advice— advice about how to comply with a statutory obligation—even though the statute had not yet been enacted. In other cases, publicly traded companies may sometimes have an obligation under the securities laws to disclose the anticipated impact of pending legislation. *See* Securities & Exchange Comm'n, *Commission Guidance Regarding Disclosure Related to Climate Change*, S.E.C. Release No. 9106, 2010 WL 2199526, at *10-11 (Feb. 2, 2010). A company might engage a lawyer to analyze what additional regulatory burdens the proposed legislation would impose, so that the company can disclose those anticipated impacts in its securities filings. This advice—though arising in the legislative context and dealing with as-yet-unenacted legislation—likely constitutes legal advice, because it facilitates compliance with an existing regulatory disclosure obligation. However, if an attorney advises a client on whether or how to support or oppose the enactment of legislation, that advice is not

36

legal advice. Instead, it merely constitutes lobbying advice, legislative strategy, or political guidance, and thus it is not privileged.[9]

None of the cases cited in passing by Parx supports its radical position that all "legislative advice" necessarily constitutes privileged legal advice. *Harrington v. Freedom of Information Commission* rejects the notion that *all* legislative advice constitutes legal advice, explaining that "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of the lobbying efforts." *Harrington v. Freedom of Info. Comm'n*, 144 A.3d 405, 419 (Conn. 2016) (quotation omitted). Indeed, *Harrington* specifically refutes the notion that many of the documents at issue here involve legal advice. *Compare id.* at 419 (noting that "[s]ummaries of legislative meetings, progress reports, and general updates on

---

[9] Parx claims that POM "has invoked privilege to protect communications among its lawyers, lobbyists, and public-relations professionals." Parx Br. 33 n.4. The portion of the Appendix that Parx cites simply does not support that claim. *See* JA393-395. The documents reflected in the POM privilege log cited by Parx are all communications between POM's outside litigation counsel and senior POM personnel, and all of those communications involve core legal advice relating to the preparation and filing of this litigation. *See id.* None of these litigation-related documents is plausibly comparable to the legislative strategy and lobbying documents at issue in this appeal. Notably, POM's assertion of privilege over these documents has never been challenged in this litigation.

lobbying activities do not constitute legal advice" (quotation omitted)), *with* JA087-089 (explaining that certain documents at issue constitute "summaries of public meetings"), JA102 (noting that certain documents at issue "provid[e] updates on legislative and lobbying developments"), JA028-029 (noting that certain documents at issue "represent updates regarding legislative affairs and strategy, lobbying, and public relations"). *Harrington* does not support Parx's position but instead merely stands for the uncontroversial proposition that communications arising in the legislative context—like all other communications—can be privileged if they predominantly involve legal advice but are not privileged if they involve only non-legal advice. 144 A.3d at 419-20.

*Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), also does not support Parx's position. Importantly, *Westinghouse* did not even involve a privilege dispute. Instead, it involved a motion to disqualify counsel based on a conflict of interest. *See id.* at 1313-16. *Westinghouse* is thus irrelevant. Indeed, Westlaw indicates that 374 cases have cited *Westinghouse*, but not one of those cases appears to have cited it for the proposition that legislative advice constitutes legal advice. Parx has given this Court no reason to become the first court to do so.

Parx also cites three district court opinions that found certain communications involving pending legislation to involve legal advice. Parx Br. 37-38. But none of those cases claims that *all* legislative advice is privileged. Indeed, two of the cases

specifically contradict that position. *See A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07-cv-929, 2013 WL 6044342, at *4 (D. Conn. Nov. 14, 2013) (finding that certain communications involving lobbyists were not privileged); *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 445-46 (E.D. Tex. 2003) (explaining that lobbying or political advice is not privileged). Like *Harrington*, these cases support the approach taken by the Magistrate Judge and District Judge here: advice in the legislative context *can* be privileged, but only if it involves legal advice. Neither of these cases provides meaningful detail about the nature of the communications at issue, and thus it is impossible to tell whether those communications have any similarity to the documents at issue here. *See id.* The third case cited by Parx contains no relevant analysis at all as to why the communications at issue involved legal advice. *See Weissman v. Fruchtman*, No. 83-Civ-8958, 1986 WL 15669, at *15 (S.D.N.Y. Oct. 31, 1986). Nor does the case describe the nature of the documents at issue beyond simply noting that certain unspecified communications among government lawyers "seeking legal advice on pending legislation" were privileged. *Id.* The district-court cases cited by Parx do not support the extreme position that *all* legislative advice is necessarily privileged.

