# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case No. 24-1984

————————————

PACE-O-MATIC, INC.,

*Plaintiff-Appellee*,

— v. —

ECKERT SEAMANS CHERIN & MELLOTT, LLC,
MARK S. STEWART, AND KEVIN M. SKJOLDAL,

*Defendants-Appellees*,

and

GREENWOOD GAMING & ENTERTAINMENT, INC.,

*Third-party Appellant*.

————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania Case No. 1:20-cv-00292

---

**MOTION OF APPELLEES, ECKERT
SEAMANS CHERIN & MELLOTT, LLC, MARK S.
STEWART, AND KEVIN M. SKJOLDAL, TO SEAL VOLUME
III OF JOINT APPENDIX AND STATEMENT IN SUPPORT OF
PACE-O-MATIC, INC.'S MOTION FOR LEAVE TO FILE UNDER SEAL**

---

Dated:  June 16, 2025

ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
**FOX ROTHSCHILD LLP**
2001 Market Street, Suite 1700
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)

*Counsel for Appellees Eckert Seamans Cherin &
Mellot, LLC, Mark S. Stewart, and Kevin M.
Skjoldal*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ............................................. 2

ARGUMENT ................................................................................................. 6

I.    The Court Should Seal Volume III Because the Documents in It Are Not Judicial Records and Neither the Common Law Right of Public Access nor the First Amendment Right of Access Extends to Them. ......................... 6

    A.    Discovery Motions and Supporting Materials Are Not Judicial Records. ...................................................................................... 6

    B.    Neither the Common Law Right of Public Access nor the First Amendment Right of Access Extends to Materials Filed in Connection with a Discovery Motion. ............................................. 7

    C.    Because the Documents in Volume III Are Discovery Materials Rather than Judicial Records and Have Never Been Filed in Connection with a Nondiscovery Motion, They Are Subject to Neither the Common Law Right of Access nor the First Amendment Right of Access and Therefore Should Be Sealed. ......... 9

    D.    A Persuasive Policy Rationale Also Supports the Continued Sealing of the Materials in Volume III. ............................................. 11

II.   Even If Continued Sealing of the Documents in Volume III Requires a Showing of Good Cause, Those Materials Satisfy that Standard. ............... 12

    A.    Good Cause Exists to Continue to Seal POM's Letter-Motion Requesting *in Camera* Review and Production of Confidential Materials that Eckert Withheld on Privilege Grounds. ....................... 13

    B.    Good Cause Exists to Continue to Seal the Annotated, Highly Detailed Document Based on Eckert's Privilege Log that POM Filed in Support of Its Letter-Motion. ................................................. 15

C.       Good Cause Exists to Continue to Seal the Compilation of Confidential Correspondence that Eckert Produced in Discovery and that POM Filed in Support of Its Letter-Motion. ........................ 16

D.       Good Cause Exists to Continue to Seal the Detailed Letter-Brief that Eckert Filed in Opposition to POM's Letter-Motion.................. 18

CONCLUSION .............................................................................................. 19

CERTIFICATE OF COMPLIANCE.................................................................. 20

CERTIFICATE OF SERVICE .......................................................................... 22

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Cendant Corp.*,
260 F.3d 183 (3d Cir. 2001) ...............................................................6, 9

*Genentech, Inc. v. Amgen, Inc.*,
No. 17-1407- CFC, 2020 WL 9432700 (D. Del. Sept. 2, 2020) .........................7

*Keaton v. Folino*,
No. 11-CV-07225-PD, 2017 WL 2618853 (E.D. Pa. June 15,
2017) .................................................................................13, 15, 17

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
998 F.2d 157 (3d Cir. 1993) ...............................................................*passim*

*N. Jersey Media Grp. Inc v. United States*,
836 F.3d 421 (3d Cir. 2016) ..............................................................6, 7, 8, 9

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) ................................................................10

*Poplar Point RBBR, LLC v. United States*,
145 Fed. Cl. 489 (2019)....................................................................13, 16, 17

