# In the United States Court of Appeals for the Third Circuit

---

Docket No. 24-1984

---

## PACE-O-MATIC, INC.

*vs.*

## ECKERT, SEAMANS CHERIN & MELLOTT, LLC; MARK S. STEWART; KEVIN M. SKJOLDAL

## APPEAL OF GREENWOOD GAMING AND ENTERTAINMENT, INC., d/b/a PARX CASINO

---

*On direct appeal from an opinion and order of the United States District Court for the Middle District of Pennsylvania dated April 29, 2024, reconsideration denied July 3, 2024*

---

## REPLY BRIEF OF APPELLANT GREENWOOD GAMING & ENTERTAINMENT, INC., d/b/a PARX CASINO

---

### GA BIBIKOS LLC

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino*

June 18, 2025

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................ 1

II.  REPLY ARGUMENT .......................................................... 5

    A.   The Court has jurisdiction. ................................................. 5

        1.   Eckert is a disinterested, third-party custodian of
            privileged documents under *Perlman*............................ 5

            a.   Lawyers are presumptively disinterested. .......... 6

            b.   Eckert is disinterested even if it invoked
                work-product immunity. ..................................... 8

            c.   Eckert is disinterested despite being a
                defendant in the underlying litigation. ..............10

        2.   There are no meaningful alternatives for Parx to
            challenge the privilege ruling. ....................................11

            a.   The contempt option is unavailable and
                impracticable.....................................................11

            b.   The mandamus alternative is unavailable
                when there are appellate remedies. ...................14

            c.   A post-judgment appeal is inadequate to
                prevent irreparable harm. ..................................15

        3.   *Mohawk* does not foreclose a *non-party's* appeal
            under *Perlman* or the collateral-order doctrine...........16

    B.   The privilege applies to the documents at issue...................19

        1.   The sole purpose of the communications in the
            documents is to provide advice on legal matters.........19

        2.   Parx did not "buy" the protections of the privilege
            by hiring Eckert to do non-legal work. ........................22

3.      Parx met its burden of proving that the privilege
        applies; POM did not. ................................................24

C.      The Court should reject the rest of POM's arguments.........29

II.    CONCLUSION.........................................................................34

# TABLE OF AUTHORITIES

**Cases**

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014)..................................................................34

*BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019)....................33

*Church of Scientology v. United States*, 506 U.S. 9, 18 n.11 (1992) ........................................................................ 6

*Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) ................................................................24

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423, 2001 WL 1046982 (E.D. Pa. 2001)................................................................29

*Hahnemann University Hospital v. Edgar*, 74 F.3d 456, 460-462 (3d Cir. 1996)................................................14

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91-92, 97 (3d Cir. 1992)................................................................30

*In re County of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007)................21, 23

*In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997), overruled on other grounds by Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009))....................................21

*In re Grand Jury (ABC Corp.)*, 705 F.3d 133 (2012) ............................ 6

*In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 800 (3d Cir. 1979) ....................................................7, 9, 11, 12

*In re Grand Jury Subpoena (ABC Company)*, 696 F. App'x 66, 69, 2017 WL 2609225 (3d Cir. 2017) ............................................ 7

*In re Grand Jury Subpoena*, 204 F.3d 516, 523 (4th Cir. 2000).............24

*In re Investigating Grand Jury of Philadelphia Cnty.*, 593 A.2d 402, 407 (Pa. 1991) ...............................................................28

*In re Klein,* 776 F.2d 628, 630-32 (7th Cir 1985) ..................................... 8

*In re Naranjo*, 768 F.3d 332, 345 (4th Cir. 2014) ..................................... 8

*In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998)............................. 8

*In re Sealed Case*, 655 F.2d 1298, 1301 (D.C. Cir. 1981)........................ 9

*In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983) ................................ 9

*McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012)..................................................................................................34

*MDL Cap. Mgmt., Inc. v. Fed. Ins. Co.*, No. 05CV1396, 2006 WL 8458192, at *1 (W.D. Pa. Mar. 22, 2006) .........................27, 29

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 110-11 (2009) ...............................................................................*passim*

*N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009)...................................................................................................31

*Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa. Super. 2007) ..................................................................................19

*Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC,* No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023)................16

*Perlman v. United States*, 247 U.S. 7 (1918) .................................*passim*

*Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968).................................................................31

*Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (2020) ................................... 9

*Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).........................30

*See In re County of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007) ...............21

*In re Grand Jury Subpoena (Corporation and Attorney)*, 745 F.3d 681, 686-87 (3d Cir. 2014) .................................................. 7

*Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014) .................................................................23

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005) ......................................................33

*Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) .........................................25

*United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ...............24

*United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012) .............24

*United States v. Rahimi*, 602 U.S. ----, 144 S.Ct. 1889 (2024).................18

*United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990).................................................................................27

*Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685 (2022)............................18

**Statutes**

28 U.S.C. § 1291.................................................................. 7

**Rules**

Fed. R. Civ. Pro. 26(b)(5)(2) ................................................26

Fed. R. Civ. Pro. 26(c) ...............................................11, 22

Fed. R. Civ. Pro. 45 ....................................................11, 22

Pa.R.P.C. 1.4 ........................................................................ 7

Pa.R.P.C. 1.6 ........................................................................ 7

**Treatises**

15B Wright & Miller, *Federal Practice & Procedure* § 3914.23
   (2d ed.) ...................................................................................... 7


**Other Authorities**

Bryan Lammon, *Perlman Appeals after Mohawk*, 84 U. CIN.
   L. REV. 1, 7 (2016) ........................................................................12

Cassandra Burke Robertson, *Appellate Review of Discovery
   Orders in Federal Court: A Suggested Approach for
   Handling Privilege Claims*, 81 WASH. L. REV. 733 (2006) .............13

Non-party Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), submits its reply brief.