For the reasons described above, the Magistrate Judge and District Judge applied the correct legal standard: "legislative advice" does not automatically constitute privileged legal advice, but it also is not categorically excluded from the

39

privilege. To be privileged, advice in the legislative context must involve *legal* advice. Here, Parx has rested its privilege claim on the categorical contention that all legislative advice necessarily constitutes legal advice. *See* Parx Br. 34-43. As described above, that position lacks merit. Beyond its categorical claim, Parx has made no effort to explain how any particular communication at issue here involves legal advice. As the proponent of the privilege, Parx bears the burden of showing "sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Cmwlth. 2018) (cleaned up). Parx has failed to carry that burden here. The Court should affirm the lower court orders.

**B.    The District Court correctly found that the Bonner Declaration did not satisfy Parx's burden to establish the applicability of the attorney-client privilege.**

Parx contends that it should have prevailed in this discovery dispute based on the declaration of Thomas Bonner, Parx's former Chief Counsel. *See* Parx Br. 32-34, 47-55. The Bonner Declaration was not originally submitted in connection with this discovery dispute. Instead, Parx filed the Declaration in connection with a separate discovery dispute. *See* D.Ct. #351. In Parx's view, the Bonner Declaration was "uncontested" and constituted the only record evidence relevant to this dispute. *See* Parx Br. at 48. And Parx believes that the Declaration alone should have resulted in

40

a finding that the documents at issue are privileged. These arguments lack merit for several reasons.[10]

First, it is simply not accurate to claim that the Bonner Declaration was "uncontested," Parx Br. 48, or that "POM has failed to come forward with anything—let alone evidence—to show that the privilege does not apply," *id.* at 33. The Bonner Declaration was far from the only evidence submitted in connection with this discovery dispute. POM attached seven evidentiary exhibits to its discovery motion that directly supported POM's contention that the documents at issue did not involve legal advice. *See* JA277-392 (Exhibit 1), JA474-513 (Exhibits 5 and 6); D.Ct. #295, Exhibits 4, 7, 8, 9. This evidence introduced by POM provided strong grounds to believe that the documents at issue were not privileged. *See id.*; *see also* JA466-471.

Perhaps more importantly, the Magistrate Judge painstakingly reviewed *in camera* each document at issue in this dispute. *See generally* JA061-157. The documents themselves provide the best evidence of whether those documents involve legal advice. *See Valero Energy Corp. v. United States*, 569 F.3d 626, 631

---

[10] Parx faults the District Court for not fully considering the Bonner Declaration prior to the Order denying Parx's motion for reconsideration. However, in that Order, the District Court *did* fully consider the Declaration. JA041-045. And the Court rejected Parx's arguments based on the Declaration, both because the Declaration had not been submitted to the Magistrate Judge, and because the Declaration failed to provide any information about the documents at issue in the dispute. JA045.

(7th Cir. 2009) (noting that "the district court had adequate information to evaluate the claim of privilege after reviewing the documents themselves"). All of this evidence supported the Magistrate Judge's and District Judge's orders. The Bonner Declaration simply was not "uncontested," and it was not the only evidence submitted in connection with this discovery dispute.

Second, the Bonner Declaration fails to allege facts that would bring the communications at issue within the privilege. To sustain a claim of privilege, a privilege holder must do more than merely introduce *some* evidence. The evidence must establish "sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Township of Neshannock*, 181 A.3d at 474 (cleaned up). As described above, a document is privileged only if it involves legal advice. *See* Part II.A, *supra*. The Bonner Declaration does not provide any information at all about the contents of the specific documents at issue in this appeal, nor does it include any facts that would demonstrate that the contents of those documents involve legal advice. *See* JA265-269. At most, the Declaration contains vague and conclusory assertions about unspecified communications occurring over an undefined period of time. *See id.* These generalities provide no basis to conclude that any of the documents at issue in this appeal contain legal advice. As the District Court noted, the Declaration "makes no reference to the specific 120 documents at issue in this dispute." JA045. "[C]laims of attorney-client privilege must be asserted

42

document by document, rather than as a single, blanket assertion." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990). Courts cannot resolve privilege disputes "without regard to the specific content of particular documents." *Doe v. Schuylkill Cnty. Courthouse*, 343 F.R.D. 289, 295 (M.D. Pa. 2023). Because the Bonner Declaration does not even purport to characterize the contents of the documents at issue, it cannot constitute evidence that those documents involve legal advice.