*Three Bros. Supermarket Inc. v. United States*,
No. 2:19-CV-2003-KSM, 2020 WL 5749942 (E.D. Pa. Sept. 25,
2020) ................................................................................14, 16, 17

*United States v. Anderson*,
799 F.2d 1438 (11th Cir. 1986) ...........................................................6, 11

*United States v. Bowers*,
No. CR 18-292, 2024 WL 4458395 (W.D. Pa. Oct. 10, 2024) ...................*passim*

*United States v. Wecht*,
484 F.3d 194 (3d Cir. 2007) ...............................................................7, 9, 12

*Zachary N. Gordon, Esquire, Appellant v. Selinsgrove Borough*,
    No. 866 C.D. 2019, 2020 WL 2989123 (Pa. Commw. Ct. June 4,
    2020) ...................................................................................................13, 15, 17

**Other Authorities**

Federal Rule of Appellate Procedure Rule 27 ...........................................................1

Pa. R. Prof. Conduct 1.6(a) ...................................................................................3, 14

## **INTRODUCTION**

Appellees, Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal (collectively, "Eckert"), hereby move, pursuant to Rule 27 of the Federal Rules of Appellate Procedure, to seal Volume III of the Joint Appendix, which is docketed at ECF Nos. 30, 35, and 41 ("Volume III"). The four documents included in Volume III are discovery materials that the parties submitted to the district court under seal in connection with a discovery dispute. None of those documents has been filed in connection with a non-discovery motion. Accordingly, under this Court's longstanding precedents, the materials in Volume III are not judicial records and neither the common law right of public access nor the First Amendment right of access extends to them. The Court therefore should seal the four documents included in Volume III, just as the District Court has done and continues to do.

The documents included in Volume III also warrant sealing because they contain the types of confidential business information that might harm the competitive standing of Eckert and/or non-party Greenwood Gaming and Entertainment, Inc., d/b/a Parx Casino ("Parx"). The documents in Volume III were twice filed under seal in this Court, but pursuant to this Court's prior Order, the withdrawal by Parx of the original Volume III, and appellee, Pace-O-Matic, Inc.'s ("POM") motion to include a re-filed version of Volume III in a supplemental

appendix, Eckert now files the instant motion to seal all versions of Volume III. As POM noted in the letter it submitted to the Court on May 30, 2025, "POM does not oppose the sealing of Volume III." ECF No. 37 at 1.

### BACKGROUND AND PROCEDURAL HISTORY

POM is a former client of Eckert. JA396 - JA397.[1] In this case, POM alleges that Eckert breached the fiduciary duties that it owed to POM by concurrently representing POM and Parx, one of POM's purported or potential competitors. *Id*. Parx is a third-party to the litigation filed by POM against Eckert. JA006.

In 2022, the District Court entered a stipulated protective order permitting parties and non-parties to designate as "CONFIDENTIAL" documents produced in discovery so long as they contain one or more types of qualifying confidential information described in three enumerated categories. DE:196:2-3 (the "Protective Order"). The Protective Order generally prohibits public disclosure of documents designated "CONFIDENTIAL" pursuant to its terms and permits the parties to seek leave to seal such documents as part of a court filing. DE:196:5 – 6; DE:196:7 – 8.

---

[1] Citations including the prefix "JA" refer to the three-volume Joint Appendix filed on May 5, 2025 at ECF Nos. 28 – 30 and 35. After Parx withdrew Volume III of the Joint Appendix, POM re-filed it on June 4, 2025 at ECF No. 41.

Citations to "DE:x:y" or "DE:x, ¶ z" refer to entries on the district court docket— "x" refers to the number of the docket entry in question, "y" refers to the relevant page number(s) identified in the stamped ECF line at the top of that filing, and "z" refers to the relevant paragraph within the filing.

2

POM agreed to the entry of the Protective Order.  DE:195:1; DE:196:1.