## I.   INTRODUCTION

In its opening brief, Parx explained that, contrary to the district court's decision, the attorney-client privilege protects confidential communications among clients and their lawyers (and their respective privileged agents) regarding advice on "legislative" matters. Parx also pointed out that the district court erred in a variety of other ways, such as refusing to credit an uncontested declaration supporting Parx's privilege, refusing to order redaction of admittedly privileged information, and invoking waiver to circumvent Parx's various (and dispositive) arguments.

In response, Pace-O-Matic, Inc. ("POM") makes clear its intention that it does not want this Court to resolve the appeal on the merits, devoting half of its brief to jurisdictional arguments even though this Court's jurisdiction is not meaningfully in question. The Court has jurisdiction over Parx's non-party appeal from an adverse privilege ruling directed to the defendant Eckert, Seamans, Cherin & Mellot LLC ("Eckert") as custodian of Parx's privileged documents.

POM's arguments on the merits fare no better. As a threshold matter, POM mischaracterizes Parx's position, claiming that Parx is taking an "absolutist" and "radical" approach by asking this Court to apply the privilege categorically to documents reflecting legislative matters. That is not Parx's position. Parx asks this Court to correct errors on the legal standards so Parx as a non-party may have the benefit of a proper analysis before the courts issue decisions subjecting privileged documents to disclosure. That did not happen here. If the Court is inclined, Parx welcomes a remand so the district court can apply privilege in the proper fashion through the proper lens. There is nothing radical, absolutist, or categorical about that approach.

In addition, POM derides Parx for urging the Court to hold that the privilege applies to advice regarding legislative matters, ***but then POM seems to concede the point***. This is an understandable hedge because that company may well be constrained to take an inconsistent position if and when the shoe is on the other foot.

POM has its own lawyers, lobbyists, and communications professionals presumably advising POM about legislative matters regarding the legality or illegality of gambling devices that POM

manufactures.  As Parx has noted, POM has sued Parx's lobbyists and other professionals in various state court actions in which documents reflecting advice that POM receives on legislative, policy, politics, lobbying, or related matters are or may be at issue. POM therefore would have this Court hold that the privilege applies to legal advice regarding legislative matters *as long as Parx is not the one asserting it*. The Court should reject that duplicitous approach.

As for the merits, all of POM's arguments fail across the board. Although POM invokes many complimentary adverbs in an attempt to bolster an otherwise faulty analysis by the magistrate judge and district court, that is not enough to overcome Parx's arguments. As described below: (a) the sole purpose of the communications in the documents at issue is to provide advice to Parx on legal matters; (b) Parx did not "buy" the protections of the privilege by hiring Eckert to do non-legal work; (c) Parx met its burden of proving that the privilege applies while POM did not. The Court should also reject POM's other straw-grasping arguments because they are absurd.

As a final point, Parx's privileged communications are not necessary for POM to support its case against Eckert.  The question in

3

the underlying litigation is whether Eckert contemporaneously represented clients with adverse interests without a proper conflict waiver in place. POM knows that Eckert represented Parx (and multiple other casinos) to challenge the legality of POM's games because they are unregulated gambling machines. There are hundreds (if not thousands) of documents reflecting that fact. The courts have no business letting POM pile on in a way that invades a non-party's privileged materials for duplicative information that is disproportionate to the needs of the case.

In view of that, POM's repeated requests for documents that contain legal advice, including advice on legislative and related matters, can only be explained by POM's obsession with Parx's privileged materials rather than any meaningful need to establish a fact to meet POM's burden of proof on the underlying claims. Although the district court has yet to reign in POM's repeated efforts to discover a non-party's privileged materials (in violation of the settled principle that courts should treat non-parties with great care), the Court here can put an end to all this by fixing the errors committed by the magistrate judge and district court and precluding POM from invading Parx's privileged communications any further.

Accordingly, the Court should reject POM's arguments and hold that the privilege applies to the documents at issue.

## II.    REPLY ARGUMENT

Parx's opening brief adequately addresses and disposes of virtually all of POM's arguments such that Parx will not repeat those points here. Parx submits this reply to address several points.

### A.    *The Court has jurisdiction.*

POM argues in its brief that the Court does not have jurisdiction because (1) Eckert, as custodian of the documents at issue, is not "disinterested" under *Perlman v. United States*, 247 U.S. 7 (1918); (2) Parx should pursue alternatives such as contempt, mandamus, or post-judgment appeal (after seeking intervention); and (3) *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009), forecloses a non-party's right to appeal an adverse privilege ruling. *See* POM Br. at 12-29. POM is wrong.

#### 1.    **Eckert is a disinterested, third-party custodian of privileged documents under *Perlman*.**

Contrary to POM's first argument, Eckert is disinterested in Parx's privileged documents for at least three reasons.

### a. Lawyers are presumptively disinterested.

A party in possession of privileged documents is "disinterested" in the *Perlman* sense when it lacks a sufficient stake such that it is unlikely to risk contempt voluntarily in order to protect privileged documents from disclosure. *See Perlman*, 247 U.S. at 15.