Moreover, even if the Bonner Declaration somehow could be read to claim that the documents at issue involved legal advice, the Magistrate Judge clearly disagreed with that characterization based on his detailed *in camera* review of the documents themselves. *See generally* JA061-157. Appellate courts are especially deferential to lower-court privilege determinations based on the weighing of conflicting factual evidence. "Findings regarding privilege are fact-intensive, case-specific questions that fall within the district court's expertise, and, under these circumstances, a light appellate touch is best." *Valero Energy*, 569 F.3d at 630 (quotation omitted). The Bonner Declaration provides no basis to set aside the lower court's careful factual findings.

Third, the District Judge had no obligation to consider evidence that was not presented to the Magistrate Judge; indeed, considering such evidence itself likely would have constituted error. When reviewing a magistrate judge's ruling on a non-

dispositive issue, a district judge cannot consider evidence that was not part of the record before the magistrate judge. *Haines*, 975 F.2d at 91-93. The Bonner Declaration was not submitted to the Magistrate Judge, nor was it otherwise raised in connection with this discovery dispute prior to the Magistrate Judge's order. Thus, the Declaration was not part of the record before the Magistrate Judge, *see* JA042-043, and the District Judge could not have considered that new evidence when reviewing the Magistrate Judge's decision, *Haines*, 975 F.2d at 91-93.

Parx makes two points that implicitly conflict with this conclusion, but neither of those points has merit. Parx first claims that the Bonner Declaration *was* in the record, because it was filed in connection with a separate discovery dispute. Parx Br. 32; *see also* D.Ct. #351-1. As the District Judge observed, the Declaration was filed "nearly five months after the court referred the instant dispute to [Magistrate] Judge Saporito." JA042. Neither Parx nor Eckert brought the Declaration to the Magistrate Judge's attention, and that separate discovery dispute was not referred to the Magistrate Judge. *See* D.Ct. #358 (District Judge's order resolving that dispute). The Declaration was thus not before the Magistrate Judge. The Magistrate Judge had no obligation to root through the voluminous docket in this case looking for documents that might support Parx's position. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record." (cleaned up)).

44

Parx also complains that it was not "invited" by the District Court to participate in the proceedings before the Magistrate Judge. Parx Br. 51. This complaint is perplexing. Parx has inserted itself into a number of discovery disputes in this litigation without receiving an "invitation" from the District Court to do so. *See, e.g.*, D.Ct. #442, #439, #433, #380, #351. Parx also did not wait for an "invitation" to seek reconsideration of the Magistrate Judge's decision by the District Judge. JA158. The lack of a formal "invitation" to participate in the proceedings before the Magistrate Judge is no excuse for failing to raise the Bonner Declaration in a timely fashion. *Cf. Newparent*, 274 F.3d at 570 (holding that a privilege holder can intervene in a case to protect its privilege).

Parx also insinuates that it had no idea that this discovery dispute implicated its interests until the Magistrate Judge issued his order. *See* Parx Br. 51. That suggestion strains credulity. Parx's counsel is entered in this case and receives ECF notices for filings in the case. *See* JA241 (docket sheet listing counsel entered in case). Multiple docket entries in this case—each of which would have generated an electronic notice to Parx's counsel—put Parx on clear notice that a privilege dispute had been referred to the Magistrate Judge involving, among other things, "communications that relate predominantly to legislative or lobbying strategy." JA463-464; *see also* D.Ct. #296. At a minimum, a diligent privilege holder in Parx's position would have inquired of Eckert whether any of the relevant documents

45

involved Parx, particularly given the close coordination between Parx and Eckert throughout this case. In addition, Parx never raised its purported lack of notice before the District Court. *See, e.g.*, D.Ct. #387, #388, #396. This omission speaks volumes. Parx cannot raise this new, forfeited argument on appeal that was never presented to the District Court. *See Continental Casualty Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998). The Court should affirm the lower court orders.

## C.      The District Court did not err with respect to redaction.

As a fallback position, Parx contends that the District Court erred by failing to permit the redaction of privileged information within documents that do not predominantly involve legal advice. Parx Br. 60. In Parx's telling, the District Court failed even to "consider[] redaction" as an option. *Id.* Parx's argument fails for several reasons.