In the course of the ongoing litigation below, Eckert has produced in discovery thousands of documents relating to work that Eckert performed on behalf of Parx and other Eckert clients.  JA008 – JA009; *see also* JA101 (memorandum decision issued by Magistrate Judge observing that the "clients listed on Eckert's privilege log [include non-parties] Parx, Mohegan [Gaming & Entertainment], and [the] Cordish [Companies]").  Eckert's clients, such as Parx, expect Eckert "to maintain confidentiality" and intend "that communications among its agents and its lawyers remain confidential."  JA273.  Eckert also has professional and ethical obligations to protect the confidentiality of information relating to the work it performs on behalf of its clients.  *See, e.g.*, Pa. R. Prof. Conduct 1.6(a) (subject to certain exceptions, "[a] lawyer shall not reveal information relating to representation of a client").

Because many of the documents that POM has sought in discovery contain confidential information relating to Eckert's representation of its clients, Eckert has properly designated certain of those documents as "CONFIDENTIAL" pursuant to the Protective Order.  All four documents included in Volume III include information that Eckert designated as "CONFIDENTIAL."  *See* Appellee's Motion for Leave to Supplement the Appendix and for Leave to File Provisionally Under Seal (ECF No. 40) (the "POM Motion to Supplement") at 3 (noting that "Eckert . . .

designated as 'Confidential'" the four documents in Volume III); Joint Motion for Leave to File Volume III of Appendix Under Seal (ECF No. 31) (the "Joint Motion") at 2 (same).

When POM filed a discovery letter-motion challenging certain privilege assertions reflected on Eckert's privilege log—which letter-motion later gave rise to the issue involved in this non-party appeal—POM filed under seal with the District Court the four documents designated "CONFIDENTIAL" that now comprise Volume III. Those four documents are (i) POM's letter-motion requesting, *inter alia*, *in camera* review and production of certain materials Eckert withheld on privilege grounds, JA466-JA473; (ii) an annotated version of Eckert's privilege log, which POM created and filed in support of its letter-motion, JA474-JA474; (iii) a compilation of correspondence that Eckert produced in discovery and that POM filed in support of its letter-motion, JA485-JA513; and (iv) Eckert's letter-brief opposing POM's letter-motion. JA514-JA525. POM moved for leave to file all four of those documents under seal with the District Court. DE:295:1. The District Court granted POM's motion and sealed all four records. DE:300:1 ("The court GRANTS Plaintiff's motion to file documents under seal.").

A Magistrate Judge conducted the *in camera* review that POM requested. JA171-JA173. The District Court thereafter ordered to Eckert to produce nearly all of the documents that it had withheld as privileged, many of which are confidential

communications between Eckert and its client Parx. *See* JA174-JA175 (District Court order); *see also, e.g.*, JA019 (portion of District Court's memorandum decision describing document reviewed *in camera* as "email message from [Eckert attorney Mark] Stewart to two Parx executives"); JA022 (portion of District Court's memorandum decision describing other documents reviewed *in camera* as "email messages from an Eckert attorney to Parx executives"). Parx timely appealed that order. *See* JA001-JA004.

On May 5, 2025, Parx and POM moved jointly to file Volume III under seal. Joint Motion at 1; *see also* ECF Nos. 30 and 35 (docket entries reflecting filing of sealed electronic and paper copies, respectively, of Volume III). In the Joint Motion, POM and Parx acknowledged that the four documents included in Volume III are designated "CONFIDENTIAL" pursuant to the Protective Order and are sealed in the District Court. Joint Motion at 2. POM and Parx also acknowledged that "[t]he parties do not believe that the filing of this limited set of materials under seal will impair the public's ability to access or understand the proceedings in this appeal." *Id*. On May 30, 2025, POM filed a letter stating, *inter alia*, that "POM does not oppose the sealing of Volume III." ECF No. 37 at 1. After the Court deferred action on the Joint Motion, *see* ECF No. 36, Parx withdrew the Joint Motion and Volume III. *See* Withdrawal of Motion and Volume III of Joint Appendix Filed Under Seal (ECF No. 38) at 1 – 2.