Courts *presume* a third party would not voluntarily submit to contempt sanctions in order to prevent a non-party's privileged documents from disclosure. *See Church of Scientology v. United States*, 506 U.S. 9, 18 n.11 (1992) (stating that "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because *the third party **presumably** lacks a sufficient stake in the proceeding to risk contempt by refusing compliance*") (emphasis added).

The case law in this Circuit does not require that a third party custodian have zero interest or connection to the privileged materials at issue. *In re Grand Jury (ABC Corp.)*, 705 F.3d 133 (2012). For example, lawyers and law firms having possession of privileged documents are always "interested" to some extent in protecting their client's privileged documents. They have duties to raise privilege objections to preserve confidentiality and inform clients of disclosure orders. *See, e.g.*, Pa.R.P.C.

6

1.4; Pa.R.P.C. 1.6. But that does not mean they would risk contempt. *See, e.g.*, *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798,  (3d Cir. 1979). As a leading federal practice treatise has noted:

> Most decisions allow the client to appeal, either on a general theory that ***the client cannot expect the attorney to act in contempt in order to support an appeal*** or at times on the basis of the attorney's representation that he would not act in contempt. Appeal may be permitted to protect the attorney-client relationship as well as to protect claims of privilege.

*See* 15B Wright & Miller, *Federal Practice & Procedure* § 3914.23 (2d ed.).

This Court expressly has held that lawyers and law firms facing subpoenas or discovery orders calling for a non-party client's privileged information are "disinterested" for purposes of *Perlman. See In re Grand Jury Subpoena (Corporation and Attorney)*, 745 F.3d 681, 686-87 (3d Cir. 2014) ("***Attorney is a disinterested third party*** controlling allegedly privileged information. As such, this Court has jurisdiction to hear the appeal brought by Intervenors, the privilege holders."); *see also In re Grand Jury Subpoena (ABC Company)*, 696 F. App'x 66, 69 (3d Cir. 2017) ("***Law Firm is a disinterested third-party*** controlling ABC Company's privileged information, and the District Court ordered disclosure of that information. Under the *Perlman* exception, we therefore have appellate jurisdiction pursuant to 28 U.S.C. § 1291.") (emphases added).

The Court is not alone in that viewpoint. Other circuits go further and have held that non-party clients *always* have direct-appeal rights as soon as their attorneys are compelled to produce privileged documents. *See In re Klein*, 776 F.2d 628, 630-32 (7th Cir 1985). Despite research, Parx is not aware of a case in this Circuit in which the Court declined jurisdiction over a non-party's appeal solely on the basis that the third-party holder of privileged documents is a lawyer or law firm. POM has cited no such case, either. If POM were correct, this Court would have reached different results in the cases cited above.  It did not.

> **b.  Eckert is disinterested even if it invoked work-product immunity.**

Nevertheless, POM argues that Eckert is not "disinterested" under *Perlman* because it objected to the disclosure of documents and asserted its own work-product immunity as a basis to withhold them. *See* POM Br. at 17-19. POM is wrong.

As a threshold matter, POM relies almost exclusively on non-binding cases from other circuits to claim that Eckert is not "disinterested" in the *Perlman* sense solely because Eckert asserted work-product immunity. *See In re Naranjo*, 768 F.3d 332, 345 (4th Cir. 2014); *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998); *In re Vargas*,

723 F.2d 1461, 1466 (10th Cir. 1983); *In re Sealed Case*, 655 F.2d 1298, 1301 (D.C. Cir. 1981).

This Court has its own *Perlman* jurisprudence. The Court need not resort to decisions of sister circuits to resolve this jurisdictional dispute. More importantly, the Court should not follow these decisions when doing so surely would create inconsistency in the jurisprudence in this Circuit. *See Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020).

The non-binding cases on which POM relies, moreover, directly conflict with this Court's precedent. In *FMC,* this Court specifically held that the non-subpoenaed holder of the attorney-client privilege (like Parx here) had direct-appeal rights under *Perlman* to press both attorney-client privilege *and* work-product protection (the latter immunity belongs to the lawyer). *Id.* at 801-02.  In other words, lawyers holding privileged documents are still "disinterested" even if they have their own privilege(s) to assert.

In any case, these points are academic because Parx is not claiming work-product immunity on appeal. Eckert asserted work-product immunity. The district court declined to shield the documents on that basis, holding instead that Eckert waived the protection. *See* JA011 n.4.

9

Eckert has not challenged that ruling. Parx appealed the disclosure order as a non-party defending its privilege. Parx has the only interest in the privilege that protects the documents from disclosure notwithstanding anyone else's privilege or immunity that may or may not apply.

### c. Eckert is disinterested despite being a defendant in the underlying litigation.

POM seems to speculate that Eckert has an interest in preventing POM from seeing Parx's privileged documents because they may be damaging to the firm's defenses. *See* POM Br. at 17. Not so.

Like all other lawyers and law firms, Eckert is duty bound to assert the attorney-client privilege on Parx's behalf when litigants like POM attempt to invade that sacrosanct relationship. Eckert has no say in that. Eckert has that duty even if it desired to disclose everything to POM in the underlying litigation. Indeed, the Court surely could conceive of a situation in which Eckert may well benefit from disclosing privileged materials supporting its defenses.