First, Parx has waived this argument. Parx did not address redaction at all in its appeal to the District Judge (either in its opening brief or its reply), even in the alternative. JA046 & JA046 n.9. Parx raised the issue of redaction for the first time in its motion for reconsideration of the District Court's order. D.Ct. #388 at 13-14. "[R]aising an argument for the first time in a motion for reconsideration results in waiver of that argument for purposes of appeal." *United States v. Franz*, 772 F.3d 134, 150 (3d Cir. 2014). Thus, Parx has forfeited any arguments that it may have

regarding redaction.[11] Moreover, the redaction argument that Parx raised for the first time in its motion to reconsider involved only a single document, PRIV-0074. D.Ct. #388 at 13-15. On appeal, however, Parx has apparently expanded its redaction argument to cover other unspecified documents. *See* Parx Br. 60-62. Absent "exceptional circumstances"—which are not present here—the Court does "not consider on appeal issues that were not raised before the district court." *Continental Casualty*, 150 F.3d at 251. For this additional reason, Parx has waived its broader redaction argument.

Parx apparently believes that its redaction argument cannot be waived or forfeited, claiming that "whether Parx raised the issue or not, the district court is duty bound to . . . order redactions of any privileged information found in predominantly non-legal documents." Parx Br. 62. Parx does not cite any authority to support this extraordinary position. To be sure, there are some issues—like subject-matter jurisdiction—that cannot be waived and that a district court must raise

---

[11] For the same reason, the District Court did not abuse its discretion by denying reconsideration of this issue based on its finding that Parx had waived it by raising it for the first time in a motion for reconsideration. JA046; *see also Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021) (holding that district court's determination that a party has waived an argument is reviewed for abuse of discretion); *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023) (holding that the Court "review[s] denials of motions for reconsideration for abuse of discretion"). Motions for reconsideration are "not for addressing arguments that a party should have raised earlier." *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

*sua sponte*. But unlike subject-matter jurisdiction, the attorney-client privilege *can* be waived. *See, e.g.*, *Carbis Walker, LLP v. Hill, Barth & King, LLC*, 930 A.2d 573, 579 (Pa. Super. 2007). Parx's argument thus lacks merit.

Second, Parx has failed to demonstrate that any portion of any document is actually privileged. Parx simply asserts that there should be "redaction of any advice on legislative matters." Parx Br. 61. But as described above, "advice on legislative matters" is not automatically privileged. *See* Part II.A, *supra*. And Parx has failed to explain which portions of which documents might warrant redaction. Parx's argument fails for this reason as well.

Third, it is not accurate to claim that the lower court ordered disclosure "without considering redaction." Parx Br. 60. To the contrary, both the Magistrate Judge and the District Judge *sua sponte* "consider[ed] redaction," permitting Eckert to withhold certain privileged passages from documents that otherwise did not predominantly involve legal advice. *See* JA021-022 (District Judge holding that certain passages from four documents would be shielded from disclosure while the remainder of the documents must be produced); JA155-156 (Magistrate Judge holding that portions of three email threads should be "redacted"). The lower court took this nuanced approach even though Parx had not advocated for it. Parx cannot fault the District Court for not applying this approach—which Parx had not proposed or argued for—more broadly. *See United States v. Gillette*, 738 F.3d 63, 75 (3d Cir.

48

2013) ("Gillette cannot claim error in the District Court's failure to dismiss Count 2 before trial on a ground never presented by Gillette."); *United States v. Brown*, 809 F.3d 371, 374 (7th Cir. 2016) ("Brown cannot demonstrate that the district court erred by alleging that it failed to consider an argument he never raised."). That is particularly true given that, when Parx did belatedly raise redaction, it developed the argument only with respect to a single document. D.Ct. # 388 at 17-19. Parx cannot now argue that the District Court should have considered redaction as to other documents. For the foregoing reasons, Parx's arguments regarding redaction lack merit.

**D.    The predominant-purpose test does not affect the outcome of this appeal.**

Parx discusses at length the predominant-purpose test, *i.e.*, the rule that a document that predominantly involves legal advice does not lose its privileged character merely because it includes ancillary discussions of non-legal matters intertwined with the legal advice. *See* Parx Br. 43-47. The predominant-purpose test arises only if "the predominant purpose of [a] communication is legal advice." *Cnty. of Erie*, 473 F.3d at 420. As described above, Parx has not demonstrated that any document contains legal advice at all, let alone that the predominant purpose of any communication is legal advice. Thus, the predominant-purpose test has no impact on the resolution of this appeal.

**III.    Parx Fails to Challenge the Finding Below That Nearly All of the Documents at Issue Do Not Disclose Information Conveyed in Confidence Between an Attorney and a Client, and This Uncontested Finding Provides an Independent Basis to Affirm the Lower Court Orders as to Those Documents.**

***Standard of Review***. Whether a document constitutes "a confidential communication protected by the attorney-client privilege is a mixed question of law and fact, and [is] reviewed *de novo*." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988).