On June 4, 2025, POM re-filed an essentially identical copy of Volume III under seal. *See* POM Motion to Supplement at 6 n.6 ("POM is submitting Volume III as an exhibit to this Motion. The contents of this exhibit are identical to the originally filed version of Volume III, except" as to the cover and certificate of service); *see also* ECF No. 41 (docket entry for re-filed, electronic version of Volume III). In its motion to supplement, POM requested leave to "file Volume III provisionally under seal" and acknowledged that "the District Court ordered [the documents included in Volume III] to be filed under seal, and they remain sealed on the District Court docket to this day." POM Motion to Supplement at 4, 8. By this motion, Eckert also joins in and supports POM's request to seal Volume III.

## ARGUMENT

**I. The Court Should Seal Volume III Because the Documents in It Are Not Judicial Records and Neither the Common Law Right of Public Access nor the First Amendment Right of Access Extends to Them.**

    **A. Discovery Motions and Supporting Materials Are Not Judicial Records.**

"Whether or not a document or record is subject to the right of access turns on whether that item is considered to be a 'judicial record.'" *In re Cendant Corp.*, 260 F.3d 183, 192–93 (3d Cir. 2001) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994)). "[D]iscovery materials that are part of judicial filings are generally not 'judicial records' . . . ." *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 435 (3d Cir. 2016); *see also United States v. Anderson*, 799 F.2d 1438,

1441 (11th Cir. 1986) ("[D]ocuments collected during discovery are not 'judicial records.'"); *United States v. Bowers*, No. CR 18-292, 2024 WL 4458395, at *4 (W.D. Pa. Oct. 10, 2024) ("[D]iscovery materials are not judicial records . . . ."); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions, . . . but *no* such right as to discovery motions and their supporting documents.") (emphasis added); *Genentech, Inc. v. Amgen, Inc.*, No. 17-1407- CFC, 2020 WL 9432700, at *3 (D. Del. Sept. 2, 2020) ("underlying discovery material *itself* is not a judicial record") (citing *Leucadia*, 998 F.2d at 157), *report and recommendation adopted*, No. CV 17-1407-CFC, 2020 WL 9432702 (D. Del. Oct. 1, 2020).

B. **Neither the Common Law Right of Public Access nor the First Amendment Right of Access Extends to Materials Filed in Connection with a Discovery Motion.**

Consistent with its observation that "discovery materials . . . are generally not 'judicial records,'" *N. Jersey Media*, 836 F.3d at 435, this Court has repeatedly reaffirmed that "the common law [right] of presumptive access to documents filed in court does not extend to material filed with discovery motions . . . ." *Leucadia*, 998 F.2d at 165 (no common law right of access to discovery motions and supporting materials); *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007), as amended (July 2, 2007) ("[D]ocuments filed with the court are generally subject to the

7

common law right of access, *unless* attached to a discovery motion.") (emphasis added); *N. Jersey Media*, 836 F.3d at 435 ("discovery materials that are part of judicial filings . . . do not fall within the common law right of access."); *id.* ("recogniz[ing] the longstanding limitation on the public's access to discovery materials and so limited . . . common law right of access, even when discovery motions and their supporting documents are filed with the court.") (citing *Leucadia*, 998 F.2d at 165); *see also, e.g.*, *Bowers*, 2024 WL 4458395, at *4 ("[D]iscovery materials are not judicial records and do not fall within the public right of access, and are thus properly maintained under seal, consistent with the Court's discussion above holding that experience and logic both counsel that discovery materials should remain private.").

This Court has likewise held that the First Amendment right of access does not extend to pretrial discovery materials. *N. Jersey Media*, 836 F.3d at 434 ("We therefore conclude that logic weighs against a First Amendment right of access to pretrial discovery materials like the Conspirator Letter."); *see also Bowers*, 2024 WL 4458395, at *3 ("The Court finds that there is no First Amendment or common law right of access to the discovery correspondence discussed herein, which are not 'judicial records.'") (citing *N. Jersey Media*, 836 F.3d at 435).