By definition, then, Eckert is disinterested in the *Perlman* sense. Eckert has an interest in defending against claims of breaching a fiduciary duty and protecting its financial interests in the underlying litigation. As noted, Eckert did not appeal. If the documents are

privileged, the courts cannot order their disclosure whether Eckert wants to disclose the documents or not. *See* FRCP 26(c) and FRCP 45 (both precluding discovery of privileged information). If the documents are relevant and not privileged, Eckert cannot complain about their disclosure, and neither could Parx.

### 2. There are no meaningful alternatives for Parx to challenge the privilege ruling.

POM next argues that Parx has alternatives to a direct appeal under *Perlman. See* POM Br. at 19-21. The alternatives POM suggests are no alternatives at all.

### a. The contempt option is unavailable and impracticable.

*First*, neither Parx nor Eckert should be compelled to violate the disclosure order and suffer contempt instead of appealing. *Cf.* POM Br. at 27. That is unnecessary. This Court has applied *Perlman* without requiring that the lawyers or the non-party first suffer contempt. *See FMC*, 604 at 800.

Indeed, a non-party cannot pursue the contempt route because the third-party custodian (a lawyer or law firm), as here, is the target of the

discovery and expressly bound by the disclosure order, whereas the non-party is not.  As one commentator noted:

> But discovery orders aren't always directed to the privilege claimant. … ***In these circumstances, the contempt option is often off the table*** – the third-party custodian of the information can rarely be expected to risk contempt just so the privilege claimant can take an immediate appeal.

*See* Bryan Lammon, *Perlman Appeals after Mohawk*, 84 U. CIN. L. REV. 1, 7 (2016) (emphasis added).  The contempt route does not work if the privilege holder is the target of the subpoena or discovery order.

Here, Parx is the privilege holder but not subject to the disclosure order. The district court ordered Eckert (not Parx) to disclose privileged documents. Moreover, there is no order *in effect* to defy.  The district court stayed the latest order calling for Eckert to disclose its privileged documents pending resolution of this appeal. Parx cannot suffer contempt even if it so desired. *See FMC*, 604 F.2d at 800 ("FMC, however, stands in a different posture because it has not been subpoenaed to produce the documents and therefore would not be held in contempt were they not produced.").

POM nevertheless would have this Court hold that Parx must somehow engineer contempt rather than take a direct appeal.  But

*Perlman* is designed to avoid that. *Perlman* exalts function over form. Otherwise, Parx will be litigating for many more months or years to have its rights vindicated with no guarantee that the Court here would have jurisdiction over the contempt order directed at the non-party. *See* Lammon, *supra*, at 7 ("The contempt option is hardly perfect. For one thing, being found in contempt doesn't guarantee appealability."); Cassandra Robertson, *Appellate Review of Discovery Orders in Federal Court: A Suggested Approach for Handling Privilege Claims*, 81 WASH. L. REV. 733 (2006) (discussing the hazards of the contempt route).

Moreover, Parx and the parties will incur additional costs and devote more resources in contempt proceedings, all while placing additional burdens on the courts. Most importantly, neither Parx nor Eckert nor any other lawyer acting on behalf of Parx in this case wishes to endure the hazards of voluntarily submitting to contempt sanctions solely as a means to appeal the privilege issue.

Finally, POM's position results in more delays. A quicker ruling on this privilege issue will determine whether Parx's privileged information will be part of the record or not. POM should welcome that. A contempt

13

process is sure to take many more months or years before this Court ultimately weighs in.

### b. The mandamus alternative is unavailable when there are appellate remedies.

*Second*, POM's related argument – calling for a mandamus petition or having this Court treat this appeal as such – equally falls short. *See* POM Br. at 20. Mandamus is a last-resort procedure when no other process affords a litigant an opportunity for relief, such as a direct appeal. *See Hahnemann University Hospital v. Edgar*, 74 F.3d 456, 460-462 (3d Cir. 1996) ("Given its drastic nature, a writ of mandamus should not be issued where relief may be obtained through an ordinary appeal.").

Here, *Perlman* and the collateral-order doctrine give Parx a direct-appeal process such that mandamus is neither necessary nor appropriate. This Court's appellate jurisdiction is necessary and proper to correct an error of law on a privilege issue that has engendered substantial disagreement. The Court should not issue a ruling that essentially forces a party and its lawyers to name a federal judge as a defendant when at least two procedural doctrines give the Court appellate jurisdiction now.

### c. A post-judgment appeal is inadequate to prevent irreparable harm.

*Third*, the Court should reject POM's red-herring argument that all of Parx's concerns will disappear if it formally intervenes in the case below because, as intervenor, it would have standing to appeal adverse privilege orders ***after*** the district court enters a final judgment (and, conveniently for POM, long after the documents have been disclosed in violation of Parx's privilege). *See* POM Br. at 26.

POM's argument misses the point. Non-party privilege holders have distinct interests that are not necessarily aligned with third-party custodians of privileged materials. Their primary concern is the preservation of the privilege, not the outcome of the case. A direct appeal helps protect these distinct interests, ensuring that non-party privilege holders can defend their rights independently of the litigation's merits.

Indeed, Parx does not want to be involved in this case *at all*. POM has engendered Parx's participation here for almost five years by insisting on pursuing Parx's privileged documents from Eckert and Parx's other privileged agents, having unsuccessfully attempted to subpoena privileged documents directly from Parx. *See* MDPA-ECF Doc. 88 ¶ 3 at 4. The district court repeatedly has granted POM's requests,

and Parx successfully pursued relief from this Court to undo erroneous orders calling for the disclosure of Parx's privileged documents. *See Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023) (*"POM v. Eckert I"*).