Regardless of whether the documents at issue involve legal advice, there is an alternative basis to reject Parx's appeal as to most of the documents at issue. As discussed above, the Magistrate Judge and District Judge found the attorney-client privilege inapplicable, because the documents at issue do not involve legal advice. In addition, with regard to all but five of the documents at issue in this appeal, the Magistrate Judge also rejected the application of privilege on a second, independent basis: the documents did not disclose information communicated in confidence between an attorney and client. *See generally* JA061-JA157.[12] Under Pennsylvania law, the attorney-client privilege encompasses only "confidential communications

---

[12] The Magistrate Judge did not expressly apply this rationale to PRIV-00036 (Control No. 60512); PRIV-00041 (Control No. 600510); PRIV-00946 (Control No. 1500479); PRIV-00948 (Control No. 1500835); and PRIV-00991 (Control No. 304063).

between a client and an attorney." *Carlino*, 301 A.3d at 479. Courts also generally recognize a derivative protection for communications solely among attorneys if that intra-attorney communication discloses the contents of an otherwise privileged communication between attorney and client. *See* RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 5:8.

Here, the Magistrate Judge found that (with five exceptions) the documents at issue did not satisfy the confidentiality requirement of the attorney-client privilege, *i.e.*, did not disclose information conveyed in confidence between an attorney and a client. *See* JA061-157. Eckert sought reconsideration of this holding,[13] D.Ct. #367 at 14-16, but the District Court rejected this request, JA024-025. The District Court concluded that there was no need to address the confidentiality issue, because none of the documents involved legal advice. *Id.*

In its Opening Brief, Parx does not challenge the Magistrate Judge's independent basis for rejecting the privilege as to the vast majority of the documents at issue. This Court is directly reviewing the Magistrate Judge's order regarding this non-dispositive discovery dispute. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("Although the District Court gave reasons of its own when declining to set

---

[13] Parx failed to challenge this independent basis for the Magistrate Judge's holding in its briefing before the District Judge. *See* D.Ct. #366, #374. Thus, Parx would have forfeited any arguments regarding the confidential-communication issue even if it had addressed that issue in its briefing before this Court. *See United Steelworkers of Am. v. N.J. Zinc Co.*, 828 F.2d 1001, 1008 (3d Cir. 1987).

aside the Magistrate Judge's order, we are really reviewing the Magistrate Judge's exercise of discretion in entering the order, and not the District Court's deferential review of the same."). Parx's "failure to challenge [the Magistrate Judge's] independent basis" for rejecting the attorney-client privilege "is fatal to [its] appeal." *LabMD Inc. v. Boback*, 47 F.4th 164, 191 (3d Cir. 2022).

Moreover, even if this Court were reviewing only the District Judge's order, which did not expressly address the confidentiality issue, the Court can affirm on any basis supported by the record. *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988). After painstakingly reviewing the relevant documents *in camera*, the Magistrate Judge specifically explained why those documents did not satisfy the confidentiality requirements of the attorney-client privilege in a detailed 97-page Memorandum. *See generally* JA061-157. The Magistrate Judge's factual findings, unchallenged on appeal, demonstrate that the record supports affirmance on this alternative basis.

## CONCLUSION

For the reasons stated above, the Court should affirm or, in the alternative, dismiss for lack of jurisdiction.

Respectfully submitted,


*/s/ Michael Martinich-Sauter*
Michael Martinich-Sauter
Missouri Bar No. 66065
JAMES OTIS LAW GROUP LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018 (Telephone)
michael.martinich-sauter@james-otis.com

Michael Nolan
Bola Adeniran
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com

Jeffrey B. Jensen
TORRIDON LAW PLLC
801 17th Street NW, Suite 1100
Washington, DC 20006
(202) 249-6900 (Telephone)
jjensen@torridonlaw.com

George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

***Counsel for Appellee Pace-O-Matic, Inc.***

53

## CERTIFICATE OF COMPLIANCE

Pursuant to L.A.R. 28.3(d), I certify that I am a member of the Bar of this Court.

I certify that, based on the word-count feature of Microsoft Word, this brief contains 12,566 words, excluding the items enumerated in Federal Rule of Appellate Procedure 32(f).

I certify that this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

I certify that on June 4, 2025, I caused the foregoing to be served on all counsel of record via the Court's electronic filing system.

I certify that the text of the electronic version of this brief is identical to the text in the paper copies, pursuant to L.A.R. 31.1(c).

I certify that I used McAfee virus detection software to scan this file, and no virus was detected.

*/s/ Michael Martinich-Sauter*