8

**C.    Because the Documents in Volume III Are Discovery Materials Rather than Judicial Records and Have Never Been Filed in Connection with a Nondiscovery Motion, They Are Subject to Neither the Common Law Right of Access nor the First Amendment Right of Access and Therefore Should Be Sealed.**

The documents included in Volume III are a discovery letter-motion, discovery letter-brief, and supporting discovery materials. *See* JA466-JA473 (POM's letter-motion requesting, *inter alia*, *in camera* review and production of certain materials Eckert withheld on privilege grounds); JA474-JA474 (annotated version of Eckert's privilege log, which POM created and filed in support of its letter-motion); JA485-JA513 (compilation of confidential correspondence that Eckert produced in discovery and that POM filed in support of its letter-motion); JA514-JA525 (Eckert's letter-brief opposing POM's letter-motion for *in camera* review and to compel production of materials withheld on privilege grounds). Moreover, none of the documents in Volume III has been filed in connection with a non-discovery motion. *See* JA239-JA263 (district court docket). Accordingly, the documents in Volume III are not judicial records and are subject to neither the common law right of access nor the First Amendment right of access. *N. Jersey Media*, 836 F.3d at 434-35; *Leucadia*, 998 F.2d at 165; *Wecht*, 484 F.3d at 209; *Bowers*, 2024 WL 4458395, at *3-4; *see also Cendant*, 260 F.3d at 192 ("[w]hether or not a document . . . is subject to the right of access turns on whether that item is considered a 'judicial record.'") (citation omitted). The Court therefore should

9

maintain Volume III under seal, as the District Court has done. *See, e.g.*, *Pansy*, 23 F.3d at 783 ("The Settlement Agreement is not a 'judicial record,' and the district court correctly concluded that the Newspapers cannot obtain access to that document under the right of access doctrine.") (footnote omitted); *Bowers*, 2024 WL 4458395, at *4 ("[D]iscovery materials are not judicial records and do not fall within the public right of access, *and are thus properly maintained under seal . . . .*") (emphasis added).

*Bowers* is particularly instructive. There, the District Court considered whether to maintain under seal dozens of documents that it had sealed previously. 2024 WL 4458395, at *1. The District Court concluded that several dozen of the documents at issue should remain under seal because they "constitute discovery materials or motions, . . . responsive pleadings to discovery motions, [or] related attachments . . . ." *Id.* at *4. The District Court's reasoning was straightforward: "*[D]iscovery materials are not judicial records* and do not fall within the public right of access, and are thus properly maintained under seal, consistent with the Court's discussion above holding that experience and logic both counsel that discovery materials should remain private." *Id.* (emphasis added). The District Court did not require the party seeking continued sealing to show good cause, much less any compelling interest, justifying further sealing. *Id.* Instead, the District Court correctly concluded that because "discovery materials or motions" are not

10

"judicial records," continued sealing was justified. *Id*. This Court should do the same here.

### D. A Persuasive Policy Rationale Also Supports the Continued Sealing of the Materials in Volume III.

A persuasive policy rationale also supports the continued sealing, at the appellate level, of discovery materials that, like those in Volume III, already have been sealed by a trial court:

> Discovery is neither a public process nor typically a matter of public record. Historically, discovery materials were not available to the public or press. . . .

> \*       \*       \*

> If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe. Not only would voluntary discovery be chilled, but whatever discovery and court encouragement that would take place would be oral, which is undesirable to the extent that it creates misunderstanding and surprise for the litigants and the trial judge. Litigants should not be discouraged from putting their discovery agreements in writing, and district judges should not be discouraged from facilitating voluntary discovery.