In short, post-judgment appeal of an adverse privilege determination is inadequate. Parx will be in the untenable position of having POM potentially disclose Parx's privileged documents to the public and use them in other battles that POM has waged against Parx, Parx's agents, and even unrelated parties. *See* Parx Op. Br. at 22 n.3. *Perlman* avoids this untenable situation. The Court has jurisdiction now.

### 3. *Mohawk* does not foreclose a *non-party's* appeal under *Perlman* or the collateral-order doctrine.

Finally, POM argues that the Supreme Court's decision in *Mohawk* forecloses an appeal under the *Perlman* or collateral-order doctrines. *See* POM Br. at 25. It does not.

*Mohawk* did not alter the *Perlman* doctrine or other potential avenues for appeal when a **non-party** privilege holder challenges an adverse privilege ruling that compels the disclosure of privileged documents in the possession of third parties.  As this Court explained:

16

> We cannot say that the Supreme Court has abandoned that determination [*Perlman*] on the basis of a later case, *Mohawk*, that never cites, let alone discusses, *Perlman*. … We therefore conclude that the *Perlman* exception remains viable.

*See ABC Corp.*, 705 F.3d at 146; *see also* Lammon, *supra,* at 7 ("*Mohawk* neither discussed nor cited *Perlman*. And the two decisions are not inconsistent. The collateral-order doctrine and *Perlman* appeals are distinct exceptions to the final-judgment rule.").

Here, *Mohawk* does not preclude a direct appeal under the collateral-order doctrine when an adverse privilege ruling directed to a party implicates a non-party's privilege. Parx is not a party to the underlying litigation attempting to appeal an adverse privilege order and cannot otherwise vindicate its rights by appealing after the district court enters a final judgment in the underlying litigation between the parties. At that point, Parx will have suffered irreparable harm even if it prevailed on any post-judgment appeal.

Moreover, the *Perlman* doctrine and the collateral-order doctrine are not mutually exclusive. An order may be subject to appeal under both doctrines when as here, a non-party's privilege is involved. Consequently, the Court here has jurisdiction under either (and both) doctrine(s). As

17

one commentator put it, "[t]hey are different doctrinal avenues to similar destinations." *See* Lammon, *supra*, at 7.

POM lastly argues that the Supreme Court has not exercised its rulemaking authority to give non-parties appellate rights under the collateral-order doctrine. *See* POM Br. at 27-28. But *Perlman* has been on the books since 1918. The Supreme Court is presumed to know its precedent, and so is Congress. *See, e.g.*, *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685 (2022) (Congress is aware of precedent when enacting law); *United States v. Rahimi*, 602 U.S. ----, 144 S. Ct. 1889 (2024) (the Court is aware of precedent when fashioning its rulings).

If the United States Supreme Court (by judicial decision or rule) or Congress (by statute) wishes to eliminate *Perlman* or the collateral-order doctrine as a basis for *non-party* privilege holders to challenge adverse disclosure orders immediately on direct appeal, that is their prerogative. Until then, *Perlman* and collateral-order doctrine apply; *Mohawk* did not overrule *Perlman* or foreclose a non-party appeal of an adverse privilege ruling under the collateral-order doctrine; and POM cannot prevent this Court from reaching the merits of this privilege dispute.

Accordingly, the Court has jurisdiction over the appeal pursuant to either or both the *Perlman* doctrine and collateral-order doctrine.

### B.    *The privilege applies to the documents at issue.*

On the merits, POM only makes several points that are worthy of any response. *See* POM Br. at 31-40.

#### 1.    **The sole purpose of the communications in the documents is to provide advice on legal matters.**

As a threshold matter, POM is wrong to suggest that the predominant purpose of the communications in the documents is for anything other than providing advice to Parx on "legal" matters.

To the contrary, the sole purpose of the communications in the documents at issue is to assist Parx with legal matters, including legislative matters. *See, e.g., Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) (*affirmed by equally divided court at* 605 Pa. 468, 992 A.2d 65 (2010) (privilege applies to communications "***for the purpose of securing either an opinion of law, legal services or assistance in a legal matter***") (emphasis added).

As Mr. Bonner explained in his declaration, Parx hired lawyers to assist with legal matters. *See* JA264. The communications among Parx, its privileged agents, and its lawyers involve advice on things like

19

existing or pending legislation and related legal work for Parx. *See* JA266 (stating communications among client, lawyers, and agents "was necessary so that both Parx's outside and in-house counsel could provide legal advice to Parx regarding its legal options under existing law or proposed new legislation."); *see also* JA277-392 (Eckert's privilege log).

The record contains nothing to suggest that the purpose of the communications within the documents is for anything other than assisting Parx with "legal" matters. *Nothing.* The only meaningful record evidence regarding privilege confirms that Parx hired lawyers for the sole purpose of providing legal advice on legal matters, including legislative matters, and authorized its other professionals to discuss these matters with Parx's in-house lawyers and outside counsel so they may advise the company completely and properly.

The documents at issue confirm the point. Without revealing privileged information here, the documents reflect things like drafting and revising legislation, analysis of legal consequences associated with certain pending legislation, drafting and preparing testimony, making recommendations about legislation, evaluating whether proposed

20

legislation withstands judicial review, and evaluating the interests of the client in the event proposed legislation becomes law. *See* JA277-JA392.