*Anderson*, 799 F.2d at 1441 (affirming district court's order sealing notice of similar acts evidence and bill of particulars) (citations and internal quotation marks omitted); *see also Leucadia*, 998 F.2d at 164 ("[A] holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly

11

aggressive discovery demands."). Accordingly, both sound policy considerations and this Court's longstanding precedents governing access to judicial records support the continued sealing of the documents in Volume III.

## II. Even If Continued Sealing of the Documents in Volume III Requires a Showing of Good Cause, Those Materials Satisfy that Standard.

As set forth in Section I.C above, the four documents in Volume III are discovery materials rather than judicial records and therefore are subject to neither the common law right of access nor the First Amendment right of access. Accordingly, Volume III is not subject to any presumption of openness. *See, e.g.*, *Leucadia*, 998 F.2d at 165 ("holding that the common law [right] of presumptive access to documents filed in court does not extend to material filed with discovery motions"); *Wecht*, 484 F.3d at 212 n.22 ("[D]emonstrating good cause in the absence of a common law right does not require overcoming a strong presumption in favor of public access."). In fact, "[s]ome of [this Court's] previous cases might suggest," in these circumstances, that a litigant seeking to maintain Volume III under seal need *not* meet the good cause standard. *Wecht*, 484 F.3d at 212 n.22 ("Some of our previous cases might suggest that the good cause standard should be applied only after a finding that there *is* a common law right of access.") (emphasis added) (citing *Leucadia,* 998 F.2d at 166–67). In any event, even if this Court's precedents do require Eckert to show good cause to maintain Volume III under seal, the documents in Volume III satisfy that standard.

**A.    Good Cause Exists to Continue to Seal POM's Letter-Motion Requesting *in Camera* Review and Production of Confidential Materials that Eckert Withheld on Privilege Grounds.**

The first of the four documents in Volume III is POM's letter-motion requesting, *inter alia*, *in camera* review and production of certain materials that Eckert withheld on privilege grounds. JA466-JA473. There is good cause to continue to seal this document because it contains descriptions of confidential (and withheld) communications that Eckert sent to or on behalf of its clients. *See, e.g.,* JA467 (identifying, for withheld document identified as PRIV-925, the name of the Eckert attorney who sent the email; the name of the recipients, one of whom is an in-house attorney at an Eckert client (*see* JA153); and the subject and date of that email); JA467 and J470 (same information for nine additional emails). Pennsylvania courts and federal courts routinely permit or order the sealing of privilege logs containing such information. *See, e.g.*, *Zachary N. Gordon, Esquire, Appellant v. Selinsgrove Borough*, No. 866 C.D. 2019, 2020 WL 2989123, at \*2 (Pa. Commw. Ct. June 4, 2020) ("The trial court ordered that the privilege log be sealed . . . . Counsel agreed to the entry of this order and no issues were raised following the order's issuance."); *Keaton v. Folino*, No. 11-CV-07225-PD, 2017 WL 2618853, at \*3 (E.D. Pa. June 15, 2017) ("For these reasons, I will issue an order requiring the petitioner's counsel to submit a privilege log under seal."); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 493 (2019) ("[T]he court ordered the government

13

to file under seal the privilege log prepared for these documents."); *see also* Pa. R. Prof. Conduct 1.6(a) (subject to certain exceptions, "[a] lawyer shall not reveal information relating to representation of a client"). Here, as in those cases, good cause exists to order POM's letter-motion—which quotes and examines information drawn directly from Eckert's privilege log—to remain under seal.