Although Parx demonstrated that the sole purpose of the communications in the documents at issue is to secure advice on legal matters, the privilege would still apply even if the documents contained communications about non-legal matters. *In re County of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007) (upholding the privilege for communications containing legal and non-legal matters); *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997) (*overruled on other grounds by Mohawk*) (same).

If, for example, the documents at issue regarding legal matters happen to include incidental discussions about lobbying, politics, public relations, or the like, none of those incidental discussions destroys the privilege even assuming they are "non-legal" in nature. *See County of Erie*, 473 F.3d at 420-21 ("So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.").

In that circumstance, the courts must further evaluate whether the predominant purpose of the communication is legal in nature as opposed to something else; if "legal," the document is protected ***in its entirety***.

*See County of Erie*, 473 F.3d at 420-21. If non-legal advice predominates, the courts must order redaction to avoid a violation of federal rules that prohibit disclosure of privileged materials. *See* FRCP 26(c); FRCP 45 (both precluding discovery of privileged information); *County of Erie*, 473 F.3d at 421 n.8 (stating that "redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication").

As Parx argued in its opening brief at page 43, the magistrate judge and district court erred by suggesting that advice on legislative matters is non-legal, and they misapplied (or ignored) the predominant-purpose test. POM does not address these failures of the magistrate judge and district court in any meaningful way. *See* POM Br. at 49. POM does so at its peril because advice on legislative matters is "legal" in nature such that the privilege applies to the documents in their entirety.

### 2. Parx did not "buy" the protections of the privilege by hiring Eckert to do non-legal work.

Next, POM relies on a series of cases from other circuits for the proposition that Parx somehow "bought" the protections of the attorney-client privilege by hiring Eckert to do non-legal work that any non-lawyer could do. *See* POM Br. at 33-34. Again, POM is wrong.

22

Leaving aside the absurdity of POM's accusation, Parx hired lawyers to do what lawyers do: advise on legal matters. *County of Erie*, 473 F.3d at 420-21; *Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014) (communications about strengths/weaknesses of claim or defense, options, strategy, and settlement constitute legal advice for purposes of apply attorney-client privilege). Mr. Bonner's declaration confirms that Parx hires lawyers to advise on legal matters, including existing, pending, or desired legislation, and instructed its privileged agents to communicate with its lawyers confidentially so the lawyers can provide advice to the company. *See* JA264-JA269. It is that simple.

The cases on which POM relies to claim that Parx bought the privilege by hiring lawyers to do non-lawyer work are inapposite. At the outset, the cases are not binding, *see, e.g.*, *United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012), nor do they have any persuasive value. The cases surely do not stand for the proposition that courts should deny privilege when the subject matter is legislation and related legal matters.

Instead, the cases on which POM relies all involve purely non-legal work such as routine tax preparation and accounting services, *see In re Grand Jury Subpoena*, 204 F.3d 516, 523 (4th Cir. 2000); financial advice,

*see United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999); or investigation work, *see Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) (*en banc*).

By contrast, Parx engaged counsel here to advise Parx on legal matters, including legislative matters. *See* JA266; JA277-392. That is what lawyers do.[1] There is no other purpose for these communications. *See, e.g.*, JA266 (purpose is to "provide legal advice to Parx regarding its legal options under existing law or proposed new legislation."); JA277-392 (privilege log). If there is any other purpose to the communications, they are only incidental to the predominant purpose of providing Parx with legal advice. Period.

### 3.    Parx met its burden of proving that the privilege applies; POM did not.

Moreover, POM is also incorrect to suggest that Parx failed to meet its burden to prove that the privilege applies because (a) Parx submitted a pre-existing declaration of record instead of preparing a new one to say the same things about the same privilege; (b) the declaration improperly

---

[1] POM notes that one of Eckert's lawyers is registered as a lobbyist. *See* POM Br. at 33 n.7. The point is immaterial. Many lawyers are registered as lobbyists. POM does not elaborate on why it mentions this point except to say that it is "telling." Presumably, POM wants this Court to think this is a lobbying case in an attempt to make its arguments against privilege easier, but this is not a lobbying case.

24

makes a blanket assertion of privilege instead of describing each document; and (c) POM rebutted Parx's evidence with its own. *See* POM Br. at 40. POM is wrong on all fronts.

*First*, a privilege holder may meet its burden with "record evidence." *See Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) ("To sustain this burden of proof, the party asserting the privilege must show, ***by record evidence such as affidavits***, sufficient facts as to bring the [communications] within the narrow confines of the privilege.") (cleaned up; emphasis added). Despite research, Parx is unaware of case law precluding courts from evaluating a declaration supporting a privilege claim merely because it pre-dates a privilege dispute.

Here, Parx met its burden with "record evidence." The declaration is part of ***this case***. It is part of the record ***in this case***. It speaks directly to ***this privilege issue***. It does not lose its merit or weight simply because Parx re-purposed it to support the privilege claim as soon as it was able. The substance of the declaration is what matters. Indeed, Mr. Bonner's testimony is consistent, having sworn out several declarations supporting privilege claims. *Compare* JA264-JA269 *with* JA270-JA274.

*Second*, the rules do not require that declarations provide detailed descriptions of the privileged communications in the documents as POM suggests. *See* FRCP 26(b)(5)(2) (privilege assertion must "describe the nature of the documents, communications, or tangible things not produced or disclosed—***and do so in a manner that, without revealing information itself privileged or protected***, will enable other parties to assess the claim") (emphasis added). The reason for this is obvious: it would engender waiver if privilege holders could be compelled to disclose privileged information in detail.