Courts have also permitted the sealing of "business information" concerning non-parties. *Three Bros. Supermarket Inc. v. United States*, No. 2:19-CV-2003-KSM, 2020 WL 5749942, at *4 (E.D. Pa. Sept. 25, 2020) ("[T]he Government has shown that disclosure of comparator's business information . . . is 'the kind of information that courts will protect' and that disclosure 'will work a clearly defined and serious injury.'") (quoting *In re Avandia Mktg. Sales Practice & Prods. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019)); *Leucadia*, 998 F.2d at 166 ("Documents containing . . . confidential business information may be protected from disclosure."). This rationale likewise supports the continued sealing of POM's letter-motion because that document describes numerous confidential (and withheld) communications concerning Parx and other non-parties. *See* JA467 (describing confidential withheld communications for which the "[c]lient [i]nvolved" is Parx); JA470 (describing and discussing confidential withheld communications for which the "[c]lients [i]nvolved" are Parx and two other non-parties). As noted above, Eckert's clients, such as Parx, expect Eckert "to maintain confidentiality" and intend

14

"that communications among its agents and its lawyers remain confidential." JA273. Accordingly, good cause exists to protect the third-party Eckert clients whose business information is reflected in POM's letter-motion. The Court therefore should maintain that letter-motion under seal.

**B.    Good Cause Exists to Continue to Seal the Annotated, Highly Detailed Document Based on Eckert's Privilege Log that POM Filed in Support of Its Letter-Motion.**

The second of the four documents in Volume III is an annotated version of Eckert's privilege log; POM created that document and filed it in support of POM's letter-motion. JA474-JA484. There is good cause to continue to seal this document because it contains detailed descriptions of more than 100 confidential (and withheld) communications that Eckert sent to or on behalf of its clients. In fact, this document contains significantly more confidential information than a standard privilege log because for each of the communications at issue, this document also identifies the "[a]ssociated [non-party] [c]lient(s)" and/or the "[a]ssociated [l]itigations." *See id. passim*; *see also, e.g.*, JA474 (identifying, for withheld documents identified as PRIV-00062 and PRIV-00068, three different non-party clients "[a]ssociated" with those confidential communications). As noted above, Pennsylvania courts and federal courts routinely permit or order the sealing of privilege logs containing less detailed information than this document contains. *See Selinsgrove Borough*, 2020 WL 2989123, at *2; *Keaton v. Folino*, 2017 WL

15

2618853, at *3; *Poplar Point*, 145 Fed. Cl. at 493.  Even more than in those cases, good cause exists here to order this document—which includes *more* client-specific and detailed information than a normal privilege log does—to remain under seal.

Good cause also exists to maintain this document under seal because it contains and reflects information about the business of various non-parties.  *See, e.g.*, JA474 (identifying, for withheld documents identified as PRIV-00062 and PRIV-00068, three different non-party clients "[a]ssociated" with those confidential communications); JA475 (same with respect to withheld documents identified as PRIV-00069 – PRIV-00072 and PRIV00076 – PRIV00079); JA476 (same with respect to withheld documents identified as PRIV-00084 – PRIV-00101); JA479 (same with respect to withheld documents identified as PRIV-00653 – PRIV-00657).  The Court therefore should maintain this document under seal.  *See Three Bros.*, 2020 WL 5749942, at *4 ("disclosure of comparator's business information . . . is 'the kind of information that courts will protect' and that disclosure 'will work a clearly defined and serious injury.'") (quoting *Avandia*, 924 F.3d at 676); *Leucadia*, 998 F.2d at 166 ("Documents containing . . . confidential business information may be protected from disclosure.").

**C.    Good Cause Exists to Continue to Seal the Compilation of Confidential Correspondence that Eckert Produced in Discovery and that POM Filed in Support of Its Letter-Motion.**