The cases on which POM relies, moreover, stand for the unremarkable proposition that a privilege claimant or holder cannot rely on a "blanket" assertion of privilege for batches of documents. *See, e.g.*, *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); *Doe v. Schuylkill Cnty. Courthouse*, 343 F.R.D. 289, 295 (M.D. Pa. 2023). A privilege claimant or holder has the obligation to provide sufficient information for each document in a privilege log. *See, e.g.*, *MDL Cap. Mgmt., Inc. v. Fed. Ins. Co.*, No. 05CV1396, 2006 WL 8458192, at *1 (W.D. Pa. Mar. 22, 2006). A privilege holder or claimant has no obligation to disclose the contents of each document beyond that.

In any event, there is no blanket assertion of privilege here. At the outset, POM conveniently ignores the fact that Eckert submitted a privilege log identifying the nature of the communications for each privileged document. *See* JA277-392. That satisfies the "document-by-document" analysis that POM demands.

Moreover, after the magistrate judge rejected the privilege claim based on the faulty notion that communications about legislative matters are non-legal in nature, Parx submitted Mr. Bonner's declaration in which he (under oath) confirmed the nature of the documents, the predominant purpose of engaging counsel to advise on legal matters, and the admonition to lawyers and privileged agents alike to maintain confidentiality. *See* JA264-269.

*Third*, and perhaps most importantly, POM points to nothing meaningful in the record to disprove Parx's privilege or demonstrate that an exception applies. As the Court is aware, the opposing party has the obligation to respond **with evidence** demonstrating that the privilege does not apply or an exception applies. *In re Investigating Grand Jury of Phila. County*, 593 A.2d 402, 407 (Pa. 1991) ("*Philadelphia County*")

(opposing party has burden to prove disclosure would not violate privilege). If the opposing party fails, the privilege applies.

Here, Eckert submitted a privilege log (years ago) invoking privilege for the documents at issue. *See* JA277-JA392. As soon as Parx learned that the magistrate judge ordered the disclosure of Parx's privileged documents, Parx appealed and submitted a declaration of record to support the privilege. *See* JA158. POM never submitted any evidence in response to Mr. Bonner's declaration.

Now, consider the "evidence" on which POM relies to claim that it met its burden:

- **POM's Letters.** POM refers to its letters initiating the dispute before the district court. Those letters contain legal arguments. They are not evidence. *Greene Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423, 2001 WL 1046982 (E.D. Pa. 2001) (*ipse dixit* of counsel is not evidence). They are unhelpful to POM.

- **Eckert's Privilege Log.** Ekert's privilege log at JA277-JA392 satisfies Eckert's *prima facie* burden of proving Parx's privilege claim for each document at issue. *See MDL Cap. Mgmt., Inc. v. Fed. Ins. Co.*, No. 05CV1396, 2006 WL 8458192, at *1 (W.D. Pa. Mar. 22, 2006). That log is unhelpful to POM.

- **POM's Annotations on Eckert's Privilege Log.** POM's annotations on Eckert's privilege log constitute nothing more than the *ipse dixit* of POM's counsel. That is not evidence. *See Greene, supra.*

28

- ***Various Letters.*** POM cites various letters, *see* POM Br. at 7, 40 (citing MDPA-ECF Doc. 295, Exhibits 4, 7, 8), including a letter from Eckert to a Pennsylvania state senator regarding POM's so-called "skill games"; a letter from Eckert's Chief Legal Officer contesting POM's fiduciary duty claim; and a letter from Eckert to a local government official expressing concerns over POM's illegal gambling devices. These documents have nothing to do with Parx's privilege.

- ***County Court Order.*** POM's reliance on a county court's order regarding the return of POM's seized gambling devices is curious because it has nothing to do with privilege. *See* MDPA-ECF Doc. 295, Exhibit 9.

Unlike Parx and Eckert, POM presented no meaningful evidence or testimony from any witness via declaration or otherwise to support its burden to prove that the privilege is inapplicable here. Indeed, nothing on which POM purports to rely is verified by oath or affirmation. POM relies almost exclusively on unsworn and unverified statements of counsel and irrelevant documents. That is not enough.

Accordingly, the Court should reject POM's arguments and hold that Parx met its burden of proving the documents are privileged.

### C.     *The Court should reject the rest of POM's arguments.*

There are several final points worth mentioning briefly. *First*, POM suggests that the Court here should defer to the magistrate judge's ruling. *See* POM Br. at 43. But the courts do not defer to magistrate judges or district courts on questions of law. *Salve Regina Coll. v. Russell*,

499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable."). The question here is one of law for this Court. The Court owes no deference.

*Second*, POM chastises Parx for suggesting that the district court should have notified the company before referring POM's dispute to the magistrate judge for *in camera* of Parx's privileged documents. *See* POM Br. at 44. But a non-party privilege holder has an "absolute right to be heard by testimony and argument," and the courts should inform them before putting their privilege at stake. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91-92, 97 (3d Cir. 1992) ("[T]he party invoking the privilege has the absolute right to be heard by testimony and argument."); *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968) (courts should "take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below").

*Third*, POM cites *Haines* for the proposition that the district court had no obligation to consider the declaration that Parx allegedly failed to submit to the magistrate judge in the first instance. *See* POM Br. at 43.