The third of the four documents in Volume III is a compilation of confidential

16

correspondence that Eckert produced in discovery and that POM filed in support of its letter-motion. JA485-JA513. There is good cause to continue to seal this document because it contains confidential communications that disclose, reflect, and discuss certain tasks that Eckert "has been asked to" perform on behalf of one or more non-party clients. JA489 (email from Eckert attorney Mark Stewart describing tasks Eckert "ha[s] been asked to" perform); JA497-JA499 (list of "potential questions" that Eckert attorneys drafted for potential use at hearing); JA506 (email attaching and describing "statement/questions" Eckert attorney drafted). Because these communications—which Eckert produced in full—contain and reflect significantly more information about the business of Eckert's non-party client(s) than would a privilege log, the case for maintaining this document under seal is even stronger than the already strong arguments in favor of sealing information drawn from Eckert's privilege log. *See Selinsgrove Borough*, 2020 WL 2989123, at *2; *Keaton v. Folino*, 2017 WL 2618853, at *3; *Poplar Point*, 145 Fed. Cl. at 493; *see also Three Bros.*, 2020 WL 5749942, at *4 ("disclosure of comparator's business information . . . is 'the kind of information that courts will protect' and that disclosure 'will work a clearly defined and serious injury.'") (quoting *Avandia*, 924 F.3d at 676); *Leucadia*, 998 F.2d at 166 ("Documents containing . . . confidential business information may be protected from disclosure."). Accordingly, as in those cases, good cause exists to warrant the continued sealed of this document.

17

**D.    Good Cause Exists to Continue to Seal the Detailed Letter-Brief that Eckert Filed in Opposition to POM's Letter-Motion.**

The fourth of the four documents in Volume III is Eckert's letter-brief opposing POM's letter-motion for *in camera* review and to compel production of certain materials withheld on privilege grounds. JA514-JA525. There is good cause to continue to seal this document because it contains detailed descriptions of confidential (and withheld) communications that Eckert sent to or on behalf of its clients. *See, e.g.*, JA519-JA520 (describing withheld email identified as PRIV-925, including the name of one recipient who is an in-house attorney at an Eckert client). Eckert's letter-brief also contains detailed descriptions and discussions of Eckert's privilege logs. *See* JA518 (describing "unredacted version of Eckert's April 2023 amended privilege log" and explaining why it should be sealed); JA519 (describing second document in Volume III and explaining why it merits sealing). In fact, because Eckert's letter-brief responds to and discusses the first and second documents included in Volume III, the sealing rationales set forth in Sections II.A and II.B above apply with equal force to Eckert's letter-brief. Accordingly, and for all of the reasons set forth in those portions of this Motion, good cause exists to continue to seal Eckert's letter-brief.

18

## **CONCLUSION**

For the foregoing reasons, Eckert respectfully requests that the Court continue to seal all versions of Volume III of the Joint Appendix, which are docketed at ECF Nos. 30, 35, and 41.

Dated: June 16, 2025     Respectfully submitted,

ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
FOX ROTHSCHILD LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)

*Counsel for Defendants-Appellees Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart and Kevin M. Skjoldal*

19

## CERTIFICATE OF COMPLIANCE

The undersigned counsel to Defendants-Appellees Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal hereby certifies that this Motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,413 words.

The undersigned counsel further certifies that this Motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using 14-point Times New Roman font.

The undersigned further certifies that this file was scanned by a virus-protection program—namely, CrowdStrike Windows Sensor software (version 7.24.19607.0)—and that no virus was detected.

Dated:  June 16, 2025                    Respectfully submitted,


_____
ROBERT S. TINTNER, ESQUIRE

## <u>CERTIFICATES OF BAR MEMBERSHIP</u>

I, Robert S. Tintner, Esquire, hereby certify that I am a member in good

standing of the bar of this Court.

_____

ROBERT S. TINTNER, ESQUIRE

Dated:   June 16, 2025

I, Peter C Buckley, Esquire, hereby certify that I am a member in good

standing of the bar of this Court.

_____

PETER C. BUCKLEY, ESQUIRE

Dated:   June 16, 2025

21

## **CERTIFICATE OF SERVICE**

I, Robert S. Tintner, Esquire, hereby certify that on June 16, 2025, the foregoing was filed with this Court and served on all parties by the Court's CM/ECF system.

_____
ROBERT S. TINTNER, ESQUIRE

*Counsel for Defendants-Appellees*
*Eckert Seamans Cherin & Mellott, LLC,*
*Mark S. Stewart, and Kevin M. Skjoldal*