As a threshold matter, Parx did not have an opportunity to submit anything to the magistrate judge until after he ruled.[2] As the Court is aware, *in camera* review is disfavored and should only be employed when the privilege holder has an opportunity to participate. *See, e.g.*, *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009) ("Caution and the need to eliminate even the potential for prejudice to the holder of the privilege, require that *in camera* inspection never be any greater than absolutely necessary."). The district court did not ask Parx for permission to have the magistrate judge review its documents *in camera.*

In any event, *Haines* is inapposite for the proposition that POM advances. In that case, the district court *sua sponte* consulted the record in a separate proceeding involving the privilege holder to find evidence that the crime-fraud exception applied to circumvent the privilege. *See Haines*, 975 F.2d at 91-92. Mr. Bonner's declaration here is of record in this case, *see* JA264; on this docket; *see* JA239-JA264; predates the magistrate judge's review, *see* JA265 and JA061; was previously reviewed (and credited) by the district court in connection with another

---

[2] POM argues that Parx somehow was on notice that Judge Wilson granted POM's request for *in camera* review of Parx's privileged documents. *See* JA463. Judge Wilson's order does not mention Parx or any other casinos that Eckert represents.

attempt by POM to invade Parx's privileged communications; *see* MDPA-ECF Doc. 351; ***and has never been contested***.

*Fourth*, POM suggests that Parx could have participated in the sealed proceedings below because "Parx has inserted itself into a number of discovery disputes in this litigation without receiving an 'invitation' from the District Court to do so." *See* POM's Br. at 45. The irony here is rich. Parx is not a party. Far from "inserting itself" into POM's innumerable discovery disputes with Eckert, Parx has been pulled into this years-long case against its will to protect its privileged documents ***because POM keeps demanding them from Eckert and others***, not only in this case but in various other lawsuits POM has initiated against Parx's privileged agents. *See* Parx Op. Br. at 22 n.3.

*Finally*, POM argues (as an alternative basis to affirm) that the privilege does not apply to legal advice regarding legislative matters because the communications at issue allegedly are not between a lawyer (on one hand) and a client (on the other). *See* POM's Br. 50-52.

As the Court is aware, however, the attorney-client privilege applies to confidential intra-firm communications between lawyers, *see, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D.

Pa. 2005), as well as confidential communications among lawyers and their privileged agents and clients and their privileged agents. *See BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019). The documents reflect discussions among Parx, Parx lawyers, and/or Parx's privileged agents such as lobbyists, communications professionals, and others.

Accordingly, the Court should reject POM's arguments and hold that the privilege applies to the documents at issue.[3]

---

[3] POM is wrong to suggest an alternative basis for affirming is immutable merely because Eckert did not appeal or because Parx did not raise the argument in its opening brief. Parx has the right to respond to this argument in this reply brief. *See McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012). In addition, the Court reviews orders and opinions in their entirety, not just pieces of opinions or orders. *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (appellate court "may consider all grounds that might require reversal of the order from which the parties appeal").

## II.   CONCLUSION

WHEREFORE, the Court should reverse.[4]

June 18, 2025                                              Respectfully submitted,

                                                          **GA BIBIKOS LLC**

                                                          /s George A. Bibikos
                                                          George A. Bibikos (PA 91249)
                                                          5901 Jonestown Rd. #6330
                                                          Harrisburg, PA 17112
                                                          (717) 580-5305
                                                          gbibikos@gabibikos.com

                                                          *Counsel for Parx Casino*

---

[4] As a final point, when POM is unable to meaningfully respond to Parx's arguments, POM claims (like the district court) that Parx waived them. The Court has the benefit of the record to see for itself where Parx raised and argued all these issues throughout this case. *See* Parx Op. Br. at 15 n.2 & 62 n.5.

# CERTIFICATIONS

Word Count. In accordance with Fed. R. App. Pro. 27(d)(2)(A), the attached contains 6,403 words (excluding exempt content) as calculated by the word-count feature of Microsoft Word.

Electronic Version. The text of the electronic brief and hard copies provided to the Court (if any) are identical.

Virus Scan. The electronic brief has been checked for viruses using Apple MacOS XProtect.

Bar Admission. The undersigned counsel is a member of the bar of this Court.

Service. On June 18, 2025, I caused a copy of the foregoing to be served via ECF on the following counsel of record:

Robert S. Tintner, Esq.
Peter C. Buckley, Esq.
Fox Rothschild LLP
2001 Market St., Suite 1700
Philadelphia, PA 19103
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
*Counsel for Eckert Defendants*

George W. Westervelt, Jr., Esq.
706 Monroe St
P.O. Box 549
Stroudsburg, PA 18360-0549
geowwest@ptd.net
*Counsel for Pace-O-Matic, Inc.*

Omobolanle A. Adeniran, Esq.
Michael Nolan, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
bola.adeniran@huschblackwell.com
michael.nolan@huschblackwell.com
*Counsel for Pace-O-Matic, Inc.*

Michael Martinich-Sauter, Esq.
James Otis Law Group LLC
530 Maryville Centre Dr., Suite 230
St. Louis, Missouri 63141
(314) 949-3018
Michael.martinich-sauter@james-otis.com
*Counsel for Pace-O-Matic, Inc.*

Jeffrey Jensen
TORRIDON LAW PLLC
801 17th Street NW, Suite 1100
Washington, DC 20006
(202) 249-6900 (Telephone)
jjensen@torridonlaw.com

/s George A. Bibikos
George A. Bibikos